# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>  *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>  *Defendants* | §<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 RWS-CMC<br><br>LEAD CASE |
| BLUE SPIKE, LLC,<br>  *Plaintiff*,<br>v.<br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>  *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 RWS-CMC<br><br>CONSOLIDATED CASE |

**AUDIBLE MAGIC CORPORATION'S MOTION FOR
SUMMARY JUDGMENT OF NONINFRINGEMENT**

**FILED UNDER SEAL**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1
II. FACTUAL BACKGROUND ..................................................................................1
    A. Each Asserted Claim Requires A Signal "Abstract" ...................................1
    B. Blue Spike Understood The Legal Definition Of "Abstract" In The Context Of The Patents-in-Suit....................................................................2
    C. Blue Spike Made Judicial Admissions That MFCCs Are Not Signal "Abstracts"....................................................................................................2
    D. Blue Spike Deliberately Admitted That MFCCs Are Not "Abstracts" In An Attempt To Avoid The Prior Art..........................................................3
    E. Blue Spike's Admissions That MFCCs Are Not Signal "Abstracts" Preclude Its Infringement Theories................................................................4
III. LEGAL BACKGROUND .......................................................................................6
    A. Summary Judgment Standard ......................................................................6
    B. Judicial Admissions Standard ......................................................................7
IV. ARGUMENT ...........................................................................................................8
    A. Mr. Moskowitz's Sworn Admissions Are Binding On Blue Spike, LLC ...8
    B. Mr. Moskowitz's Sworn Admissions Are Contrary To A Fact Essential To Blue Spike's Theory of Recovery.............................................10
    C. Mr. Moskowitz's Sworn Admissions Are Deliberate, Clear, and Unequivocal ................................................................................................10
    D. Giving Mr. Moskowitz's Sworn Admissions Conclusive Effect Is Consistent With Public Policy ...................................................................11
    E. Judgment Should Be Rendered For Audible Magic ..................................12
V. CONCLUSION......................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affymetrix, Inc. v. PE Corp.*,
 306 F. Supp. 2d 363 (S.D.N.Y. 2004)..................................................................11

*Armour v. Knowles*,
 512 F.3d 147 (5th Cir. 2007) ................................................................................9

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
 501 F.3d 1274 (Fed. Cir. 2007)...........................................................................11

*Botell v. U.S.*,
 2013 U.S. Dist. LEXIS 12075 (E.D. Cal. 2013)..................................................10

*Cadle Co. II v. Gasbusters Prod. I L.P.*,
 441 Fed. Appx. 310 (6th Cir. 2011).....................................................................12

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986).............................................................................................8

*Duplantis v. Shell Offshore, Inc.*,
 948 F.2d 187 (5th Cir. 1991) ................................................................................9

*Edwards Lifesciences LLC v. Cook Inc.*,
 582 F.3d 1322 (Fed. Cir. 2009)......................................................................8, 10

*Garcia v. EHealthscreenings, LLC.*,
 2014 U.S. Dist. LEXIS 15465 (W.D. Tex. 2014)................................................12

*Gentex Corp. v. Donnelly Corp.*,
 69 F.3d 527 (Fed. Cir. 1995)...............................................................................13

*GTX Corp. v. Kofax Image Prods.*,
 571 F. Supp. 2d 742 (E.D. Tex. 2008)................................................................11

*Heritage Bank v. Redcom Labs., Inc.*,
 250 F.3d 319 (5th Cir. 2001) ................................................................................9

*Johnson v. IDEXX Labs., Inc.*,
 2007 U.S. Dist. LEXIS 40685 (N.D. Tex. 2007)................................................10

*Jonibach Mgmt. Trust v. Wartburg Enters.*,
    750 F.3d 486 (5th Cir. 2014) .................................................................................9

*Jonsson v. Stanley Works*,
    903 F.2d 812 (Fed. Cir. 1990)..............................................................................13

*Martinez v. Bally's La., Inc.*,
    244 F.3d 474 (5th Cir. 2001) .................................................................................9

*Merritt-Campbell, Inc. v. RxP Prods., Inc.*,
    164 F.3d 957 (5th Cir. 1999) .................................................................................8

*Nola Spice Designs, L.L.C. v. Haydel Enters.*,
    2015 U.S. App. LEXIS 5693 (5th Cir. 2015) ........................................................8

*Phillips v. Am. Honda Motor Co.*,
    2005 U.S. Dist. LEXIS 46223 (S.D. Ala. 2005)..................................................10

*Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*,
    2002 U.S. Dist. LEXIS 15750 (E.D. La. 2002) ..................................................10

*Rohm & Haas Co. v. Brotech Corp.*,
    127 F.3d 1089 (Fed. Cir. 1997)............................................................................14

*Seed Lighting Design Co. v. Home Depot*,
    2005 U.S. Dist. LEXIS 44741 (N.D. Cal. 2005) .................................................11

*Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*,
    431 F.2d 539 (5th Cir. 1970) .........................................................................13, 14

*Teashot LLC v. Green Mt. Coffee Roasters, Inc.*,
    2014 U.S. Dist. LEXIS 14841 (D. Colo. 2014), *aff'd*, 2015 U.S. App. LEXIS
    246 (Fed. Cir. 2015).............................................................................................11

*Velasquez v. Green*,
    2012 U.S. Dist. LEXIS 97597 (E.D. Tex. 2012) ............................................9, 12

*Voice Techs. Group, Inc. v. VMC Sys., Inc.*,
    164 F.3d 605 (Fed. Cir. 1999)..............................................................................11

**Other Authorities**

Fed. R. Civ. P. 56(c) .......................................................................................................8

Rule 30(b)(1)................................................................................................................10

## RULE 56(a)(1) STATEMENT OF ISSUES TO BE DECIDED

1. Whether Scott Moskowitz's ("Mr. Moskowitz") / Blue Spike LLC's ("Blue Spike") repeated and emphatic sworn testimony that "MFCCs" are not the "abstracts" of the Patents-in-Suit qualify as judicial admissions.

2. Whether Audible Magic infringes the Patents-in-Suit in view of Blue Spike's admission that Audible Magic's MFCCs are not the "abstracts" of the Patents-in-Suit.

## RULE 56(a)(2) STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56(a)(2), Audible Magic, moving for summary judgment herein, submits the following facts with respect to which there is no genuine issue to be tried. References to "Ex." are to exhibits to the Declaration of Gabriel Ramsey, submitted herewith:

1. Each element of each asserted claim of the Patents-in-Suit requires an "abstract." Ex. 3, pp. 19, 60 (asserted claims), Ex. 10 (asserted claims), Exs. 11-14 (each claim contains "abstract"); Dkt. 1700 at 8 ("abstract" is "central component" of claims).

2. Blue Spike and Mr. Moskowitz testified repeatedly and emphatically that mel-frequency cepstral coefficients ("MFCCs") are not the "abstracts" of the Patents-in-Suit or equivalent to them. Ex. 1, 775:7-12, 818:25-819:2, 781:14-20, 779:14-21.

3. Blue Spike and Mr. Moskowitz testified, in particular, that Audible Magic's MFCCs in the accused MFCBR library and Audible Magic's prior art '223 patent are not the "abstracts" of the Patents-in-Suit or equivalent to them. Ex. 1, 775:7-12, 818:25-819:2, 781:14-20, 779:14-21; Ex. 4, pp. 26-27, 30; Ex. 5, 191:1-16 and pp. 188-192; Ex. 6, pp. 6-11 and Attach. D; Ex. 7, pp. 73-74, 34-36, 70-102; Exs. 8-9.

4. Blue Spike and Mr. Moskowitz made the admissions with full knowledge and understanding of the Court's claim constructions. Ex. 1, 120:23-121:6, 217:8-11, 1091:20-1092:1.

5. Blue Spike asserts in its complaint that Mr. Moskowitz "coined the term 'signal abstracting.'" Dkt. 1400 (Complaint) at ¶35.

6. Blue Spike is a sole member LLC and Mr. Moskowitz is the only member, manager and sole proprietor of Blue Spike. Ex. 1, 603:6-12.

7. At the time of his deposition, Mr. Moskowitz was the sole investor in Blue Spike. Ex. 1, 1254:20-24.

8. Michael Berry, the co-inventor of the patents-in-suit, confirmed that the patents' "abstracts" do not cover MFCCs. Ex. 2, 107:25-108:8.

9. In Blue Spike's infringement theories, set forth in its infringement report, the only structures in Audible Magic's accused products that Blue Spike alleges to be "abstracts" are "MFCCs." Ex. 3, pp. 11, 13, 19.

