UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 6:12-cv-499-MHS |
| | § | |
| v. | § | Lead Case |
| | § | |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| | § | |
| *Defendants*. | § | |

**BLUE SPIKE, LLC, BLUE SPIKE, INC., AND SCOTT MOSKOWITZ'S MOTION FOR SUMMARY JUDGMENT ON AUDIBLE MAGIC COUNTERCLAIMS 9-13 [DKT. 1438]**

Pursuant to Rule 56, Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz (collectively, "Counter-Defendants") move for summary judgment on Audible Magic Corporation's counterclaims 9 through 13. *See* Dkt. 1438 at 43-51.[1]

---

[1] The Court granted leave for Counter-Defendants to file this motion. *See* Dkt. 1941.

# Table of Contents

Table of Contents ........................................................................................................................ ii

Table of Authorities ................................................................................................................... iii

Introduction ................................................................................................................................ 1

Legal Standard ........................................................................................................................... 2

Argument .................................................................................................................................... 3

   I.    **Counterclaim 9 Fails Because Audible Magic Has No Evidence of Inequitable Conduct. ..................................................................................................................... 3**

      A.   There Is No Evidence that Counter-Defendants Misrepresented or Omitted Material Information. .............................................................................................................. 5

      B.   Nor Is There Any Evidence That Counter-Defendants Misrepresented or Omitted Material Information *with Specific Intent to Deceive the PTO* ........................................... 7

   II.    **Counterclaim 10 (Unjust Enrichment) Fails as a Matter of Law for Multiple Reasons. ....................................................................................................................... 9**

   III.   **Counterclaim 11 (Lanham Act) Fails for Several Stand-Alone Reasons. ............... 12**

   IV.   **Counterclaim 12 (Infringement of the '308 Patent) Also Fails As a Matter of Law for Several Stand-Alone Reasons. ............................................................................... 14**

   V.    **Counterclaim 13 Fails as a Matter of Law Because Audible Magic Has No Evidence of Unfair Competition. .................................................................................. 15**

      A.   Audible Magic Has No Evidence to Support Multiple Required Elements of a Common-Law Unfair Competition Claim. ............................................................................ 16

      B.   Blue Spike's Statements Are Not Actionable Under a Theory of Common-Law Unfair Competition. ...................................................................................................................... 18

      C.   There Is No Evidence to Support a Misappropriation-Based Theory of Common-Law Unfair Competition. ............................................................................................................... 19

Conclusion ............................................................................................................................... 21

# Table of Authorities

**CASES**

Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 788 (5th Cir. 1999) ...................... 21

Am. Calcar, Inc. v. Am. Honda Motor Co., 768 F.3d 1185, 1191 (Fed. Cir. 2014) .................... 8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ......................................... 3

Anunziato v. eMachines, Inc., 402 F.Supp.2d 1133, 1140 (C.D. Cal. 2005) ........................ 14

Axxiom Mfg., Inc. v. McCoy Inves., Inc., No. Civ. A. H-09-3735, 2010 WL 2545584, at *7 (S.D. Tex. June 21, 2010) ............................................................................... 16, 20

Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300, 1307 (Fed. Cir. 2009) ................... 13

Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 583 F.3d 832, 839 (Fed. Cir. 2009), aff'd, 131 S. Ct. 2188 (2011) ............................................. 2

Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 149 (1989) ...................... 10

Borden, Inc. v. Kraft, Inc., No. 84 C 5295, 1984 WL 1458, at *12 (N.D. Ill. Sept. 28, 1984) ........... 14

Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986) ............................................. 3

Century 21-RE/MAX Real Estate Adver. Claims Litig., 882 F. Supp. 915, 928 (C.D. Cal. 1994) ............. 14

Clock Spring, L.P. v. Wrapmaster, Inc., 560 F.3d 1317, 1329 n.10 (Fed. Cir. 2009) .................... 17

Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 32 (2003) ...................... 13

Exergen Corp. v. Wal–Mart Stores, Inc., 575 F.3d 1312, 1318 (Fed. Cir. 2009) ...................... 4

Fujitsu Ltd. v. Tellabs Operations, Inc., No. 09 C 4530, 2012 WL 3133548, at *2 (N.D. Ill. July 31, 2012).. 7

Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc., 540 F.Supp.2d 724, 729 (E.D. Tex. 2008) ............................................................................... 5

Healthpoint, Ltd. v. Allen Pharm., LLC, No. SA-07-CA-0526-XR, 2008 WL 728333, at *3 (W.D. Tex. Mar. 18, 2008) ............................................................................... 17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ...................... 3

Nagle Indus., Inc. v. Ford Motor Co., 173 F.R.D. 448, 452 (E.D. Mich. 1997), aff'd, 194 F.3d 1339 (Fed. Cir. 1999) ............................................................................... 20

Nalco Co. v. Turner Designs, Inc., No. 13-CV-02727 NC, 2014 WL 645365, at *5 (N.D. Cal. Feb. 19, 2014) ............................................................................... 6

