UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff*, | § | Case No. 6:15-cv-584 |
| v. | § | Lead Case |
| Audible Magic Corporation, | § | Jury Trial Demanded |
| *Defendant*. | § | |

**FILED UNDER SEAL**

**BLUE SPIKE'S SURREPLY TO AUDIBLE MAGIC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

In its Reply (Dkt. 22), Audible Magic continues arguing that alleged "judicial admissions" by Scott Moskowitz should bind Blue Spike and end this lawsuit. Audible Magic wholly fails to address the fact that all of Moskowitz's alleged judicial admissions occurred after Audible Magic had stipulated on the record that it was not deposing Moskowitz in his representative capacity, but was instead deposing him in his individual capacity as the inventor of the patents-in-suit. Blue Spike addressed this issue extensively in its Opposition (Case No. 6:12-cv-499, Dkt. 1973 at 8-9, 10), yet Audible Magic fails to engage Blue Spike's arguments in its Reply. Such engagement would have highlighted the fatal defects in Audible Magic's motion.

Because of the context in which Moskowitz gave his testimony—i.e., under Audible Magic's express stipulation that Moskowitz was testifying as inventor, not as corporate representative—Moskowitz's testimony cannot be imputed to Blue Spike. But even if it hypothetically could, the law does not allow Audible Magic to treat Moskowitz's testimony as "judicial admissions" when the testimony was not a

1

deliberate and unambiguous attempt to withdraw a fact from contention. If the Court considers Moskowitz's testimony in context, as is proper, it will see that Audible Magic has mischaracterized what Moskowitz actually said and why he said it. And because the summary-judgment standards require viewing Moskowitz's testimony in the light most favorable to Blue Spike, summary judgment is improper.

I. **Moskowitz Gave the Testimony in Question as the Inventor of the Patents-In-Suit, Not as Blue Spike's Corporate Representative, So His Testimony Does Not Bind Blue Spike, LLC.**

Before eliciting the testimony that it now characterizes as "judicial admissions" binding on Blue Spike, Audible Magic stipulated: "For the record, we are now leaving the 30(b)(6) testimony of Blue Spike LLC and continuing that to another day, and at this point on the record, we resume the 30(b)(1) testimony and deposition of Scott Moskowitz." Case No. 6:12-cv-499, Dkt. 1973-2 at 680:14-18. Audible Magic tries to evade this stipulation by arguing that 30(b)(1) testimony is effectively no different from 30(b)(6) testimony. *See* Dkt. 22 at 3-6.

But such distinctions matter. Audible Magic itself recognized as much when it made clear on the record that it was leaving 30(b)(6) territory and instead questioning Moskowitz under 30(b)(1). Moreover, Audible Magic did not simply specify that it was questioning Moskowitz pursuant to 30(b)(1)—it specified that it was questioning him *as the inventor of the patents-in-suit*. *See* Case No. 6:12-cv-499, Dkt. 1973-2 at 793:18-22 (Audible Magic's attorney stating: "Right now we're not in the 30(b)(6) deposition . . . . Right now we're—right now is the deposition of the inventor Scott Moskowitz."), 818:14-15 ("I'm trying to understand the inventor's view."). It is beside the point whether a "corporate representative's" 30(b)(1) testimony might bind a corporation in

another context. When Moskowitz made the alleged judicial admissions in this case, Audible Magic was not deposing him as a corporate representative; rather, as it took pains to emphasize, Audible Magic was deposing him as the inventor of the patents-in-suit. And, critically, "[t]he testimony of the inventors does not fill the same purpose as a Rule 30(b)(6) deposition because their testimony would not bind the corporation." *Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. 597, 601 n.3 (1999).

Audible Magic's decision to question Moskowitz as inventor rather than corporate representative was not accidental or incidental. Audible Magic made that election specifically because it wanted to ask Moskowitz questions comparing the functionality of the patents-in-suit to the functionality of Audible Magic's '223 patent, hoping to shore up its invalidity contentions.[1] But those contentions have nothing to do with Audible Magic's summary-judgment motion, which instead concerns Blue Spike's infringement claims.

Having decided at the time that it would benefit from deposing Moskowitz as inventor of the patents-in-suit rather than as Blue Spike's corporate representative, Audible Magic now wants to ignore that election and pretend that Moskowitz was actually testifying as Blue Spike's corporate representative all along. The law does not allow such bait-and-switch tactics. Under the federal rules, 30(b)(1) depositions and 30(b)(6) depositions "serve distinct purposes, impose different obligations . . . , and involve different ramifications." *Commodity Futures Trading Comm'n v. Midland Rare Coin Exch. Inc.*, No. 97-7422-CIV, 1999 WL 35148749, at *3 (S.D. Fla. July 30, 1999); *see also Sabre v. First Dominion Capital, LLC*, No. 01CIV2145BSJHBP, 2001 WL

---

[1] Audible Magic contends that Blue Spike's patents are invalid because Blue Spike failed to disclose the '223 patent as prior art while prosecuting its patents. *See* Dkt. 3 at 22.

