# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>*Plaintiff*<br>v.<br><br>AUDIBLE MAGIC CORPORATION<br>*Defendant*<br><br><br>AUDIBLE MAGIC CORPORATION,<br><br>*Counterclaim Plaintiff*<br>v.<br><br>BLUE SPIKE, LLC, BLUE SPIKE, INC.<br>and SCOTT A. MOSKOWITZ<br><br>*Counterclaim Defendants* | Civil Action No. 6:15-CV-00584-RWS-CMC |

**AUDIBLE MAGIC CORPORATION'S OPPOSITION TO BLUE SPIKE'S OBJECTION
TO REPORT AND RECOMMENDATION GRANTING AUDIBLE MAGIC'S
<u>MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT</u>**

**FILED UNDER SEAL**

## I.     INTRODUCTION

After extensive briefing, and a detailed hearing on the motion, the Court issued a comprehensive and detailed Report and Recommendation to grant Audible Magic's motion for summary judgment ("R & R").  Blue Spike's objection simply rehashes the same arguments that have already been rejected by the Court.  Audible Magic's arguments were based on numerous undisputed facts, and sound legal authority.  The Court should affirm the Report and Recommendation and should enter final judgment, granting Audible Magic's motion for summary judgment of non-infringement.

## II.    THERE IS NO REMAINING DISPUTE OF FACT AND THE COURT SHOULD ENTER SUMMARY JUDGMENT OF NON-INFRINGEMENT

The undisputed facts establish that Blue Spike judicially admitted that *Audible Magic's own audio fingerprint*—a series of numbers called "MFCCs"—do not constitute the "abstract" element found in each claim of the asserted patents.  There is no issue for the trier of fact, as Blue Spike removed this fact from contention.  Blue Spike did so in order to avoid Audible Magic's *own* prior art MFCC fingerprints.  Indeed, as has already been briefed, both Blue Spike's principal and the inventor of the asserted patents, Scott Moskowitz, and Blue Spike's own expert witness on the patents' validity, Dr. Papakonstantinou,[1] were asked whether Audible Magic's MFCC fingerprints constituted the "abstract" of the asserted patents.  Both admitted clearly, repeatedly, unequivocally and unambiguously that Audible Magic's MFCCs are not abstracts.  After making these admissions, Blue Spike attempted to accuse Audible Magic's MFCC fingerprints.  It is undisputed that the prior art MFCC fingerprints that Blue Spike admitted do not constitute "abstracts," are precisely the same as the accused MFCC fingerprint in Audible Magic's products today.  For this reason, Blue Spike's binding judicial admissions, which it made in order to obtain the litigation advantage of preserving the validity of its patents, preclude the possibility of infringement.  Audible Magic cannot infringe as a matter of law.

---

[1] The Report and Recommendation references the deposition of Blue Spike's invalidity expert, Dr. Papakonstantinou (at p. 4), who admitted on behalf of Blue Spike that MFCCs are not abstracts, as detailed in the briefing that led to the Report and Recommendation.

1

Having admitted that MFCC fingerprints are not "abstracts" to save the validity of the patents, Blue Spike cannot then take the opposite position on infringement. The judicial admission doctrine is well-established and settled in both Fifth Circuit law, the District Court case law within the Fifth Circuit (including the Eastern District of Texas) and Texas state law, from which the Fifth Circuit drew the judicial admissions doctrine. Further, Federal Circuit precedent and public policy prevent a party from taking a narrow position on the scope of asserted claims in order to avoid prior art, yet at the same time taking a broad position to try to allege infringement, precisely as Blue Spike is attempting to do here. Holding Blue Spike to its judicial admissions that MFCC fingerprints are not the patents' "abstract" in order to avoid prior art is consistent with this law and policy.

