UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 6:15-cv-584-RWS-CMC |
| | § | |
| v. | § | |
| | § | |
| Audible Magic Corporation, | § | Jury Trial Demanded |
| | § | |
| *Defendant*. | § | |

**BLUE SPIKE, LLC'S OBJECTIONS TO REPORT AND RECOMMENDATION
DENYING MOTION FOR SUMMARY JUDGMENT ON
AUDIBLE MAGIC'S COUNTERCLAIMS 9-13**

**[FILED UNDER SEAL]**

TABLE OF CONTENTS

**Argument** ....................................................................................................................... **1**

   **I.**   **AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTER-CLAIM 9 OF INEQUITABLE CONDUCT AS A MATTER OF LAW.** ...................................................................... **1**

     A. Audible Magic Cannot Show Scott Moskowitz Failed to Disclose Material Information to the Patent Office.................................................................................................. 1

     B. Audible Magic Cannot Show Moskowitz Intentionally Deceived the PTO. .......................... 3

   **II.**   **AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTER-CLAIM 10 OF UNJUST ENRICHMENT AS A MATTER OF LAW.** ............................................................ **4**

   **III.**   **AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTERCLAIM 11 OF A LANHAM ACT VIOLATION AS A MATTER OF LAW.** .................................................... **5**

     A. Audible Magic's Lanham Act Counterclaim Must Be Denied because Blue Spike's Speech is Protected.......................................................................................................... 5

     B. Audible Magic Cannot Show the Implicated Statements Deceived or Had the Capacity to Deceive a Substantial Segment of Potential Consumers.......................................... 6

   **IV.**   **AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTER-CLAIM 13 OF UNFAIR COMPETITION AS A MATTER OF LAW.** .......................................................... **8**

**Conclusion** .................................................................................................................... **8**

Audible Magic presents an elaborate story of how it believes Scott Moskowitz stole its invention. The story is anything but succinct, consisting of "fifteen pages of evidence supporting its counterclaims, tying the narrative to over eighty exhibits." Report and Recommendation ("R&R") at 22. Yet Audible Magic's story fails to raise material issues of fact sufficient to overcome summary judgment. Similarly, Audible Magic's Lanham Act counterclaim cannot survive summary judgment as a matter of law because Audible Magic's slanted interpretation of a blog article is not the only reasonable interpretation. Blue Spike objects to Magistrate Judge Craven's Report and Recommendation on the grounds that Audible Magic's counterclaims fail as a matter of law.

**ARGUMENT**

## I.     AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTER-CLAIM 9 OF INEQUITABLE CONDUCT AS A MATTER OF LAW.

In order for Audible Magic to prove inequitable conduct, Audible Magic must show Scott Moskowitz (1) failed to disclose material information to the United States Patent & Trademark Office ("PTO") and (2) intended to deceive the PTO. Dkt. 14. Blue Spike's Motion for Summary Judgment ("MSJ") at 4. Audible Magic has a "heavy burden" that requires clear and convincing evidence. *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454-55 (Fed. Cir. 1984). Audible Magic cannot meet this burden as a matter of law.

### A.     Audible Magic Cannot Show Scott Moskowitz Failed to Disclose Material Information to the Patent Office.

Audible Magic cannot show Scott Moskowitz withheld **material** information from the PTO. *Contra* R&R at 26. Even with the evidence construed in Audible Magic's favor for the purpose of summary judgment, Audible Magic could only show Scott Moskowitz withheld potentially **pertinent** information. But Scott Moskowitz was never obligated to share all pertinent information. *Kimberly-Clark Corp.*, 745 F.2d at 1454-55 ("[I]t is clear that an applicant

is under no obligation to disclose all pertinent prior art or other pertinent information of which he is aware."). Information is material only if "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." R&R at 25. As a matter of law, Audible Magic cannot meet this burden.

