UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § | |
| *Plaintiff*, | § § | Case No. 6:15-cv-584-RWS-CMC |
| v. | § § § | |
| Audible Magic Corporation, | § § | Jury Trial Demanded |
| *Defendant*. | § § | |

**BLUE SPIKE, LLC'S OBJECTIONS TO REPORT AND RECOMMENDATION GRANTING AUDIBLE MAGIC'S MOTION FOR VOLUNTARY DISMISSAL**

**[FILED UNDER SEAL]**

i

# Table of Contents

**Background** ................................................................................................................ 1

    I.    AUDIBLE MAGIC'S COUNTERCLAIM WAS BROUGHT IN BAD FAITH. ............................ 1

    II.   AUDIBLE MAGIC HAS LONG BEEN AWARE THE GIOVANNI ABSTRACTION MACHINE® WAS NOT A PRODUCT. ..................................................................... 2

**Legal Standard** ......................................................................................................... 3

**Argument** .................................................................................................................. 4

    III.  AUDIBLE MAGIC'S '308 COUNTERCLAIM SHOULD BE DISMISSED <u>WITH PREJUDICE</u>. ............................................................................................................ 4

**Conclusion** ................................................................................................................ 7

Audible Magic improperly asserted a counterclaim against Blue Spike alleging infringement of U.S. Patent 6,834,308 (the "'308 Patent") when Blue Spike clearly did not infringe. Audible Magic then used the '308 Patent as leverage to exert pressure on Blue Spike and increase the small technology company's costs. Now, after Blue Spike sought permission to file a motion for summary judgment dismissing the '308 Patent with prejudice, Audible Magic recognizes its tactic may backfire and asks the Court to voluntarily dismiss its counterclaim. Audible Magic's untimely request is unsupportable.

Neither the parties nor the Court wish to litigate the frivolous '308 Counterclaim any further. Blue Spike respectfully asks the Court to dismiss the counterclaim, but dismiss <u>with</u> prejudice in order to correct the prejudice Blue Spike has already suffered.

## BACKGROUND

### I. AUDIBLE MAGIC'S COUNTERCLAIM WAS BROUGHT IN BAD FAITH.

Audible Magic never should have brought its counterclaim in the first place. In response to Blue Spike's claim for infringement, Audible Magic asserted the '308 Patent against Blue Spike's advertised Giovanni Abstraction Machine® ("GAM"). It is clear Audible Magic never expected to prevail on its '308 counterclaim because the limitations of the '308 patent clearly are not present in the GAM as advertised.[1] In fact, it is apparent from Audible Magic's untenable confusion and untimely request that Audible Magic never even intended to litigate the '308 Counterclaim. Instead Audible Magic asserted the '308 Patent in order to exert leverage on Blue Spike and increase Blue Spike's costs via motion practice, depositions, expert review, and claim construction.

---

[1] Specifically, the '308 Patent requires data to be displayed on a "client media player," and there is no description of a client media player, or even an output for that matter, in the GAM advertisement on which Audible Magic relies. *See* Case No. 12-cv-499, Dkt. No. 1911-10, Exhibit 8; Dkt. No. 1911-04, Ex. 2.

## II. AUDIBLE MAGIC HAS LONG BEEN AWARE THE GIOVANNI ABSTRACTION MACHINE® WAS NOT A PRODUCT.

Audible Magic was also been long aware that the GAM was not a product. This is made clear in the following timeline of Blue Spike's representations to Audible Magic:

- May 13, 2014: Counsel for Blue Spike informed counsel for Audible Magic during a conference call that the GAM does not exist. (Case No. 12-cv-499, Dkt. 1911-17 at 1.)

- June 6, 2014: Counsel for Blue Spike confirmed by email, "There is no code to produce . . . ." (Case No. 12-cv-499, Dkt. 1617-13, Ex. 12.)

- July 23, 2014: Blue Spike responded to Audible Magic's motion to compel to clarify the non-existence of source code, explaining "Blue Spike has explained to Audible Magic repeatedly that it has no source code in its possession," but it cannot say with certainty whether third parties possess any code. (Case No. 12-cv-499, Dkt. 1652 at 6, n.2.)

- July 23, 2014: Blue Spike responded to Audible Magic's First Set of RFAs that, "Blue Spike, LLC provided for a brief period of time an [sic] product offering named Giovanni Abstraction Machine, which was a service that Blue Spike LLC offered to build, akin to a builder being hired to build a house because he has the knowledge to do so in his possession." (Case No. 12-cv-499, Dkt. No. 1911-14, Ex.12 at 3-4.)

- Sept. 9, 2014: Blue Spike's Claim Construction Brief confirmed the Giovanni Abstraction Machine was advertised but that Blue Spike "never produced an actual product." (Case No. 12-cv-499, Dkt. No. 1753 at 4, n.1.)

