# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>　*Plaintiff*<br>v.<br><br>AUDIBLE MAGIC CORPORATION<br>　*Defendant*<br><br><br>AUDIBLE MAGIC CORPORATION,<br><br>　*Counterclaim Plaintiff*<br>v.<br><br>BLUE SPIKE, LLC, BLUE SPIKE, INC.<br>and SCOTT A. MOSKOWITZ<br><br>　*Counterclaim Defendants* | §§§§§§§§§§§§§§§§§§§§§<br><br>Civil Action No. 6:15-CV-00584-RWS-CMC |

**AUDIBLE MAGIC CORPORATION'S OPPOSITION TO BLUE SPIKE'S OBJECTION TO REPORT AND RECOMMENDATION GRANTING AUDIBLE MAGIC'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF COUNTER-CLAIM 12**

**FILED UNDER SEAL**

**I.      INTRODUCTION**

Audible Magic's patent counterclaim has been in good faith, Audible Magic promptly sought dismissal and Blue Spike is not prejudiced.  The Court should affirm the Report and Recommendation (R&R) and grant Audible Magic's motion to dismiss, without prejudice.

**II.     BLUE SPIKE'S OFFER FOR SALE INFRINGED AUDIBLE MAGIC'S PATENT**

Audible Magic's patent counterclaim against Blue Spike's GAM product has been in good faith.  Blue Spike concedes most elements of Audible Magic's '308 Patent are present.  Blue Spike's only argument is that the GAM offer purportedly does not show a "client media player" or a "display." [Obj. p. 1]  Blue Spike's offer included both elements.[1]  Blue Spike never submitted *any* expert opinions to establish non-infringement or challenged the patent's validity.  Infringement is undisputed.  *See SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 U.S. Dist. LEXIS 91693, *87-88 (E.D. Tex. 2011) (defendant "submitted no expert report of its own" on non-infringement; summary judgment of infringement entered); *Galderma Labs. v. Paddock Labs.*, 2011 U.S. Dist. LEXIS 32196, *18 (N.D. Tex. 2011) (infringement found where, among other things, infringer did not produce rebuttal expert report).  Blue Spike's unsupported attorney argument to the contrary are unavailing.

After learning of the GAM on Blue Spike's website, Audible Magic was well within its rights to assert a patent counterclaim.  Audible Magic's history with Scott Moskowitz and Blue Spike is detailed in Audible Magic's opposition to Blue Spike's motion for summary judgment. [Dkt. 23]  Mr. Moskowitz watched the technological developments of Audible Magic's predecessor, Muscle Fish,

---

[1] GAM was offered as a "content recognition" system which recognized media content and, thus, necessarily disclosed display to a user.  GAM description included analysis of signal characteristics of a playing song, and thus included a "client media player." [*See* Dkt. 23-44, Ex. 42, 4:7-15, 4:51-52, 8:34-40, 13:39-45 (GAM implementation by "radio station or Internet streaming company"; songs are "broadcast to listeners.")]  GAM description disclosed display of identifying information through "serial output which can be subsequently processed to determine the total number of times various signals have been detected." [*Id.* at 9:13-19]  GAM carried out Blue Spike's '175 Patent, which was incorporated as part of the offer. [*See* Dkt. 23-75, Ex. 73 (marketing asserting that '175 patent was "powering its own products such as The Giovanni Abstraction Machine"), Dkt. 23-81, Ex. 79 ("purchase" page for GAM describes product quoting paragraph from the patent)]

1

regarding content recognition technology.  After Blue Spike's digital watermarking approach failed to gain industry traction, Moskowitz unfortunately turned attention to leveraging and usurping ideas learned from Muscle Fish.  [*Id.*]  Audible Magic's good faith patent counterclaim sought to prevent Moskowitz from extending this injury with an infringing product.

An offer for sale is actionable and Audible Magic had every right to seek an injunction.  However, in the middle of the litigation, Blue Spike discontinued its infringing offer.  Blue Spike served interrogatory responses in December 2014 confirming it was no longer offering GAM.  [Dkt. 12-12, Ex. 10 at 11].  At that point, while Audible Magic was (and is) prepared to proceed, rather than burden the Court with an additional claim, it sought dismissal without prejudice.  *See e.g. Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1275 (5th Cir. 1990) (dismissal without prejudice based on facts learned during discovery); *Greyhound Lines v. Younan Props., Inc.*, 2008 U.S. Dist. LEXIS 44802 (N.D. Tex. 2008) (dismissing without prejudice where circumstances underlying claim changed).  Blue Spike has not even put on non-infringement or invalidity defenses, conceding the claim's merit.  Thus, Blue Spike's requested relief—dismissal *with* prejudice—is inappropriate.  [Obj. at 6-7]  If Blue Spike were to continue an infringing offer or salle the GAM, Audible Magic is entitled to pursue its rights in the future.  Fifth Circuit authority establishes that such a potential suit is not a barrier to dismissal without prejudice.  *See Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317-18 (5th Cir. 2002) ("mere prospect of a second lawsuit" not basis to deny voluntary dismissal).

