**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 6:15-cv-00584-RWS-CMC |
| AUDIBLE MAGIC CORPORATION, | |
| Defendant. | |
| AUDIBLE MAGIC CORPORATION, | |
| Counterclaim Plaintiff, | |
| v. | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC., and SCOTT A. MOSKOWITZ, | |
| Counterclaim Defendants. | |

**OPPOSED MOTION OF THE ELECTRONIC FRONTIER FOUNDATION TO INTERVENE AND TO UNSEAL COURT RECORDS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND ........................................................................................3

III.    ARGUMENT .................................................................................................................5

      A.     EFF Has Standing to Intervene to Vindicate the Public's Right of Access
           Under the First Amendment and Common Law..................................................5

      B.     EFF Satisfies Rule 24's Requirements for Permissive Intervention...................6

      C.     The First Amendment Requires Giving the Public, Including EFF, Access
           to Court Records Unless the Parties Can Show Compelling Reasons to
           Block Such Access............................................................................................10

      D.     The Public Would Benefit From Greater Understanding of Blue Spike's
           Claims and Audible Magic's Defenses..............................................................12

IV.     CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Baxter Int'l, Inc. v. Abbott Labs.*,
   297 F.3d 544 (7th Cir. 2002) ................................................................... 11

*Brown v. Advantage Eng'g*,
   960 F.2d 1013 (11th Cir. 1992) ................................................................. 6

*CBS Inc. v. Young*,
   522 F.2d 234 (6th Cir. 1975) ..................................................................... 6

*Davis v. East Baton Rouge Parish Sch. Bd.*,
   78 F.3d 920 (5th Cir. 1996) ............................................................... 5, 6, 14

*Deus v. Allstate Insurance Co.*,
   15 F.3d 506 (5th Cir. 1994) ....................................................................... 6

*Federal Election Commission v. Akins*,
   524 U.S. 11 (1998) .................................................................................... 6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) .................................................................................. 7

*Gannett Co. v. DePasquale*,
   443 U.S. 368 (1979) .................................................................................. 6

*Gemalto S.A. v. HTC Corp.*,
   754 F.3d 1364 (Fed. Cir. 2014) ................................................................ 8

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982) .................................................................................. 6

*Hicklin Eng'g, L.C. v. Bartell*,
   439 F.3d 346 (7th Cir. 2006) ................................................................... 12

*In re Beef Indus. Antitrust Litig.*,
   589 F.2d 786 (5th Cir. 1979) ..................................................................... 6

*In re Express-News Corp.*,
   695 F.2d 807 (5th Cir. 1982) ..................................................................... 5

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
   517 F.3d 220 (5th Cir. 2008) .......................................................... 10, 11, 14

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*,
   562 F. Supp. 2d 876 (S.D. Tex. 2008) ............................................. 10, 11, 12

*In re Violation of Rule 28(d)*,
   635 F.3d 1352 (Fed. Cir. 2011) ....................................................... 10, 12

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ............................................................................ 11

*Mills v. Alabama*,
384 U.S. 214 (1966) ........................................................................................ 14

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) ..................................................................................... 7

*Newby v. Enron Corp.*,
443 F.3d 416 (5th Cir. 2006) ........................................................................... 9

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ................................................................................ 5, 6, 10

*Ohio Willow Wood Co. v. Alps South*,
— F.3d —, No. 2015-1132, 2016 WL 683816 (Fed. Cir. Feb. 19, 2016) ............................. 13

*Oliner v. Kontrabecki*,
745 F.3d 1024 (9th Cir. 2014) ........................................................................ 15

*Proctor & Gamble Co. v. Bankers Trust Co.*,
78 F.3d 219 (6th Cir. 1996) ............................................................................ 11

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) ................................................................................ 5, 6, 10

*SEC v. Van Waeyenberghe*,
990 F.2d 845 (5th Cir. 1993) .......................................................................... 10

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) .......................................................................... 8

*United States v. Aldawsari*,
683 F.3d 660 (5th Cir. 2012) ............................................................................ 5

*United States v. Chagra*,
701 F.2d 354 (5th Cir. 1983) ............................................................................ 6

*United States v. Edwards*,
823 F.2d 111 (5th Cir. 1987) .......................................................................... 11

*United States v. Holy Land Found. For Relief & Dev.*,
624 F.3d 685 (5th Cir. 2010) ...................................................................... 5, 15

## Other Authorities

7C Charles Alan Wright & Arthur R. Miller, Federal Prac. and Proc. Civ. § 1911
(3d ed. 2007) .................................................................................................... 6

