UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| Blue Spike, LLC, | § |
|    *Plaintiff*, | § Case No. 6:15-cv-584-RWS |
| v. | § |
| Audible Magic Corporation, | § Jury Trial Demanded |
|    *Defendant.* | § |

**PLAINTIFF BLUE SPIKE, LLC'S OPPOSITION TO
EFF'S MOTION TO UNSEAL COURT DOCUMENTS [DKT. NO. 90]**

Plaintiff Blue Spike, LLC ("Blue Spike") hereby opposes the Motion to Unseal Court Records ("Mot.") (Dkt. No. 90) filed by the Electronic Frontier Foundation ("EFF"). EFF's Motion to Unseal must be denied because EFF's desire to access sealed documents does not warrant revising the protective order in this case. Also, the motion must be denied because EFF has a demonstrated history of harassing Blue Spike and attempting to improperly sway court decisions.

## BACKGROUND

### I. EFF HAS A DEMONSTRATED HISTORY OF HARASSING BLUE SPIKE.

EFF took aim at Blue Spike in September of 2014 when it published an article maligning Blue Spike in an attempt to influence this Court's forthcoming rulings. (Ex. 1.) In its article titled "Serial Litigant Blue Spike Wins September's Stupid Patent of the Month," EFF called Blue Spike a "serial litigant" and a "patent litigation factory," then disparaged the patents-in-suit as "nothing more than nebulous wish wash" consisting of "little more than legalese and hand waving." (Ex. 1.) EFF's article focused on pending

1

indefiniteness briefing, particularly concerning considering EFF's professed desire to merely "gather news and report" (Mot. at 14). EFF quoted Blue Spike's indefiniteness briefing, labeled it as "probably not a great litigation strategy," and offered its own opinion that the "defendants should win." (Ex. 1.) EFF published its article just as this Court prepared to deliberate on the very claim construction and indefiniteness issues discussed in EFF's article.[1] This attempt to sway a court's decision is just the sort of behavior that has worried other courts. (*See* Ex. 5.) (in which the 9th circuit recognized "[j]ust as a treatise on the law may influence the courts, public commentary that purports to be independent may have an influence on the court and/or their staff if only in subtle ways.")

Now, as Blue Spike prepares for trial and appeals a § 101 ruling before the Federal Circuit, EFF has once again published an article maligning Blue Spike and raises the stakes by filing the present motion. (Ex. 2.) EFF's recent article refers to Blue Spike in connection with EFF's "Stupid Patent of the Month" series and provides links to other articles accusing Blue Spike of being a "patent troll." (Ex. 2).

## II.     EFF RECEIVES FUNDING FROM GOOGLE.

EFF tells the Court "the defendant in this case is not the only party who is interested in whether Blue Spike's claims will succeed." (Mot. at 13.) At the moment, the only other party in active litigation over the patents-in-suit is Google, Inc. ("Google"). Blue Spike and Google are currently arguing § 101 positions to the Federal Circuit. (*See generally* Case No. 16-1054 (Fed. Cir. 2016).)

---

[1] Two fully-briefed motions were before this Court in September, 2014: the parties' claim construction positions and the defendants' motion for summary judgment on indefiniteness. On September 30, 2014, one day before this Court held its *Markman* hearing, EFF published its article. The Court issued recommendations for claim construction and the motion for summary judgment on October 16, 2014.

EFF and Google are not strangers. EFF admits its operations are "donor-funded" (Mot., Ranieri Decl., ¶ 3) but fails to note it receives substantial funding from Google. (*Oracle America, Inc. v. Google Inc.*, Case No. 3:10-cv-03561, Dkt. No. 1240 (Aug. 12, 2014 N.D. Cal.), *attached as* Ex. 3.) Google admits it "has contributed to the EFF for years" before Oracle filed suit against Google in August, 2010. (*See* 3.) And in 2011, EFF received a $1 million *cy pres* award by Google to settle a class-action lawsuit. (Ex. 3.) Google's $1 million donation represented over 17% of EFF's revenue that year. (Ex. 4.)

This is not the first time Google has been criticized for potentially exerting undue influence over EFF through its donations. (*See, e.g.,* Ex. 4, *Oracle America, Inc. v. Google Inc.*, Case No. 3:10-cv-03561, Dkt. No. 1238 (Aug. 20, 2014 N.D. Cal.), *attached as* Ex. 5.) In fact, in *Oracle v. Facebook*, Judge Alsup ordered Google to "identify[] all authors, journalists, commentators or bloggers who have reported or commented on any issues in this case and who have received money (other than normal subscription fees) from the party or its counsel during the pendency of this action)." (*Oracle America, Inc. v. Google Inc.*, Case No. 3:10-cv-03561, Dkt. No. 1229 (Aug. 7, 2014 N.D. Cal.), *attached as* Ex. 6.) After Google submitted its response, the court found "Google has failed to comply." (Ex. 5.) The Court demanded more information and noted "[j]ust as a treatise on the law may influence the courts, public commentary that purports to be independent may have an influence on the court and/or their staff if only in subtle ways." (Ex. 5.) Google responded by supplementing the list of commentators it funded, including EFF to which it admitted having donated for years. (Ex. 3.)

