**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>AUDIBLE MAGIC CORPORATION,<br><br>    Defendant. | Civil Action No. 6:15-cv-00584-RWS-CMC |
| AUDIBLE MAGIC CORPORATION,<br><br>    Counterclaim Plaintiff,<br><br> v.<br><br>BLUE SPIKE, LLC, BLUE SPIKE, INC.,<br>and SCOTT A. MOSKOWITZ,<br><br>    Counterclaim Defendants. | |

**REPLY IN SUPPORT OF OPPOSED MOTION OF THE ELECTRONIC FRONTIER FOUNDATION TO UNSEAL COURT RECORDS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     ARGUMENT ......................................................................................................................1

       A.     Supreme Court Precedent Establishes a Presumption in Favor of Public Access to Court Documents, and the Burden Is on the Proponent of Sealing to Show That Sealing Is Warranted ............................................................1

       B.     Blue Spike Has Not Shown Good Cause to Seal Any Portion of the Sealed Filings ....................................................................................................................4

       C.     The Protective Order Does Not Permit Blue Spike to Seal Court Filings Without Cause.........................................................................................................7

       D.     Blue Spike's Allegations As to EFF's Intent Are Irrelevant and False .................9

III.    CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bianco v. Globus Medical Inc.*,
  2:12-CV-00147-WCB, 2014 WL 3422000 (E.D. Tex. July 14, 2014) ................................ 2, 3

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ........................................................................................ 8

*Hicklin Eng'g, L.C. v. Bartell*,
  439 F.3d 346 (7th Cir. 2006) ......................................................................................... 6

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  No. MDL-1446, 2009 WL 3247432 (S.D. Tex. Sept. 29, 2009) ..................................... 7

*In re Knoxville News-Sentinel Co.*,
  723 F.2d 470 (6th Cir. 1983) .......................................................................................... 2

*In re Violation of Rule 28(D)*,
  635 F.3d 1352 (Fed. Cir. 2011) ...................................................................................... 7

*Joy v. North*,
  692 F.2d 880 (2d Cir. 1982) ............................................................................................ 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ..................................................................................................... 4

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978) ......................................................................................................... 5

*Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co.*,
  No. C-12-074, 2013 WL 1867604 (S.D. Tex. Apr. 22, 2013) ....................................... 7

*Press-Enterprise Co. v. Superior Court of California*,
  478 U.S. 1 (1986) ......................................................................................................... 1, 2

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) ......................................................................................................... 1

*Snyder v. Phelps*,
  562 U.S. 443 (2011) ......................................................................................................... 5

*United States v. Holy Land Foundation for Relief & Development*,
  624 F.3d 685 (5th Cir. 2010) .......................................................................................... 9

*United States v. Ocwen Loan Servicing, LLC*,
  No. 4:12-CV-543 (E.D. Tex. Jan. 22, 2016), ECF No. 322 .......................................... 7

**Other Authorities**

Dennis Crouch, *Supreme Court to Review (and likely Reject) Laches as a Defense in Patent Infringement Cases*, PatentlyO, May 2, 2016, http://patentlyo.com/patent/2016/05/supreme-defense-infringement.html ............................. 6

Mag. Judge Stephen Wm. Smith, *Are US Courts Going Dark?*, Just Security, May 6, 2016, https://www.justsecurity.org/30920/courts-going-dark/ ................................. 6

Michael C. Smith, *101 Motion Denied / Motions to Strike Expert Testimony Denied*, EDTexweblog.com, Feb. 9, 2016, http://mcsmith.blogs.com/eastern_district_of_texas/2016/02/101-motion-denied-motions-to-strike-expert-testimony-denied.html ...................................................... 6

Ryan Davis, *Fed. Circ. Judges Detail Pet Peeves About Patent Litigants*, Law360, April 11, 2016, https://www.law360.com/articles/783099/fed-circ-judges-detail-pet-peeves-about-patent-litigants .............................................................. 3

**Rules**

Fed. Cir. Rule 27(m)(1 ................................................................................................ 3

Fed. Cir. Rule 28(d)(1) ............................................................................................. 3

Fed. R. Civ. P. 26(c)(1) ............................................................................................ 7

