# EXHIBIT 1



Portfolio Media. Inc. | 860 Broadway, 6th Floor | New York, NY 10003 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Fed. Circ. Judges Detail Pet Peeves About Patent Litigants

By **Ryan Davis**

Law360, Washington (April 11, 2016, 4:38 PM ET) -- The judges of the Federal Circuit urged attorneys at a conference Monday to refrain from "nasty" attacks on opponents in court filings and to keep amicus briefs regarding patent issues focused on how the outcome will impact particular industries, as they detailed some of their pet peeves about patent litigants.

All 12 active judges and most of the senior judges on the court participated in panel discussion together at the Federal Circuit Judicial Conference in Washington, D.C., where they discussed ways attorneys can improve their advocacy at the court, which has a growing patent caseload.

Senior Judge William Bryson said the judges are tired of patent litigants using their briefs to lambaste the opposing side, rather than laying out their case.

"Please don't get nasty," he told the audience of 700 attorneys, judges and federal officials. "Don't use sentences like, 'Desperate to avoid the illogic of its position, appellant attempts to convince the court that …" This kind of thing is just painful after a while. Just give us a nice, clean legal argument."

Attorneys should also be careful not to repeat the same argument in different ways throughout the brief, Judge Bryson said. Many briefs say essentially the same thing in the introduction, in the summary of the argument, in a few ways in the body of the brief and again in the conclusion, he said.

"We do read these things with some care. We don't need five different expressions of the argument," he said.

Judge Kimberly Moore said that when a major patent case has wide-ranging importance and broad implications for businesses, the court is appreciative of amicus briefs and finds them extremely valuable. However, she said the briefs would be even more useful if attorneys use them to detail the potential ramifications of the case, as opposed to reiterating the legal arguments raised by the parties.

"Having 32 briefs that focus on the same thing is not that helpful," she said. "Give us perspective we might not otherwise have about the impact of the rule on your particular industry, like biotech. That's the kind of thing we don't know."

The Federal Circuit has long had a problem with briefs in patent cases where large swaths of information is marked confidential, and the court imposed new rules this month to address the issue, Judge Timothy Dyk said.

When parties attempt to keep key details of a patent case confidential, "it makes it difficult to conduct a public proceeding," he said, as judges grapple with how to write opinions and speak at oral arguments in a way that avoids mentioning the information marked confidential.

To that end, new Federal Circuit Rules of Practice took effect for all appeals docketed on or after April 1 that state the court will now "tightly limit" confidential material. Only 15 words in a brief can be marked confidential, absent a motion providing justification, and parties are now required to attempt to agree on confidential markings.

"We've struggled for years with how to deal with this," Judge Dyk said. "It is something that has concerned us and the bar has been understanding of that. This rule will help us eliminate the overmarking that has been a feature in the past."

In addition to trying to keep too much information confidential, Judge Bryson said that many litigants often do not provide enough context for information included in the joint appendix, which is the submission of legal documents such as patent information and transcripts, that is filed in support of a brief.

"If I had to pick one thing that people don't pay enough attention to, it's constructing the joint appendix," he said. "We use these things a lot, but it seems like a lot of attorneys assign the appendix to a paralegal and then never look at them."

He recalled that he has received joint appendices where "the patent-in-suit is illegible — I can't read a word of it." That makes it obvious that no attorney looked at the filing before it was sent in, he said. Similarly, many appendices include scattered fragments of trial transcripts and testimony where it is difficult to tell who is testifying or what they're talking about, he said.

Judge Evan Wallach offered a word to the wise for attorneys arguing before him: when he asks a question about an issue, it means he's leaning against you on that point.

When he was a judge on the U.S. Court of International Trade for 16 years, he would often conduct oral arguments that ran up to four hours, Judge Wallach said. Since each side gets only 15 to 30 minutes to argue at the Federal Circuit, he makes his questions pointed and wants to hear the attorney explain why their opponent's position is wrong.

"If I ask you a question, it looks like you're losing on this," he said. "I have an awful lot of questions where I say, 'This is a housekeeping matter,' and that's an opportunity for you to say, 'No, look at this.'"

--Editing by Emily Kokoll.

All Content © 2003-2016, Portfolio Media, Inc.