IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 6:15-cv-584** |
| | § | |
| **AUDIBLE MAGIC CORPORATION** | § | |
| *Defendant.* | § | |

| | |
|---|---|
| **AUDIBLE MAGIC CORPORATION** | § |
| *Counterclaim Plaintiff,* | § |
| | § |
| **v.** | § |
| | § |
| **BLUE SPIKE LLC, BLUE SPIKE, INC.** | § |
| **and SCOTT A. MOSKOWITZ** | § |
| *Counterclaim **Defendants.*** | § |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF THE UNITED STATE MAGISTRATE JUDGE

The above-entitled and numbered civil action was referred to United States Magistrate Judge

Caroline M. Craven pursuant to 28 U.S.C. § 636.  On September 11, 2015, the Report of the

Magistrate Judge was entered, containing proposed findings of fact and recommendations that

Audible Magic Corporation's Motion for Summary Judgment of Non-Infringement (Dkt. No. 13)

be granted.

Blue Spike, LLC filed objections to the Magistrate Judge's Report and Recommendation.

Audible Magic filed a response to Blue Spike's objections, and Blue Spike filed a reply.  The Court

conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

On August 27, 2012, Plaintiff Blue Spike, LLC ("Blue Spike") filed suit against Defendant

Audible Magic Corporation ("Audible Magic"), alleging infringement of four patents (the "Asserted Patents"). The Asserted Patents describe a method and device for monitoring and analyzing signals. Each claim of the Asserted Patents requires a signal "abstract," which is a type of representation of a signal.  Audible Magic moved for summary judgment of non-infringement, asserting the only thing in its accused products that Blue Spike asserts is the alleged signal "abstract" is a set of values called mel-frequency cepstral coefficients ("MFCCs"). Audible Magic relies on deposition testimony of Mr. Scott Moskowitz (Blue Spike's sole principal and investor, sole 30(b)(6) witness, and co-inventor of the Asserted Patents), wherein he repeatedly testified a signal "abstract" is not the same thing as the MFCCs.

## THE REPORT AND RECOMMENDATION

In her 17-page Report and Recommendation, the Magistrate Judge found Blue Spike is bound by Mr. Moskowitz's testimony that MFCCs do not constitute the "abstract" element found in each claim of the Asserted Patents.  The Magistrate Judge found Mr. Moskowitz's deposition testimony constitutes a deliberate, clear, and unequivocal judicial admission, noting Mr. Moskowitz (when testifying that MFCCs are not the claimed abstract) repeatedly referred to the Court's October 1, 2014 "claim construction" as framing his understanding of "abstract."

The Magistrate Judge found persuasive *GTX Corp. v. Kofax Image Prods.*, 571 F.Supp.2d 742 (E.D.Tex. 2008), wherein the co-inventor of the asserted patent conceded in his deposition that the patent did not contemplate performing certain steps, and the plaintiff relied on attorney argument and conclusory expert opinions in response to the defendant's summary judgment motion. *Id.* at 747-748. There, Judge Davis granted summary judgment of non-infringement, noting the plaintiff had the burden to rebut the defendant's arguments and to show the plaintiff's evidence was not

2

conclusory. *Id*. at 746. Judge Davis further noted the plaintiff could not "survive summary judgment by offering unsupported attorney argument and conclusive expert statements." *Id.* at 751.  According to the Magistrate Judge, Mr. Moskowitz repeatedly testified MFCCs are not "abstracts," and Blue Spike did not timely offer any evidence to the contrary.

The Magistrate Judge also relied upon *Teashot v. Green Mountain Coffee Roasters*, 2014 WL 485876 (D. Colo. 2014), *aff'd*, 595 Fed.Appx. 983, 2015 WL 51237 (Fed. Cir. Jan. 5, 2015).  In that case, the plaintiff alleged the defendants infringed the patent-in-suit by manufacturing, selling, or offering "K-Cup" portion packs which contain tea for use in Keurig-brand coffee brewing devices. *Id.* at * 2.  The asserted claim language required a structure that is "water-permeable."  *Id*. at *4. The defendants moved for summary judgment on the plaintiff's claim for literal infringement, asserting the foil lid of the accused K-Cups – the portion of the sealed body into which water flows– was water-*im*permeable.  *Id.* (emphasis added).

