UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>AUDIBLE MAGIC CORPORATION,<br><br>    *Defendant.*<br><br>AUDIBLE MAGIC CORPORATION,<br><br>    *Counterclaim Plaintiff*<br><br>v.<br><br>BLUE SPIKE, LLC, BLUE SPIKE, INC.<br>and SCOTT A. MOSKOWITZ<br><br>    *Counterclaim Defendants.* | Case No. 6:15-cv-584-MHS<br><br>Jury Trial Demanded |

**COUNTERCLAIM DEFENDANTS BLUE SPIKE, LLC'S, BLUE SPIKE, INC.'S AND SCOTT A. MOSKOWITZ' MOTION IN LIMINE**

Pursuant to the Court's Order Regarding Pretrial Deadlines, Counterclaim Defendants Blue Spike, LLC, Blue Spike, Inc., and Scott A. Moskowitz submit this Motion in Limine with the following three disputed issues. (Dkt. No. 76, at 3(a).)

1. **Disputed Issue No. 1**.  Audible Magic is excluded from discussing Joint Inventorship under Title 35 U.S.C. § 116 or Co-Inventorship under Title 35 U.S.C. § 256.

2. **Disputed Issue No 2**.  Audible Magic's experts, technical and, or alternatively, damages, are excluded from opining on the amount of contribution to the patents-in-suit by the four Muscle Fish Employees.

3. **Disputed Issue No. 3**.  Audible Magic is not to refer to Scott Moskowitz, Blue Spike, Inc., Dice Inc., or Blue Spike LLC as a "troll" or "Non-Practicing Entity."

.

**I.      Disputed Issue No. 1:  Audible Magic is excluded from discussing Joint Inventorship under Title 35 U.S.C. § 116 or Co-Inventorship under Title 35 U.S.C. § 256.**

On the eve of trial and for the first time since this case was filed over four years ago, Audible Magic improperly attempts to sneak in an additional counterclaim. In its Joint Pretrial statement, Audible Magic declares it "will seek an order from the Court for correction of inventorship under 35 U.S.C. § 256." *See* Joint Pre-trial statement at Footnote 1. Audible Magic must not be allowed to seek relief under 35 U.S.C. § 256 for a number of reasons.

First, Audible Magic's new claim is governed by federal statute. However, previously Audible Magic indicated to the Court that its Counterclaim 13 for "Common Law Unjust Enrichment" was not preempted by Federal Patent Law.  Case 6:12-cv-00499, Dkt 1404 at ¶75, Audible Magic's Second Amended Answer and Counterclaims. This conflict illustrates that Audible Magic either never intended to seek correction of inventorship when it argued Federal Law was not involved, or Audible Magic intended to deceive the Court by relying on federal law on the eve of trial. Either way, the claim is improper.

Second, Audible Magic has not properly raised this claim. Now post summary judgment and ignoring its three iterations of counterclaims filed with this Court, Audible Magic is attempting to add a new cause of action under Section 256.  Audible Magic did not move for permission from this Court to add a Cause of Action to Correct Inventorship under Title 35 U.S.C. Section 256.  Since Audible Magic did not plead it, did not move to have it added to the case in a timely manner since 2014, it would be highly prejudicial for the Court to allow Audible Magic to produce evidence related to inventorsip at trial. Audible Magic cannot bootstrap its new claim by arguing it routinely told the Court and Blue Spike and Moskowitz stole information from its employees and did not provide that information to the patent office.  Even if true, such

actions do not provide proper notice that the Defendant is seeking a ruling form the Court that four of its employees, who were formerly employees of Muscle Fish, should be named as co-inventors under Section 256. Nowhere in Audible Magic's prior briefing is Section 256 indicated. Title 35 U.S.C. Section 256 is used by the U.S. Patent and Trademark Office to correct inventorship.  If a Federal Court is going to do so, it should be presented as a proper cause of action—not hidden in a claim for common law unjust enrichment.  The bootstapping of Audible Magic is simply too far away from the elements needed to prove Unjust Enrichment.

