UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 6:12-cv-499-MHS |
| | § | |
| v. | § | Lead Case |
| | § | |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| | § | |
| *Defendants*. | § | |

**BLUE SPIKE'S OPPOSITION TO AUDIBLE MAGIC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT [DKT. 1957]**

Blue Spike, LLC opposes Audible Magic Corporation's Motion for Summary Judgment of Noninfringement (Dkt. 1957).

## Introduction

Audible Magic asserts that Scott Moskowitz, Blue Spike's CEO and co-inventor of the patents-in-suit, "judicially admitted" facts fatal to Blue Spike's claims. But that assertion is inaccurate. Audible Magic's assumption on the issue of "judicial admissions" is faulty for several reasons, undermining Audible Magic's motion.

Audible Magic's argument for summary judgment takes the following form:

**Premise 1**: Each claim of each patent-in-suit requires a signal "abstract."

**Premise 2**: The only things that potentially qualify as signal "abstracts" in Audible Magic's accused products are "MFCCs" (mel-frequency cepstral coefficients).

**Premise 3**: MFCCs do not, in fact, qualify as signal "abstracts."

**Conclusion**: Audible Magic's products do not infringe as a matter of law.

*See* Mot. at 2. Blue Spike concedes the first premise. Blue Spike disputes the second

1

premise, but admits that Dr. Tewfik's report focuses on this infringement theory. Blue Spike disputes the third premise, which is why Audible Magic argues that the third premise is established by "judicial admissions" made by Moskowitz during his deposition. Yet Moskowitz's deposition testimony does not qualify as "judicial admissions" for three independent reasons.

First, the testimony in question occurred when Audible Magic was deposing Moskowitz in his individual capacity pursuant to Rule 30(b)(1) rather than his representative capacity pursuant to Rule 30(b)(6). As a matter of law, Moskowitz's 30(b)(1) testimony does not bind Blue Spike.

Second, Moskowitz's testimony did not qualify as "judicial admissions." Judicial admissions have particular characteristics and standards that Moskowitz's testimony did not satisfy. At most, Moskowitz's testimony qualified as "evidentiary admissions" that Moskowitz and Blue Spike are entitled to explain or rebut at trial.

Third, for purposes of deciding the merits of Blue Spike's claims (i.e., whether Audible Magic has infringed Blue Spike's patents), the term "abstract" has a very particular definition given to it by the Court: "a data-reduced representation of a signal that retains a perceptual relationship with the signal and differentiates the data-reduced representation from other data-reduced representations." Dkt. 1831 (Claim Construction Order) at 32. Reading Moskowitz's deposition testimony fairly and in context, it is clear that Moskowitz was not using this precise definition when he addressed "signal abstracting" during his deposition. Audible Magic's assertion that "Moskowitz admitted MFCCs are not abstracts" depends on assuming that Moskowitz was using exactly the Court's definition when he addressed "signal abstracts," but that is not the case. Rather,

he was using a broader sense of the term, as Audible Magic's questions invited him to do. Thus, what Moskowitz said about "signal abstracts" during his deposition does not fully and finally resolve key questions regarding Blue Spike's infringement claims. At a minimum, fact questions remain that preclude summary judgment.

### Response to Audible Magic's L.R. 56(a)(1) Statement of Issues

1. Blue Spike agrees that an issue before the Court is whether Moskowitz "judicially admitted" that MFCCs are not the abstracts of the patents-in-suit. Blue Spike does not agree, however, that Moskowitz "repeatedly and emphatically" testified that MFCCs are not the "abstracts" of the patents-in-suit. Rather, as further explained in Argument Section III below, Moskowitz did not use the term "abstract" precisely as it is defined in the Court's Claim Construction Order when he stated that "MFCCs are not abstracts." As the context makes clear, there is at least a fact question as to whether Moskowitz was using the term "abstract" more generally.

2. Blue Spike agrees that an issue before the Court is whether Audible Magic infringes the patents-in-suit. But Blue Spike does not agree that it has admitted that Audible Magic's MFCCs are not the "abstracts" of the patents-in-suit as that term is defined in the Court's Claim Construction Order.

### Response to Audible Magic's L.R. 56(a)(2) Statement of Undisputed Material Facts

1. Blue Spike agrees that each element of each asserted claim of the patents-in-suit requires an "abstract."

2.   Blue Spike disputes that "Blue Spike and Mr. Moskowitz testified repeatedly and emphatically that [MFCCs] are not the 'abstracts' of the Patents-in-Suit or equivalent to them."