-1-

Case 6:15-cv-00584-RWS-CMC Document 13-5 Filed 06/24/15 Page 6 of 19 PageID #: 707
Case 6:12-cv-00499-RWS-CMC Document 1957 SEALED Filed 05/18/15 Page 6 of 19
PageID #: 28510

I. **INTRODUCTION**

Audible Magic does not infringe the asserted patents, as a matter of law. Each claim of those patents requires a signal "abstract," which is a type of representation of a signal. The only thing in Audible Magic's products that Blue Spike asserts is the alleged signal "abstract" is a set of values called mel-frequency cepstral coefficients ("MFCCs"). Mr. Moskowitz—the co-inventor of the patents-in-suit, the sole principal and investor in Blue Spike, and Blue Spike's 30(b)(6) witness—repeatedly and deliberately made dispositive judicial admissions that MFCCs are not signal "abstracts." He made these admissions with full knowledge of the Court's claim construction of "abstract." Mr. Moskowitz was motivated to admit that his patents' "abstracts" do not encompass MFCCs because MFCCs are a well-known prior art technology solution.

As Blue Spike's sole principal and investor, sole 30(b)(6) witness, and the co-inventor of the asserted patents, Blue Spike is bound by these admissions. Blue Spike cannot be permitted to say that prior art MFCCs are not within the scope of the asserted patents in order to strategically avoid invalidity, while at the same time asserting that MFCCs are within the scope for purposes of infringement. Blue Spike deliberately elected to admit that MFCCs are not "abstracts," and cannot now change its position to save its infringement theories. By Blue Spike's own admissions, the "abstract" element **cannot** be met by the use, sale or offer for sale of any accused Audible Magic product. Audible Magic respectfully requests that the Court grant its Motion for Summary Judgment of non-infringement.

II. **FACTUAL BACKGROUND**

  A. **Each Asserted Claim Requires A Signal "Abstract"**

Blue Spike asserts U.S. Patents 7,346,472, 7,660,700, 7,949,494 and 8,214,175 ("Patents-in-Suit"). Each claim of these patents requires a signal "abstract." Ex. 10 (asserted claims), 11-14 (each claim contains "abstract"). For example, the '472 patent claim 3 recites in relevant part:

-2-

> *A method for monitoring and analyzing at least one signal comprising:*
> *receiving at least one reference signal to be monitored;*
> *creating an **abstract** of said at least one reference signal;*
> *storing the **abstract** of said at least one reference signal in a reference database;*
> *receiving at least one query signal to be analyzed;*
> *creating an **abstract** of said at least one query signal;*
> *comparing the **abstract** of said at least one query signal to the abstract of said at least one reference signal to determine if the **abstract** of said at least one query signal matches the **abstract** of said at least one reference signal.... See* Ex. 11, cl. 3(emphasis added).

During claim construction, Blue Spike readily acknowledged to this Court that "[t]he term 'abstract' is a central component to each of the patents-in-suit, and as such the inventors went to great lengths to describe it thoroughly in the claim language and specifications." Dkt. 1700 at 8.

### B. Blue Spike Understood The Legal Definition Of "Abstract" In The Context Of The Patents-in-Suit

Mr. Moskowitz – a co-inventor of the Patents-in-Suit, the person who Blue Spike claims "coined the term 'signal abstracting,'" the only principal of Blue Spike, the architect of this litigation, and Blue Spike's 30(b)(6) corporate representative – sat for depositions in December and January. Audible Magic asked Mr. Moskowitz what a signal "abstract" is. Mr. Moskowitz testified that he understood the scope of the term "abstract" and that he had full knowledge and understanding of the Court's claim construction ruling concerning the term "abstract":

> Q. Okay. Well, sitting here today, what is your -- <u>what is your definition of what a signal abstract is</u>?
> A. I believe the term comes up at least 40 plus times in this particular application, and as <u>I would again refer you to</u> the specification and the prosecution history in addition to <u>the court's claim construction which was just done in October 1st, that definition is suitable</u>.
> Ex. 1 at 120:23-121:6 (emphasis added).

> A. <u>I will rely on the</u> specification, prosecution history, and <u>claim construction and know them very well</u>, and be prepared to answer questions in front of the jury.
> Ex. 1 at 217:8-11 (emphasis added).

> I invented signal abstracts with Mike Berry, and yes, <u>we were the first to invent signal abstracts</u> as that term is -- exists in the specification, the claims, the prosecution history and <u>as the court has issued their ruling in the claim construction</u> which, again, you and your clients lost.
> Ex. 1 at 1091:20-1092:1 (emphasis added).