Newington Ltd. v. Forrester, 2008 WL 4908200, *4 (N.D. Tex. Nov. 13, 2008) ...................... 11

Ohio Willow Wood Co. v. Alps S., LLC, 735 F.3d 1333, 1344 (Fed. Cir. 2013) ...................... 5

Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 495 (5th Cir.2000) ...................... passim

Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984) ............................................. 3

Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1367 (Fed. Cir. 2008) .................... 6

Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1291 (Fed. Cir. 2011) ................. 6, 7, 8

TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d 1364, 1379 (Fed. Cir. 2008) .................... 16

Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1379 (Fed. Cir. 2005) ...................... 10

Univ. of Colo. Found. v. Am. Cyanamid, 342 F.3d 1298, 1302–03 (Fed.Cir.2003) ...................... 10

VocalSpace, LLC v. Lorenso, No. 4:09-cv-350, 2011 WL 817381, at *5 (E.D. Tex. Mar. 2, 2011) ................. 11

Waner v. Ford Motor Co., 331 F.3d 851, 856-57 (Fed. Cir. 2003) ............................................. 10

Wellpath Solutions, Inc. v. Wellpath Energy Servs., LLC, No. 6:12-cv-286, 2013 WL 1314423, at *4 (E.D. Tex. Mar. 28, 2013) ............................................................................... 20

Zenith Elec. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353-54 (Fed. Cir. 1999) ...................... 17

**OTHER AUTHORITIES**

Peter Birks, Unjust Enrichment and Wrongful Enrichment, 79 Tex. L. Rev. 1767, 1791 (2001) ................. 11

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................... 2

Lanham Act, 15 U.S.C. §1125(a) ............................................................................... 12

**Introduction**

Blue Spike, LLC filed suit against Audible Magic on August 27, 2012. *See generally* Case No. 6:12-cv-576, Dkt. 1. Audible Magic eventually brought 13 counterclaims against Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz. *See* Case No. 6:12-cv-499, Dkt. 1438 at 39-51. The latter two were not yet parties; Audible Magic sought to implead them as "counter-defendants" with its counterclaims.

Audible Magic's counterclaims 1 through 8, which are not the subject of this motion, seek declarations of invalidity and non-infringement for the patents-in-suit. *Id.* at 39-43. Instead, this motion asks for summary judgment on counterclaims 9 through 13, which allege inequitable conduct (counterclaim 9), unjust enrichment (counterclaim 10), Lanham Act violations (counterclaim 11), infringement of U.S. Patent 7,834,308 ("the '308 patent") (counterclaim 12), and common-law unfair competition (counterclaim 13). *Id.* at 43-51.

The time is ripe to rule on those counterclaims. Counter-Defendants have provided Audible Magic with discovery going back over 20 years (totaling over 500,000 pages of documents) as well as six days of deposition with Scott Moskowitz (Blue Spike's CEO and the co-inventor of the patents-in-suit). Audible Magic also deposed Moskowitz's co-inventor, Mike Berry, as well as former Blue Spike, Inc. employees Gregg Moskowitz, Matt Ingalls, and Peter Cassidy. All of this discovery revealed zero evidence to support Audible Magic's allegation that Counter-Defendants wrongfully profited from Audible Magic's intellectual property.

Indeed, the testimony of Audible Magic's own employees undermines Audible Magic's counterclaims. Audible Magic's CEO admitted during his deposition that he did

not even know that his company had alleged fraud and theft in its counterclaims. He confirmed that he knew of no evidence supporting the counterclaims and never initiated internal investigations to pursue them. And co-inventors of the '223 patent, who joined Audible Magic when it acquired Muscle Fish, confirmed that they never heard about or participated in any discussions about potential fraud by the Counter-Defendants. Given the dearth of evidence from Audible Magic itself to support its claims of inequitable conduct, the most likely conclusion is that Audible Magic's counterclaims are attorney-generated litigation tactics, not concerns about real wrongdoing.

This conclusion is bolstered by Audible Magic's assertion of a counterclaim for infringement of the '308 patent. Audible Magic alleges that Blue Spike infringed this patent through a product called the Giovanni Abstraction Machine (Dkt. 1438 at 47), but Blue Spike confirmed in discovery that it never actually manufactured this product, never made any profits on it, and never received any inquiries about it from potential customers. Not surprisingly, the infringement chart that Audible Magic served for the '308 patent lacked any evidence of actual infringement, making summary judgment appropriate.[2]

## Legal Standard[3]

Rule 56(a) mandates summary judgment "if there is no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant bears the initial burden of informing the court of the basis for its motion and identifying the parts of the record that demonstrate the absence of a genuine issue of

---

[2] Recognizing the weakness of its patent-infringement claim, Audible Magic asked the Court for leave to dismiss that claim without prejudice. *See* Dkt. 1911. As explained below, the dismissal should be *with* prejudice because Audible Magic has conducted extensive discovery, yet still failed to find evidence supporting the claim.