1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual."). If "the inventors had not assigned their patents to a corporation and the inventors were bringing an infringement action as individuals," their testimony would certainly bind them. *Exxon Research*, 44 Fed. Cl. at 603. But Moskowitz *did* assign his patents to a corporation and is *not* bringing an infringement action as an individual, so his testimony does *not* bind Blue Spike. *Id*.

Finally, in the summary-judgment context, the Court views the evidence in the light most favorable to Blue Spike and draws every reasonable inference in Blue Spike's favor. *EpicRealm Licensing, LP v. Franklin Covey Co.*, 644 F. Supp. 2d 806, 811 (E.D. Tex. 2008). That being the case, "the court must assume that [Moskowitz's] 30(b)(6) deposition testimony w[ould] be distinguishable from [his] . . . [30(b)(1)] testimony since it [would be] offered on behalf of the corporation and not on behalf of" Moskowitz individually. *Matrix Grp., LLC v. Innerlight Holdings, Inc.*, No. 2:11-CV-00987, 2015 WL 153822, at *2 (D. Utah Jan. 12, 2015).

**II.  Moskowitz's Deposition Statements, Which Did Not Address Blue Spike's Infringement Case, Are Not "Judicial Admissions" of Noninfringement—and Were Never Intended to Be So.**

Audible Magic acknowledges that testimony is not a "judicial admission" if it is given for a purpose other than to withdraw a fact from contention. But Audible Magic then runs away from how that principle actually applies here. As Blue Spike has already explained (*see* Case No. 6:12-cv-499, Dkt. 1973 at 17-18), Moskowitz gave his testimony for the purpose of comparing the functionality of Audible Magic's preexisting '223 patent with the functionality of Blue Spike's patents—not to withdraw

4

from contention a fact concerning Blue Spike's infringement claims (which are not based on the '223 patent).

Indeed, Audible Magic was not even questioning Moskowitz about Blue Spike's infringement claims at the time that he made his alleged "judicial admissions." *Id*. Audible Magic baldly asserts that Moskowitz gave his testimony "in order to relieve Audible Magic of proof of fact [sic] whether MFCCs constitute 'abstracts'" (Dkt. 22 at 8), but this assertion is clearly disproved by the context in which Moskowitz made his statements. *Cf. Koch v. Koch Indus., Inc.*, 996 F. Supp. 1273, 1278 (D. Kan. 1998) (statements must be "construed in their proper context" to determine whether they "constitute judicial admissions"). Comparing the functionality of Audible Magic's '223 patent with the functionality of the patents-in-suit is not the same thing as making admissions to withdraw facts about Blue Spike's infringement claims from contention.

Ironically, Audible Magic criticizes Moskowitz for trying to "have it both ways" (Dkt. 22 at 1) on whether or not MFCCs are abstracts, but Blue Spike has explained why that is not the case—and why, in context, Moskowitz's deposition testimony on abstracts is consistent with Blue Spike's other testimony in this case. *See* Case No. 6:12-cv-499, Dkt. 1973 at 19-22. In reality, Audible Magic tries to "have it both ways" by (1) stipulating that it was deposing Moskowitz in his individual capacity as inventor and questioning him about the relative functionalities of its '223 patent and Blue Spike's patents, but now (2) pretending that Moskowitz was testifying as Blue Spike's representative all along and that Moskowitz was discussing the merits of Blue Spike's infringement claims. Such historical revisionism cannot support a finding that the alleged "judicial admission" was "deliberate, clear, and unequivocal," as is required for

5

Audible Magic to prevail. *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 492 (5th Cir. 2014). If Audible Magic wanted Moskowitz's testimony on whether the MFCCs in the accused products satisfy the *Court's* definition of "abstract"—which is what its summary-judgment motion turns on—it needed to ask Moskowitz that question directly.

It is obvious why Audible Magic did not do so: Moskowitz's opinions as the inventor do not control the Court's definition of the term "abstract" in this case. The Court had already construed Blue Spike's claim terms when Moskowitz was deposed, so Moskowitz's opinion on whether MFCCs satisfy the Court's definition of "abstract" would not have mattered. Although Moskowitz co-invented the patents-in-suit, he is not Blue Spike's expert on whether the accused products infringe those patents. The Federal Circuit has clearly held that in such circumstances, the inventor's testimony on infringement is irrelevant. *See, e.g.*, *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1338 (Fed. Cir. 2009). "[T]he fact that [Moskowitz] may have particularized knowledge and experience as a co-inventor of the claimed invention does not necessarily mean he also has particularized knowledge and experience in the structure and workings of the accused device." *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 714 (Fed. Cir. 2005).