Rather unbelievably, Blue Spike argues that it should be allowed to have Mr. Moskowitz (its only representative, inventor and initial prosecutor of the patents) admit that Audible Magic's MFCC fingerprints are not "abstracts" in order to save the patents, and, at the same time, should be allowed to put forward the opposite infringement argument that Audible Magic's MFCC fingerprints are "abstracts." Blue Spike tries to say that this is a "contradiction" for the finder of fact. D.I. 62 at pp. 3 and 5, n. 1. That is not correct. Rather, trying to take this dual, conflicting, position is a violation of the law. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554 (Fed. Cir. 1983) (improper for party to advance one position on claim scope for invalidity and different position for infringement); *Sterner Lighting, Inc. v. Allied Electric. Supp., Inc.*, 431 F.2d 539, 544, 166 USPQ 454, 459 (5th Cir. 1970) (same); *Cabot Safety Intermediate Corp. v. Howard S. Leight & Assocs.*, 992 F. Supp. 463, 466 (D. Mass. 1998) (same); *Nye v. Sage Prods.*, 1986 U.S. Dist. LEXIS 21092, *5-6, 12-19 (N.D. Ill. 1986) (same).[2]

Once Blue Spike took the affirmative, unequivocal position that Audible Magic's MFCCs are not

---

[2] Blue Spike cites irrelevant passages of an opinion about why "inventor" testimony is less probative in claim construction—i.e. inventors might be encouraged to avoid one or the other of infringement or invalidity, and thus their testimony during claim construction might distort the claim construction process. D.I. 62, p. 5 (*quoting Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.* 540 F.3d 1337, 1346-47). <u>It also mischaracterizes this case, and tries to say that it allows a plaintiff to advance one view of claim scope for invalidity and a different one for infringement. The case says no such thing.</u>

abstracts, Blue Spike could not proceed with the opposite theory.

It is undisputed that the MFCCs that Mr. Moskowitz made admissions about are *exactly* the same as the accused Audible Magic MFCC fingerprints created by accused code called the "MFCBR Library" and described in Audible Magic's '223 patent. R & R, pp. 5, 15-16. Thus, contrary to Blue Spike's objections (D.I. 62, p. 6), Mr. Moskowitz possessed all the information that he needed about Audible Magic's accused products to make binding admissions that preclude Blue Spike's infringement theory. Mr. Moskowitz reviewed the information about the accused Audible Magic MFCC fingerprints (in particular the '223 patent describing in detail the accused MFCBR Library), and he admitted, repeatedly, deliberately, unambiguously and emphatically that *those* MFCC fingerprints are not his patents' "abstracts." Blue Spike does not assert that the MFCC fingerprints subject to the admissions are different from what is in Audible Magic's accused products. Indeed, as the Report and Recommendation made clear, the evidence is undisputed that they are the same.

For all of these reasons, as has been briefed extensively and developed in detail in the Court's Report and Recommendation, Blue Spike judicially admitted that MFCC fingerprints are not "abstracts." Blue Spike's objection amounts to an attempt to assert that Blue Spike did not really mean what it said when it admitted that MFCCs are not "abstracts." But the Court discussed at length that this is not plausible. The Court's decision and the briefing makes clear: (1) Blue Spike's sole principal and employee, Scott Moskowitz "coined" the term "signal abstract" as asserted by Blue Spike in its complaint, (2) Moskowitz had extensive participation of the development of the claim construction of "abstract" which was ultimately adopted by this Court, and (3) Thereafter, in deposition, Moskowitz repeatedly, emphatically and unambiguously asserted that MFCCs were not "abstracts" *expressly adopting the Court's construction while doing so*. R & R, pp. 5, 13-15.

The record is clear that Mr. Moskowitz was not talking about some broader understanding of the "invention." It is undisputed that both generally in his deposition, and in the same breath that he admitted

that MFCCs are not "abstracts," Moskowitz *testified expressly that he was adopting the Court's claim construction of "abstract"—not some other understanding.  See* R & R, pp. 13-15.  Blue Spike asserted that MFCCs are not "abstracts" under the Court's construction, in order to remove from the equation an entire universe of Audible Magic prior art that uses MFCC fingerprints (the MFCCs used in the accused Audible Magic products today).