First, Audible Magic cannot show the '223 Patent and related inventions (R&R at 22) are but-for material for one glaring reason—three of the four patents-in-suit forward cite to the '223 Patent. The PTO reviewed the '223 Patent and concluded Blue Spike's patents (U.S. Patents 7,660,700, 7,949,494, and 8,214,175) teach something novel above and beyond Muscle Fish's invention. Audible Magic's claim implies the PTO failed to do its job, an inappropriate assumption especially considering the deference owed to the PTO. *See Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).[1] Audible Magic cannot show the PTO failed to fully vet the forward-cited '223 patent.[2]

Second, Audible Magic has no evidence in its possession—because none exists—that the alleged third-party systems (such as Tuneprint, RCS, Digital Hanse) are **material**. *See* R&R at 22. Audible Magic produced nothing more than passing references to these systems. No mechanics are explained; no specifics discussed. Certainly Audible Magic was not withholding dispositive evidence describing the specifics of these alleged systems when it submitted its

---

[1] It is untrue that the later patents are somehow tainted due to the doctrine of "infectious unenforceability." *Contra* R&R at 23, n.6. Infectious unenforceability assumes a patent examiner does not have material prior art at his or her disposal when examining a patent application. Here, the alleged prior art in question (the '223 Patent) is actually forward cited in the continuation patents and was thus indisputably known to the patent examiner.

[2] For the same reasons, Audible Magic's reference to egregious conduct is unavailing. Audible Magic cannot prove egregious conduct because Scott Moskowitz cannot have failed to inform the PTO of a material patent he forward cited.

eighty-plus exhibits. Audible Magic cannot convince a jury that these systems were material on mere passing references.

Finally, Audible Magic's allegations that Scott Moskowitz learned of Muscle Fish's invention during confidential communications (R&R at 28-29) cannot save this counterclaim because Audible Magic has no evidence of confidential material information not already embodied in the '223 patent.[3] As a matter of law, Audible Magic cannot show Scott Moskowitz withheld material information from the PTO that would have convinced the PTO not to issue the patents-in-suit. Thus, summary judgment is proper.

### B. Audible Magic Cannot Show Moskowitz Intentionally Deceived the PTO.

Audible Magic has an even heftier burden to prove intent. Audible Magic must show "specific intent to deceive with knowledge and deliberation." *See Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1292 (Fed. Cir. 2012). "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO **does not** prove specific intent to deceive." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (emphasis added). In fact, not even gross negligence is sufficient to find intent to deceive. *Outside the Box Innovations*, 695 F.3d at 1292. "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Therasense, Inc.*, 649 F.3d at 1290. Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id.* "Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91. Audible Magic cannot show its

---

[3] On the contrary, Muscle Fish programmer, Thom Blum, testified he did not provided specific details of the Muscle Fish invention in his allegedly confidential discussions with Scott Moskowitz. R&R at 8 ("Blum testified he 'went through some – some details without, you know, getting into exactly how we do what we do'.").

misappropriation story is the **only** reasonable inference.[4]

As a matter of law, Audible Magic cannot show that its story of misappropriation is the only reasonable inference. A perfectly reasonable inference is that Scott Moskowitz did not include the alleged prior art in his application for the '472 patent because he did not consider them material. This reasonable inference is supported by the fact that Scott Moskowitz cited other fingerprinting patents instead,[5] and that the PTO did not consider the '223 Patent material (i.e. sufficient to disallow the invention) when it was cited in the other patents-in-suit. It would even be defensible to infer Scott Moskowitz should have known the alleged prior art was material and that he acted in a grossly negligent manner by failing to notify the PTO. Audible Magic cannot prove to a jury that no reasonable inference other than its tale of misappropriation exists—such as the two listed here. Thus, summary judgment is appropriate.

## II.   AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTER-CLAIM 10 OF UNJUST ENRICHMENT AS A MATTER OF LAW.

Audible Magic cannot show Blue Spike "obtained a benefit from another by fraud, duress, or the taking of undue advantage." R&R at 27. Audible Magic's claims[6] of unjust enrichment are founded on a single premise: that Scott Moskowitz allegedly leveraged material

---

[4] Audible Magic misinformed the Court by citing *American Calcar, Inc.* for the proposition that "intent can be inferred based on 'contradictory assertions' made by the inventor". *Contra* R&R at 24-25. The *American Calcar* Court actually remanded the case because "the finding of materiality and Mr. Obradovich's lack of credibility were insufficient grounds to find intent." *American Calcar, Inc. v. American Honda Motor Co., Inc.,* 768 F.3d 1185, 1191 (Fed. Cir. 2014).

[5] For example, the patents-in-suit cite U.S. Patent 6,453,252, titled "Process for Identifying Audio Content" with sections on "Forming the Fingerprint" and "Matching the Fingerprint." Also cited is U.S. Patent 7,043,050, which describes how a "unique identifier" may be created "for digital content files if the digital content files produce an output that is perceptually the same to a human listener." U.S. Patent 7,043,050 at 6:43-46.