- Sept. 2014: Blue Spike's '308 Patent Tutorial reiterated, "Blue Spike advertised the Giovanni Abstraction Machine but did **not create** or sell it." (Case No. 12-cv-499, Blue Spike's '308 Claim Construction Tutorial.)

Nonetheless, despite these repeated declarations that the GAM does not exist, Audible Magic persisted in using the '308 Patent counterclaim to exert leverage over Blue Spike until the '308 was threatened by Blue Spike's summary judgment request.

2

## LEGAL STANDARD

A plaintiff may not dismiss an action without a court order if the opposing party has, *inter alia*, already filed an answer. Fed. R. Civ. Pro. 41(a)(1)(A)(i). Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. Pro. 41(a)(2). "The primary purpose of Rule 41(a)(2) is to prevent voluntary dismissals which unfairly affect the other side." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002) (internal quotations omitted). Therefore, it is the Court's responsibility to "carefully monitor Rule 41(a)(2) voluntary dismissals to insure that they do not engender abuse." *Manshack v. Southwestern Electric Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990).

In considering a Rule 41(a)(2) motion, "the district court should first ask whether an unconditional dismissal will cause the non-movant to suffer plain legal prejudice." *Elbaor*, 279 F.3d at 317. Because there "is no single formula for balancing a court's discretion on a Rule 41(a)(2) determination," courts may consider a number of factors in determining whether a party will suffer legal prejudice. *Oxford v. Williams Cos.*, 154 F. Supp. 2d 942, 951 (E.D. Tex. 2001). A non-exhaustive list of factors includes,

> whether the suit is still in the pretrial stages; whether the parties have filed numerous pleadings and memoranda, have attended conferences, and whether prior court determinations were adverse to the plaintiff; or whether hearings have been held, whether any defendants have been dismissed on summary judgment, and whether the parties have undertaken significant discovery.

*Id.* at 951-52 (internal citations omitted). If the Court determines that the non-movant will suffer plain legal prejudice, the Court must either (1) "deny the motion outright," or (2) "craft conditions that will cure the prejudice." *Elbaor*, 279 F.3d at 318.

3

ARGUMENT

### III. AUDIBLE MAGIC'S '308 COUNTERCLAIM SHOULD BE DISMISSED WITH PREJUDICE.

Audible Magic's counterclaim must be dismissed with prejudice for a number of reasons. First, this case has proceeded too far. *See Freeny v. Apple Inc.*, 2014 U.S. Dist. LEXIS 139189, *5 (E.D. Tex. Oct. 1, 2014) (discussing case in which "district court had abused its discretion by granting the plaintiff's motion to dismiss without prejudice where the action had been pending for 18 months and extensive litigation had been conducted"). Blue Spike informed Audible Magic repeatedly that the GAM was not an actual product, but Audible Magic delayed seeking a voluntary dismissal until it could no longer use its counterclaim as leverage. Second, Audible Magic filed its request for dismissal in response to Blue Spike's letter brief request to have the '308 counterclaim dismissed with prejudice. *See Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 509 (5th Cir. 2007). It is improper for Audible Magic to escape a negative determination in this manner. Third, Blue Spike has spent considerable time and money defending against the '308 counterclaim, including deposition preparation and questioning, claim construction briefing and design of an animated tutorial, expert review of the '308 Patent, and so on. Audible Magic should not be allowed to use the '308 Patent to drive up Blue Spike's costs and then abandon it when it has outlived its usefulness. *See Freeny*, 2014 U.S. Dist. LEXIS 139189, at *8.

The Report and Recommendation ("R&R") gives too much credence to Audible Magic's purported confusion. The Court noted, "Audible Magic asserts Blue Spike made inconsistent statements regarding the existence of the GAM, which hampered Audible Magic from determining the exact extent of Blue Spike's infringement." R&R at 4. Audible Magic's confusion is specious. For one, Audible Magic claims it was getting

conflicting statements from Blue Spike's counsel about whether source code for the GAM exists. *See* R&R at 4. The record shows otherwise. Blue Spike first agreed to a source code review "to the extent [the source code] exists." Case No. 12-cv-499, Dkt. No. 1911-13, Ex. 11 at 2. Blue Spike later followed up with an email confirming, "[t]here is no code to produce." Case No. 12-cv-499, Dkt. No. 1617-13, Ex. 12 at 1. (Audible Magic failed to inform the Court of this separate email.) Blue Spike then responded to Audible Magic's frivolous motion to compel with further clarification: "Additionally, Blue Spike has explained to Audible Magic repeatedly that *it has no source code in its possession*. Now it is possible that Mike Berry, co-inventor and leader of the engineers and coders for Blue Spike, Inc, created source code . . . . However, such code would be in Mike Berry's possession." Case No. 12-cv-499, Dkt. No. 1617 at 6-7, n2 (emphasis added). Blue Spike clearly communicated it did not have source code to produce.[2]