### III. BLUE SPIKE'S CONFLICTING STATEMENTS REGARDING GAM

Audible Magic reasonably relied on Blue Spike's definitive (but now known to be false) statements that it actually had the "GAM" product.  Audible Magic diligently pursued discovery to investigate those statements.  As information came to light calling into question whether the product existed, Audible Magic sought to definitively confirm the facts, but received conflicting responses.  Blue Spike tries to mask its inconsistencies, cherry-picking its statements.  But that does not resolve the issue.

2

Audible Magic does not dispute that Blue Spike made statements calling into question GAM's existence. But it also made statements—persistent commercial statements to the market and formal discovery responses—indicating that the product *did* exist. [*See generally*, Dkt. 12 at 1-6]

First, throughout the case, Blue Spike stated on its website that, for $10,000, one could "Add to Cart" to obtain a GAM. [Dkt. 12-3, 12-10] Blue Spike represented on its website that "Blue Spike, LLC is a Texas-based software company **with several software products, such as The Giovanni® Abstraction Machine™**" and that "Moskow[it]z claims this technology has powered his Blue Spike products since the turn of the century." [Dkt. 23-74 (emphasis added)] Blue Spike represented the technology described in its '175 patent was "**powering its own products such as the Giovanni® Abstraction Machine™**." [Dkt. 12-5 (emphasis added)] This Court recently issued an order finding that these statements could be found to deceive consumers. [Dkt. 77 at pp. 29-35] Likewise, Audible Magic had every right to reasonably rely on these statements.

The initial scheduling conference did not occur until March 5, 2014. [6:12-cv-499, Dkt. 1316] No events involving the patent counterclaim occurred until after that point. In May 2014, Blue Spike's counsel made a vague telephonic suggestion that there may not be a GAM. Audible Magic attempted to formally confirm and explored whether the counterclaim could be resolved early, if Blue Spike would refrain from the infringing offer for sale. [Dkt. 12-17] Blue Spike did not even respond. Audible Magic's counterclaim was not about "leverage." [Obj. at pp. 1-2] It has always been aimed at preventing offer and sale of an infringing product. Audible Magic's May 2014 effort to efficiently resolve the matter and achieve that outcome demonstrates this fact.

In May and June 2014, as discovery began, Blue Spike offered to produce GAM code. [Dkt. 12-13 at p. 6 (May 9: agreeing to make code available for review)] Then, it suddenly changed course, providing conflicting explanations. At one point Blue Spike stated there was no code, but thereafter vaguely asserted that the GAM code was in possession of Moskowitz's co-inventor Michael Berry.

3

[6:12-cv-499, Dkt. 1617-13 (stating there is no code to produce), 1652 at n.2 (suggesting GAM code in possession of Michael Berry)]  It was incomprehensible that Blue Spike could make the website statements offering GAM for $10,000, yet somehow place code in a third party's possession.  This suggested that Blue Spike had the code but was refusing to produce it, transferred the code to a third party to avoid discovery, or was itself selling a product created by Mr. Berry.[2]

Given vague and conflicting interactions, in July 2014 Audible Magic promptly served requests for admission.  Blue Spike <u>did not</u> admit the GAM did not exist:  **RFA 4**: "Admit that the Giovanni Abstraction Machine, offered on Blue Spike's Myshopify Webpage until at least December 2013, never existed."  Blue Spike "DENIED" that request.  **RFA 5**: "Admit that the Giovanni Abstraction Machine, offered on Blue Spike's Myshopify Webpage until at least December 2013, never existed in any tangible form that could actually be purchased.  Blue Spike "DENIED" that request as well.  [*See* Dkt. 12-14, Ex. 12, 3-4]  Blue Spike also <u>did not</u> admit that there was no GAM source code, indicating that this code existed:  **RFA 2**: "Admit that Blue Spike Inc. has never written any source code relating to the Giovanni Abstraction Machine."  Blue Spike "DENIED" that request.  **RFA 3**: "Admit that Blue Spike Inc. has never possessed any source code relating to the Giovanni Abstraction Machine."  Blue Spike also "DENIED" that request.  [*Id.*, 2-3]  In response to an interrogatory, Blue Spike stated:  "Giovanni Abstraction Machine was a software product offering that could be utilized to create abstracts that would be utilized in a system to monitor signals."  [Dkt. 12-7, Ex. 5 at 5.]  In view of these denials, Audible Magic reasonably continued to pursue discovery.