Bernard H. Chao & Derigan Silver, *A Case Study in Patent Litigation
Transparency*, University of Denver Sturm College of Law Legal Research
Paper Series, Oct. 2013, Working Paper No. 13-47, available at
http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2334417 ...................................... 3, 12

Brian T. Yeh, *An Overview of the "Patent Trolls" Debate*, Congressional
   Research Service (Apr. 16, 2013),
   http://www.fas.org/sgp/crs/misc/R42668.pdf ........................................................... 2

Colleen V. Chien & Michael Risch, *A patent reform we can all agree on*, Wash.
   Post (Nov. 20, 2015), https:// www. washingtonpost. com/ news/ in- theory/
   wp/ 2015/ 11/ 20/ why- do- patent- lawyers- like- to- file- in- texas/.................................... 2

*Constellation, LLC v. Avis Budget Grp., Inc.*,
   No. 5:07CV38, 2007 WL 7658921 (E.D. Tex. Oct. 30, 2007)............................................. 13

Edward Wyatt, *Obama Orders Regulators to Root Out 'Patent Trolls,'* N.Y.
   Times (June 4, 2013),
   http://www.nytimes.com/2013/06/05/business/president-moves-to-curb-
   patent-suits.html.......................................................................................................... 14

Electronic Frontier Foundation, Patents, https://www.eff.org/patent ............................ 8

Hon. Jack B. Weinstein, *Secrecy in Civil Trials: Some Tentative Views*, 9 J.L. &
   Pol'y 53 (2000) ............................................................................................................ 12

Hon. Timothy B. Dyk, *Ten Prescriptions for Patent Law*, 17 Stan. Tech. L. Rev.
   345 (2014).................................................................................................................... 8

Proposed Fed. Cir. R. 27(m)(1), available at http:// www. cafc. uscourts. gov/
   sites/ default/ files/ rules- of- practice/ ProposedRules/ federal_ circuit_ rules_
   public_ notice_ dec_ 2015. pdf.................................................................................... 12

Randall R. Rader, Colleen V. Chien, and David Hricik, *Make Patent Trolls Pay in
   Court*, N.Y. Times, June 4, 2013 ................................................................................. 14

Scott Sandell, *A venture capitalist's second thoughts on patent reform*, Wall St. J.
   (May 31, 2015), http:// www. wsj. com/ articles/ a- venture- capitalists-
   second- thoughts- on- patent- reform- 1433109152 ..................................................... 3

The Editorial Board, *Curbing Abusive Patent Lawsuits*, N.Y. Times (May 6,
   2015), http:// www. nytimes. com/ 2015/ 05/ 06/ opinion/ curbing- abusive-
   patent- lawsuits. html.................................................................................................... 2

The Venue Equity and Non-Uniformity Elimination Act of 2016 (VENUE Act),
   S. 2733, 114th Cong. (as introduced by S. Comm. on the Judiciary, Mar. 17,
   2016) ........................................................................................................................... 14

## **Rules**

Fed. R. Civ. P. 24 ............................................................................................................... 6, 7, 9

Fed. R. Civ. P. 26(c)(1)....................................................................................................... 11, 15

Proposed Intervenor the Electronic Frontier Foundation ("EFF") respectfully moves to intervene in this case for the limited purpose of securing an order (1) unsealing documents (the "Sealed Filings") as described in the attached Proposed Complaint in Intervention, (2) if the Court determines that any portion of the Sealed Filings should remain sealed, sealing or redacting those documents only to the extent necessary through the use of public-redacted filings, and (3) requiring that the fact of any document filing be disclosed on the public docket. A Proposed Complaint in Intervention is attached to the Declaration Vera Ranieri in Support of EFF's Motion for Leave to Intervene and Unseal ("Ranieri Decl.") as Exhibit 1.  Defendant Audible Magic, Corp. ("Audible Magic") does not oppose this motion so long as it will be permitted to file public-redacted versions of documents that limit public access to legitimately confidential information.  Plaintiff Blue Spike, LLC ("Blue Spike") opposes this motion in its entirety.

## I.    INTRODUCTION

EFF should not have to file this motion.  Court records are presumptively open.  EFF, or any other member of the public interested in this case, should be able to freely inspect court records and learn about parties' use of the judicial system, limited only by a party's ability to show good cause to prevent the public from accessing records.

Yet the records in this matter are remarkably opaque, to the extent that it is impossible to understand the parties' claims and defenses—and even this Court's rulings—to any degree of certainty.  Not only are the parties' briefs regarding summary judgment completely sealed, notice of this Court's Reports and Recommendations regarding those motions have been kept off the public docket altogether, suggesting their mere existence is a secret.  But even if there were some material that could be sealed properly, there can be no justification for sealing the Court's legal

analysis or parties' legal arguments.  The fact that so much material was withheld without the parties demonstrating any need for secrecy confirms that the current sealing of documents in this case cannot stand.