## LEGAL STANDARDS

"A court retains discretion to modify a protective order once it has been entered." *Oldendorff Carriers GmbH & Co., KG v. Grand China Ship. (Hong Kong) Co., Ltd., CA*, 2013 WL 1867604, at *2 (S.D. Tex. Apr. 22, 2013) (citing *In re United States' Motion to Modify Sealing Orders*, No., 2004 WL 5584146, at *2 (E.D.Tex. June 8, 2004)). "Four factors should guide its consideration of whether a modification is appropriate, including: (1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Id* (internal marks omitted). Also, courts have denied access where documents may be used for improper purposes, such as embarrassment and harassment or to reveal sensitive business information. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

## ARGUMENT

**I.     EFF'S DESIRE TO UNSEAL DOCUMENTS IS NOT SUFFICIENT TO ALTER THE PROTECTIVE ORDER.**

Court's consider four factors when determining whether a protective order should be modified to allow documents to be unsealed. Here, none of those factors weighs in favor of unsealing the documents. First, the protective order in this case is sufficiently narrow, allowing for documents to be sealed only if they "comprise technical, sales marketing, financial, or other sensitive information qualifying for protection under standards developed pursuant to Fed. R. Civ. P. 26(c)." (Ex. 7.)[2] Second, it was not

---

[2] Audible Magic filed a supplementary response in opposition to EFF's Motion to Unseal. *See* Dkt. No. 101. Blue Spike agrees with Audible Magic's position that EFF's proposed order must be rejected because "EFF has no basis to request immediate unsealing of documents properly filed with this Court, and it provides no process for the sealing of

foreseeable that modification would be requested to unseal these sensitive data; on the contrary, if a company's sensitive data cannot be sealed, it is hard to imagine what data *could* be sealed. Moreover, the documents in question are largely technical in nature, making it especially difficult to separate sensitive data from mere legal argument. Third, the parties relied on the protective order to divulge their company trade secrets. EFF's desire to publicly denounce Blue Spike using data Blue Spike reasonably believed was protected is inappropriate and prejudicial. Finally, EFF does not have good cause to unseal documents. Many of the arguments EFF allegedly seeks are accessible in underlying, unsealed letter briefs. Moreover, EFF's demonstrated history of harassing Blue Spike, as well as its agenda to act on Google's behalf, indicate motives favoring EFF and Google rather than the general public.

Allowing EFF to unseal documents will prejudice Blue Spike. This case is nearing trial and the parties will exchange pretrial disclosures in less than one month. If EFF's motion is granted, Blue Spike will be required to respond to EFF's complaint and coordinate redactions of no fewer than forty-seven documents. Granting EFF's motion will either diminish Blue Spike's ability to adequately prepare for trial or further delay proceedings which have proceeded nearly four years. Blue Spike's business and reputation will also be damaged by EFF's forthcoming ignoble blog posts. Additionally, granting EFF's motion will only allow EFF (and its benefactor, Google) to continue to improperly influence court decisions. For these reasons alone the Court must deny EFF's motion.

---

confidential materials." Dkt. No. 101 at 2. However, unlike Audible Magic, Blue Spike does not believe redaction will limit prejudice to the parties. EFF's desire to immediately unseal documents in total disregard to the proposed order, which the parties agreed to "in order to protect their confidential information" (Dkt. 101 at 2), is prejudicial and hasty.

## II. EFF'S INTENT IS LIKELY TO HARASS BLUE SPIKE.

EFF should not be allowed access to the sealed documents because it intends to harass Blue Spike. Courts have denied access where documents may be used for improper purposes, such as embarrassment and harassment or to reveal sensitive business information. *Nixon*, 435 U.S. at 598; *Bianco v. Globus Med., Inc.*, 2014 WL 3422000, at *1 (E.D. Tex. July 14, 2014) ("[C]ourts have denied public access to court records when necessary to ensure that those records are not used to gratify private spite or promote public scandal, or to ensure that court records are not used as sources of business information that might harm a litigant's competitive standing."). Here, EFF has already published multiple articles maligning Blue Spike, its founder, and the patents-in-suit. (*See* Exs. 1, 2.) As an advocacy organization, EFF has admitted it intends to change the patent landscape. And as a recipient of Google donations for years, EFF is incentivized to speak out against companies engaged in suits against Google. EFF should not be allowed access to documents for the mere purpose of harassing Blue Spike. For this reason alone, its motion should be denied.

## CONCLUSION

Blue Spike respectfully requests the Court deny EFF's motion to unseal documents.

Dated: May 2, 2016                                             Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
GARTEISER HONEA, P.C.

6

119 W. Ferguson Street
Tyler, Texas 75702
(888) 908-4400
(888) 908-4400 fax

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed and served electronically via the Court's Electronic Filing System on May 2, 2016 in compliance with Local Rule CV-5(a)(3)(A). As such, this document was served on all counsel who are deemed to have consented to electronic service. *See* Local Rule CV-5(a)(2)(A).

      /s/ Randall Garteiser
      Randall Garteiser