L.R. CV-5(a)(7)(A) ................................................................................................... 8

## I.      INTRODUCTION

In its opposition to EFF's Motion to Unseal, Blue Spike offers no legal authority for keeping the record in this case sealed.  Instead, it relies on irrelevant and meritless aspersions.  Blue Spike simply ignores that court documents are *presumptively* public under longstanding Supreme Court precedent.  It does not even attempt to justify the sealing of any portion of the Sealed Filings, including the entirety of Magistrate Judge Craven's Reports and Recommendations.  Although Audible Magic does not challenge the constitutional presumption of public access requiring good cause for sealing court documents, it also does not attempt to show good cause to seal any particular portions of the Sealed Filings.  Consistent with Supreme Court precedent, this Court should make the Sealed Filings accessible to the public unless Blue Spike and Audible Magic can and do make a sufficient showing of good cause for denying access to information that is presumed to be public.

## II.     ARGUMENT

### A.     Supreme Court Precedent Establishes a Presumption in Favor of Public Access to Court Documents, and the Burden Is on the Proponent of Sealing to Show That Sealing Is Warranted

Blue Spike's position—that EFF must show good cause for public access to court records—turns the law on its head.  The Supreme Court has repeatedly held that the party seeking to seal court documents bears the burden of overcoming the heavy presumption favoring public access to such documents.  In recognition of that principle, the Court held in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." *Id*. at 581.  The same principle applies with full force to pre-trial court proceedings.  As the Court made clear in *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1 (1986), "proceedings cannot be closed unless specific, on the record findings are made demonstrating that closure is essential to

1

preserve higher values and is narrowly tailored to serve that interest." *Id.* at 13–14 (quotation marks and citation omitted).  Blue Spike does not discuss, let alone attempt to distinguish, any of those authorities in its Opposition.

Indeed, even the non-binding authority cited by Blue Spike confirms that the presumption of public access must be overcome before court documents can be sealed.  *See* Pl.'s Opp'n to EFF's Mot Unseal Court Docs. at 6 ("Opp'n") (citing *Bianco v. Globus Medical Inc.*, 2:12-CV-00147-WCB, 2014 WL 3422000 (E.D. Tex. July 14, 2014)).  As the court explained in *Bianco*, "sealing judicial records, including the transcript of a trial or portions of the trial transcript, is contrary to the principle that judicial proceedings in this country are to be conducted in public." *Bianco*, 2014 WL 3422000, at *1.  As a result of that principle, "the party seeking to seal portions of the transcript bears a heavy burden of showing that a sealing order is necessary to protect important countervailing values, and only the most compelling reasons can justify non-disclosure of judicial records."  *Id.* (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)) (internal quotation marks and alteration omitted).

Blue Spike ignores the actual holding of *Bianco*.  Critically, the court refused the parties' request to seal the entire trial transcript.  In particular, the court held that information disclosed in other filings or transcripts available to the public could not be sealed—*even if* that information would otherwise qualify for confidential treatment.  For that reason, the court only sealed information related to trade secrets underlying the jury verdict that was not disclosed in other filings or transcripts that were part of the public record.  *See id.* at *4.  As *Bianco* shows, if the public already has access to information contained in the Sealed Filings, there can be no justification for keeping that information sealed.  Thus, Blue Spike's assertion that "[m]any of the arguments EFF allegedly seeks are accessible in underlying, unsealed letter briefs," Opp'n at

2

5, actually shows that sealing is *not* justified.  As detailed in EFF's Complaint in Intervention, the transcript of the parties' hearing is publicly available, confirming that Blue Spike cannot justify the level of secrecy it demands.  *See* Ranieri Decl. Supp. Opposed Mot. Ex. 1 at ¶¶ 15–17, ECF No. 90-2.