The defendants relied on deposition testimony from the inventor and the plaintiff's sole owner wherein he admitted the foil lid of the accused K-Cup was "water-impermeable." *Id.* The plaintiff did not dispute that, as manufactured, the lid of the K-Cup was water-impermeable but argued the foil lid became water-permeable when the K-Cup was used because the lid is punctured by a needle during usage.  *Id*. The district court concluded there was no genuine dispute of fact as to whether the accused device contains all of the limitations expressed in the claims.

According to the Magistrate Judge, Mr. Moskowitz reviewed a description of the accused Audible Magic MFCC fingerprints and asserted, among other similar admissions, that "the mathematics of MFCCs are not equivalent with a signal abstract on -- in any way, shape, or form." Moskowitz Dep. at 818:14-819:2. Like the inventor in *Teashot*, the Magistrate Judge found Mr.

3

Moskowitz admitted the accused structure was not the same as the structure in the claims.

The Magistrate Judge found Mr. Moskowitz's deposition testimony was knowing and intentional in order to obtain a litigation benefit, namely to preserve validity in this litigation.  (Dkt. No. 56 at 12-13 & 15).[1]  The Magistrate Judge concluded the evidence/judicial admissions relied upon by Audible Magic precluded Blue Spike's infringement theory.  Noting Blue Spike has only accused MFCCs as the alleged abstract, the Magistrate Judge recommended Audible Magic's motion for summary judgment of non-infringement be granted.

## BLUE SPIKE'S OBJECTIONS

In its objections, Blue Spike states both Blue Spike and its infringement expert, Dr. Ahmed Tewfik, believe MFCCs are abstracts. Blue Spike asserts the Magistrate Judge improperly relied upon an inventor's testimony to determine the scope of the claims.  Blue Spike states Mr. Moskowitz has not been privy to the same evidence as Blue Spike's infringement expert who reviewed Audible Magic's source code, confidential data, and deposition transcripts of Audible Magic's programmers and employees. According to Blue Spike, the "apparent contradiction between Blue Spike's infringement theory and statements made by its inventor present[s] a conflict ripe for a fact-finder's consideration."  *Id.* (citing *Cellular Communs. Equip LLC v. HTC Corp.*, 2015 WL 1048890 (E.D. Tex. Mar. 9, 2015)).

Blue Spike further asserts the Magistrate Judge viewed Mr. Moskowitz's testimony out of

---

[1] According to Audible Magic, Mr. Moskowitz intended to limit the scope of the patent claims, in the service of Blue Spike's litigation so that Blue Spike could attempt to avoid invalidity. Audible Magic asserts Mr. Moskowitz knew he was withdrawing that fact from contention and was impatient at having to answer repeated questions about whether MFCCs were abstracts (*see e.g.* Moskowitz Dep. at 775:7-12), indicating Blue Spike's intent to foreclose further discovery into the issue.

context rather than in the light most favorable to Blue Spike.  According to Blue Spike, when read in context, it is clear Mr. Moskowitz testified about his entire invention rather than the "abstract" element in isolation.  (Dkt. No. 61 at 3). Blue Spike asserts it is not uncommon for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is, especially when assisted by counsel in the prosecution of the patents-in-suit, like in this case.

Finally, Blue Spike asserts Mr. Moskowitz's testimony does not bind Blue Spike because the testimony was given in his individual capacity as a Rule 30(b)(1) representative.  Even if Mr. Moskowitz had been deposed as a Rule 30(b)(6) representative, Blue Spike argues deposition testimony can never be judicial admissions.

In response, Audible Magic argues there is no remaining dispute of fact, and the Court should enter summary judgment of non-infringement as recommended by the Magistrate Judge.  According to Audible Magic, both Mr. Moskowitz and Blue Spike's expert witness on validity, Dr. Papakonstantinou, were asked whether Audible Magic's MFCC fingerprints constituted the "abstract" of the Asserted Patents, and both admitted that they are not.  Audible Magic asserts Blue Spike should not be allowed to have Mr. Moskowitz (its only representative, inventor, and initial prosecutor of the patents) admit that Audible Magic's MFCC fingerprints are not "abstracts" in order to avoid prior art, and at the same time "put forward the opposite infringement argument that Audible Magic's MFCC fingerprints are 'abstracts.'" (Dkt. No. 64 at 2).  According to Audible Magic, this is not a "contradiction" for the finder of fact but an improper advancement by Blue Spike of one position on claim scope for invalidity and a different position for infringement.