Third, Audible Magic's new claim denies Blue Spike its right to properly defend itself. Had Audible Magic raised its claim properly in one of its many amended answers, Blue Spike would have moved to strike, moved for summary judgment, and sought proper discovery during the discovery period. At great expense, Blue Spike took the deposition of every Muscle Fish employee to vet the defenses and counterclaims of Audible Magic. Blue Spike did not ask questions about inventorship as they were not relevant to the counterclaims or defenses being asserted by Audible Magic.  As such, under FRE 402 and 403, the Court should not allow testimony that these four employees at Muscle Fish are co-inventors on the four Blue Spike patents-in-suit.

Fourth, the remedy Audible Magic improperly seeks is new. Audible Magic attempts to defend itself by saying under Section 102(f), an invalidity defense, that this new co-inventorship cause of action issue is closely tied.  That's not true.  The remedies are completely different. With the pre-AIA or post-AIA Section 102(f) the patents would be invalid. As such, the remedy Audible Magic would have is a ruling that the asserted claims of the patents-in-suit are invalid.

Fifth, a correction of inventorship under Section 256 requires a "hearing of all parties concerned." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998) (quoting 35 U.S.C. §

256)[1]. Audible Magic has proposed no such hearing, nor would a hearing be appropriate so close to trial. Had Audible Magic truly intended to correct inventorship all along, it was obligated to provide notice and ask for a hearing in addition to asserting this claim in its answer to Blue Spike's complaint.

Further undermining Audible Magic's position is the fact that Audible Magic did not even name these four Muscle Fish employees as co-inventors on the Audible Magic patent asserted against Blue Spike, the '308 patent in Counterclaim 12. Case 6:12-cv-00499, Dkt 1404 at ¶65, Audible Magic's Second Amended Answer and Counterclaims. Audible Magic filed '308 patent application with the U.S. Patent and Trademark Office during Vance Ikezoye's and James Schrempp's due diligence of Muscle Fish's technical achievements. Knowing that Audible Magic could never meet the standard to correct inventorship at the PTO, it now invites the Court to commit judicial error and do so for it. But again, by Audible Magic's own actions in 2000, it did not believe the four Muscle Fish employees should even be named as co-inventors on its own patent.

Blue Spike respectfully asks the Court to not allow Audible Magic to present evidence of co-inventorship when it never attempted to amend its Second Amended Answer and Counterclaim to add a claim for correction of inventorship under Section 256 or a claim for Joint Inventorship under Section 116.

Since 2012, like the Court, Blue Spike has been operating under the asserted counter-claims. Now, in an apparent attempt post Summary Judgment, Audible Magic is attempting,

---

[1] *Pannu* is distinguishable from this case. Unlike here, in *Pannu v. Iolab Corp.* the Court reasoned "**[b]ecause it is undisputed that the invention was conceived while Link and Pannu were engaged in a collaborative enterprise** and it is furthermore undisputed that Pannu conceived significant aspects of the invention, Pannu is certainly at least a co-inventor." *Id.* at 1351 (emphasis added). Unlike *Pannu* in which the parties did not dispute having collaborated, inventor and Counterdefendant Scott Moskowitz disputes he conceived of the invention with Blum and the other Muscle Fish employees.

4

improperly, to add it as an issue.  To do so, would be severely prejudicial to Blue Spike and invite judicial error by the Court.

II.  **Disputed Issue No 2.  Audible Magic's experts, technical and, or alternatively, damages, on the amount of contribution to the patents-in-suit by the four Muscle Fish Employees**.

In Disputed Issue No. 2 of its Motion in Limine, Blue Spike seeks to limit the testimony of Audible Magic's experts to their respective written reports presented to Blue Spike. Restricting Audible Magic's experts' testimony to their written reports is proper for the same reasons listed above in Section I—Audible Magic cannot have its experts opine on inventorship when since the relief sought is improper. Additionally, restricting Audible Magic's experts' testimony to their reports is appropriate under Rule 26(a)(2), as testimony not provided in the written report should not be allowed at trial when it relates to opinions and facts relied upon to make those opinions.  F.R.C.P. 26(a)(2) recites in pertinent part that:

> (2) Disclosure of Expert Testimony.
> (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> (i) a complete statement of **all opinions** the witness will express and the **basis and reasons for them**;
>
> (ii) **the facts or data considered by the witness in forming them**;
> …

F.R.C.P. 26(a)(2).  Here, Audible Magic never brought a counterclaim for correction of inventorship under Section 116 or 256 of Title 35.  As such, Audible Magic's experts are now

5

precluded from providing expert testimony on those issues at trial. *See* F.R.C.P. 26(a)(2).