3.   Blue Spike disputes that "Blue Spike and Mr. Moskowitz testified, in particular, that Audible Magic's MFCCs in the accused MFCBR library and Audible Magic's prior art '223 patent are not the 'abstracts' of the Patents-in-Suit or equivalent to them."

4.   Blue Spike agrees that Mr. Moskowitz knew about and understood the Court's claim constructions when he was deposed. But Blue Spike disputes (1) that it (as opposed to Mr. Moskowitz) admitted anything and (2) that Mr. Moskowitz made the "admissions" that Audible Magic attributes to him.

5.   Blue Spike agrees that it "asserts in its complaint that Mr. Moskowitz coined the term 'signal abstracting.'"

6.   Blue Spike agrees that it "is a sole member LLC and Mr. Moskowitz is the only member, manager and sole proprietor of Blue Spike."

7.   Blue Spike agrees that "[a]t the time of his deposition, Mr. Moskowitz was the sole investor in Blue Spike."

8.   Blue Spike disputes that "Michael Berry, the co-inventor of the patents-in-suit, confirmed that the patents' 'abstracts' do not cover MFCCs." Audible Magic grossly mischaracterizes Berry's testimony. Berry said only that, with regard to a single one of the four patents in suit, he did not *personally* "intend" to "try to cover some prior system—technique of creating feature vectors containing MFCC values." Mot., Ex. 3 at 107:25-108:8.

9.      Blue Spike agrees that "the only structures in Audible Magic's accused products that Blue Spike alleges to be 'abstracts' are MFCCs."

## Factual Background

In this lawsuit, Blue Spike accuses Audible Magic of patent infringement. *See generally* Dkt. 1400. Audible Magic spent six days deposing Blue's Spike's CEO and co-inventor of the patents-in-suit, Scott Moskowitz. Audible Magic noticed Moskowitz's depositions under both Rule 30(b)(1) and Rule 30(b)(6). Each time the deposition questioning went on the record, Audible Magic's attorney specified whether he was questioning Moskowitz in Moskowitz's individual (30(b)(1)) capacity or representative (30(b)(6)) capacity. Critically, on the day when Moskowitz supposedly made the "judicial admissions" that are the basis for Audible Magic's summary-judgment motion, Audible Magic's attorney specified: "For the record, we are now leaving the 30(b)(6) testimony of Blue Spike LLC and continuing that to another day, and at this point on the record, we resume the 30(b)(1) testimony and deposition of Scott Moskowitz." Ex. 1 (Moskowitz Dep.) at 680:14-18.

The topics covered during Moskowitz's deposition were far-ranging. Among them, Audible Magic spent considerable time exploring its theory that Blue Spike failed to disclose relevant "prior art" to the USPTO, including Audible Magic's '223 patent (which predated Blue Spike's earliest patent by several years). *See* Dkt. 1438 (Audible Magic's Answer and Counterclaims) at 34-39.

Specifically, Audible Magic asked Moskowitz whether "the process of creating abstracts in the claims of [Blue Spike's] asserted patents is reflected in . . . the '223 patent." Ex. 1 (Moskowitz Dep.) *Id*. at 770:22-25. Moskowitz answered in the negative

5

and then proceeded to explain his answer by going through the '223 patent and analyzing the figures it contains. *Id*. at 771:1-774:18. As part of this explanation, Moskowitz addressed MFCCs. *Id*. at 773:11-22. When Moskowitz finished his explanation, Audible Magic asked him in summary: "So is it true that each of the . . . features that you just described . . . it's your position that each of those independently is a reason why the process set forth in the '223 patent is different from your signal abstracting creation process; is that right?" *Id*. at 774:19-775:5. The ensuing conversation is where Audible Magic alleges that Moskowitz made "judicial admissions."

The first alleged judicial admission occurred when Moskowitz immediately responded to the question: "That's not what was asked. What was asked of me is akin to the question you've been asking me several times over the past three days, which is your contention that an MFCC is somehow equivalent with a signal abstract. I contend that this is not the case." *Id*. at 775:7-12.

The second alleged judicial admission occurred when Audible Magic asked Moskowitz, "isn't it true you cannot disagree that a feature vector representing MFCC values is exactly the same as your signal abstract; isn't that right?" *Id*. at 779:14-17. Moskowitz's attorney objected to the form of this confusingly worded question (*id*. at 779:18), which Moskowitz answered anyway by saying, "I can and I will and I have and I'll continue to, and the U.S. Patent and Trademark Office of these United States agrees with me." *Id*. at 779:19-21.