### C. Blue Spike Made Judicial Admissions That MFCCs Are Not Signal "Abstracts"

Fully understanding the claim construction ruling, Mr. Moskowitz emphatically,

-3-

Case 6:15-cv-00584-RWS-CMC Document 13-5 Filed 06/24/15 Page 8 of 19 PageID #: 709
Case 6:12-cv-00499-RWS-CMC Document 1957 *SEALED* Filed 05/18/15 Page 8 of 19
PageID #: 28512

repeatedly and in no uncertain terms, declared that "MFCCs" are not the claimed "abstract":

> What was asked of me is akin to the question you've been asking me several times over the past three days, which is <u>your contention that an MFCC is somehow equivalent with a signal abstract. I contend that this is not the case</u>.
> Ex. 1 at 775:7-12 (emphasis added).

> What I will say is that <u>the mathematics of MFCCs are not equivalent with a signal abstract on -- in any way, shape, or form</u>.
> Ex. 1 at 818:25-819:2 (emphasis added).

> Q. Isn't it true you agree that a feature vector representing MFCC values is exactly the same as the signal abstract described in your asserted patents?
> MR. GARTEISER: Objection, form.
>
> A. Again, <u>I've said it many times, a signal abstract is not the same thing as the MFCCs</u>…
> Ex. 1 at 781:14-20 (emphasis added).

> Q. Sir, you cannot disagree -- isn't it true you cannot disagree that a feature vector representing MFCC values is exactly the same as your signal abstract; isn't that right?
> MR. GARTEISER: Objection, form.
> A. I can and I will and I have and I'll continue to, and the U.S. Patent and Trademark Office of these United States agrees with me.
> Ex. 1 at 770:14-21.

Similarly, the co-inventor, Michael Berry, confirmed that "abstracts" did not cover MFCCs: "Q. So when you filed your signal abstracting patent in 2000, is it fair to say it was not your intent to try to cover some prior system -- technique of creating feature vectors containing MFCC values? You weren't trying to claim that, were you?… Q. That was not your intent; right? A. That was not my intent." Ex. 2 at 107:25-108:8.

### D. Blue Spike Deliberately Admitted That MFCCs Are Not "Abstracts" In An Attempt To Avoid The Prior Art

Mr. Moskowitz deliberately made these admissions to distinguish his patents from MFCC-based prior art. Mr. Moskowitz was presented with Audible Magic's U.S. Patent No. 5,918,223, which is prior art to the Patents-in-Suit (Ramsey Decl., ¶16, Ex. 15) and describes the MFCCs created by the accused Audible Magic products. He emphatically denied that this technology constituted the "abstract" of the Patents-in-Suit:

> Q. All right. Mr. Moskowitz, isn't it true that the process described in Figures 2 through 13 of the '223 patent described the process of creating abstracts in your signal abstracting patents?

-4-

Case 6:15-cv-00584-RWS-CMC Document 13 Filed 06/24/15 Page 9 of 19 PageID #: 710
Case 6:12-cv-00499-RWS-CMC Document 1957 SEALED Filed 05/18/15 Page 9 of 19
PageID #: 28513

> A. No.
> Q. Isn't that true?
> A. No, it's not true at all. [Ex. 1 at 770:5-770:11]
> . . . .
> Q. Isn't it true that the process of creating abstracts in the claims of your asserted patents is reflected in Figures 2 through 13 of the '223 patent?
> A. No, it's not true at all, and I can refer actually -- we can start at Figure 2 if you would like. [Ex. 1 at 770:22-771:3 and 771:11-776:3]

After discussing the '223 patent and Audible Magic's MFCCs in detail and testifying that he clearly understood them,[1] Mr. Moskowitz disputed the "contention that an MFCC is somehow equivalent with a signal abstract. I contend that this is not the case." Ex. 1, 775:7-775:12.

There is no dispute that MFCCs were known in the prior art, including Audible Magic's '223 patent. Indeed, Blue Spike's own expert agrees that MFCCs are prior art, *i.e.* "previously-known Mel Frequency Cepstral Coefficient ("MFCC") technology…" Ex. 3 at p. 19.