[3] Regional circuit law controls the legal standard for summary-judgment motions. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 839 (Fed. Cir. 2009), *aff'd*, 131 S. Ct. 2188 (2011).

material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to demonstrate that there is a genuine dispute of material fact. *Id*. at 322. A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and an issue is "material" only if its resolution could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It cannot rest on mere allegations or denials of pleading, but instead must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256. Unsupported, conclusory allegations are insufficient to defeat a motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir. 1984). And summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

## Argument

Audible Magic's counterclaims 9 though 13 fail as a matter of law. While the Court denied Blue Spike's motion to dismiss these counterclaims at the pleading stage, the discovery process has confirmed that no evidence supports them. Summary judgment on these counterclaims is the right result.

## I.   Counterclaim 9 Fails Because Audible Magic Has No Evidence of Inequitable Conduct.

Inequitable conduct is tantamount to fraud, so it must be pleaded with particularity under Rule 9(b). *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). "[T]o plead the 'circumstances' of inequitable conduct with the requisite

'particularity' . . . the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328. Audible Magic's live pleading plainly fails to meet this standard (*see* Dkt. 1438 at 43) and should be dismissed for that reason alone.

But Audible Magic's inequitable-conduct claim fails for other stand-alone reasons. To prove that Counter-Defendants obtained the patents-in-suit through inequitable conduct before the PTO, Audible Magic must show "by clear and convincing evidence" that Counter-Defendants "(1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013). Whether Audible Magic has enough evidence to avoid summary judgment "must be evaluated in light of the clear and convincing evidentiary standard that applies to [its] inequitable conduct claims." *Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*, 540 F.Supp.2d 724, 729 (E.D. Tex. 2008) (granting patentee's motion for summary judgment on counterclaim for inequitable conduct). In other words, "the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that [Audible Magic] has shown inequitable conduct *by clear and convincing evidence* or that [Audible Magic] has not." *Id*. (citing *Anderson*, 477 U.S. at 255-56) (emphasis added).

Despite unusually extensive discovery, Audible Magic has absolutely no evidence to support either of the essential elements of its inequitable-conduct claim—much less the clear and convincing evidence required for its claim to survive.

A.  **There Is No Evidence that Counter-Defendants Misrepresented or Omitted Material Information.**

Audible Magic has not been clear about what "material" information Blue Spike allegedly misrepresented or omitted from its patent applications. Audible Magic's live pleading provides no detail at all on the matter. *See* Dkt. 1438 at 43. Its opposition to Counter-Defendants' summary-judgment letter brief suggests that the "material" information was either (1) an article that Muscle Fish published in 1996 or (2) Audible Magic's '223 patent. *See* Dkt. 1919 at 2-3. But, in fact, three of Blue Spike's four patents-in-suit actually disclose the '223 patent as a reference, and its first-filed patent did not disclose Audible Magic's '223 patent and the Muscle Fish article for a good reason: according to uncontroverted testimony, Moskowitz had absolutely no knowledge of the Muscle Fish article or Audible Magic's patent until 2006 or 2007—long after Blue Spike applied for the patents-in-suit. *See* Moskowitz Dep. (Dec. 10, 2014) at 596:9-597:22 (attached as Ex. 1).

Vague allegations about undisclosed "material" information are not enough to defeat summary judgment. The standard for "the materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). Undisclosed prior art is "but-for material if the PTO would not have allowed a claim had it been aware of" it. *Id*. There is no evidence suggesting that Muscle Fish's 1996 article or the '223 patent constituted "but-for material" prior art. "It is well-established . . . that information is not material if it is cumulative of other information already disclosed to the PTO." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008). A party claiming inequitable conduct "must therefore plead facts with particularity to show that the" undisclosed prior art "is not

5

cumulative of other information disclosed." *Nalco Co. v. Turner Designs, Inc.*, No. 13-CV-02727 NC, 2014 WL 645365, at *5 (N.D. Cal. Feb. 19, 2014). Audible Magic has not done so and cannot do so now.

Further, other evidence affirmatively shows that Muscle Fish's 1996 article and the '223 patent were *not* material to the PTO. Three of the four patents-in-suit—all of which share a specification with the first-filed '472 patent—cite the '223 patent. *See* U.S. Patents 7,660,700; 7,949,494; and 8,214,175. Because the PTO failed to recognize the '223 patent as relevant prior art as to Blue Spike's three continuation patents, the PTO would not have considered the '223 patent as prior art to Blue Spike's original '472 patent, either. And because Muscle Fish's 1996 article does not teach technology beyond the '223 patent—but instead merely teaches the technology of the '223 patent itself—that article would not have been material to the PTO's review of any of Blue Spike's patents-in-suit. *See* Expert Report of Dr. Yannis Papakonstantinou at 27-28 (attached as Ex. 2). Simply put, the PTO would not have considered the 1996 article prior art for the same reasons it did not consider the '223 patent to be prior art. *See* Moskowitz Dep. (Dec. 10, 2014) at 396:12-20 (attached as Ex. 3) ("A. . . . I'll add that all of the patents and/or documents that I was aware of that came from Muscle Fish and/or Audible Magic and/or the other entities involved were all presented under my duty to disclose as well as the duty to disclose by my representatives at the patent office, were all considered by the office, and not a single one of them was actually used by any examiner as an example that would be considered prior art.").