Blue Spike's actual infringement expert, Dr. Ahmed Tewfik, explained that Moskowitz's views do not affect his analysis:

> Mr. Moskowitz wrote the patent in a particular way, he has particular experience, he has particular training. What he wrote may or may not reflect what he had mind. I have no way of saying that. But once he has written what he wrote and once it has been accepted and the patent issued and interpreted by the Court, that's what I go by . . . . What matters to me is the way that the patent after it issued, the way that a person skilled in

6

      the art would interpret what they are reading and what the Court construction would say about the various elements of the patent.

Ex. 1 (excerpt from Tewfik depo. transcript, rough) at 124:15-125:4.

It made sense for Audible Magic to question Moskowitz *qua* inventor about the relative functionalities of the '223 patent and Blue Spike's patents. But Audible Magic's after-the-fact attempt to recharacterize Moskowitz's testimony as concerning Blue Spike's infringement claims—and as coming from Blue Spike itself—is unsupportable.

### III.    Audible Magic Cannot Use a No-Evidence Motion to Shift Its Summary-Judgment Burden of Proving Up an Affirmative Defense.

Audible Magic disparages Blue Spike's prior briefing as mere "attorney argument," asserting that Blue Spike had an obligation to proffer "evidence" that Moskowitz's testimony meant something other than what Audible Magic claims. Dkt. 22 at 17-21. That misperceives the applicable standards. Audible Magic seeks summary judgment based on alleged "judicial admissions" by Moskowitz. To obtain summary judgment on that basis, Audible Magic has the burden to show that Moskowitz's "judicial admissions," viewed in context, were deliberate, clear, and unequivocal attempts to take certain facts out of contention. *See Jonibach Mgmt. Trust*, 750 F.3d at 492. Audible Magic did not satisfy that burden. And Blue Spike correctly explained why the disputed statements are not judicial admissions. Looking at the statements themselves, and the context in which Moskowitz made them, the Court could not conclude as a matter of law that Moskowitz deliberately, clearly, and unequivocally admitted that MFCCs are not "abstracts" of the accused products under the Court's *Markman* construction. Moskowitz never said such a thing—and even if he had, he did

7

not do so in his capacity as a corporate representative of Blue Spike. It was not necessary for Blue Spike to present additional "evidence."

Audible Magic's "no-evidence" argument is completely misplaced, since Audible Magic (not Blue Spike) has the burden of proving up judicial admissions as an affirmative defense. Audible Magic has not alleged that Blue Spike lacks evidence of an essential claim term. (That theory would obviously fail, as Blue Spike has expert reports that support all of its essential claim terms.) Instead, Audible Magic is arguing an affirmative defense that Blue Spike, through Moskowitz, admitted something that defeats all of Blue Spike's infringement claims as a matter of law. If Audible Magic were right about its judicial-admission theory, "evidence" from Blue Spike would be largely beside the point. *See In re Quality Redi-Mix, Inc.*, 10 B.R. 409, 412 (Bankr. W.D. Mich. 1981) ("[J]udicial admissions . . . are not a means of evidence, but a waiver of all controversy.") (quoting 4 WIGMORE, EVIDENCE §1064(2) (Chadbourn rev. 1972)).

Here, Moskowitz never "admitted" what Audible Magic claims. The Court need only look at what Moskowitz actually said and the context in which he said it—as the inventor rather than as Blue Spike's corporate representative, and as an explanation of the comparative functionality of Audible Magic's '223 patent and the patents-in-suit rather than as an admission of noninfringement. Further, Moskowitz's opinions about MFCCs in his capacity as the inventor have no bearing on whether MFCCs are "abstracts" under the Court's claim construction of that term. Audible Magic has failed to prove that Blue Spike deliberately, clearly, and unequivocally attempted to take that issue out of contention.

**Conclusion**

For these reasons plus those contained in its Opposition, Blue Spike, LLC respectfully reiterates its request for the Court to DENY Audible Magic's Motion for Summary Judgment of Noninfringement.

Respectfully submitted,

  /s/ Randall Garteiser
Randall T. Garteiser
 Lead Attorney
 Texas Bar No. 24038912
 rgarteiser@ghiplaw.com
Christopher A. Honea
 Texas Bar No. 24059967
 chonea@ghiplaw.com
Christopher S. Johns
 Texas Bar No. 24044849
Kirk J. Anderson
 California Bar No. 289043
Molly A. Jones
 California Bar No. 301419
GARTEISER HONEA, P.C.
119 W. Ferguson Street
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

*Attorneys for Blue Spike, LLC*

CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

      /s/ Randall Garteiser  
      Randall T. Garteiser