Blue Spike admits that Mr. Moskowitz is "intimately familiar" with the patents, yet tries to assert that his admissions are somehow not binding, on the theory that he was purportedly not involved with the actual prosecution of the patent claims.  D.I. 62, p. 4.  First, there is no such evidence in the record, thus the point is not supported.  Second, as discussed extensively in the briefing and in the Report and Recommendation, Mr. Moskowitz helped develop the claim constructions ultimately adopted, and during deposition was aware of and expressly applied them—thus Blue Spike's point is irrelevant. Finally, it is demonstrably false that Mr. Moskowitz was far removed from the prosecution.  To the contrary, Mr. Moskowitz prosecuted the asserted patents *pro se*, with only sporadic assistance from counsel.  Indeed, the face of the earliest asserted patent does not list any prosecution counsel whatsoever. *See* Dkt. 13-13 ('472 patent).  That first application, which introduced the claim term "abstract" and led to the rest of the asserted patents, was pushed through prosecution by one person and one person alone— Scott Moskowitz.  He made all arguments to the patent office and amended the claims himself, from the first office action through issuance.[3]  So, when he made the judicial admission that MFCCs are not his patents' "abstract" it is especially proper to find those binding, given that he personally pushed the term "abstract" through the patent office in the first place.

---

[3] The Court is invited to take judicial notice of the prosecution history of Application No. 09/657,181, which led to the '472 patent. *See VirtualAgility v. Salesforce.com*, 2014 U.S. Dist. LEXIS 2286, *n.1 (E.D. Tex. 2014) (judicial notice of patent prosecution history), *rev'd on other grounds*, 2014 U.S. App. LEXIS 13015 (Fed. Cir. 2014).  The fully history can be found at the PTO's Public Pair system: http://portal.uspto.gov/pair/PublicPair. The firm Brobeck, Phleger & Harrison filed the initial application. Upon receipt of the first office action, Mr. Moskowitz terminated counsel and prosecuted the claims himself, *pro se*, presenting all argument to the PTO and making claim amendments himself, through final issuance of the patent.

4

The Court did view the evidence in the light most favorable to Blue Spike. The deposition testimony was clearly for the purpose of defining the scope of the claims, because Mr. Moskowitz *expressly* testified that he was adopting the Court's claim construction when answering specific questions whether MFCCs are "abstracts." He testified that under the constructions—which he himself asserted he was involved in developing—that MFCCs are not abstracts. On its face, admissions by a party representative and inventor who *adopts* the court's claim construction, in order to preserve validity, *must be* binding on the company. Admissions of the Blue Spike representative were clear, unambiguous, intentional and designed to get around Audible Magic's prior art MFCC fingerprints. That is the very definition of withdrawing material from the scope of the claims, for a litigation benefit. Holding Blue Spike to those judicial admissions in its principal's deposition is appropriate under well-developed Fifth Circuit authority. *See Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 320 (5th Cir. 2001); *Jonibach Mgmt. Trust v. Wartburg Enters.*, 750 F.3d 486, 492 n. 2 (5th Cir. 2014); *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 411 (5th Cir. 2002); *Johnson v. IDEXX Labs., Inc.*, 2007 U.S. Dist. LEXIS 40685, *3-5 (N.D. Tex. 2007); *Garcia v. EHealthscreenings, LLC*, 2014 U.S. Dist. LEXIS 15465, *13-14 (W.D. Tex. 2014); *see also Austin v. Miller*, 767 S.W.2d 284, 288 (Tex. App. 1989)