[6] Audible Magic argues the same unjust enrichment claim under a common law theory and separately under § 102(f) of the Patent Act. Regardless of the theory, Audible Magic's unjust enrichment claims fail because they rely on a premise Audible Magic cannot prove—that Scott Moskowitz misappropriated information from Muscle Fish and failed to inform the PTO. Blue Spike's position is dispositive on all Audible Magic's theories.

4

knowledge gained from Muscle Fish inventors to secure the his patents-in-suit. This proposition fails as a matter of law because three of the patents-in-suit cite the Muscle Fish '223 Patent. There is no need to hypothesize what the PTO *would have* done because we know what it *did*—it granted the patents. Similarly, as noted above (*supra* n.3), Muscle Fish provided no additional details during confidential discussions that were not already embodied in the '223 Patent.

Additionally, this counterclaim fails as a matter of law because the '223 patent does not describe all the limitations in the patents-in-suit. *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 443 F. Supp. 2d 836, 864-65 (S.D. Tex. 2006) (granting MSJ because patent included limitations not described in the prior art).

## III.   AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTERCLAIM 11 OF A LANHAM ACT VIOLATION AS A MATTER OF LAW.

### A.   Audible Magic's Lanham Act Counterclaim Must Be Denied Because Blue Spike's Speech is Protected.

Audible Magic's Lanham Act counterclaim must fail as a matter of law because Blue Spike's speech was protected. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (holding "a patentee's statements regarding its patent rights are conditionally privileged under the patent laws"). "[F]ederal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith." *Zenith Elecs. Corp.*, 182 F.3d at 1353. It is clear the blog article Audible Magic relies upon for its counterclaim is Blue Spike's expression of its patent rights. Thus, the speech was protected, and Audible Magic's counterclaim must fail.

The blog article in question describes (1) how Scott Moskowitz is the "author of over 73 patents"; (2) that "at least four of those patents specifically describe the abstracting process, also known as fingerprinting, that Shazam is now touting as its own"; (3) that Shazam (not Audible Magic) is stealing Blue Spike's inventions; (4) that Blue Spike has a right to "prevent others from

profiting from its inventions"; (5) and that Blue Spike can protect its inventions by "flexing its proprietary patent right to exclude, seeking injunctive relief against Shazam." Dkt. 23, Ex. 72. When read in context, it is clear the blog article explains how Blue Spike believes its signal abstracting patents pre-date Shazam's software (i.e. Blue Spike's technology came first), that Blue Spike believes Shazam infringes those patents, and that Blue Spike has filed suit to protect its patented technology. *See Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 504 n.5 (5th Cir. 2000) (holding "the statement must be viewed in the light of the overall context in which it appears"). Blue Spike's speech is protected and not actionable.

**B.    Audible Magic Cannot Show the Implicated Statements Deceived or Had the Capacity to Deceive a Substantial Segment of Potential Consumers.**

In order to survive summary judgment, Audible Magic must show it can meet the following criteria: (1) a false or misleading statement of fact about a product; (2) such statement deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement. R&R at 29, citing *Pizza Hut, Inc.*, 227 F.3d at 495. The Report and Recommendation incorrectly held that Audible Magic could establish each of these *prima facie* elements of a false advertising claim (although it indicated this "issue is a closer one" (R&R at 34)).

**Element 1.**  Audible Magic cannot prove that Blue Spike's statements are literally false because the statements have more than one reasonable interpretation. "Only an unambiguous message can be literally false; if the language at issue is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 2015 WL 9660022, at *21 (S.D. Tex. Dec. 18, 2015). First, the statement referencing whether "Shazam was first to create this technology" refers to Blue Spike's patents-

in-suit predating Shazam's software. Dkt. No. 23, Ex. 72. Blue Spike's statement was made relative to another technology, and thus, the only reasonable interpretation cannot be that Blue Spike was intending to convey that it was "first" in the marketplace.[7] Second, the Giovanni Abstraction Machine® was advertised for sale, and thus there is nothing false about it being referenced in the blog.[8] Finally, Audible Magic accuses the following phrase: "Moskowitz claims this technology has powered his Blue Spike products since the turn of the century." It is true that Scott Moskowitz made this claim. Moreover, Scott Moskowitz is the "author of over 73 patents," which are incorporated to varying extents in other products. Because reasonable interpretations like these exist, these statements cannot be literally false.