Audible Magic's supposed confusion regarding whether the GAM was an actual product is equally transparent. *See* R&R at 4. Blue Spike informed Audible Magic repeatedly that the GAM did not exist. But Audible Magic says it was confused by alleged "affirmative statements" in Blue Spike's "claim construction technology tutorial" that seemed to imply the GAM existed. Case No. 12-cv-499, Dkt. No. 1911 at 5-6. These "affirmative statements" were merely descriptions of how the GAM was advertised to perform. If those statements caused any confusion, surely that confusion was dissipated later when the same tutorial affirmed, "Blue Spike advertised the Giovanni Abstraction

---

[2] Equally unambiguous is the lack of financial information to support the damages element of Audible Magic's frivolous counterclaim for infringement of the '308 Patent. Audible Magic had possession of Blue Spike's entire production for months, which showed that Blue Spike did not derive any revenue from sales of the GAM. Audible Magic could not have hoped to prove infringement without any evidence of damages, and it is objectively unreasonable for Audible Magic to proceed in its counterclaim without such evidence.

5

Machine but did **not create** or sell it." Case No. 12-cv-499, Blue Spike's '308 Claim Construction Tutorial. And that position was reiterated once again in Blue Spike's claim construction brief, which, referring to the GAM, noted that Blue Spike "never produced an actual product." Case No. 12-cv-499, Dkt. No. 1753 at 4, n1. Audible Magic was not confused.

The Report and Recommendation incorrectly adopted Audible Magic's confusion defense and was "not persuaded that Blue Spike has expended significant effort in preparing for trial on Audible Magic's patent counterclaim." R&R at 5. This position seems predicated on the fact that "Blue Spike did not challenge the validity of the '308 patent." *Id*. Thus, the Report and Recommendation found Audible Magic's "need for dismissal without prejudice outweighs Blue Spike's concern of its possibly having to face trial later." *Id*. But the Report & Recommendation overlooks a number of very prejudicial facts: (1) Blue Spike asked to file a motion for summary judgment to dismiss the '308 counterclaim with prejudice; (2) Blue Spike engaged experts to review the '308 patent even though it did not file an invalidity motion for summary judgment; (3) Blue Spike showed Audible Magic was not truly confused; (4) this case has proceeded far too long for voluntary dismissal to be appropriate; and (5) Blue Spike spent considerable time and expense on depositions, claim construction briefing, a claim construction tutorial, claim construction argument, exchanges with opposing counsel, and trial preparation related to the '308 Patent. Blue Spike has been prejudiced by Audible Magic's improper assertion of the '308 Patent and untimely request to voluntarily dismiss it.

Both parties seek for this claim to be dismissed, and Blue Spike does not wish to burden the Court with protracted litigation on a counterclaim that should never have been

6

brought in the first place. Because Blue Spike has been prejudiced, dismissal without prejudice is not appropriate. Instead, the Court must "craft conditions to cure the prejudice" suffered by Blue Spike. *Elbaor*, 279 F.3d at 317-318. Dismissal with prejudice is an acceptable remedy. *Id*. at 320 ("Rule 41(a)(2) clearly provides authority to the district court to grant dismissal on the condition that it be with prejudice.").

## CONCLUSION

Audible Magic improperly asserted the '308 Counterclaim, used it to exert pressure on Blue Spike, and now untimely seeks to dismiss it without prejudice. Dismissal without prejudice is improper. Blue Spike respectfully asks the Court to sustain Blue Spike's objection and dismiss the '308 Counterclaim <u>with</u> prejudice.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Molly A. Jones
  California Bar No. 301419
  mjones@ghiplaw.com
GARTEISER HONEA, P.C.
119 W. Ferguson Street
Tyler, Texas 75702
(888) 908-4400
(888) 908-4400 fax

*Counsel for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed under seal electronically via the Court's Electronic Filing System on March 18, 2016 in compliance with Local Rule CV-5(a)(7). Pursuant to Local Rule CV-5(a)(7)(C), the foregoing sealed document was promptly served via file transfer protocol on all counsel of record in this matter who are deemed to have consented to electronic service. *See* Local Rule CV-5(a)(2)(A).

   /s/ Randall Garteiser   
Randall Garteiser

**CERTIFICATE OF AUTHORIZATION TO SEAL**

The undersigned certifies that pursuant to Local Rule CV-5(a)(7)(A), authorization to seal the foregoing document, exhibits, and declarations has been previously granted by the Court's Protective Order, entered on January 22, 2014.

   /s/ Randall Garteiser   
Randall Garteiser