During the fall of 2014, Blue Spike continued its conflicting representations regarding GAM.  For example, during its claim construction tutorial, Blue Spike represented the functioning of the GAM

---

[2] Blue Spike suggested it was hiding the ball: "Now it is possible that Mike Berry, coinventor and leader of the engineers and coders for Blue Spike, Inc, created source for the service later offered on Shopify by Blue Spike LLC known as Giovanni Abstraction Machine." [6:12-cv-499, Dkt. 1652 n.2]

4

code: (1) "Compare this to the Giovanni Abstraction Engine, which creates abstracts, not fingerprints...", (2) "The Giovanni Abstraction Engine returns useful data by comparing abstracts...", (3) "Compare this to the Giovanni Abstraction Engine, which does not rely on a predefined portion of a signal to create its abstracts...", (4) "Compare this to the Giovanni Abstraction Machine, which requires no media player." [*See* Blue Spike's Claim Construction Technology Tutorial Video]  Blue Spike could only make these affirmative statements if the GAM was an operating machine.  Blue Spike also admitted it offered the product for sale (an infringing act), but suggested it did not itself "produce" or "create" it.  [12-cv-499, Dkt. No. 1753 at n. 1; Blue Spike Claim Construction Tutorial]

Given these conflicting assertions, the clear website statements that Blue Spike had a GAM produc, its denial of requests for admission that there was no GAM product or code, Blue Spike's suggestion that GAM code was in possession of Michael Berry and that he had produced or created GAM for Blue Spike, it was entirely proper for Audible Magic to pursue the depositions of Mr. Moskowitz and Mr. Berry to establish the facts.  The reason for Blue Spike's refusal to definitively confirm the GAM product did not exist is evident.  Blue Spike wanted to keep open the possibility of telling the jury that it had a product (even though the whole thing turned out to be a fabrication).

IV. **AUDIBLE MAGIC SOUGHT DISMISSAL AS SOON AS IT HAD BINDING EVIDENCE THAT THE GAM PRODUCT DOES NOT EXIST**

Blue Spike asserts falsely that Audible Magic's request was in response to a summary judgment motion. [Obj. at p. 4]  This is simply not true.  Rather, in January 2015, Audible Magic concluded the deposition of Scott Moskowitz, where he admitted that there was not, and never had been, a GAM product.  On February 10, 2015, Audible Magic deposed Michael Berry, whom Blue Spike indicated built the GAM offered on its website and told Audible Magic to take discovery of regarding its GAM code.  [*See* 6:12-cv-499, Dkt. 1652, n. 2]  Mr. Berry unequivocally testified there was no GAM product and that he had not provided such to Blue Spike. [*See, e.g.*, Dkt. 12-15, Ex. 13]

5

Promptly thereafter, on February 18, 2015, Audible Magic's counsel initiated a meet and confer, inquiring whether Blue Spike would oppose the motion for voluntary dismissal, having at that point learned that Blue Spike removed the GAM offer from its website and in view of the deposition testimony. Blue Spike's counsel called Audible Magic's counsel at 4:30 pm CST on February 18 to discuss the matter. Blue Spike seemed to be considering the proposal, so the parties tabled discussion until the following day, to see if agreement could be reached. That evening, out of the blue, Blue Spike filed a letter brief seeking leave to file a summary judgment motion. [6:12-cv-499, Dkt. 1910] Audible Magic filed its motion for voluntary dismissal on February 19.

Thus, contrary to Blue Spike's assertion, Blue Spike filed its letter brief *after* Audible Magic offered voluntary dismissal, based on Blue Spike's removal of the offer for sale and what was learned at the depositions. This is clearly not a case where there was any adverse ruling prompting the request, and the cases Blue Spike cites in that regard are inapposite. [Obj. p. 4, citing *Hyde*] Rather, quite the opposite is true. Infringement and validity are uncontested, demonstrating the claim's merit. But, given that Blue Spike removed its infringing website offer and sworn testimony decisively established there was no GAM, Audible Magic elected to streamline the proceedings.

V.      **GRANTING THE MOTION WILL NOT PREJUDICE BLUE SPIKE IN ANY WAY**

Blue Spike's obfuscation of whether it had a GAM product was part of its litigation strategy. The timing of this motion flows directly from that obfuscation. Blue Spike should not be able to claim a benefit from its conduct. Faced with Blue Spike's inconsistent statements about the product, Audible Magic attempted to engage Blue Spike about dismissal early in the case. Blue Spike refused to even respond. As such, Blue Spike should not be rewarded for deceptive statements. *See e.g. Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1275 (5th Cir. 1990) (on motion to dismiss defendant cannot claim expenses and effort where it chose to reject plaintiff's offer that would have avoided them)

There is no particular time in which to file a motion to dismiss. *See e.g. John M. Crawley,*