Blue Spike's assertion that it invented "signal abstracting" has generated a significant volume of filings and litigation in this district.  That this Court has recommended a finding of non-infringement as to one party is a significant finding.  Not only would this finding be of interest to other targets of Blue Spike's claims of infringement, but it is also of interest for the public at large.  Parties wishing to design-around and/or avoid infringement may benefit from the Court's recommendation as it may shed light of the scope of Blue Spike's claims.[1]

More importantly, patents and patent law, and specifically their misuse, are at the heart of ongoing public discussions organized at the highest levels of government about the proper function and judicial application of the U.S. patent system.[2]  Use and alleged abuse of the patent system has become the subject of heated journalistic and academic inquiry.[3]  The validity and infringement of the Patents-in-Suit and the possibility that a patentee might take advantage of the sealing process to assert frivolous claims are the types of issues of particular importance to the ongoing public review of a patentee's claims and of the functioning of the patent system more

---

[1] Of course, EFF is unaware of the exact content of this Court's Recommendation or the briefing that led to it.  EFF's discussion of what may be contained in the documents is based on its review of the publicly filed transcript of this Court's hearing on August 25, 2015, where Audible Magic's argument for non-infringement was heard.

[2] *See, e.g.*, Brian T. Yeh, *An Overview of the "Patent Trolls" Debate*, Congressional Research Service (Apr. 16, 2013), http://www.fas.org/sgp/crs/misc/R42668.pdf.

[3] *See, e.g.*, Colleen V. Chien & Michael Risch, *A patent reform we can all agree on*, Wash. Post (Nov. 20, 2015), https://www.washingtonpost.com/news/in-theory/wp/2015/11/20/why-do-patent-lawyers-like-to-file-in-texas/; The Editorial Board, *Curbing Abusive Patent Lawsuits*, N.Y. Times (May 6, 2015), http://www.nytimes.com/2015/05/06/opinion/curbing-abusive-patent-lawsuits.html.

broadly.[4]   Unfortunately, improper use of confidentiality designations in litigation prevents the type of investigation needed to fully understand the scope of the issues.   *See generally* Bernard H. Chao & Derigan Silver, *A Case Study in Patent Litigation Transparency*, University of Denver Sturm College of Law Legal Research Paper Series, Oct. 2013, Working Paper No. 13-47, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2334417.

## II.    FACTUAL BACKGROUND

This case concerns the scope and validity of U.S. Patent No. 7,346,472; U.S. Patent No. 7,660,700; U.S. Patent No. 7,949,494; and U.S. Patent No. 8,214,175 (collectively, the "Patents-in-Suit"), which Blue Spike claims cover "signal abstracting" broadly.   Blue Spike's claims are apparently so broad that it has brought over 90 suits for infringement of one or more of the Patents-in-Suit in this district alone, making this case of particular public interest.   Blue Spike's claims have also given rise to a countersuit from Audible Magic, including serious allegations of inequitable conduct, unjust enrichment, and unfair competition.

This case is a continuation of a previous matter, with this case being split off from the earlier matter.   *See* Order Vacating Consolidation, ECF No. 1 (filed June 24, 2015).   Since the order vacating consolidation and as of the date of EFF's Motion to Intervene, the docket has grown to 85 entries.   Of those 85 entries, an astounding *47* entries are entirely under seal, with no public-redacted version of any filing having been put on the record.

The documents filed under seal are extremely substantive filings.   These entries include three motions for summary judgment (*see* ECF Nos. 11, 13 & 14), a motion to strike a supplemental sur-reply (*see* ECF No. 47), a motion to exclude the testimony of a validity expert

---

[4] *See, e.g.*, Scott Sandell, *A venture capitalist's second thoughts on patent reform*, Wall St. J. (May 31, 2015), http://www.wsj.com/articles/a-venture-capitalists-second-thoughts-on-patent-reform-1433109152.

(*see* ECF No. 49), and all of their associated filings.   Even this Court's Reports and Recommendations have been hidden from public view.  *See* ECF Nos. 56, 77 & 78.

It is clear from the publicly available transcript in this case that an inventor of the Patents-in-Suit and sole owner of Blue Spike, Scott Moskowitz, made statements under oath during a deposition about the scope of his purported invention and claims.  *See* Hr'g Tr., ECF No. 58, Aug. 25, 2015 (hereinafter, "Transcript").  Mr. Moskowitz's statements are unavailable to the public as part of the deposition transcript.  Instead, the public's sole notice of these statements is through an admittedly incomplete picture presented from the Transcript of when this Court heard Audible Magic's Motion for Summary Judgment of Non-Infringement.