Notably, *Bianco* was decided by a Federal Circuit judge sitting by designation in this District.  The Federal Circuit has long grappled with the problem of excessive confidentiality markings in district court litigation.  *See* Moss Decl. Ex. 1 (Ryan Davis, *Fed. Circ. Judges Detail Pet Peeves About Patent Litigants*, Law360, https://www.law360.com/articles/783099/fed-circ-judges-detail-pet-peeves-about-patent-litigants) (quoting Judge Timothy Dyk's statement that "[t]he Federal Circuit has long had a problem with briefs in patent cases where large swaths of information is marked confidential.").  For that reason, the Federal Circuit recently amended its rules to tightly limit parties' ability to keep the contents of court submissions confidential.  *See id.*  Under the Federal Circuit's amended rules, parties can designate *only 15 words* of a brief as confidential, and must convince the court to permit confidential treatment beyond that limit.  *See* Fed. Cir. R. 27(m)(1)(A) & 28(d)(1)(A), http://www.cafc.uscourts.gov/sites/default/files/rules-of-practice/MASTERFederalCircuitRulesOfPracticeMarch16.pdf.  As one Federal Circuit judge explained, "[t]his rule will help us eliminate the overmarking that has been a feature in the past," and thereby enhance the court's ability to conduct oral arguments and write judicial opinions that the public can access and understand.  Moss Decl. Ex. 1 (quoting Judge Dyk).

The sealing of entire documents cannot be reconciled with Supreme Court precedent or the Federal Circuit's amended rules.  Blue Spike's Opposition does not compel this Court to ignore the constitutional presumption that the Federal Circuit's amended rules are designed to protect.

3

**B.      Blue Spike Has Not Shown Good Cause to Seal Any Portion of the Sealed Filings**

Blue Spike's speculative fear of embarrassment or harassment does not substitute for a showing of good cause and therefore does not justify denying public access to the Sealed Filings. *See Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) ("[A] naked conclusory statement that publication of the Report will injure the bank in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal."). Critically, Blue Spike does not explain how providing public access to the Sealed Filings would cause it any particular embarrassment or support its conclusory assertions with facts of any kind. Furthermore, notwithstanding Blue Spike's suggestion to the contrary, EFF is not seeking to unseal information that legitimately requires confidential treatment upon a showing of good cause—such as information Blue Spike can show is a protected trade secret.

While Blue Spike quotes language from the Protective Order referencing "technical, sales marketing, financial, or other sensitive information" as categories of information that could be eligible for sealing, Opp'n at 4, it does not actually claim that the Sealed Filings contain Blue Spike's technical, marketing, or financial information, and certainly not that they pervade the entire document. That omission is telling. It appears from the publicly available transcript in this case that Blue Spike is in the business of IP licensing, not manufacturing, marketing, or selling goods or services to consumers, and therefore may have no substantial technical or marketing information to disclose in the first place. If Blue Spike is merely attempting to seal information about the scope or validity of its patents, it cannot withhold that information from the public. The purpose of the patent system is to promote public disclosures of patented inventions and avoid uncertainty about the scope of patent rights. *See, e.g.*, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) ("[A] patent must be precise enough to

afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.' . . . Otherwise there would be '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.'") (internal citation omitted). Blue Spike cannot use the judicial system to prevent the public from understanding what its patents claim.

No Supreme Court precedent establishes that an individual's fear of embarrassment, without more, may overcome the presumption of public access to court records under the First Amendment.  Blue Spike's reliance on *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), is misplaced.  *See* Opp'n at 4 & 6.  The Court in *Nixon* did not deny access to prevent embarrassment.  Although it acknowledged considerations for and against access, the Court concluded that "[w]e need not decide how the balance would be struck."  *Nixon*, 435 U.S. at 603. That was because of a unique circumstance: public access to the relevant materials was already provided for under an existing, legislatively-mandated, administrative procedure.  *See id.  Nixon* therefore does not support Blue Spike's argument that its fear of embarrassment is enough to justify sealing the entire contents of the Sealed Filings without any further showing.

Blue Spike's allegations of harassment are similarly unavailing.  Blue Spike alleges that EFF intends to use information gleaned from the Sealed Filings to "harass" Blue Spike—*i.e.*, by writing articles about its patents and posting them online.  That is not harassment, that is public speech on a matter of public concern—precisely what the First Amendment protects.  *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("Given that [the party's] speech was at a public place on a matter of public concern, that speech is entitled to 'special protection' under the First Amendment.  Such speech cannot be restricted simply because it is upsetting or arouses contempt.").  The fact that Blue Spike thinks the public and press will be interested in discussing

the contents of the Sealed Filings only confirms that they relate to matters of public concern and therefore must be open to the public.