In its reply, Blue Spike again asserts Mr. Moskowitz testified generally of his abstracting

technology that improves upon prior art, and counsel for Audible Magic repeatedly confused abstracting technology with the "abstract" element during Mr. Moskowitz's deposition.  According to Blue Spike, it would have been helpful if both counsel for Audible Magic and for Mr. Moskowitz had made greater effort to distinguish abstracting technology from the abstract element, but nevertheless "it is clear Scott Moskowitz testified that his abstracting technology (not the abstract element) is more than an MFCC alone and performs other functions an MFCC cannot, such as differentiating between versions.  *See, e.g.* Moskowitz Dep. at 53:13-21. . . ."  (Dkt. No. 70 at 2-3).  Blue Spike concludes that MFCCs are abstracts but cannot perform all of the functions of the patents-in-suit.

## APPLICABLE LAW

Infringement presents a question of fact. *Stryker Corp. v. Zimmer, Inc.,* No.2013–1668, 2014 WL 7210311, at *4 (Fed.Cir. Dec.19, 2014). In order to establish literal infringement, every limitation set forth in a claim must be found in an accused product or process. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577–78 (Fed.Cir.1989). If the accused product lacks even one claim limitation, the accused infringer is entitled to summary judgment. *Taurus IP, LLC v. Daimler Chrysler Corp.,* 726 F.3d 1306 (Fed.Cir.2013).

## *DE NOVO* REVIEW

According to Audible Magic's motion for summary judgment, Blue Spike's only infringement theory is that MFCCs created by Audible Magic's Muscle Fish Content Base Recognition Library ("MFCBR Library") are the claimed abstract.[2]  Audible Magic contends this

---

[2] The MFCBR Library is a collection of code, including Muscle Fish fingerprint generation and matching code, that evolved to form the basis for all of Audible Magic's technology.  (Dkt. No. 13 at 5-6).

theory is precluded by Blue Spike's judicial admissions.  Audible Magic contends no reasonable jury could conclude that its accused products infringe where the plaintiff has admitted the accused products do not meet an element of the asserted claims.  *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1336 (Fed. Cir. 2009).

Among other evidence, Audible Magic relied upon excerpts from Mr. Moskowitz's deposition and co-inventor Michael Berry's deposition, as well as testimony from Blue Spike's expert, Dr. Papakonstantinou.  Audible Magic argues Blue Spike's admissions confirm the opinion of Audible Magic's expert, Dr. Strawn, that MFCCs do not form an "abstract" as construed by the Court; therefore, the Tewfik expert report fails to show infringement.

As noted by the Magistrate Judge, in its timely filed responsive briefing, Blue Spike attached only the following summary judgment evidence: excerpts from Mr. Moskowitz's December 11, 2014 deposition and Dr. Tewfik's expert report regarding infringement (attached to Blue Spike's response) and an excerpt from the deposition transcript of Dr. Tewfik (attached to Blue Spike's surreply). Although Blue Spike filed a supplemental surreply following the Magistrate Judge's August 2015 hearing, attaching a declaration of Mr. Moskowitz and excerpts from the transcripts of Dr. Tewfik's and Mr. Moskowitz's depositions, the Magistrate Judge struck the supplemental surreply as untimely filed.[3]  (Dkt. No. 56 at 6).

On a motion for summary judgment, if "a party fails to properly. . . address another party's assertion of fact . . . the court may. . . consider the fact undisputed for purposes of the motion."  FED.

---

[3] However, the Magistrate Judge noted that even if she were to consider Mr. Moskowitz's declaration, her recommendation would not change.  (Dkt. No. 56 at 7).  Notably, the  declaration only specifically addressed one of Mr. Moskowitz's numerous admissions that MFCCs are not abstracts.

R. CIV. P. 56(e)(2). In this district, in order to assist the Court is deciding such motions, the movant must present a "Statement of Undisputed Material Facts." Local Rule CV-56(a). The party opposing the motion must submit a response to the Statement of Undisputed Material Facts along with appropriate citations to the proper summary judgment evidence. Local Rule CV-56(b).  Local Rule CV-56(d) defines "proper summary judgment evidence" as "excerpted copies of pleadings, depositions, documents, electronically stored information, answers to interrogatories, admissions, affidavits or declarations, stipulations (including those made for purposes of the motion only), and other admissible evidence cited in the motion for summary judgment or the response thereto."