Audible Magic's expert reports are exhaustive; its expert report of noninfringement spans more than 3600 pages. Yet Audible Magic's experts failed to broach the topic of inventorship, providing neither opinion nor facts of non-public information provided to the Counter-defendants by the Muscle Fish programmers. Similarly, Audible Magic's damages report contains no indication of apportionment due to the four Muscle Fish employees, nor is there any evidence of the alleged individual contributions of each Muscle Fish employee. In fact, there is no basic evidence to assume that Audible Magic would be entitled to any proceeds should the Court not grant Blue Spike's Motion in Limine for Disputed Issue No. 1 and allow the issue to be presented to the Court.

At the relevant time 1990s, the Muscle Fish employees were just that—Muscle Fish employees, not employees of Audible Magic. As such, no evidence has been presented that they even had an obligation to assign patents to Audible Magic that they did not even know they helped create.

Furthermore, Blue Spike was not even able to file a Daubert Motion related to this issue as Audible Magic waited until not only the deadline to file Daubert Motions, but also until after the Court ruled on pending Motions for Summary Judgment to even mention the co-inventor count to Blue Spike.

Given the prejudice to Blue Spike, Moskowitz, and Blue Spike, Inc., under FRE 403, FRE 702, and Rule 26(a)(2), and the order of this court setting the deadline for expert reports to avoid prejudice, Blue Spike respectfully asks the Court to not allow Audible Magic experts to opine upon the issue of co-inventorship due to the lack of prior disclosure of the cause of action and opinion testimony prior to the Court's deadline. A ruling in favor of Blue Spike on Motion in

Limine Disputed Issue No. 2 simply means that the topic of inventorship being mentioned in front of the jury before the Court makes an evidentiary ruling would prejudice Counterclaim Defendants such that the Court could not alleviate the prejudice with an appropriate instruction.

### III. Disputed Issue No. 3. Audible Magic is not to refer to Scott Moskowitz, Blue Spike, Inc., Dice Inc., or Blue Spike, LLC as a "troll" or "Non-Practicing Entity."

Blue Spike seeks in this third disputed issue of its Motion in Limine to exclude use of the term "troll" and the phrase "Non-Practicing Entity" or "NPE" from the trial. Under Rule 401 of the Federal Rules of Evidence, neither term is relevant to this case. Applying the test for relevance, Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Here, the two derogatory phrases are not facts at all, but instead constitute misleading labels of a party to the litigation. Audible Magic has presented no evidence to consider these labels proper to be used at trial.

Additionally, assuming said phrases were somehow relevant and needed to be used at trial, Counterclaim Defendants move in limine alternatively under Rule 403 that the phrases not be allowed at trial due to (1) unfair prejudice to counter defendants, (2) confusion of the issues before the jury, and (3) avoid misleading the jury.

As such, Blue Spike request that the Court grant this Motion in Limine Disputed Issue No. 3 to not allow use of these derogatory phrases before a jury until the Court can conduct an evidentiary hearing on Audible Magic's use of said terms.

7

Garteiser Honea PLLC

　/s/ Randall Garteiser　　　
Randall T. Garteiser
　Lead Attorney
　Texas Bar No. 24038912
　rgarteiser@ghiplaw.com
Christopher A. Honea
　Texas Bar No. 24059967
　chonea@ghiplaw.com
Kirk J. Anderson
　California Bar No. 289043
GARTEISER HONEA, P.C.
119 W. Ferguson Street
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

*Attorneys for Plaintiff*
*Blue Spike, LLC*

*Attorneys for Counterclaim Defendants*
*Blue Spike, LLC*
*Blue Spike, Inc.*
*Scott Moskowitz*

**CERTIFICATE OF SERVICE**

       The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

                                                          /s/ Randall Garteiser
                                                            Randall Garteiser