The third alleged judicial admission occurred when Audible Magic asked Moskowitz virtually the same question: "Isn't it true you agree that a feature vector

representing MFCC values is exactly the same as the signal abstract described in your asserted patents?" *Id*. at 781:14-17. Moskowitz's attorney again objected to the form of the question (*id*. at 781:18), which Moskowitz answered anyway by saying, "Again, I've said it many times, a signal abstract is not the same thing as the MFCCs." *Id*. at 781:19-20. Moskowitz also said, "I also call into question the term 'feature vector.'" 778:7-8.

The fourth alleged judicial admission occurred when Audible Magic's attorney asked Moskowitz, "I'm trying to understand the inventor's view of what mathematics are used to compare two signal abstracts in the claims of the asserted patents. Please tell me that." *Id*. at 818:14-17. Moskowitz's attorney again objected to the form of the question (*id*. at 818:18), which Moskowitz answered anyway by saying, "What I will say is that the mathematics of MFCCs are not equivalent with a signal abstract on—in any way, shape, or form." *Id*. at 818:25-819:2.

Audible Magic now moves for summary judgment on the basis of these alleged "judicial admissions," contending that they establish as a matter of law that MFCCs are not the "abstracts" required by the patents-in-suit and that, accordingly, all of Blue Spike's patent-infringement claims fail.

### Legal Standard[1]

Summary judgment is appropriate only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v.*

---

[1] Regional circuit law controls the legal standard for summary-judgment motions in patent cases. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 839 (Fed. Cir. 2009), *aff'd*, 131 S. Ct. 2188 (2011).

*Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). In deciding a summary-judgment motion, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## Argument

Audible Magic contends Moskowitz judicially admitted that "MFCCs are not the 'abstracts' of the patents-in-suit." But that is not what Moskowitz said. Moskowitz did not "admit" what Audible Magic claims he did, let alone "judicially admit" it in the required technical sense. Further, Moskowitz made his statements during his 30(b)(1) deposition, not during his 30(b)(6) deposition, so his statements are not binding on Blue Spike in any event. Audible Magic's argument thus fails for multiple stand-alone reasons.

## I.    Moskowitz's 30(b)(1) Testimony Does Not Bind Blue Spike, LLC.

As Audible Magic itself took pains to clarify, all of Moskowitz's alleged "judicial admissions" occurred while Audible Magic was deposing Moskowitz in his individual (30(b)(1)) capacity—not his representative (30(b)(6)) capacity. *See* Ex. 1 (Moskowitz Dep.) at 680:14-18 (Audible Magic's attorney stating: "For the record, we are now leaving the 30(b)(6) testimony of Blue Spike LLC and continuing that to another day, and at this point on the record, we resume the 30(b)(1) testimony and

deposition of Scott Moskowitz."). It is blackletter law that "testimony of a corporation's employee, when taken in his or her individual capacity, does not bind the corporation." *Miller v. Union Pac. R.R.*, No. CIV.A.06-2399-JARDJW, 2008 WL 4724471, at *2 (D. Kan. Oct. 24, 2008).[2] Audible Magic's motion fails for this reason alone.

Audible Magic cites three cases for the proposition that Moskowitz's 30(b)(1) testimony binds Blue Spike given that Moskowitz is Blue Spike's "sole proprietor." Mot. at 9. But Audible Magic misrepresents those cases' holdings. The first case, *Poseidon Oil Pipeline Co., v. Transocean Sedco Forex, Inc.*, states only the following:

> Because Rule 30(b)(6) imposes on the organization the obligation to select the individual witness, the party seeking discovery is not permitted to insist that it choose a specific person to testify unless the person designated is an officer, director, or managing agent whom the corporation may be required to produce under Rule 30(b)(1).

2002 WL 1919797, at *3 (E.D. La. Aug. 20, 2002) (citing 8A Charles Alan Wright et al., Federal Practice and Procedure §2103, at 31–32 (2d ed. 1994)).

Audible Magic's other cases stand for the unremarkable proposition, not relevant here, that when a corporate officer or director is served a Rule 30(b)(1) deposition notice *in his capacity as officer or director*, his deposition testimony will be considered that "of the corporation." *Phillips v. Am. Honda Motor Co.*, No. CIV.A. 04-00634-CG-B, 2005 WL 1527685, at *1 (S.D. Ala. June 27, 2005); *see also Botell v. United States*, No. 2:-11-CV-1545 GEB, 2013 WL 360410, at *3 (E.D. Cal. Jan. 29, 2013). This kind of 30(b)(1) notice is another way to get the same "corporate"