### E. Blue Spike's Admissions That MFCCs Are Not Signal "Abstracts" Preclude Its Infringement Theories

On March 2, 2015, Blue Spike served its report setting forth its infringement theory. Blue Spike's infringement theory contradicts its repeated admissions that MFCCs are not abstracts. In its infringement contentions, Blue Spike asserts that Audible Magic's use of MFCCs satisfy the claimed "abstract": "… Audible Magic's software meets this limitation through its use of previously-known Mel Frequency Cepstral Coefficient ("MFCC") technology for audio speech recognition." Ex. 3 at p. 19. In particular, Blue Spike accuses Audible Magic's "MFCBR Library," which creates Audible Magic's MFCCs. *Id.* at pp. 11, 13, 19 (Audible Magic's "core technology is called MFCBR, which stands for Muscle Fish Content Base Recognition. The MFCBR Library is a collection of code, including Muscle Fish fingerprint

---

[1] Mr. Moskowitz testified about precise nuances of Audible Magic's MFCCs: "Finally -- and again you've asked the question several times about what are called MFCCs, or Mel-spaced overlapping triangle filters, which is the way it's described here, I'd refer to however the term would be described in the specification, but the following steps of normalizing the magnitude spectrum, apply a preemphasis filter, apply mel-spaced overlapping triangular filters, apply cosine transform to obtain cep -- excuse me, cepstral coefficients, parentheses, MFCCs, and the result is MFCC computation." Ex. 1, 773:11-22.

-5-

generation and matching code, that evolved to form the basis for all of Audible Magic's technology.") Blue Spike's only infringement theory is that MFCCs created by the MFCBR Library are the claimed abstract. *See id.*

This theory is precluded by Blue Spike's judicial admissions. First, the theory is precluded because Blue Spike testified unambiguously that MFCCs, universally, are not "abstracts." Second, the theory is precluded because Blue Spike testified, specifically, that the MFCCs created by the Audible Magic MFCBR Library, described in the '223 patent, are not "abstracts." There is no dispute that the '223 patent describes the creation and use of MFCCs in the accused MFCBR Library. Blue Spike's own technical expert asserts that the '223 patent describes the MFCBR library: "I believe that the MFCBR library embodies the analysis, comparison, and storage teachings of the '223 Patent," "[i]t also appears that the MFCBR library embodied the teachings of the '223 Patent, at least in terms of audio analysis, comparison, and storage" and "powered by the teachings of the '223 Patent, or more specifically, the MFCBR library that Audible Magic received when it acquired Muscle Fish." Ex. 4, pp. 26-27, 30.

Blue Spike may attempt to argue that the MFCBR Library discussed by this expert is somehow distinguishable from the MFCBR Library accused in this case. However, Audible Magic submitted an expert report which concludes that today's MFCBR Library is reflected in the '223 patent. Ex. 6, pp. 6-11 and Attach. D. Blue Spike did not rebut that opinion. Indeed, Blue Spike's expert reaches his conclusions regarding the '223 patent and the MFCBR Library by quoting the testimony of Audible Magic engineer Thom Blum, that the MFCBR Library *in the products accused in this case* uses the same technology as the '223 patent:

> A. But I believe the functionality itself that's embodied in these files is — you know, at least the core functionality that's in this, the way in which we analyze, the way in which we store and the way in which we compare fingerprints is the same or substantially the same.
> Q. When you say "the same," you are saying the same as the '223 patent?
> A. Takes 223.

-6-

> Q. You're right. So if there turns out to be another file or part of the code that we didn't include here, is it still your testimony that that then would — <u>the core technology essentially at Audible Magic now is embodied in this '223 patent</u>?
> A. Core technology is embodied — <u>Yes, I believe that's true</u>.

Ex. 4 at p. 26, ¶ 68, quoting Ex. 5 at 191:1-16 (emphasis added) (the foregoing testimony occurred during a discussion of whether the accused source code files in the MFCBR Library are the same as the '223 patent, at Blum Depo., pp. 188-192).[2]

Having admitted that MFCCs are not "abstracts," Blue Spike cannot now assert that MFCCs are abstracts to support its infringement theory.

### III. <u>LEGAL BACKGROUND</u>

#### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the record as a whole, together with the affidavits, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).