6

**B.      Nor Is There Any Evidence That Counter-Defendants Misrepresented or Omitted Material Information *with Specific Intent to Deceive the PTO.***

Even if Audible Magic could cite some evidence that suggested Muscle Fish's 1996 article and the '223 patent were omitted "material" references, this is not enough. "A factual dispute on" the omission of a material reference

> is not by itself sufficient to withstand summary judgment. Even if [Audible Magic] prevails in proving that the [omitted] reference was not cumulative, and that the [omitted] reference was material to the examination of the [patents-in-suit], [Audible Magic] must still prove that [Counter-Defendants] acted with the specific intent to deceive the PTO.

*Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 09 C 4530, 2012 WL 3133548, at *2 (N.D. Ill. July 31, 2012) (citing *Therasense*, 649 F.3d at 1290). Audible Magic cannot meet that burden.

The intent prong of an inequitable-conduct claim requires showing that the defendant "(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29. Under the heightened clear-and-convincing evidentiary standard for inequitable-conduct claims, specific intent to deceive the PTO must be the "single most reasonable inference able to be drawn from the evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id*. Thus, when "multiple reasonable inferences" may be drawn, "intent to deceive cannot be found." *Id*. at 1290-91. Said another way, a court cannot "infer intent from indirect and circumstantial evidence" unless "such intent is the

7

*single* reasonable inference." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1191 (Fed. Cir. 2014) (emphasis added).

Here, Audible Magic cannot show either element of the intent prong. The unrebutted evidence from co-inventers Scott Moskowitz and Mike Berry is that they did not misrepresent or omit anything material in their patent applications. Moskowitz Dep. (Dec. 10, 2014) at 396:12-20 (attached as Ex. 3); *see also* Berry Dep. at 54:1-11 (attached as Ex. 4). Also undisputed, Moskowitz and Blue Spike did not know about the Muscle Fish article or the '223 patent until 2006 or 2007—which was *after* Blue Spike filed its patent applications. Moskowitz Dep. (Dec. 10, 2014) at 596:9-597:22 (attached as Ex. 1).

Nor is there any evidence that any of the Counter-Defendants had specific intent to deceive the PTO. Indeed, once Blue Spike and Moskowitz became aware of the '223 patent, Blue Spike disclosed that patent as a reference in its three latest-filed patents-in-suit, negating any inference of an intent to deceive. *See* U.S. Patents 7,660,700; 7,949,494; and 8,214,175; *cf. Grantley Patent Holdings*, 540 F.Supp.2d at 730 (granting summary judgment on inequitable-conduct claim because "there is no evidence that Fox made a deliberate decision to withhold a known material reference when he explicitly incorporated the reference into the specifications of the patents-in-suit").

Also undermining this counterclaim, Audible Magic's own CEO, Vance Ikezoye—Audible Magic's 30(b)(6) designee—had "no information" suggesting that Counter-Defendants acted inequitably before the PTO. *See* Ikezoye Dep. at 198:18-199:16 (attached as Ex. 5). And Doug Keislar, one of the '223 patent's co-inventors who joined Audible Magic when it acquired Muscle Fish, testified that he had no reason to believe that Scott Moskowitz or Mike Berry did anything improper in relation to Muscle Fish's technology.

*See* Keislar Dep. at 169:4-169:16 (attached as Ex. 6). Similarly, Thom Blum, another Muscle Fish co-inventor of the '223 patent who later joined Audible Magic, testified that the topic of Scott Moskowitz's or Mike Berry's alleged fraud was never a topic of discussion in the Audible Magic office. *See* Blum Dep. at 265:5-16 (attached as Ex. 7) ("Q. Has this topic [fraud] come up outside of discussions with your counsel? Has it come up at work? A. No. Q. Has it come up with colleagues there outside of work? A. Other than the question of the timing of the patents or something like that, and the discussions about—the discussions about fraud haven't really been happening within our office, you know, that we're privy to.").

No evidence supports Audible Magic's claim of inequitable conduct, and unrebutted evidence contradicts it, making summary judgment proper.