Blue Spike points to a single admission that it attempts to explain away. D.I. 62, pp. 3-4. These arguments were already presented in Blue Spike's briefs, and were examined by the Court, both at the hearing and in its Report and Recommendation. First, the admission that it points to is clear and unambiguous. As found in the Report and Recommendation, Mr. Moskowitz adopted the Court's claim construction of the term "abstract" throughout the entire deposition. In doing so, there can be no dispute that the admission Blue Spike points to that MFCCs are not abstracts means exactly what it says, i.e. that MFCCs are not abstracts as defined by the Court. However, beyond that, Blue Spike does not address at all the rest of the repeated judicial admissions by Mr. Moskowitz or the expert, Dr. Papakonstantinou. Thus, even crediting Blue Spike's argument about the single deposition excerpt it discusses, there remain

many repeated judicial admissions by Blue Spike that Audible Magic's MFCCs are not "abstracts" under the Court's claim construction. Thus, there can be no infringement.

### III. THE JUDICIAL ADMISSIONS ARE BINDING ON BLUE SPIKE

The Report and Recommendation correctly finds that Mr. Moskowitz's admissions bind Blue Spike. Blue Spike argues, as it did in its prior briefing, that Mr. Moskowitz's clear and unequivocal admissions are purportedly not binding, because he was testifying at those moments pursuant to a Rule 30(b)(1) notice. This ignores both the law and the facts. It is settled that "the party seeking the deposition may identify a specific officer, director, or managing agent to be deposed and notice that person under Rule 30(b)(1). The testimony of such a person will be binding on the party." *U.S. v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994); *U.S. v. One Parcel of Real Estate at 5860 North Bay Road*, 121 F.R.D. 439, 440 (S.D. Fla. 1988) (testimony of "a particular officer, director, or managing agent pursuant to Rule 30(b)(1) … is of the corporation…"); *Phillips v. Am. Honda Motor Co.*, 2005 U.S. Dist. LEXIS 46223, *4 (S.D. Ala. 2005) (Rule 30(b)(1) testimony of "officer, director or managing agent" is "testimony of the corporation"); *Botell v. U.S.*, 2013 U.S. Dist. LEXIS 12075 (E.D. Cal. 2013) (same; "testimony of such a person will be binding on the party").

Regarding the deposition at issue, there is no dispute that this is precisely what was done. Scott Moskowitz is not a remote employee whose testimony may not bind the company. Rather, he is Blue Spike LLC's ***only*** officer, director, managing agent and investor. Blue Spike admits that Blue Spike LLC is Scott Moskowitz, and nothing more. R & R, p. 10-11. Mr. Moskowitz testified that he did not distinguish between his own testimony and that of Blue Spike LLC. *Id.* For example, when asked whether Blue Spike LLC or Blue Spike Inc. controlled particular resources, Mr. Moskowitz asserted that it didn't matter because it all comes down to him: "I am the only member of Blue Spike LLC at present. I am also the only director, the only officer, and the only employee of Blue Spike, Inc., so … -- which one of my hats do I answer? Do I say that the employee Scott Moskowitz takes it and hands it to the

6

officer?  The officer Scott Moskowitz tells the employee Scott Moskowitz, what do we do with this?  I mean, it all comes to me, so I'm not really clear on how you're differentiating between the two entities." *Id.*  Blue Spike is bound by Mr. Moskowitz's testimony.

Blue Spike cites two cases and argues boldly that those cases purportedly stand for the proposition that even if deposed as a Rule 30(b)(6) witness, "deposition testimony can *never* be judicial admissions." D.I. 62, p. 7.  That is a misrepresentation.  Each of those cases stands for the unremarkable proposition that a 30(b)(6) deposition designation does not, by itself, elevate that testimony automatically to a judicial admission.  *See Lindquist v. City of Pasadena*, 656 F. Supp. 2d 662, 698 (S.D. Tex. 2009), *aff'd*, 669 F.3d 225 (5th Cir. 2012) (stating the mere fact that a deposition is a 30(b)(6) deposition does not make such testimony "'binding' on the entity for which the witness testifies in the sense of preclusion or judicial admission…"); *Mar. Madness Athletic Ass'n LLC v. Netfire, Inc.*, 310 F. Supp. 2d 786, 811 (N.D. Tex. 2003), *aff'd*, 120 F. App'x 540 (5th Cir. 2005) (finding that Rule 30(b)(6) was not automatically binding, and noting ambiguity in testimony at issue).