**Elements 2 and 3.** Because the blog post is not literally false, Audible Magic must prove that there was **actual evidence of deception**. *Pizza Hut, Inc*., 227 F.3d at 497. Proof of actual deception requires proof that "consumers were actually deceived." *Id*. Audible Magic cannot show evidence of deception. The Giovanni Abstraction Machine® was never sold, does not exist, and the offer to build-sell is no longer available.[9] Not only is there no evidence a single consumer was deceived, Audible Magic cannot show a **substantial segment** of potential consumers were deceived. Thus, summary judgment is required.

---

[7] Interestingly, it is Audible Magic, not Blue Spike, who is inaccurately claiming to have invented the concept of fingerprinting. *See* R&R at 22 ("[T]he Muscle Fish inventors had (1) developed the claimed analysis of 'perceptual features' to create a fingerprint'.") Erling Wold, a Muscle Fish inventor, admitted relying on a well-known fingerprinting technique.

[8] Blue Spike has explained the Giovanni Abstraction Machine® was an offer to build software the same way a custom homebuilder offers to build a house to specification.

[9] Audible Magic's argument that it was wronged because of settlements is unavailing to a Lanham Act inquiry because the parties in question are competitors, not consumers. Moreover, Audible Magic has no evidence the blog article influenced settlements.

**Element 4.** As a matter of law the fourth element cannot be proven—there was no product put into interstate commerce.[10]

**Element 5.** Finally, Audible Magic cannot be injured as a matter of law by the implicated statements. First, it is untrue that "consumers would be induced to pay Blue Spike rather than Audible Magic for fingerprinting technology" because Blue Spike sold no product and no longer advertises the product. *Contra* R&R at 33. Second, if "Blue Spike leveraged statements to influence industry participants to pay settlements," those industry participants are competitors, not consumers as required.[11]

## IV.   AUDIBLE MAGIC CANNOT PREVAIL ON ITS COUNTER-CLAIM 13 OF UNFAIR COMPETITION AS A MATTER OF LAW.

The recommendation and Audible Magic bring two counts. The first count is unavailing for the same reason the Lanham Act claim is unavailing. *See* R&R at 33. Audible Magic's second claim of unfair competition—that Scott Moskowitz misappropriated Muscle Fish's inventions—fails for the same reasons stated above.

CONCLUSION

Summary judgment is appropriate on Audible Magic's counterclaims. Blue Spike therefore respectfully requests the Court SUSTAIN Blue Spike's objections to the Report and Recommendation denying Blue Spike's motion for summary judgment on Audible Magic's counterclaims 9-13 and GRANT Blue Spike's motion for summary judgment with prejudice.

---

[10] In the interest of candor, Blue Spike informs the Court that while the Court's citation is favorable to Blue Spike, some Courts have construed this prong as requiring a *statement* (not a *product*) to be in interstate commerce. Blue Spike believes requiring a *product* in interstate commerce is appropriate because no protection is necessary if no product exists.

[11] Audible Magic's citation to *Scholtsky's v. Sterling* is inapposite because the defendant pretended to have an exclusive distribution arrangement in order to defraud *consumers*. R&R at 33-34. Industry participants are competitors, not consumers.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Molly A. Jones
  California Bar No. 301419
  mjones@ghiplaw.com
GARTEISER HONEA, P.C.
119 W. Ferguson Street
Tyler, Texas 75702
(888) 908-4400
(888) 908-4400 fax

*Counsel for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed under seal electronically via the Court's Electronic Filing System on March 18, 2016 in compliance with Local Rule CV-5(a)(7). Pursuant to Local Rule CV-5(a)(7)(C), the foregoing sealed document was promptly served via file transfer protocol on all counsel of record in this matter who are deemed to have consented to electronic service. *See* Local Rule CV-5(a)(2)(A).

　　　　　　　　　　　　　　 /s/ Randall Garteiser　　　
　　　　　　　　　　　　　　Randall Garteiser


**CERTIFICATE OF AUTHORIZATION TO SEAL**

The undersigned certifies that pursuant to Local Rule CV-5(a)(7)(A), authorization to seal the foregoing document, exhibits, and declarations has been previously granted by the Court's Protective Order, entered on January 22, 2014.

　　　　　　　　　　　　　　 /s/ Randall Garteiser　　　
　　　　　　　　　　　　　　Randall Garteiser