*L.L.C. v. Trans-Net, Inc.*, 394 Fed. App'x 76 (5th Cir. 2010) (no prejudice where, similar to instant case, only seven months elapsed between start of litigation events and no dispositive motions had been filed); *Espinoza v. Nacher Corp.*, 2007 U.S. Dist. LEXIS 38233, *8 (E.D. Tex. 2007) (same; six months after substantive events began and before close of discovery). Further, "there is no single formula for balancing a court's discretion on a Rule 41(a)(2) determination." *Greyhound Lines, Inc.*, 2008 U.S. Dist. LEXIS 44802, *5. Rather, the Court has authority to exercise its discretion, under the facts of a particular case. None of the cases Blue Spike cites involve the peculiar situation of a defendant hiding the ball regarding the accused product and attempting to keep alive the perception that it had such a product, simultaneously suggesting it did not. This is a most unusual case and precisely the type of situation in which the Court may exercise its sound discretion and dismiss without prejudice. *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317-18 (5th Cir. 2002).

There is no "plain legal prejudice" to Blue Spike. That Blue Spike did not oppose infringement or validity demonstrates how little effort was given. Also, Blue Spike sets the bar too high. When a party only drops a single claim, rather than an entire "action," dismissal is assessed under the liberal Rule 15 standard, where amendment "shall be freely given when justice so requires." *Lowrey v. Texas A & M*, 117 F.3d 242, 245 (5th Cir. 1997); *Orthoflex. v. Thermotek*, 2011 U.S. Dist. LEXIS 107540, *3-7 (N.D. Tex. 2011) (assessing Rule 41 motion to dismiss single claim under Rule 15 standard)); *City of Alexandria v. CLECO Corp.*, 2010 U.S. Dist. LEXIS 1790, *11-12 (W.D. La. 2010) (dismissal of claims under Rule 15 after discovery, formally excluding "certain claims which have now been abandoned merely helps to streamline the progress of the litigation, and in no way burdens or prejudices [defendant]."); *Checkpoint v. Hangzhou Century*, 2012 U.S. Dist. LEXIS 82029 (N.D. Ohio 2012) (dismissing without prejudice where effect was to streamline litigation).

Blue Spike says it had to engage in claim construction and limited discovery. [Obj. at p. 6] If Blue Spike had engaged Audible Magic to clarify the existence and nature of the GAM, as invited in

7

May 2014, and if it had not continued to assert the existence of GAM in discovery responses, Blue Spike could have avoided these minimal activities.  Instead, Blue Spike sent conflicting messages to keep alive the possibility of telling the jury that it had a product.  To the extent this required discovery and led to discovery disputes, Blue Spike brought it upon itself.  Moreover, one round of substantive briefing and discovery does not rise to the requisite legal prejudice, particularly given that the claim construction could be used in any future suit.  *See Espinoza*, 2007 U.S. Dist. LEXIS 38233 at *8 (where defendant "has completed some discovery and filed a motion for summary judgment, the efforts expended and pendency of such a motion do not mandate the denial of [plaintiff's] motion because the underlying effort would likely prove useful in any future litigation.")

Blue Spike says it had to file a motion for summary judgment. [Obj. at p. 6]  It is not true.  As discussed, Audible Magic offered to voluntarily dismiss both in May 2014 and on February 18, 2015, prior to Blue Spike even submitting a summary judgment letter brief.  Blue Spike elected to file a motion for summary judgment, *after* Audible Magic raised voluntary dismissal.  Thus, again, Blue Spike brought that activity on itself, when it could have been avoided.  Blue Spike did not contest validity and failed to put in an expert report *of any type* regarding the patent (conceding infringement and validity).  Thus, Blue Spike's reference to "expert review" (Obj. at p. 6) by an undetermined expert, is massively overblown.  Moreover, because Audible Magic's patent is asserted prior art to Blue Spike's own patents, Blue Spike's expert had to review it anyway.  Further, Blue Spike only asked minimal questions regarding the patent during depositions.  Those questions would have been asked anyway, given that the patent is asserted prior art.  *See Swindler v. Metropolitan Life Ins. Co.*, 1996 U.S. Dist. LEXIS 17301 (E.D. La. 1996) (where defendant has to participate in discovery for independent reasons, it is not a basis of prejudice).

*     *     *

For these reasons (and those in the R&R) the Court should grant the motion to dismiss, without prejudice, or alternatively, grant leave to amend the infringement contentions and Audible Magic will

8

proceed.

Dated: March 23, 2016          Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

*Attorneys for Defendant Audible Magic Corp.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on March 23, 2016.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that authorization to file this document under seal was provided by the Protective Order entered in the previously consolidated action 6:12-cv-499.

*/s/ Eric H. Findlay*
Eric H. Findlay