Also apparent from the few documents in this case that have been publicly filed is that this Court—possibly on the basis of Mr. Moskowitz's statements, if the oral argument is any indication—recommended granting Audible Magic's Motion for Summary Judgment of Non-Infringement.  However the contours of this Court's decision, the findings that let to its recommendation, and the parties' arguments and evidence leading up to that decision, have all been shielded from public view.  Indeed, only through careful scrutiny of the docket can it even be determined that this recommendation was made, as even the fact of the Recommendation, which apparently exists at ECF No. 56, *does not appear* on the public docket.  The entries on the public docket skip from ECF No. 55 to ECF No. 57, and only a later reference to this Court's Recommendation in ECF No. 62 puts the public on notice via the PACER docket that a decision was even rendered.  From a more recent filing, it is clear that this Court has subsequently issued additional Reports and Recommendations, yet again they are not available or even visible on the public docket.  *See* ECF Nos. 77 & 78 (referenced in publicly filed ECF No. 80).

## III.    ARGUMENT

### A.    EFF Has Standing to Intervene to Vindicate the Public's Right of Access Under the First Amendment and Common Law

EFF's right to intervene in this case, like the public's right to access the Sealed Filings, comes from the common law and the First Amendment.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) ("[T]he right to attend criminal trials is implicit in the guarantees of the First Amendment . . . .").  That right is afforded protection because "[p]ublic access is essential . . . to achieve the objective of maintaining public confidence in the administration of justice."  *Richmond Newspapers*, 448 U.S. at 595–96; *see also In re Express-News Corp.*, 695 F.2d 807, 808–09 (5th Cir. 1982) ("'The operation of the . . . judicial system itself . . .  is a matter of public interest, necessarily engaging the attention of the news media. . . . The public has no less a right under the First Amendment to receive information about the operation of the nation's courts than it has to know how other governmental agencies work and to receive other ideas or information.").

It is well-established that nonparties have standing to intervene to gain public access to sealed court documents.  *See Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 926–27 (5th Cir. 1996) (nonparty news agencies had standing to challenge court's confidentiality order); *see also United States v. Aldawsari*, 683 F.3d 660, 664 (5th Cir. 2012) (nonparty had standing to intervene to challenge gag order); *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (nonparty had standing to intervene to unseal court records);

*Brown v. Advantage Eng'g*, 960 F.2d 1013, 1016 (11th Cir. 1992).[5]   If nonparties could not intervene to challenge such orders, the First Amendment's protections would become meaningless.  *See CBS Inc. v. Young*, 522 F.2d 234, 237–38 (6th Cir. 1975) ("We are not persuaded by the argument that petitioner lacks standing because it is not a party to the civil litigation.  The fact remains that its ability to gather the news concerning the trial is directly impaired or curtailed.  The protected right to publish the news would be of little value in the absence of sources from which to obtain it.").

**B.     EFF Satisfies Rule 24's Requirements for Permissive Intervention**

Although not absolutely required, *see United States v. Chagra*, 701 F.2d 354, 360 (5th Cir. 1983), Rule 24(b) intervention is an appropriate mechanism to request public access to sealed court documents.  *See In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 788–89 (5th Cir. 1979) ("[T]he procedurally correct course for the [parties seeking modification of a protective order] would have been first to obtain status in the suits as intervenors"); 7C Charles Alan Wright & Arthur R. Miller, Federal Prac. and Proc. Civ. § 1911 (3d ed. 2007) ("courts generally

---

[5] EFF is aware that in the Fifth Circuit case of *Deus v. Allstate Insurance Co.*, 15 F.3d 506 (5th Cir. 1994), the court held that a third party does not have standing to intervene to unseal records, "absent some underlying right creating standing for the movants." *Id.* at 525.  That case is distinguishable, however, as EFF has asserted that right: a First Amendment right.  *See Nixon*, 435 U.S. at 597 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (internal footnotes omitted); *Richmond Newspapers*, 448 U.S. at 570–72.  Indeed, the Fifth Circuit subsequently recognized that the First Amendment confers standing on third parties who have been injured by confidentiality orders that limit the public's ability to receive information regarding an ongoing litigation.  *Davis*, 78 F.3d at 926–27.  Furthermore, since *Deus*, the Supreme Court decided *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).  There, the Supreme Court held that the inability to obtain information, which was withheld despite an alleged right to receive it, was sufficient to show injury-in-fact in order to satisfy Constitutional standing requirements.  *Id.* at 21.  Finally, to the extent *Deus* purports to restrict a challenge to limiting access to information filed with the courts, it is inconsistent with Supreme Court precedent that states that "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'"  *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401 (1979) (Powell, J., concurring)).

have interpreted their discretion . . . . broadly and have held that it can be invoked by nonparties who seek to intervene for the sole purpose of challenging confidentiality orders.").