Nor can Blue Spike avoid the constitutional presumption of public access simply because this case is ongoing such that showing good cause would place some amount of burden on Blue Spike.  Under that theory, the public would have no right to hear about or discuss cases while they are being litigated.  That is directly contrary to the fundamental principle that "[j]ustice may not be done in a corner."  *See* Mag. Judge Stephen Wm. Smith, *Are US Courts Going Dark?*, Just Security, May 6, 2016, https://www.justsecurity.org/30920/courts-going-dark/ (internal quotation marks and citation omitted); *see also Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348–49 (7th Cir. 2006) ("What happens in the federal courts is presumptively open to public scrutiny.  Judges deliberate in private but issue public decisions after public arguments based on public records. . . . Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification.").

Thanks to that fundamental principle, the press and public routinely observe, report, and comment on pending cases, and often include commentary on how courts and parties should act. Patent litigation is no exception.  *See, e.g.*, Dennis Crouch, *Supreme Court to Review (and likely Reject) Laches as a Defense in Patent Infringement Cases*, PatentlyO, May 2, 2016, http://patentlyo.com/patent/2016/05/supreme-defense-infringement.html; Michael C. Smith, *101 Motion Denied / Motions to Strike Expert Testimony Denied*, EDTexweblog.com, Feb. 9, 2016, http://mcsmith.blogs.com/eastern_district_of_texas/2016/02/101-motion-denied-motions-to-strike-expert-testimony-denied.html.  If Blue Spike were correct, all of those commenters would have acted improperly.  Fortunately, Blue Spike is wrong and the First Amendment protects the right of EFF, and others, to discuss pending cases.

**C.      The Protective Order Does Not Permit Blue Spike to Seal Court Filings Without Cause**

Blue Spike invokes Audible Magic and Blue Spike's stipulated Protective Order but does not explain how that Order supersedes Supreme Court precedent or trumps First Amendment rights belonging to the public.  Nor does Blue Spike explain how the test applicable to a party's request to modify a protective order to which it agreed applies to EFF, which never agreed to or signed the Protective Order in this case.  *Cf.* Mem. Op. & Order at 3, *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tex. Jan. 22, 2016), ECF No. 322 (applying test to decide "whether to modify a stipulated protective order at *the behest of a party that originally agreed to the order*") (emphasis added).  In fact, that test only applies when there was a showing of good cause for the protective order itself.  *See id.* at 4 n.2.  Here, "good cause was not shown for the original protective order," and therefore "the burden of showing good cause is on the party seeking continued confidentiality protection."  *Id.* (quoting *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL-1446, 2009 WL 3247432, at *3 (S.D. Tex. Sept. 29, 2009)).

Regardless, the Protective Order in this case does not give the parties the right or expectation that materials will remain secret and can be kept secret once filed with the Court.  *See In re Violation of Rule 28(D)*, 635 F.3d 1352, 1357 (Fed. Cir. 2011) ("It is well settled that Rule 26(c)(1) does not furnish an absolute privilege against disclosure of material that a party might wish to mark confidential.") (citations omitted).  As the case Blue Spike cites for the legal standard confirms, "it should be foreseeable that an overly-liberal interpretation of a confidentiality order that results in excessive and unnecessary sealing may result in modification of that order."  *Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co.*, No. C-12-074, 2013 WL 1867604, at *3 (S.D. Tex. Apr. 22, 2013).

That is precisely the case here. A party cannot expect the Court to enforce an overinclusive blanket protective order, *i.e.*, "one treating all information produced in connection with the discovery process as confidential" in perpetuity. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003). Like the party in *Foltz*, Blue Spike "obtained the blanket protective order without making a particularized showing of good cause with respect to any individual document," and therefore "c[an] not reasonably rely on the order to hold these records under seal forever." *Id.* (citations omitted). Once materials are filed with the court, the presumption of public access must be overcome before a sealing order may issue. *See Foltz*, 331 F.3d at 1138 (explaining that the party's "reliance interest fails to offer a compelling reason to overcome the presumption in favor of access").

Even if the stipulated Protective Order controlled the question of sealing court filings, Blue Spike's objections would still fail, as would Audible Magic's. EFF's requested relief, as outlined in its proposed order, does not contradict or undermine the terms of the Protective Order. The stipulated Protective Order authorizes documents to be filed under seal "in a manner prescribed by the Court for such filings," Garteiser Decl. Supp. Opp'n Ex. 7 § 6(c), ECF No. 102-9, specifying that the party claiming confidentiality "shall have the burden of establishing that the disputed Protected Documents are entitled to confidential treatment." *Id.* § 5. That section further provides that, if a party's confidentiality designation is challenged, the party responsible for that designation "shall have ten (10) days from the date of certification to file a motion for [a] protective order with regard to any Protected Documents in dispute." *Id.*; *see also* L.R. CV-5(a)(7)(A) (requiring a party to make a showing good cause or obtain a court's prior authorization to file documents under seal). Those provisions are entirely consistent with EFF's request that the parties show cause for sealing any portions of the Sealed Filings that they believe

necessary to withhold from the public.