Although Blue Spike disputes the judicial admissions that MFCCs are not abstracts, Blue Spike did not timely provide any affirmative evidence that MFCCs are abstracts.  Like the situation in *GTX Corp.*, despite Mr. Moskowitz's testimony to the contrary, Blue Spike relied on attorney argument in response to Audible Magic's summary judgment motion. This is not sufficient to preclude summary judgment.   The only material in the summary judgment record is Mr. Moskowitz's repeated testimony that MFCCs are not abstracts, the testimony of co-inventor Michael Berry that MFCCs are not abstracts; and the analysis of Audible Magic's expert establishing the same.  Local Rule CV-56(c) provides the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent such are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence.  *See also* FED. R. CIV. P. 56(e)(2) (Any fact not controverted in the manner specified by the Federal Rules of Civil Procedure may be deemed undisputed for purposes of the motion.).

Turning to the specific issues raised in Blue Spike's objections, the Court first notes it is

undisputed that the MFCCs discussed by Mr. Moskowitz are the same as the accused Audible Magic MFCC fingerprints created by accused code called the "MFCBR Library" and described in Audible Magic's U.S. Patent No. 5,918,223 ("'223 patent"). (Dkt. No. 56 at 16).  Contrary to Blue Spike's assertion, Mr. Moskowitz possessed all the information he needed about Audible Magic's accused products to make binding admissions that preclude Blue Spike's infringement theory. According to Audible Magic, Mr. Moskowitz reviewed the information about the accused Audible Magic MFCC fingerprints (in particular the '223 patent describing in detail the accused MFCBR Library), and he repeatedly and unambiguously admitted that those MFCC fingerprints are not his patents' "abstracts."  In its objections, Blue Spike does not assert the MFCC fingerprints subject to the admissions are different from what is in Audible Magic's accused products.

Blue Spike instead argues, as it did before the Magistrate Judge, that Mr. Moskowitz was discussing a broader understanding of the "invention" rather than the "abstracts."  However, as pointed out by the Magistrate Judge, Mr. Moskowitz testified expressly that he was adopting the Court's claim construction of "abstract," not some other understanding.  (Dkt. No. 56 at 13-15). Although Blue Spike addresses one specific excerpt of Mr. Moskowitz's deposition testimony in an attempt to explain it applies to the entire invention rather than the "abstract" element in isolation, Blue Spike does not address the rest of his testimony.  Nor does it address the testimony of its expert Dr. Papakonstantinou.  (Q: "Do you believe that Muscle Fish's feature vectors containing MFCC values anticipate the abstract element of the Blue Spike patents?" A: "No, I don't believe this. . . ."). (Dkt. No. 37, Papakonstantinou Dep. at 220:14-18).

Blue Spike argues Mr. Moskowitz's admissions are not binding on Blue Spike because he was not involved with the actual prosecution of the patent claims.  Audible Magic disagrees,

9

asserting Mr. Moskowitz prosecuted the Asserted Patents *pro se*, "with only sporadic assistance from counsel." (Dkt. No. 64 at 4).  According to Audible Magic, the first application, which introduced the claim term "abstract" and led to the rest of the asserted patents, "was pushed through prosecution by one person and one person alone – Scott Moskowitz."  *Id.*  Given this, Audible Magic argues it is "especially proper" to find binding Mr. Moskowitz's judicial admissions that MFCCs are not his patents' "abstract." *Id.*  The Court agrees.

Blue Spike further argues Mr. Moskowitz's testimony is not binding on Blue Spike because he was testifying at those moments as a Rule 30(b)(1) deponent. Blue Spike relies on decisions where, during the claim construction process, courts elected not to rely on inventor testimony, looking instead to the intrinsic evidence. Claim construction is not at issue here.  The Court has already construed the claims, and as pointed out by Audible Magic, Mr. Moskowitz was "heavily involved in getting Blue Spike's construction to be adopted by the Court."[4] (Dkt. No. 64 at 8).

Audible Magic asserts it is settled law that "the party seeking the deposition may identify a specific officer, director, or managing agent to be deposed and notice that person under Rule 30(b)(1). The testimony of such a person will be binding on the party." *U.S. v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994); *U.S. v. One Parcel of Real Estate at 5860 North Bay Road*, 121 F.R.D. 439, 440 (S.D. Fla. 1988) (testimony of "a particular officer, director, or managing agent pursuant to Rule 30(b)(1) . . . is of the corporation. . . ."); *Phillips v. Am. Honda Motor Co.*, 2005 U.S. Dist. LEXIS 46223, *4 (S.D. Ala. 2005) (Rule 30(b)(1) testimony of "officer, director or

---

[4] The Court's construction, applied by Mr. Moskowitz, is "a data-reduced representation of a signal that retains a perceptual relationship with the signal and differentiates the data-reduced representation from other data-reduced representations."  (Dkt. No. 7 at 32).

managing agent" is "testimony of the corporation"); *Botell v. U.S.*, 2013 U.S. Dist. LEXIS 12075

(E.D. Cal. 2013) (same).