---

[2] *Accord Matrix Grp., LLC v. Innerlight Holdings, Inc.*, No. 2:11-CV-00987, 2015 WL 153822, at *2 (D. Utah Jan. 12, 2015) ("[T]he court must assume that the Defendants' 30(b)(6) deposition testimony will be distinguishable from their prior [30(b)(1)] testimony since it is offered on behalf of the corporation and not on behalf of the individual Defendants."); *Sabre v. First Dominion Capital, LLC*, No. 01CIV2145BSJHBP, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual.").

testimony that a party could get by noticing the corporation itself under Rule 30(b)(6). *Id*. But here, Audible Magic did not depose Moskowitz as a corporate officer under Rule 30(b)(1) to get Blue Spike's opinions. Rather, it deposed Moskowitz under Rule 30(b)(1) to get Moskowitz's personal opinions as the inventor of the patents-in-suit. *See* Ex. 1 (Moskowitz Dep.) at 793:18-22 (Audible Magic's attorney stating: "Right now we're not in the 30(b)(6) deposition . . . . Right now we're—right now is the deposition of the inventor Scott Moskowitz."), 818:14-15 ("I'm trying to understand the inventor's view.").

Next, Audible Magic cites six cases for the proposition that Moskowitz's 30(b)(1) testimony binds Blue Spike given that Moskowitz is a co-inventor of the patents-in-suit. Mot. at 10. Yet none of those cases is on-point, either.

- *Voice Technologies Group v. VMC Systems* says only that "[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims." 164 F.3d 605, 615 (Fed. Cir. 1999). It does not say that an inventor's 30(b)(1) testimony "binds" a corporation like 30(b)(6) testimony does.

- *GTX Corporation v. Kofax Image Products* merely treats inventor testimony as competent summary-judgment evidence. 571 F.Supp.2d 742, 748 (E.D. Tex. 2008). It does not say that an inventor's 30(b)(1) testimony "binds" a corporation like 30(b)(6) testimony does.

- *Teashot v. Green Mountain Coffee Roasters* does not say what Audible Magic claims. Audible Magic claims that the *Teashot* court granted summary judgment of non-infringement where "Plaintiff's sole owner, who is also the inventor of

the [asserted] Patent, admitted in his deposition that the [accused structure does not infringe].” Mot. at 10 (brackets in original). But what the opinion *actually* says is this: “Plaintiff's sole owner, who is also the inventor of the '672 Patent, admitted in his deposition that *the foil lid of the K–Cup is water–impermeable*.” 2014 WL 485876, at *4 (D. Colo. Feb. 6, 2014) (emphasis added). Audible Magic wrongly equates an admission on a point of fact (“the foil lid of the K-Cup is water-impermeable”) with an admission on an ultimate conclusion of law (“accused structure does not infringe”). The distinction is important because it reflects the distinction between evidentiary admissions (which are not grounds for summary judgment) and judicial admissions (which are), as discussed further in section II below. Moreover, *Teashot* does not address whether the inventor's deposition was taken pursuant to Rule 30(b)(6) or Rule 30(b)(1), does not address 30(b)(1) testimony binding a corporation, and does not address “judicial admissions” in the context of deposition testimony.

- *Automotive Technologies International v. BMW of North America* states generally that an inventor's “testimony” supported summary judgment in that case, but it does not specify where that testimony was given—in a 30(b)(1) deposition, a 30(b)(6) deposition, or an affidavit. 501 F.3d 1274, 1285 (Fed. Cir. 2007). Thus, it does not stand for the proposition that 30(b)(1) testimony “binds” a corporation.

- Likewise, *Affymetrix v. PE Corporation* says that an inventor's deposition testimony supported summary judgment in that case, but does not say whether it was a 30(b)(1) deposition or a 30(b)(6) deposition. 306 F.Supp.2d 363, 371-72

(S.D.N.Y. 2004). Nor does it address treating the testimony as a "judicial admission" as Audible Magic does here.

- *Seed Lighting Design v. Home Depot* is just like *Affymetrix*—it gives no details about the deposition in which the inventor testified and says nothing about treating the inventor's testimony as a "judicial admission." 2005 WL 1868152, at *8 (N.D. Cal. Aug. 3, 2005). At most, it stands for the unremarkable proposition that an inventor's deposition testimony can serve as summary-judgment evidence. But this does not distinguish it from any other deposition testimony. *See* Fed. R. Civ. P. 56(c)(1)(A).

In sum, Audible Magic's "judicial admissions" theory depends on 30(b)(1) deposition testimony that Moskowitz gave as the inventor of the patents-in-suit. There is no authority that says such testimony "binds" Blue Spike. Blackletter authority all points the other way, undermining Audible Magic's theory.