Where no reasonable jury could conclude that an accused product infringes, summary judgment of non-infringement is appropriate. *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1336 (Fed. Cir. 2009) (where plaintiff admitted that accused products did not meet elements of the asserted claims "the court was correct to conclude that no reasonable jury could find literal infringement by either [defendant]"); *Nola Spice Designs, L.L.C. v. Haydel Enters.*,

---

[2] Blue Spike's assertions that the '223 patent describes the MFCCs in the accused MFCBR Library are consistent with Audible Magic's expert reports. *See* Ex. 6, pp. 6-11 and Attach. D (MFCCs in '223 patent same as accused MFCBR Library); Ex. 7, pp. 73-74 ("Audible Magic implementation of MFCCs as detailed in the accused Audible Magic code and in Audible Magic's '223 patent"), 34-36, 70-102 (MFCCs and alphanumeric identifiers not "abstracts"). Similarly an August 8, 2012 Audible Magic document (shortly before this case was filed) states "Audible Magic's core technology uses a feature called Mel Frequency Cepstral Coefficients (MFCC). Audible Magic pioneered the use of this technology for audio recognition….For more information on MFCCs and their use to analyze sound for matching and similarity, see both Audible Magic's US Patent 5,918,223 and European Patent 1354276." Ex. 8-9.

2015 U.S. App. LEXIS 5693, *51 (5th Cir. 2015) ("Because no reasonable jury could conclude that [copyright plaintiff's] and [copyright defendant's] bead dogs are substantially similar … the district court properly granted summary judgment to [defendant]….")

Summary judgment is appropriate where, as here, a party's admissions remove any material issue of fact. Indeed, "summary judgment is a legitimate and efficient way of disposing of unsupported claims." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)

### B. Judicial Admissions Standard

"A judicial admission is a formal concession on the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 320 (5th Cir. 2001); *Armour v. Knowles*, 512 F.3d 147, 153-154, n.13 (5th Cir. 2007) ("The binding nature of judicial admissions conserves judicial resources by avoiding the need for disputatious discovery on every conceivable question of fact. Once a fact is formally admitted and thereby set aside in the discovery process, 'the party requesting an admission is entitled to rely on the conclusiveness' of it.")

Deposition testimony that is "deliberate, clear, and unequivocal" is a judicial admission. *See Jonibach Mgmt. Trust v. Wartburg Enters.*, 750 F.3d 486, 492 n. 2 (5th Cir. 2014); *Velasquez v. Green*, 2012 U.S. Dist. LEXIS 97597, *20-21 (E.D. Tex. 2012) (plaintiff made "sworn declaration" and factual "testimony"; "[s]uch statements are judicial admissions…" and court rejected plaintiff's later "attempt to correct the inconsistencies" between the admissions

-8-

and legal arguments); *Johnson v. IDEXX Labs., Inc.*, 2007 U.S. Dist. LEXIS 40685, *3-5 (N.D. Tex. 2007) ("clear, unambiguous, and intentional" deposition testimony which the party "made no attempt to seek leave of Court to withdraw" is a judicial admission)

## IV. ARGUMENT

### A. Mr. Moskowitz's Sworn Admissions Are Binding On Blue Spike, LLC

Mr. Moskowitz is the co-inventor of the patents-in-suit, the sole proprietor of Blue Spike LLC, the architect and principal driver of this entire lawsuit and the only person put forth as Blue Spike's 30(b)(6) witness. As such, statements made by him during deposition are binding on Blue Spike, whether formally 30(b)(1) or 30(b)(6) testimony.[3] *See e.g. Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, 2002 U.S. Dist. LEXIS 15750, *10-11 (E.D. La. 2002) (corporation may be deposed by 30(b)(1) deposition of "officer, director or managing agent"); *Phillips v. Am. Honda Motor Co.*, 2005 U.S. Dist. LEXIS 46223, *4 (S.D. Ala. 2005) (Rule 30(b)(1) testimony of "officer, director, or managing agent" is "testimony of the corporation."); *Botell v. U.S.*, 2013 U.S. Dist. LEXIS 12075 (E.D. Cal. 2013) (same; "testimony of such a person will be binding on the party.")

Mr. Moskowitz is not a rogue uninterested employee making statements that may bind a larger company. Instead, he is the only person who stands to gain from this lawsuit. Blue Spike LLC is a sole member LLC, and Mr. Moskowitz is the only member and manager of that entity. Ex. 1, 603:6-12. When he was deposed, Mr. Moskowitz admitted he was the only investor: "Q. Okay. Who are the current investors in Blue Spike LLC? A. Who are the current investors in Blue Spike LLC? It's a sole member LLC, so I'm the sole investor in Blue Spike LLC, at

---

[3] Mr. Moskowitz made these admissions under an oath to testify truthfully. It is inapposite whether he was testifying as the inventor or as corporate representative of plaintiff in which he is the sole manager, member and stakeholder, as there is no reason for the factual contours of the term "abstract"–which he coined–to change. In fact, it is troubling to think that Mr. Moskowitz is suggesting he will change his sworn testimony as to a key fact in the case. Dkt. 1933 at p. 2.