## II.   Counterclaim 10 (Unjust Enrichment) Fails as a Matter of Law for Multiple Reasons.

Counterclaim 10, a common-law cause of action for unjust enrichment, is similarly flawed. Audible Magic's live pleading does not provide a factual basis for Audible Magic's unjust-enrichment claim. *See* Dkt. 1438 at 44-45. Audible Magic's opposition to Counter-Defendants' summary-judgment letter brief tries to do so, alleging that "Moskowitz took the ideas described in Muscle Fish's '223 patent and elsewhere, deceptively engaged Muscle Fish regarding potential business arrangements, and proceeded to obtain and profit from patents derived from those same ideas." Dkt. 1919 at 5. But those allegations fall short of establishing a triable issue of fact on unjust enrichment for many reasons.

First, federal patent law preempts unjust-enrichment claims that are based on the misappropriation of publicly disseminated ideas (such as those described in Muscle Fish's

1996 article and the '223 patent). *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 149 (1989) ("Once an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large."); *Waner v. Ford Motor Co.*, 331 F.3d 851, 856-57 (Fed. Cir. 2003) ("[A]bsent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights, [as such] ideas can only be protected under intellectual property law by the patent system.").[4] Thus, if Moskowitz really misappropriated Muscle Fish's ideas as alleged, then Audible Magic has a patent-infringement claim—not an unjust-enrichment claim. Audible Magic has not sued Counter-Defendants for infringing the '223 patent.

Second, there is no evidence that Blue Spike "obtained a benefit from another by fraud, duress, or the taking of undue advantage," as required to prove unjust enrichment. *Newington Ltd. v. Forrester*, 2008 WL 4908200, *4 (N.D. Tex. Nov. 13, 2008). Instead, discovery revealed that, if anything, *Audible Magic* used information gleaned from Blue Spike—not the other way around. From 1999 to 2001, Blue Spike hired Mike Berry to perform a menial coding project. Later, Audible Magic hired Mike Berry in 2002, thus giving Audible Magic access to Blue Spike's technology. This was over two years *after* Blue Spike filed the initial patent application leading to the PTO's issuance of the four patents-in-suit. Then, in 2003—which was three years after Blue Spike's initial patent application, and at least one year after Audible Magic gained access to Blue Spike's technology—Audible Magic magically developed the "solution" to the functionality that

---

[4] Audible Magic might be able to make out an unjust-enrichment claim if it (1) had a confidential relationship with Moskowitz and (2) had shared secret information with him expecting that it would be kept secret. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1379 (Fed. Cir. 2005); *Univ. of Colo. Found. v. Am. Cyanamid*, 342 F.3d 1298, 1302–03 (Fed.Cir.2003). But Audible Magic does not and cannot allege either.

Blue Spike has accused as infringing its patents-in-suit. *See* Moskowitz Dep. (Jan. 15, 2015) at 1315:21-1317:4 (attached as Ex. 8). Indeed, Audible Magic 's CEO has stated that Audible Magic did not develop this solution until 2003. *See* Ex. 9. Thus, the evidence simply does not support Audible Magic's unjust-enrichment counterclaim.

Third, even if Audible Magic *had* produced evidence supporting its allegations, Texas law would not support a claim for unjust enrichment here. The Court has held that "[u]njust enrichment is not an independent cause of action" in Texas. *VocalSpace, LLC v. Lorenso*, No. 4:09-cv-350, 2011 WL 817381, at *5 (E.D. Tex. Mar. 2, 2011) (granting summary judgment against an unjust-enrichment counterclaim). That alone should bar Audible Magic's unjust-enrichment counterclaim. But even if Texas law recognized an unjust-enrichment cause of action, Audible Magic would still have to adduce evidence to support each element of an unjust-enrichment claim, showing (1) that each of the Counter-Defendants was actually enriched, (2) that there was no legal basis for that enrichment, and (3) that the particular enrichment in the Counter-Defendants' hands came at Audible Magic's expense. *See* Peter Birks, *Unjust Enrichment and Wrongful Enrichment*, 79 TEX. L. REV. 1767, 1791 (2001). Here, Audible Magic has failed to show evidence of any of those necessary elements of its claim. It has not produced evidence showing that each of the Counter-Defendants was enriched. Nor has it proved that such enrichments really came at Audible Magic's expense—for example, what amounts of money in the Counter-Defendants' hands are truly traceable to monies that should have gone to Audible Magic. Also barring this claim, there are valid legal bases for the transfers of wealth that Audible Magic is trying to pursue: valid settlement agreements between Blue Spike and previous

parties in this litigation. Unjust-enrichment claims are not the proper vehicle for attacking

those settlement agreements or for asserting patent or tort claims.

**III.     Counterclaim 11 (Lanham Act) Fails for Several Stand-Alone Reasons.**

Counterclaim 11 alleges a violation of the Lanham Act, 15 U.S.C. §1125(a). Dkt.

1438 at 45. The five elements of a Lanham Act claim are (1) a false or misleading

statement of fact about a product; (2) such statement deceived or had the capacity to

deceive a substantial segment of potential consumers; (3) the deception is material, in that

it is likely to influence the purchasing decision; (4) the product is in interstate commerce;

and (5) the plaintiff has been or is likely to be injured as a result of the statement. *Pizza

Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir.2000). Audible Magic's

Lanham Act claim fails for several reasons.