But, in this case, as the evidence clearly shows and as the Report and Recommendation found, the repeated, unequivocal, emphatic and clear admissions by Mr. Moskowitz, the only person constituting Blue Spike LLC, rise to the level of judicial admissions, under the Fifth Circuit's test and as applied in district courts throughout the Fifth Circuit.  Blue Spike LLC is bound by the admissions.

## IV. BLUE SPIKE'S ARGUMENT ABOUT "INVENTOR TESTIMONY" IS IRRELEVANT

The judicial admissions in this case were by the sole principal of plaintiff, who participated in development of the claim constructions ultimately adopted by the Court, and who admitted in deposition that he was applying the construction adopted by the Court and that under that construction MFCCs are not abstracts.  In its objections, Blue Spike ignores the situation at hand, and cites to decisions where, during the claim construction process, courts elected not to rely on inventor testimony (instead looking to the intrinsic evidence as is the norm during claim construction).  *See* D.I. 62, pp. 4 and 5 (*citing*

7

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) (court should look to intrinsic evidence to formulate claim construction above testimony of inventor); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008) (same); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000) (same); *Cellular Communs. Equip. LLC v. HTC Corp.*, 2015 U.S. Dist. LEXIS 28718 (E.D. Tex. Mar. 9, 2015) (same)). Blue Spike pulls a quote from *Markman,* out of context, regarding inventor testimony "defining the scope of the claims" during the claim construction process, and attempts to improperly apply it here. *Id.* at p. 5.

But, those cases have no relevance. Here the issue is not what the claim construction should be. Rather, here, the Court has already construed the claims and Moskowitz *himself* was heavily involved in getting Blue Spike's constructions to be adopted by the Court. Thereafter, in deposition, he *expressly* adopted the Court's constructions, testified that he understood them and stood by them, and then admitted that, as construed by the Court, MFCCs are not "abstracts." This is a very different situation and proposition from the irrelevant cases cited by Blue Spike. Those cases do not change the clear, unequivocal and unambiguous judicial admissions here. Moreover, in this case, unlike the irrelevant cases cited by Blue Spike, Moskowitz was deeply involved—indeed the only party involved—in getting the patent office to issue claims containing the term "abstract." He wasn't just the inventor, but was the drafter of the issued claims and the party who personally *prosecuted* the term "abstract" in the first place. Summary judgment of non-infringement should be granted.[4]

*      *      *

For the foregoing reasons (and those stated in the R&R) the Court should grant summary judgment.

---

[4] Blue Spike continues to try to change the Court's claim construction of "abstract." The Court's construction, applied by Moskowitz, is "a data-reduced representation of a signal that retains a perceptual relationship with the signal and differentiates the data-reduced representation from other data-reduced representations." Dkt. 1831, p. 32. Blue Spike now tries to argue that "abstract" must purportedly *also*: (1) "perform all of the required steps of the patents-in-suit" (D.I. 62, p. 6, n.2 and p. 3), and (2) carry out "differentiation between versions of a signal, signal transmission or reporting." D.I. 62, p. 1. The Court's construction clearly does not pack into the term "abstract" all other steps of the patent, nor does the construction include differentiation, transmission or reporting. Blue Spike did not argue that these words should be part of the construction during the claim construction process. Its last ditch attempt to import all these other terms and form a new claim construction should be rejected.

Dated: October 2, 2015
By:                               */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, LLP
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

**Attorneys for Defendant Audible Magic Corp.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on October 2, 2015.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that authorization to file this document under seal was provided by the Protective Order entered in the previously consolidated action 6:12-cv-499.

*/s/ Eric H. Findlay*
Eric H. Findlay