Specifically, Federal Rule of Civil Procedure 24(b)(1)(B) provides that intervention may be permitted where the movant timely seeks intervention and "has a claim or defense that shares with the main action a common question of law or fact."   Thus, permissive intervention is appropriate when the intervention request is timely, the intervenor's 'claim or defense and the main action have a question of law or fact in common,' and granting intervention will not unduly delay or prejudice the original parties in the case.   As detailed below, all of the factors necessary for permissive intervention are met here.

**1.** EFF's motion is timely.  The public has an interest in better understanding the scope of Blue Spike's claims of patent rights for as long as the possibility of an infringement suit exists— at least 6 years after the patents expire.  After all, "[a] patent holder should know what he owns, and the public should know what he does not."   *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002).  The public, with reasonable certainty as to the scope of a patent, can avoid infringement liability, but without it falls into "[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (citation and quotation marks omitted).

Third parties thus have a powerful interest in understanding the scope of Blue Spike's patents claims in order to minimize their risk of infringement liability.  If the Sealed Filings would permit putative defendants to avoid infringement, that confirms they must be made public in furtherance of "the policy that legitimate design-around efforts should always be encouraged as a path to spur further innovation." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir.

2011).

The public's interest also extends to patent applications that Blue Spike is actively pursuing at the United States Patent and Trademark Office ("PTO").  *See* Ranieri Decl. Ex. 2 (U.S. Pat. App. No. 14/727,944).  Because at least one currently pending application is directly related to the patents-in-suit, the patentee's arguments about the scope of the patents at issue in this case may be relevant to claims yet to issue.  *See Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1371 (Fed. Cir. 2014) (patentee's arguments apply equally to the same claim limitation found in different, but related, patents).

EFF is also an appropriate intervenor.  EFF is a public interest organization that advocates for, among other things, reform of the patent system.  *See generally* Electronic Frontier Foundation, Patents, https://www.eff.org/patent.  As part of its public advocacy regarding patent policy, EFF publishes a widely-read blog which often relies on public court filings in order to disseminate information regarding the patent system to the public.  *See* Ranieri Decl. ¶¶ 6–11 (detailing EFF's participation in the patent reform debate).  EFF also files amicus briefs, submits public comments to the Patent and Trademark Office, and organizes public events.  *Id.* ¶¶ 12–15.  EFF's participation in the otherwise insular world of patent litigation has been positively recognized by a judge on the Court of Appeals for the Federal Circuit.  *See* Hon. Timothy B. Dyk, *Ten Prescriptions for Patent Law*, 17 Stan. Tech. L. Rev. 345, 352 (2014) (arguing that "Patent reform should include efforts to broaden the base of participation and public involvement in the patent system as a whole. . . . An insular community, out of the public spotlight, is one that will have potential problems" and noting EFF's participation).[6]

---

[6] Available at https://journals.law.stanford.edu/sites/default/files/stanford-technology-law-review/online/tenprescriptions_0.pdf.

Thus, as part of its position shining a light on potentially abusive patent litigation tactics, EFF believes that the public should receive as much information as possible from all sources, including the courts, regarding Blue Spike's (or indeed any patent owners') claims and their legitimacy.  The public needs to know if Blue Spike is burdening the court system with exhausted or frivolous lawsuits merely to pressure defendants into settling.  These interests satisfy Rule 24(b)(2)'s "claim or defense" requirement, which is construed liberally.  These interests also show how EFF and the public's interests in open court proceedings are not adequately represented by the parties to this suit.  The parties, who already have access to materials, are not incentivized to file public-redacted versions of documents for public inspection.  And although Audible Magic has agreed to file public-redacted versions of its briefs and exhibits and does not as a general matter oppose broader disclosure of court records, Blue Spike apparently remains opposed to filing any documents that would reveal the substance of the legal and factual arguments raised by the parties in this case.

**2.** EFF has a claim or defense that shares common questions with the main action.  *See* Ranieri Decl. Ex. 1 (proposed Complaint in Intervention, as required by Federal Rule of Civil Procedure 24(c)).  As previously discussed, "[n]onparties to a case routinely access documents and records under a protective order or under seal in a civil case through motions for permissive intervention under Rule 24(b)(2)."  *Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006) (citing cases).