Blue Spike and Audible Magic are going beyond the Protective Order by demanding more protection than it authorizes.  While Audible Magic does not object to providing public redacted versions of the Sealed Filings, it does not explain why the fourteen days the Court gave the parties to oppose EFF's Motion was insufficient to provide what the Protective Order requires in less time (ten days).  Blue Spike's objection runs deeper, since it now apparently refuses to make any particularized showing of good cause for any portions of the Sealed Filings.

Although EFF did not agree to the Protective Order to which Blue Spike and Audible Magic stipulated, the parties have provided no reason for the Court to substantially deviate from its terms now that EFF has intervened and challenged the parties' confidentiality designations.  If the Court feels inclined to give the parties opportunity to justify claims of confidentiality, at the very least this Court should hold the parties to the terms of the Protective Order, and therefore order the parties to file motions showing good cause to keep particular portions of the Sealed Filings confidential within ten days and unseal any portions for which the parties do not show good cause for confidential treatment.

### D.    Blue Spike's Allegations As to EFF's Intent Are Irrelevant and False

Whatever reasons might justify sealing in other circumstances, Blue Spike's allegations regarding EFF's relationship to Google are as irrelevant as they are false.  As the Fifth Circuit made clear in *United States v. Holy Land Foundation for Relief & Development*, 624 F.3d 685, 690 (5th Cir. 2010), the relationship between a party and a particular proponent of access is irrelevant to the question of whether the public's right of access can be overcome.  *Id.* ("We disagree, however, with any suggestion that the public's right of access to judicial records is relevant only when asserted by a third party, such as a journalist, with no direct stake in the proceedings.  The principle of public access to judicial records furthers not only the interests of

9

the outside public, but also the integrity of the judicial system itself. . . . The public's right to access, therefore, is relevant regardless of who opposes keeping a record under seal.").  In other words, even if Blue Spike's allegations were correct (which they are not), they would not justify denying public access to court filings.  All members of the public—including Blue Spike's adversaries in other cases—are entitled to access court documents unless Blue Spike can overcome the heavy constitutional presumption of public access.

Having failed to meet its burden, Blue Spike cannot rely on the supposed identity of EFF's donors to justify continued secrecy.  Aside from rhetoric and insinuation, Blue Spike cannot identify any impropriety in EFF's intervention here.  In any event, EFF's blog posts will not improperly influence the Court.  EFF is confident that this Court can distinguish between legal commentary and binding legal authority or record evidence, as courts routinely do.  This Court should decline Blue Spike's invitation to restrict the general public's access to court filings based on fear that the public may actually notice them.

## III.    CONCLUSION

EFF respectfully requests that the Court unseal any portions of the Sealed Filings that the parties have not shown good cause to seal, or in the alternative, unseal any portions of the Sealed Filings that the parties do not show good cause to seal within ten days of the Court's order.

Dated:  May 12, 2016                   By: _____*/s/ Mark A. Lemley*_____
                                            Mark A. Lemley (admitted E.D. Tex.)
                                            (CA Bar No. 155830)
                                            Alexandra H. Moss (admitted E.D. Tex.)
                                            (CA Bar No. 302641)
                                            DURIE TANGRI LLP
                                            217 Leidesdorff Street
                                            San Francisco, CA 94111
                                            Phone: (415) 362-6666
                                            Email: mlemley@durietangri.com
                                            Email: amoss@durietangri.com

Vera Ranieri (admitted E.D. Tex.)
(CA Bar No. 271594)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Phone: (415) 436-9333
Email: vera@eff.org

Attorneys for Intervenor
Electronic Frontier Foundation

## <u>CERTIFICATE OF SERVICE</u>

I, Mark A. Lemley, hereby certify that on May 12, 2016 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Mark A. Lemley*

Mark A. Lemley

12