As noted by the Magistrate Judge, Mr. Moskowitz is Blue Spike LLC's only officer, director,

managing agent, and investor.  Mr. Moskowitz testified he does not distinguish between his own

testimony and that of Blue Spike, LLC. (Dkt. No. 56 at 10-11).  When asked whether Blue Spike,

LLC or Blue Spike Inc. controlled particular resources, Mr. Moskowitz testified as follows:

> I am the only member of Blue Spike LLC at present. I am also the only director, the
> only officer, and the only employee of Blue Spike, Inc., so … -- which one of my hats
> do I answer? Do I say that the employee Scott Moskowitz takes it and hands it to the
> officer? The officer Scott Moskowitz tells the employee Scott Moskowitz, what do
> we do with this? I mean, it all comes to me, so I'm not really clear on how you're
> differentiating between the two entities.

*Id.* (quoting Moskowitz Dep. at 1141:8-1142:6).

As the evidence shows and as the Magistrate Judge found, the testimony of Mr. Moskowitz,

the only person constituting Blue Spike, LLC, rises to the level of judicial admissions as applied in

district courts throughout the Fifth Circuit.[5] There is authority in the Fifth Circuit establishing that

deposition testimony may constitute case-dispositive judicial admissions. *See Jonibach Mgmt. Trust*

*v. Wartburg Enters*., 750 F.3d 486, 492 n. 2 (5th Cir. 2014) (finding that "testimony regarding the

initial contract also constitute judicial admissions"); *see also Martinez v. Bally's Louisiana, Inc.*, 244

F.3d 474 (5th Cir. 2001) (admission made to establish fact and cut off further questioning on the

topic); *Johnson v. IDEXX Labs., Inc*., 2007 WL 1650416, *2 (N.D. Tex. 2007) (unreported)

---

[5] Although Federal Circuit law is controlling for issues unique to patent law, regional circuit
law is binding in the context of judicial admissions. *See Davis v. Brouse McDowell, L.P.A.,* 596 F.3d
1355, 1362 (Fed.Cir.2010) ("We review evidentiary rulings that are not unique to our jurisdiction
under the law of the regional circuit.").

11

(deposition admission made to define scope of party's contentions about the key fact in the case, and the deponent made no attempt to contradict and explain his testimony).

In this case, the sole representative of Blue Spike and the inventor who coined the term signal "abstract" asserted repeatedly and definitively that the set of numbers called MFCCs are not his patents' "abstract."  The binding effect of such judicial admissions is committed to the sound discretion of the Court. *See Nolan v. M/V Sante Fe*, 1994 WL 261074, *2 (5th  Cir. 1994) ("The district court was well within its discretion to conclude that the appellant's own testimony and his judicial admissions precluded [his theory of liability].").  The Magistrate Judge was within her discretion to conclude Mr. Moskowitz's testimony and his judicial admissions preclude Blue Spike's theory of infringement.

Even if the Court considered Mr. Moskowitz's testimony to be merely "evidentiary" rather than judicial admissions, the Court would still agree with Audible Magic that Blue Spike has not proffered any timely evidence from Mr. Moskowitz or other source to overcome the testimony. Rather, Blue Spike relies on attorney argument and an untimely supplemental surreply, which are insufficient to overcome summary judgment. It is settled that "a party cannot create an issue of fact in the face of an evidentiary admission unless the party contradicts and explains the disavowed statement." *Johnson*, 2007 WL 1650416, at *2 ; *see also Higgins v. Mississippi*, 217 F.3d 951, 955 (7th Cir. 2000) (affirming summary judgment based on admission; "a party cannot by affidavit retract damaging admissions without a good explanation. . . whether . . . the admissions were made in a deposition, a trial, another affidavit, or, as in this case, a written statement not under oath. . . .").

In sum, Blue Spike's objections are without merit, and the Court is of the opinion the findings and conclusions of the Magistrate Judge are correct.  Therefore, the Court hereby adopts the

Report of the United States Magistrate Judge as the findings and conclusions of this Court.

Accordingly, it is hereby

      **ORDERED** that Audible Magic Corporation's Motion for Summary Judgment of Non-

Infringement (Dkt. No. 13) is **GRANTED.**

      **SIGNED this 31st day of May, 2016.**


                                    ROBERT W. SCHROEDER III
                                    UNITED STATES DISTRICT JUDGE

13