## II.  Moskowitz's Testimony Does Not Constitute "Judicial Admissions."

Even if Moskowitz's 30(b)(1) testimony as an inventor did "bind" Blue Spike like 30(b)(6) testimony would, the testimony still would not warrant summary judgment because it does not qualify as "judicial admissions." "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).[3] A judicial admission "must be deliberate, clear and unambiguous." *Robinson v.*

---

[3] *Accord Reliable Contracting Grp., LLC v. Dep't of Veterans Affairs*, 779 F.3d 1329, 1334 (Fed. Cir. 2015) ("Although this circuit has had limited opportunities to address the doctrine, it is clear from other circuits that judicial admissions, which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact, are limited to formal admissions made in, for example, a complaint, answer, or pretrial order.").

*McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010).[4] "Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez*, 244 F.3d at 476. "The purpose of a judicial admission," in other words, "is that it acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission." *See State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968) "By contrast, an ordinary evidentiary admission is 'merely a statement of assertion or concession made for some independent purpose,' and it may be controverted or explained by the party who made it." *Martinez*, 244 F.3d at 476-77 (quoting *McNamara v. Miller*, 269 F.2d 511, 515 (D.C. Cir. 1959)).

For deposition testimony, the weight of authority holds that "'the [deposition] testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party.'" *State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc.*, 250 F.R.D. 203, 212 (E.D. Pa. 2008) (quoting 8A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §2103 (Supp. 2007)). Instead, "testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). "Rule 30(b)(6) does not prohibit the introduction of evidence at trial that contradicts or expands on the deposition testimony of a Rule 30(b)(6) witness." *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 451 (E.D. Pa. 2014); *see also W.R. Grace & Co. v. Viskase Corp.*, 1991 WL 211647, at *2

---

[4] *Accord Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) ("[O]nly deliberate, clear and unequivocal statements can constitute conclusive judicial admissions.").

(N.D. Ill., Oct.15, 1991) ("It is true that a corporation is 'bound' by its Rule 30(b)(6) testimony, in the same sense that any individual deposed under Rule 30(b)(1) would be 'bound' by his or her testimony. All this means is that the witness has committed to a position at a particular point in time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue . . . . Evidence may be explained or contradicted. Judicial admissions, on the other hand, may not be contradicted.").

While the majority view is that deposition testimony cannot count as a judicial admission, Audible Magic points to two cases from other Texas district courts that do just that. *See* Mot. at 10, 11 (citing *Johnson v. IDEXX Labs., Inc.*, No. 3:06-CV-381-M, 2007 WL 1650416, at *1 (N.D. Tex. June 4, 2007), and *Garcia v. EHealthScreenings, L.L.C.*, No. SA:12-CV-1213-DAE, 2014 WL 517484, at *3 (W.D. Tex. Feb. 7, 2014)).[5] But, critically, both of those cases distinguished their ultimate holdings from situations where, as here, the statement made at deposition is "made for some independent purpose" other than "releasing the opponent from proof of fact"; in such situations, the statement does not constitute a judicial admission. 2007 WL 1650416 at *1; 2014 WL 517484 at *3. Moreover, *Johnson* emphasizes that the plaintiff there "made no attempt to . . . explain his testimony" (2007 WL 1650416 at *2), while *Garcia* emphasizes that the plaintiff there had "not provided any independent purpose explaining why Plaintiff made" her apparently self-defeating statements. 2014 WL 517484 at *5. This Opposition, in contrast, provides exactly such an explanation, making *Johnson* and *Garcia* inapplicable by their own logic.

---

[5] The other case that Audible Magic cites, *Velasquez v. Green*, involved a sworn declaration, not deposition testimony. *See* 2012 WL 2885662, at *7 (E.D. Tex. July 13, 2012).