-9-

present." Ex. 1, 1254:20-24.

Furthermore, the subject of Mr. Moskowitz's testimony–the scope of the term "abstract"–is a topic on which Mr. Moskowitz is uniquely qualified to testify and legally bind Blue Spike. Indeed, Blue Spike LLC asserted in its complaint, "[Mr.] Moskowitz coined the term 'signal abstracting.'" Dkt. 1400 (Complaint) at ¶35. As such, Blue Spike is bound by his admissions about that term. *See, e.g., Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) ("An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims."); *GTX Corp. v. Kofax Image Prods.*, 571 F. Supp. 2d 742, 748 (E.D. Tex. 2008) (summary judgment of non-infringement granted where co-inventor of asserted patent admitted during his personal deposition that a key element of the asserted claims did not encompass the method that plaintiff asserted in its infringement theories); *Teashot LLC v. Green Mt. Coffee Roasters, Inc.*, 2014 U.S. Dist. LEXIS 14841, *11-16 (D. Colo. 2014) (Summary judgment of non-infringement where "Plaintiff's sole owner, who is also the inventor of the [asserted] Patent, admitted in his deposition that the [accused structure does not infringe]."), *aff'd*, 2015 U.S. App. LEXIS 246 (Fed. Cir. 2015).

Indeed, 30(b)(1) inventor admissions are routinely used as the basis for summary judgment in patent cases. *See GTX Corp.*, 571 F. Supp. 2d at 748 (summary judgment of non-infringement based on inventor's admissions); *see also Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007) (affirming summary judgment of no enablement based on inventor admissions); *Affymetrix, Inc. v. PE Corp.*, 306 F. Supp. 2d 363, 371-72 (S.D.N.Y. 2004) (summary judgment of invalidity based, in part, on inventors' admissions); *Seed Lighting Design Co. v. Home Depot*, 2005 U.S. Dist. LEXIS 44741, *26-28 (N.D. Cal. 2005) (emphasizing the inventor's admissions during deposition, in granting summary judgment). Here, **both** inventors of the Patents-in-Suit agree that MFCCs are not the claimed "abstract."

-10-

### B. Mr. Moskowitz's Sworn Admissions Are Contrary To A Fact Essential To Blue Spike's Theory of Recovery

"Abstract" is an essential element of each claim and Blue Spike has admitted that Audible Magic's MFCCs do not infringe. In sworn testimony, Mr. Moskowitz directly and unequivocally contradicted the key factual issue necessary to Blue Spike's sole theory of infringement. Mr. Moskowitz reiterated that MFCCs are not the same thing as "abstracts," nor are they equivalent. Moreover, those statements were provided while Mr. Moskowitz was testifying about the central issue underlying his claims against Audible Magic. Accordingly, those statements rise to the level of unretractable judicial admissions. *See Velasquez*, 2012 U.S. Dist. LEXIS 97597 at *20-21 (rejecting later attempts to contradict judicial admissions made in sworn testimony); *Garcia v. EHealthscreenings, LLC.*, 2014 U.S. Dist. LEXIS 15465, *10-14 (W.D. Tex. 2014) (statements made during a deposition were found to be judicial admissions; because the statements constitute a judicial admission, a subsequent affidavit trying to explain away the statements was precluded and summary judgment was granted); *see also Cadle Co. II v. Gasbusters Prod. I L.P.*, 441 Fed. Appx. 310, 313 (6th Cir. 2011) ("Further, admissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission and cannot be challenged in the trial court or on appeal.").

### C. Mr. Moskowitz's Sworn Admissions Are Deliberate, Clear, and Unequivocal

Mr. Moskowitz's testimony is, on its face, "deliberate, clear, and unequivocal." Mr. Moskowitz testified repeatedly and unequivocally that MFCCs are not abstracts, nor are they equivalent: "What was asked of me is akin to the question you've been asking me several times over the past three days, which is your contention that an MFCC is somehow equivalent with a signal abstract. I contend that this is not the case" (Ex. 1, 775:7-12); "What I will say is that the mathematics of MFCCs are not equivalent with a signal abstract on – in any way, shape, or form" (Ex. 1, 818:25-819:2); "Again, I've said it many times, a signal abstract is not the same

-11-

thing as the MFCCs" (Ex. 1, 781:14-20). Mr. Moskowitz's admissions—that MFCCs, in general, are not "abstracts"—are absolutely clear and decisive. Moreover, it is particularly appropriate to give Mr. Moskowitz's testimony binding effect given that he made such admissions *specifically* addressing Audible Magic's MFCCs and the Court's claim construction.