Most important, the undisputed evidence shows that Blue Spike never made the

statement that Audible Magic complained about. Audible Magic's counterclaim alleges

that Blue Spike's website stated that "Blue Spike was the 'first to create' content

'fingerprinting' technology." Dkt. 1438 at 45. That allegation is completely untrue.

Audible Magic's own evidence shows exactly what the website actually said:

> The question is, was Shazam first to create this technology? One company,
> Blue Spike, LLC, answers "No."

Dkt. 1021-5. Denying that Company A created a technology is not equivalent to asserting

that Company B created it. And, critical here, Audible Magic has failed to adduce evidence

of *any* of the essential elements of its Lanham Act claim for that statement. For example,

Audible Magic has not shown that Blue Spike's statement about Shazam (1) was false or

misleading, (2) was a statement about a product, (3) deceived or had the potential to

deceive a substantial segment of consumers, (4) involved deception that was material,

(5) concerned a product in interstate commerce, or (6) injured Audible Magic. Each of those six deficiencies defeats Audible Magic's Lanham Act counterclaim. Independently, Audible Magic does not have standing to sue Blue Spike for a statement that Blue Spike made about Shazam, which is a completely different company from either Blue Spike or Audible Magic.

But, no matter which statement the Court analyzes (Blue Spike's actual statement or the statement Audible Magic falsely attributes to Blue Spike), the Lanham Act counterclaim still fails for other stand-alone reasons:

First, neither statement is actionable, since neither concerns the characteristics of a commercial good or service "itself," as required under the Lanham Act. *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009) (emphasis added). Audible Magic cannot maintain a "false advertising claim that is fundamentally about the origin of an idea." *Id.* at 1308; *accord Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003) (for Lanham Act purposes, the "consumer who buys a branded product . . . typically does not care whether" "the brand-name company is the same entity that came up with the idea for the product"). Nor has Audible Magic produced any actual evidence that Blue Spike made a statement that was false or misleading.

Second, any "first-to-create" statement is too vague as a matter of law to support a Lanham Act claim. To be actionable, a statement "must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Pizza Hut*, 227 F.3d at 496. And Audible Magic cannot meet that standard, as the words "create," "content," and "technology" are inherently vague. *See Anunziato v.*

13

*eMachines, Inc.*, 402 F.Supp.2d 1133, 1140 (C.D. Cal. 2005) (finding that "the phrase 'latest technology' is non-actionable" because it is inherently vague).

Third, Blue Spike's actual statement and Audible Magic's inaccurate allegation are both immaterial as a matter of law.[5] To support recovery under the Lanham Act, a statement must be "material" in the sense that it is "likely to influence the consumer's purchasing decision." *Pizza Hut*, 227 F.3d at 496. Audible Magic has produced no evidence that either statement actually influenced or would have influenced purchasing decisions. Further, Audible Magic has produced no evidence showing that consumers would have believed—based on Blue Spike's actual statement or on Audible Magic's misquotation of that statement—that Blue Spike's technology was superior or that using other companies' technology was riskier. In any case, statements by Blue Spike that its goods or services were superior would not be actionable. *See Pizza Hut*, 227 F.3d at 496-97 (generalized claim of superiority over comparable products is not actionable under Lanham Act).

Fourth, there is no evidence of any competitive harm to Audible Magic. Audible Magic has not shown that it lost a single sale or suffered any other type of injury based on Blue Spike's actual statement or the statement that Audible Magic falsely imputes to Blue Spike.

## IV.   Counterclaim 12 (Infringement of the '308 Patent) Also Fails As a Matter of Law for Several Stand-Alone Reasons.

---

[5] In appropriate circumstances, like those here, a statement's "materiality" can be determined as a matter of law for Lanham Act purposes. *See, e.g., In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 928 (C.D. Cal. 1994). In fact, courts have found statements to be immaterial as a matter of law even when they were far more fact-intensive than the alleged "first-to-create" statement at issue here. *See id.* (holding as a matter of law that a 4% overstatement of number of transactions executed by competitor was immaterial); *Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 WL 1458, at *12 (N.D. Ill. Sept. 28, 1984) (holding as a matter of law that the difference between 5 ounces of milk in a slice of cheese and 4.6 ounces was immaterial).

Audible Magic has asked the Court for leave to dismiss its patent-infringement claim without prejudice. *See* Dkt. 1911. But, here, the dismissal should be with prejudice—or, in the alternative, the Court should grant summary judgment on this counterclaim—because Audible Magic has conducted extensive discovery yet still has come up with nothing to support its claim of patent infringement.