**3.** EFF's motion also does not unduly delay or prejudice the adjudication of the rights of any party.  EFF's motion is limited to specific docket entries and their associated exhibits, and only seeks access to judicial records that were improperly withheld from the public.  EFF's intervention does not require the parties or the Court to revisit substantive issues already decided.

Nor does it delay any decision on issues yet to be decided.  EFF has also limited its request to unseal to particular documents that would appear to be of a highly substantive nature and thus of the most interest to the public.

### C. The First Amendment Requires Giving the Public, Including EFF, Access to Court Records Unless the Parties Can Show Compelling Reasons to Block Such Access

Given the importance of public access, courts have recognized that "[t]here is a strong presumption in favor of a common law right of public access to court proceedings."  *See In re Violation of Rule 28(d)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011) (citing *Nixon*, 435 U.S. at 597–99); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (recognizing the common law presumption of public access to judicial documents).  That presumption must not be dismissed lightly given the dangers that come from restrictions on public access.  *See Richmond Newspapers*, 448 U.S. at 595 ("Open trials assure the public that procedural rights are respected, and that justice is afforded equally.  Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law.").  In this Circuit, it is an abuse of discretion for a district court to seal documents without first determining whether the rationale for sealing justifies depriving the public of access.  *See SEC*, 990 F.2d at 849–50.

That presumption applies to judicial records, including court decisions and filings on which those decisions rest.  *See id.* at 849; *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (applying presumption to court orders, docket minute entry, and related exhibit); *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008) (recognizing presumption of access to "pleadings, documents, affidavits, exhibits, and other materials filed by a party or admitted into evidence by the court. . . . that influence or underpin the judicial decision").  Other circuits have specifically classified documents filed in support of summary judgment briefing as judicial records that are

presumptively public.  *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) ("[T]he contested documents—by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law.").

The burden of overcoming the presumption of public access rests on the proponent of the sealing.  *See* Fed. R. Civ. P. 26(c)(1).  To meet this burden, the proponent must show that sealing serves "an overriding interest" that "is essential to preserve higher values [than the presumption of public access] and is narrowly tailored to serve that interest."  *United States v. Edwards*, 823 F.2d 111, 115 (5th Cir. 1987); *see also High Sulfur*, 517 F.3d at 230 (sealing is improper if it "protects no legitimate privacy interest that would overcome the public's right to be informed.").

Nor can the parties agree amongst themselves that material should be sealed, without the Court independently determining the records should be sealed.  *See In re Sealing*, 562 F. Supp. 2d at 890 (court records "may not be shielded from public view by mere agreement of the parties"); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) ("[M]any litigants would like to keep confidential the salary they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed.").  "A District Court cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made available to the public."  *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

Finally, even if a party may legitimately claim confidentiality in some information contained in a court filing, that does not justify completely sealing that entry from public scrutiny.  Even with documents implicating the most sensitive national security concerns, "[i]t is difficult to conceive any circumstance under which permanent sealing of the entire file, including

the order itself, could ever be justified. . . . Legitimate confidentiality interests will almost always be fully accommodated by redacting the troublesome words or passages." *In re Sealing*, 562 F. Supp. 2d at 894–95.   The Federal Circuit has explicitly cautioned against excessive sealing practices—for example, of a party's legal arguments—that "bespeak[] an improper casual approach to confidentiality markings that ignores the requirements of public access, deprives the public of necessary information, and hampers [a] court's consideration and opinion writing."  *In re Violation of Rule 28(d)*, 635 F.3d at 1360; *see also Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("[B]oth judicial opinions and litigants' briefs must be in the public record, if necessary in parallel versions—one full version containing all details, and another redacted version with confidential information omitted.").   Now, it has proposed strictly limiting the amount of information that can be sealed.  *See* Proposed Fed. Cir. R. 27(m)(1), available at http://www.cafc.uscourts.gov/sites/default/files/rules-of-practice/ProposedRules/federal_circuit_ rules_ public_ notice_ dec_ 2015. pdf ("A party seeking to mark confidential more than fifteen words must file a motion with this court establishing that the additional confidentiality markings are appropriate and necessary pursuant to a statute, administrative regulation, or court rule.").