Leaving aside *Johnson* and *Garcia*, other Fifth Circuit district-court cases suggest that deposition testimony can *never* be judicial admissions. *See, e.g., Sims v. Baker Hughes*, No. CIV.A. 12-421, 2013 WL 1352278, at *1 (E.D. La. Apr. 2, 2013) (refusing to treat plaintiff's deposition testimony as judicial admissions and citing numerous authorities in support of that refusal); *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F.Supp.2d 375, 392 n.11 (S.D. Tex. 2011) ("A Rule 30(b)(6) deposition is admissible against the party designating the representative but is not 'binding' on the entity for which the witness testifies in the sense of preclusion or judicial admission . . . . Testimony given in a Rule 30(b)(6) deposition is evidence, which, like other deposition testimony, can be contradicted and used for impeachment purposes."); *Lindquist v. City of Pasadena*, 656 F. Supp. 2d 662, 698 (S.D. Tex. 2009), *aff'd*, 669 F.3d 225 (5th Cir. 2012) (same); *Mar. Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*, 310 F. Supp. 2d 786, 811 (N.D. Tex. 2003), *aff'd*, 120 F. App'x 540 (5th Cir. 2005) (rejecting Defendant's argument that 30(b)(6) deposition testimony was a judicial admission: "30(b)(6) is not the straitjacket Defendants presume it to be. In *A.I. Credit*, the Seventh Circuit recently rejected an attempt similar to that being made by Defendants, instead holding that because the testimony 'can be construed' to mean different things, the issue is one for the finder of fact.") (citing *A.I. Credit Corp.*, 265 F.3d at 637).

While the Fifth Circuit itself has not addressed the question definitively, it has described a party's "unqualified admission of [a] fact in its answer" as "*[m]ore legally determinative than*" an admission of the same fact in deposition. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 411 (5th Cir. 2002) (emphasis added). This suggests that deposition

testimony cannot be a "judicial admission" the way a statement in a pleading can be. And in *Collins v. Wayne Corp.*, the Fifth Circuit held that deposition testimony by Wayne Corp.'s investigator constituted "admissions" by Wayne but not binding judicial admissions, so at trial Wayne "had an opportunity to explain why some of [the investigator's] conclusions were not consistent with Wayne's position." 621 F.2d 777, 782 (5th Cir. 1980). Finally, in *Gray v. American Cyanamid Company*, the Fifth Circuit cited *Wayne Corp.* for the same proposition. 24 F.3d 236 n.8 (5th Cir. 1994). These cases suggest that when the Fifth Circuit addresses this issue head-on, it will rule that deposition testimony cannot constitute "judicial admissions"—at least not in circumstances like those present here.

In the patent context, caselaw on the issue likewise favors Blue Spike. *See Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, No. CV 04-1240 SVW PLAX, 2004 WL 5644805, at *6 (C.D. Cal. Oct. 7, 2004) ("[S]tatements made by the [30(b)(6)] designee are not tantamount to a judicial admission."); *A & E Prods. Grp., L.P. v. Mainetti USA Inc.*, No. 01 CIV. 10820 (RPP), 2004 WL 345841, at *7 (S.D.N.Y. Feb. 25, 2004) (declining to treat 30(b)(6) deposition testimony as judicial admission).[6] This makes sense, as complex patent cases are very different from cases where an individual plaintiff unequivocally admits something in her deposition that only she has personal knowledge of. *Cf. Martinez*, 244 F.3d at 475 (plaintiff admitted that her supervisor did not physically injure her). Thus, patent courts should follow the maxim that even if "a party testifying . . . during a deposition admits a fact which is adverse to his claim or defense,

---

[6] *Accord Lam Research Corp. v. Schunk Semiconductor*, No. C-03-1335 EMC, 2014 WL 4180935, at *5 (N.D. Cal. Aug. 22, 2014) ("The Court notes that Lam has not cited any case in which a court deemed statements of claim construction by a potential infringer (either in a claim construction brief or in invalidity contentions) to be a 'judicial admission.'").

it is generally preferable to treat that testimony as solely an evidentiary admission" rather than a judicial admission. *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995).

Applying those principles here, Moskowitz's 30(b)(1) deposition testimony did not constitute "judicial admissions" by Blue Spike. On the majority view, his testimony simply cannot count as a judicial admission. And, even applying the minority view, Moskowitz's deposition testimony was not a judicial admission, because gave his testimony for an "independent purpose" other than conceding that the MFCCs in the accused products are not "abstracts." Specifically, Moskowitz gave his testimony for the purpose of comparing the functionality of Audible Magic's '223 patent—which, again, is not the basis of Blue Spike's infringement claims—with the functionality of Blue Spike's patents. This is clearly revealed by the fact that each of the "judicial admissions" Audible Magic relies on was prompted by a questions about the '223 patent:

- Audible Magic cites lines 775:7-12 in Moskowitz's deposition transcript, an answer prompted by the following question: "[I]t's your position that each of those independently is a reason why the process set forth in the '223 patent is different from your signal abstracting process; is that right?" Ex. 1 (Moskowitz Dep.) at 775:1-5.

- Audible Magic cites lines 818:25-819:2, an answer Mr. Moskowitz provided after referencing the '223 patent. *Id*. at 813:11-15 ("I did see in Exhibit 18 which is U.S. patent to Blum 5,918,223 or what has been referred to previously as the Blum patent or the '223 patent . . . .").