Further, Blue Spike should be bound because when Mr. Moskowitz was testifying that MFCCs are not "abstracts," he was obviously doing so in order to avoid a finding of invalidity based on the prior art. Mr. Moskowitz cannot claim different definitions of his coined term "abstract" in order to avoid invalidity based on Audible Magic's MFCCs described in the prior art, on the one hand, yet at the same time attempt to encompass the same Audible Magic MFCCs in the accused products, for purposes of infringement. *See Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*, 431 F.2d 539, 544 (5th Cir. 1970) ("A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement."). Indeed, Mr. Moskowitz made deliberate, clear and unequivocal assertions that Audible Magic's MFCCs are not within the scope of "abstract," in order to avoid invalidity. The corresponding result is that those same Audible Magic MFCCs in the accused products cannot infringe.

**D. Giving Mr. Moskowitz's Sworn Admissions Conclusive Effect Is Consistent With Public Policy**

Mr. Moskowitz, the inventor of the term "abstract," co-inventor of the patents-in-suit, the sole proprietor of Blue Spike and its 30(b)(6) witness, is in the best position to inform the public of the expanse of that term. *See e.g. Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed. Cir. 1995) (inventor's testimony that he did not intend for patent to include certain structure used to limit its scope); *Jonsson v. Stanley Works*, 903 F.2d 812, 821 (Fed. Cir. 1990) (ruling that district court's reliance on inventor's deposition testimony that was contrary to plaintiff's litigation-induced interpretation was proper). Binding Blue Spike to Mr. Moskowitz's sworn testimony is thus entirely consistent with public policy. Furthermore, co-inventor Michael Berry agrees with

-12-

Mr. Moskowitz that MFCCs do not constitute "abstracts." As the co-inventors of "abstracts," no other experts are in a better position to formulate an opinion and they both agree that it does not encompass MFCCs. Indeed, according to Blue Spike LLC's complaint, Mr. Moskowitz is the singular expert on what constitutes "signal abstracting."

Public policy clearly supports this result. Blue Spike cannot be allowed to contradict this testimony simply because it does not support its lawsuit against Audible Magic. In fact, to allow Blue Spike to contradict the sworn testimony of both inventors and its sole proprietor would violate public policy and all notions of equity because the public would be unable to ever conclusively determine the expanse of the patents at issue. Further, to allow Moskowitz and his Blue Spike LLC entity to continue in this case, on the one hand asserting that MFCCs are not abstracts for purposes of invalidity, but are abstracts for purposes of infringement, would similarly violate public policy. *See Sterner Lighting*, 431 F.2d at 544.

### E. Judgment Should Be Rendered For Audible Magic

Blue Spike bears the burden of proving that Audible Magic infringes *each* element of the asserted claims. *See Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089 (Fed. Cir. 1997) ("The patentee [bears] the burden of proving that the accused product or process satisfie[s] each element of the claims."). By Blue Spike's own admission, through unequivocal testimony that "MFCCs are not equivalent with a signal abstract on -- in any way, shape, or form" (Ex. 1, 818:25-819:2), Audible Magic's accused products cannot infringe because its technology does not satisfy the "abstract" element common to each asserted claim. Therefore, Audible Magic is entitled to a judgment of non-infringement, as a matter of law.

## V. CONCLUSION

For the foregoing reasons, Audible Magic's motion for summary judgment of non-infringement should be granted.

-13-

Case 6:15-cv-00584-RWS-CMC Document 13-5 Filed 06/24/15 Page 18 of 19 PageID #: 719
Case 6:12-cv-00499-RWS-CMC Document 1957 *SEALED* Filed 05/18/15 Page 18 of 19
PageID #: 28522

Dated: May 18, 2015

By:

    */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendant Audible Magic Corp.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on May 18, 2015.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that authorization to file this document under seal was provided by the Protective Order entered in this case, Docket No. 1137.

*/s/ Eric H. Findlay*
Eric H. Findlay