Counter-Defendants never made a single product in the subject-area of the '308 patent. To the extent Blue Spike advertised it could build such a product, it did not advertise the product as having a "client media player" or a "display" to show the "client" information about the song that was being heard by the client. These are essential elements of the patent claim on which Audible Magic is suing. *See* Dkt. 1404-1. Instead, the accused product, the Giovanni Signal Abstract Engine, would simply create "abstracts," or data-reduced representations of signals that retain a perceptual relationship with the signal and differentiate the data-reduced representation from other data-reduced representations. *See* Dkt. 1911 (Audible Magic's Motion to Dismiss, attached as Ex. 10). That is all. "Under the 'all elements' rule, to find infringement, the accused device must contain 'each limitation of the claim, either literally or by an equivalent.'" *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008). That is not the case here, and nothing suggests that future discovery might show it to be the case, making summary judgment or dismissal with prejudice proper.

**V.    Counterclaim 13 Fails as a Matter of Law Because Audible Magic Has No Evidence of Unfair Competition.**

Audible Magic's common-law unfair competition claim is based primarily on two allegedly false and misleading statements on Blue Spike's website. *See* Dkt. 1438 at 49-51.

The first statement is the one discussed above, namely, that "Moskowitz and Blue Spike was [sic] the 'first to create' content 'fingerprinting' technology." *Id.* at 50. (Of course, as explained above, Blue Spike never made that statement.) The second statement is that "'fingerprinting' technology is 'technology that has powered [Moskowitz's] Blue Spike products since the turn of the century,' including the 'The Giovanni® Abstraction Machine™.'" *Id.* As a matter of law, neither of these statements can support a claim for common-law unfair competition. More fundamentally, though, even if these statements could support a claim for common-law unfair competition, Audible Magic has no evidence to support several required elements of its claim.

      **A.**    **Audible Magic Has No Evidence to Support Multiple Required Elements of a Common-Law Unfair Competition Claim.**

A "claim for common law unfair competition [is] analyzed under the elements of [a] claim of false advertising in violation of the Lanham Act" when the two claims are based on "essentially the same" allegations. *Axxiom Mfg., Inc. v. McCoy Inves., Inc.*, No. Civ. A. H-09-3735, 2010 WL 2545584, at *7 (S.D. Tex. June 21, 2010); *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *3 (W.D. Tex. Mar. 18, 2008) (same). That is the case here. Compare Dkt. 1438 at 45-46 (Lanham Act claim) with Dkt. 1438 at 49-51 (common-law unfair competition claim). Thus, to avoid summary judgment of its common-law unfair competition claim, Audible Magic must identify some evidence to support the following elements of a Lanham Act claim:

    (1)    a false or misleading statement of fact about a product;

    (2)    such statement deceived or had the capacity to deceive a substantial segment of potential consumers;

    (3)    the deception is material, in that it is likely to influence the purchasing decision;

(4)     the product is in interstate commerce; and

(5)     the plaintiff has been or is likely to be injured as a result of the statement.

*Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1329 n.10 (Fed. Cir. 2009) (discussing Fifth Circuit standard). When the allegedly false or misleading statement concerns a patent, the complainant must also produce evidence of a sixth element: that the statement was made in bad faith. *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999).[6] Failure to produce evidence on any one of these elements is "fatal." *Pizza Hut*, 227 F.3d 489 at 495.

As explained above, Audible Magic has no evidence that Counter-Defendants ever made the alleged "first-to-create" statement, nor has Audible Magic adduced any evidence that any of Blue Spike's actual statements (1) deceived or had the capacity to deceive a substantial segment of potential consumers; (2) was likely to influence anyone's purchasing decisions; or (3) damaged or was likely to damage Audible Magic. *Id.*

Similarly, there is no evidence to support any of these elements for Counter-Defendants' statement that "'fingerprinting' technology is 'technology that has powered [Moskowitz's] Blue Spike products since the turn of the century,' including the 'The Giovanni® Abstraction Machine[TM].'" Nor is there any evidence to suggest that Counter-Defendants made either statement in bad faith. On the other hand, there is undisputed evidence that the Giovanni Abstraction Machine was never actually manufactured, never resulted in any profits to Counter-Defendants, and never prompted any inquiries from potential customers. *See* Moskowitz Dep. (Jan. 15, 2015) at 1142:12-24 (attached as Ex. 11). An unfair-competition claim is unsustainable on such facts.

---

[6] Indeed, without evidence of bad faith, federal patent law preempts state-law unfair-competition claims. *Zenith*, 182 F.3d at 1355.

**B.    Blue Spike's Statements Are Not Actionable Under a Theory of Common-Law Unfair Competition.**

Even if Audible Magic had evidence to support all six elements of its common-law unfair competition claim, the statements on which the claim is based are not actionable as a matter of law. The first statement ("Moskowitz and Blue Spike was [sic] the 'first to create' content 'fingerprinting' technology") is not actionable under the Lanham Act, and therefore not actionable under a theory of common-law unfair competition, for the reasons explained above.