### D.     The Public Would Benefit From Greater Understanding of Blue Spike's Claims and Audible Magic's Defenses.

In determining whether the parties have shown compelling interests or good cause to seal entire court records, this court should consider "the interests of litigants in other suits, the needs of regulatory agencies, concerns of public interest groups, and the interests of future [defendants]."  Hon. Jack B. Weinstein, *Secrecy in Civil Trials: Some Tentative Views*, 9 J.L. & Pol'y 53, 58 (2000).  *Cf.* Chao & Silver, *supra*, at 88–90 (explaining how greater access to patent litigation records is in the public interest).   Because of Blue Spike's assertion of infringement against numerous disparate entities' systems and apparatuses, the defendant in this case is not the

12

only party who is interested in whether Blue Spike's claims will succeed.  As Blue Spike would surely acknowledge, knowing how Blue Spike reads its claims will allow others to design-around Blue Spike's claims or otherwise avoid infringement.  This does not lead to the conclusion that the information may properly be designated confidential.  Instead, it counsels *for* unsealing, as it would permit "the public [to] better ascertain what [Plaintiff] believes is the scope of its patent," and "allow[] the public to avoid infringing activity and/or acquire a license."  *Constellation, LLC v. Avis Budget Grp., Inc.*, No. 5:07CV38, 2007 WL 7658921, at *3 (E.D. Tex. Oct. 30, 2007) (Craven, M.J.) (denying protection for infringement contentions).

The sealing of documents also implicates other parties' interests beyond just those concerned about infringing Blue Spike's patents.  Documents produced and created in litigation can be highly material to related proceedings at the Patent Office.  For example, the Federal Circuit recently held that a party engaged in inequitable conduct by failing to disclose facts learned during litigation that were contrary to positions taken at the Patent Office by counsel involved in a related re-examination proceeding.  *See Ohio Willow Wood Co. v. Alps South*, — F.3d —, No. 2015-1132, 2016 WL 683816, at *9 (Fed. Cir. Feb. 19, 2016).

Blue Spike is currently applying for a patent at the United States Patent and Trademark Office that is directly related to the Patents-in-Suit.  *See* Ranieri Decl. Ex. 2 (U.S. Pat. App. No. 14/727,944).  If this Court, through its sealed Reports and Recommendations, has determined what is covered by the scope of Blue Spike's claims and inventions, that information is potentially material to patentability of the pending application.  Similarly, deposition testimony from the inventor regarding what he invented may also be relevant.

Furthermore, cases such as this one form part of a public debate about the state of the

U.S. patent system.[7]   Indeed, recently one bill was introduced that would severely limit the ability of patent owners to sue in this district.[8]   The level of sealing in this case suggests this bill is unsurprising, as "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *High Sulfur*, 517 F.3d at 230 (alteration in original).

Unsealing would help the public better understand the administration of justice in this district and whether venue reform is, in fact, needed.   This particularly implicates EFF's First Amendment and common law rights to gather news and report on the use of our judicial system to enforce patent rights.   *See Davis*, 78 F.3d at 923, 927–928.   Those are the very activities the First Amendment is meant to protect.   *See Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.").   EFF is a public interest organization, actively involved in the patent reform debate.   *See* Ranieri Decl. ¶¶ 3–18.   EFF relies on publicly available documents, including court filings, to inform the public about the debate and to report on abusive patent litigation tactics.   *Id.* at ¶¶ 9–11, 18.   EFF has written about Blue Spike's allegations of infringement in the past, and has a continuing interest in understanding Blue Spike's claims.   *Id.* at ¶¶ 10–11.   EFF has a particular interest in better understanding Blue Spike's enforcement efforts in light of Blue Spike's apparent participation in efforts to draw more cases to this district

---

[7] Randall R. Rader, Colleen V. Chien, and David Hricik, *Make Patent Trolls Pay in Court*, N.Y. Times, June 4, 2013, at A25; Edward Wyatt, *Obama Orders Regulators to Root Out 'Patent Trolls,'* N.Y. Times (June 4, 2013), http://www.nytimes.com/2013/06/05/business/president-moves-to-curb-patent-suits.html.

[8] The Venue Equity and Non-Uniformity Elimination Act of 2016 (VENUE Act), S. 2733, 114th Cong. (as introduced by S. Comm. on the Judiciary, Mar. 17, 2016).

based on a claim that this district is a "popular venue for patent cases due to its . . . plaintiff-friendly local rules[.]"    Ranieri    Decl.    Ex.    3    (Tyler4Tech.com,    available    at http://tyler4tech.com/ipfriendly.html and http://tyler4tech.com/members.html).