17

- Finally, Audible Magic cites lines 770:14-21 and 781:4-20, both of which are answers prompted by the following question: "All right. Mr. Moskowitz, isn't it true that the process described in Figures 2 through 13 of the '223 patent described the process of creating abstracts in your signal abstracting patents?" *Id.* at 770:5-8.

As those deposition excerpts show, Moskowitz was not opining on Blue Spike's patent-infringement claims in this lawsuit when he made his alleged "judicial admissions." Rather, he was answering questions with the independent purpose of addressing the '223 patent. Thus, Mr. Moskowitz's testimony cannot be considered judicial admissions.

Moreover, Moskowitz's alleged judicial admissions were not "deliberate, clear, and unequivocal." *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 492 (5th Cir. 2014). While Audible Magic baldly alleges that Moskowitz admitted that "MFCCs are not the 'abstracts' of the patents-in-suit" four separate times (Mot. at 1), Moskowitz never clearly or unequivocally made such statements—not even once.[7]

---

[7] The first alleged judicial admission occurred when Moskowitz said, "What was asked of me is akin to the question you've been asking me several times over the past three days, which is your contention that an MFCC is somehow equivalent with a signal abstract. I contend that this is not the case." Ex. 1 (Moskowitz Dep.) at 775:7-12. The second alleged judicial admission occurred when Audible Magic asked Moskowitz, "isn't it true you cannot disagree that a feature vector representing MFCC values is exactly the same as your signal abstract; isn't that right?" *Id.* at 779:14-17. Moskowitz's attorney objected to the form of this confusingly worded question (*id.* at 779:18), which Moskowitz answered anyway by saying, "I can and I will and I have and I'll continue to, and the U.S. Patent and Trademark Office of these United States agrees with me." *Id.* at 779:19-21. The third alleged judicial admission occurred when Audible Magic asked Moskowitz virtually the same question: "Isn't it true you agree that a feature vector representing MFCC values is exactly the same as the signal abstract in your asserted patents?" *Id.* at 781:14-17. Moskowitz's attorney again objected to the form of the question (*id.* at 781:18), which Moskowitz answered anyway by saying, "Again, I've said it many times, a signal abstract is not the same thing as the MFCCs." *Id.* at 781:19-20. Moskowitz also said, "I also call into question the term 'feature vector.'" 778:7-8. The fourth alleged judicial admission occurred when Audible Magic's attorney asked Moskowitz, "I'm trying to understand the inventor's view of what mathematics are used to compare two signal abstracts in the claims of the asserted patents. Please tell me that." *Id.* at 818:14-17. Moskowitz's attorney again objected to the form of the question (*id.* at 818:18), which Moskowitz answered anyway

Finally, as explained below, Moskowitz's statements cannot be deemed to be "deliberate, clear, and unequivocal" concessions "contrary to a fact essential to [Blue Spike's] theory of recovery," because when Moskowitz made them, he was not addressing "abstracts" (as that term defined by the Court's Claim Construction Order) at all; rather, he was addressing another topic altogether—the *functionality* of the '223 patent and Blue Spike's patents. *Jonibach Mgmt. Trust*, 750 F.3d 486, 492 (5th Cir. 2014).

### III.   In Context, It Is Clear That Moskowitz Did Not Directly, Clearly, and Unequivocally Stipulate that "MFCCs Are Not the 'Abstracts' of the Patents-In-Suit" in the Sense that Audible Magic Requires to Prevail.

Statements must be "construed in their proper context" to determine whether they "constitute judicial admissions." *Koch v. Koch Indus., Inc.*, 996 F. Supp. 1273, 1278 (D. Kan. 1998). Here, when viewed in context, Moskowitz's statements did not directly, clearly, and unequivocally stipulate that "MFCCs are not the 'abstracts' of the Patents-in-Suit." Mot. at 1. And, at a minimum, a fact question on this issue precludes summary judgment.

As noted above, all of Moskowitz's alleged "judicial admissions" occurred while he was discussing Audible Magic's '223 patent—which, again, predated Blue Spike's patents and is not the basis of any of Blue Spike's claims in this suit. Because Moskowitz was not discussing the products that are accused of patent infringement in this lawsuit, there is no way that his testimony can be taken as a "direct, clear, and unequivocal" statement about essential elements of Blue Spike's patent-infringement claims. If Audible Magic wanted to obtain a "judicial admission" about whether the

---

by saying, "What I will say is that the mathematics of MFCCs are not equivalent with a signal abstract on—in any way, shape, or form." *Id.* at 818:25-819:2.