Audible Magic asserts that the second statement ("'[F]ingerprinting' technology is 'technology that has powered [Moskowitz's] Blue Spike products since the turn of the century,' including the 'The Giovanni® Abstraction Machine™'") is false and misleading—and therefore actionable—because it implies that (1) "there is risk in using technology of parties other than" Blue Spike and (2) "Counter-Defendants or their products or technology are 'first' or expressly or impliedly superior for that reason." Dkt. 1438 at 50. This assertion fails to support a common-law unfair competition claim for several reasons.

First, Audible Magic reads far more into the statement than the statement's plain language supports. The statement says only that fingerprinting technology has powered Blue Spike products for a long time. It does not address any other party's technology, let alone suggest that using such technology is risky or that such technology is newer than or inferior to Blue Spike's. Audible Magic cannot bootstrap its way to an unfair-competition claim with an implausible gloss on a straightforward statement. No rational jury would view things that way.

Second, given what the statement actually says, the only way it could be false or misleading would be if fingerprinting technology had not in fact powered Blue Spike's products since the turn of the century. Audible Magic does not make that claim, nor could it without veering into literal-falsehood territory itself.

Third, the statement is too vague as a matter of law to support a common-law unfair competition claim. To support recovery under the Lanham Act—and therefore under common-law unfair competition—a statement "must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Pizza Hut*, 227 F.3d at 496. The alleged misrepresentation that "'fingerprinting' technology has powered Blue Spike products since the turn of the century" is neither specific nor measurable because the words "technology" and "powered" are inherently vague. *See Anunziato*, 402 F.Supp.2d at 1140 (finding that "the phrase 'latest technology' is non-actionable" because it is inherently vague).

Fourth, even if the statement actually implied that Blue Spike's technology was "first" and "superior for that reason," it still would not be actionable. *See Baden Sports*, 556 F.3d at 1308 (a party cannot maintain a "false advertising claim that is fundamentally about the origin of an idea"); *Pizza Hut*, 227 F.3d at 496-97 (generalized claims of superiority over comparable products are not actionable).

Audible Magic has not identified a single statement by Counter-Defendants that is actionable under a theory of common-law unfair competition, let alone unearthed any evidence to support recovery under such a theory. Summary judgment is proper.

**C.      There Is No Evidence to Support a Misappropriation-Based Theory of Common-Law Unfair Competition.**

Audible Magic also claims that Counter-Defendants' misappropriated Audible Magic technology in a way that is actionable under a common-law unfair-competition theory. Dkt. 1438 at 50. That effort fails for three reasons.

First, "unfair competition claims based on the common law misappropriation doctrine are preempted by federal patent law." *Nagle Indus., Inc. v. Ford Motor Co.*, 173 F.R.D. 448, 452 (E.D. Mich. 1997), *aff'd*, 194 F.3d 1339 (Fed. Cir. 1999).

Second, even if that were not the case, "[t]o prevail on a common law claim of unfair competition in Texas, a plaintiff must show that the defendant committed . . . an independent tort." *Wellpath Solutions, Inc. v. Wellpath Energy Servs., LLC*, No. 6:12-cv-286, 2013 WL 1314423, at *4 (E.D. Tex. Mar. 28, 2013). Audible Magic does not allege any viable independent tort by Blue Spike that relates to misappropriation of technology, so its misappropriation claim necessarily fails. *Id.*; *Axxiom Mfg.*, 2010 WL 2545584 at *7.

Third, Audible Magic's allegation of misappropriation lacks supporting evidence. The elements of misappropriation-based unfair competition are: "(i) the creation by plaintiff of a product through extensive time, labor, skill and money; (ii) the use of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the product; and (iii) commercial damage to plaintiff." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 (5th Cir. 1999). While Audible Magic's live pleading parrots each of these elements, the actual evidence does not show that Blue Spike ever "used" Audible Magic's products, does not show how Blue Spike has done so "in competition" with Audible Magic, and does not show how Blue Spike has "commercially damaged" Audible Magic. Despite extensive discovery, Audible Magic has

not unearthed any evidence to support the required elements of its claim, making summary judgment proper. *Celotex*, 477 U.S. at 322-23 (holding that summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

### Conclusion

For these reasons, Counter-Defendants Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz respectfully ask the Court to grant summary judgment and dismiss with prejudice Audible Magic's counterclaims 9-13.

Respectfully submitted,

   /s/ Randall Garteiser
Randall T. Garteiser
 Lead Attorney
 Texas Bar No. 24038912
 rgarteiser@ghiplaw.com
Christopher A. Honea
 Texas Bar No. 24059967
 chonea@ghiplaw.com
Christopher S. Johns
 Texas Bar No. 24044849
Kirk J. Anderson
 California Bar No. 289043
Molly A. Jones
 California Bar No. 301419
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

*Attorneys for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

   /s/ Randall Garteiser