"[T]he power to seal court records must be used sparingly in light of the public's right to access[.]"  *Holy Land*, 624 F.3d at 690–91 (5th Cir. 2010) (holding that the court abused its discretion in sealing records where there was no countervailing interest in nondisclosure shown by the party advocating for sealing).  The parties, if they wish to maintain court records under seal, must show their rights to confidentiality overcome the strong competing right in public access.  To the extent they attempt do to so by relying on a previously issued protective order not specific to the materials sought to be sealed, such reliance would be misplaced.  *See* ECF Nos. 28, 43.  The law mandates that the Court require the parties—as proponents of numerous confidentiality designations—to meet their burden by affirmatively demonstrating the necessary particularized showing of harm before a court may designate a particular word, sentence, paragraph, or document as confidential and withhold it from the public record.  *See* Fed. R. Civ. P. 26(c)(1); *see also Oliner v. Kontrabecki*, 745 F.3d 1024 (9th Cir. 2014).

## IV.  CONCLUSION

For the foregoing reasons, the Court should allow EFF to intervene and order the parties to file public versions of each of the Sealed Filings, redacted only to conceal information that a party can show is legitimately confidential.

Dated:  March 29, 2016                By:  _____ */s/ Alexandra H. Moss* _____
                                           Alexandra H. Moss (admitted E.D. Tex.)
                                           (CA Bar No. 302641)
                                           DURIE TANGRI LLP
                                           217 Leidesdorff Street
                                           San Francisco, CA 94111
                                           Phone: (415) 362-6666
                                           Email: amoss@durietangri.com

Vera Ranieri (admitted E.D. Tex.)
(CA Bar No. 271594)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Phone: (415) 436-9333
Email: vera@eff.org

Attorneys for Proposed Intervenor
Electronic Frontier Foundation

## CERTIFICATE OF SERVICE

I, Alexandra H. Moss, hereby certify that on March 29, 2016 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Alexandra H. Moss*
Alexandra H. Moss

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for the movant, EFF, attempted in good faith to meet and confer with all parties to this action.  EFF successfully met and conferred with counsel for Audible Magic on March 17, 2016, and largely resolved any disagreement.

However, EFF's attempts to meet and confer with Blue Spike were unsuccessful.  On March 11, EFF informed Blue Spike of its request for public access to sealed court documents in the above-captioned matter.  On March 14, Blue Spike informed EFF that Blue Spike opposed EFF's request, and that it could meet and confer on March 17, 2016 between 2 and 5 p.m.  On March 17, Blue Spike confirmed that it could meet and confer that day at 4pm Central Time.  In none of those communications did Blue Spike mention or impose any condition necessary for Blue Spike and EFF to meet and confer.  Approximately 2 hours before the scheduled meet and confer, Blue Spike demanded to know whether EFF's counsel, Durie Tangri, was being compensated by EFF or any other party and who the real party in interest was.  Approximately 1 hour before the scheduled meet and confer, EFF's counsel wrote to Blue Spike to clarify that Durie Tangri represents EFF and that EFF is the real-party-in-interest, but declined to disclose the billing arrangement between EFF and its counsel as EFF views that information as irrelevant, but noted that EFF and Blue Spike could discuss the issue on the scheduled meet and confer.

Eight minutes before the previously scheduled meet and confer was set to begin, Blue Spike demanded that EFF make an entry of appearance and that absent such appearance, Blue Spike would not meet and confer with EFF as scheduled.  At that time, EFF could not have

17

complied with Blue Spike's untimely request that it make an appearance before the meet and confer.  Blue Spike then again reiterated its demand that EFF enter an appearance before the parties even attempted to resolve their dispute without court intervention, and stated it was free to meet and confer—if EFF met that condition—prior to 8 a.m. Pacific Time the next day (i.e. prior to 8 a.m. where EFF and its counsel are located).

EFF, in good faith, explained its desire to avoid court intervention and asked Blue Spike for any authority to support Blue Spike's position that it was entitled to know details of the relationship between EFF and its counsel.  EFF also, in good faith, stated that it was free to meet and confer with Blue Spike any time on March 18 and March 19 between the hours of 8 a.m. Pacific/10 a.m. Central and 5 p.m. Pacific/7 p.m. Central, and that it was willing to meet and confer with Blue Spike not only regarding EFF's proposed motions, but also regarding Blue Spike's demands.  In response, Blue Spike made unfounded accusations regarding EFF's interests in this matter and in unsealing, and demanded any meet and confer occur in person. Blue Spike provided no authority for demanding an in-person meet and confer in light of telephonic meet and confers being permitted by L-R. 7(h), despite a request from EFF.  A final request from EFF to provide authority for requiring an in-person meet and confer, and to resolve the issues amicably, went unanswered.  As such, there remains an open issue for the court to resolve.  A true and correct copy of the correspondence between EFF and Blue Spike is attached hereto as Exhibit 4.

*/s/ Alexandra H. Moss*
Alexandra H. Moss