MFCCs in the accused products satisfy the Court's definition of "abstract," it needed to ask Moskowitz that question directly.

Moreover, Moskowitz's alleged judicial admissions were all prompted by Audible Magic's question regarding Blue Spike's "signal abstracting *creation process*." Ex. 1 (Moskowitz Dep.) at 775:4-5 (emphasis added). And Audible Magic referred to Blue Spike's "signal abstracting *patents*" and "*process* of creating abstracts" multiple times during the same exchange. *See, e.g.*, *id*. at 728:24, 730:1-2, 770:22-23 (emphasis added). Thus, Audible Magic did not clearly mean to elicit testimony on the very narrow issue undergirding its motion, namely, the definition of "abstract" in the Court's Claim Construction Order. Instead, Audible Magic's broad questions about "patents" and "process" were fairly interpretable as concerning the functionality of Blue Spike's patents as a whole. Thus, when Moskowitz gave answers that discussed "signal abstracting"—the answers that Audible Magic characterizes as "judicial admissions"— it is clear that Moskowitz was using that term as a shorthand for the functionality of Blue Spike's patents, not as a precise synonym for the defined term "abstract" in the Court's Claim Construction Order.

Moskowitz's testimony surrounding his alleged "judicial admissions" supports this conclusion. For example, Moskowitz said, "a signal abstract is a pioneering *invention*." 780:18 (emphasis added). An "invention" is, obviously, more than the technical term "abstract" in the Court's Claim Construction Order. Moskowitz also emphasized the three "benefits" of "signal abstracting" functionality in Blue Spike's patents: "the ability to differentiate versions [of a signal], the ability to anticipate unknown works, and the ability . . . to prevent the replication of the original signal." *Id*.

at 53:16-21.[8] Again, this focus on functionality belies the notion that Moskowitz's testimony about "signal abstracts" was directed at the precise definition of "abstract" contained in the Court's Claim Construction Order. Finally, Moskowitz repeatedly asserted that the ability to distinguish between versions of a signal is a function of the "abstract" itself. *Id.* at 52:9:16, 53:2-21, 63:5-15; 65:9-15; 68:6-12; 70:22-71:4; 85:12-20; 66:15-21. But strictly speaking, the ability to distinguish between versions of a signal is not accounted for in the "abstract" itself, but rather in additional claim language.[9] This reinforces that when Moskowitz talked about "signal abstracting," he was really talking about functionality as a whole.

When Moskowitz said in the context of addressing the '223 patent that "an MFCC is [not] somehow equivalent with a signal abstract" (*id.* at 775:7-12), he meant to say that the '223 patent's functionality differed from the patents-in-suit's functionality—i.e., that an MFCC cannot distinguish between versions of a signal. ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Moskowitz was *not* directly, clearly, and unequivocally stipulating that "MFCCs are not the 'abstracts' of the Patents-in-Suit" as relevant for the Court's construction of Blue Spike's patent-

---

[8] Moskowitz referred directly back to these "three features" in one of the answers that Audible Magic characterizes as a "judicial admission." *Id.* at 782:5.

[9] For example, claim 1 of Blue Spike's '494 modifies the term "abstract" as follows: "wherein the

████████████████████████████████████████████████████████
████████████████████████████████████████████

infringement claims in this lawsuit. Audible Magic is simply wrong to transmogrify Moskowitz's words in one context into a "judicial admission" in another.

### Conclusion

None of Scott Moskowitz's depositions statements count as judicial admissions against Blue Spike. Moskowitz's Rule 30(b)(1) deposition does not bind Blue Spike in any way. Further, under the majority view, deposition testimony cannot be construed as a judicial admission. And even applying the minority view, there are several reasons why Moskowitz's statements would not count as judicial admissions binding on Blue Spike. In short, Audible Magic's judicial-admission theory—which is the linchpin to its motion for summary judgment—fails for multiple independent reasons. Accordingly, Blue Spike, LLC respectfully asks the Court to deny Audible Magic's Motion for Summary Judgment of Noninfringement.

Respectfully submitted,

/s/ Randall Garteiser
Randall T. Garteiser
 Lead Attorney
 Texas Bar No. 24038912
 rgarteiser@ghiplaw.com
Christopher A. Honea
 Texas Bar No. 24059967
 chonea@ghiplaw.com
Christopher S. Johns
 Texas Bar No. 24044849
Kirk J. Anderson
 California Bar No. 289043
Molly A. Jones
 California Bar No. 301419

GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

*Attorneys for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

/s/ Randall Garteiser