**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| AUDIBLE MAGIC CORPORATION | § | Civil Action No. 6:15-CV-00584-RWS-CMC |
| *Defendant* | § | |
| | § | |
| _____ | § | |
| AUDIBLE MAGIC CORPORATION, | § | |
| *Counterclaim Plaintiff* | § | |
| | § | |
| v. | § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ | § | |
| *Counterclaim Defendants* | § | |
| _____ | § | |

**AUDIBLE MAGIC CORPORATION'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.   ARGUMENT ................................................................................................... 3

     A.    Mr. Moskowitz's Admissions Bind Blue Spike LLC ............................ 3

     B.    Blue Spike's Admissions Constitute Judicial Admissions.................... 6

     C.    Blue Spike Has Not Put Forth Any Evidence That MFCCs Are Abstracts.................. 9

     D.    Mr. Moskowitz Testified That MFCCs Are Not "Abstracts" As Construed By The Court .......................... 12

     E.    Mr. Moskowitz's Testimony Was For The Purpose Of Defining The Scope Of The Claims--Blue Spike Does Not Dispute That Mr. Moskowitz Testified About The MFCCs Of The Accused Products ............................... 14

     F.    Unsupported Attorney Argument About Mr. Moskowitz's Alleged "Understanding" Do Not Undo Clear Admissions That MFCCs Are Not Abstracts ................................................................................ 17

          1.    Blue Spike Fails To Demonstrate Any Disputed Facts Regarding Mr. Moskowitz's "Understanding" ................................ 17

          2.    When Mr. Moskowitz Was Testifying About The Abstract Creation Process He Went Out Of His Way To Assert That MFCCs Are Not "Abstracts" ............................................................ 18

          3.    Mr. Moskowitz's Testimony About The Benefits Of Abstracts Do Not Change The Admissions That MFCCs Are Not Abstracts ................... 19

     G.    Blue Spike Only Accuses MFCCs As The Alleged "Abstract" ................... 20

III.   CONCLUSION .............................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&E Prods. Group, L.P. v. Mainetti USA, Inc.,*
  2004 U.S. Dist. LEXIS 2723 (S.D.N.Y. 2004) ............................................ 9

*Arshal v. United States,*
  621 F.2d 421 (Ct. Cl. 1980), *cert. denied*, 449 U.S. 1077 (1981) ................ 14

*Austin v. Miller,*
  767 S.W.2d 284 (Tex. App. 1989) ............................................................ 6

*Bldg. Erection Servs. Co., L.C. v. Am. Bldgs. Co.,*
  2010 U.S. Dist. LEXIS 2626 (D. Kan. 2010) ............................................ 5

*Botell v. U.S.,*
  2013 U.S. Dist. LEXIS 12075 (E.D. Cal. 2013) .................................... 3, 5

*Cabot Safety Intermediate Corp. v. Howard S. Leight & Assocs.,*
  992 F. Supp. 463 (D. Mass. 1998) ...................................................... 11, 14

*Cadle Co. II v. Gasbusters Prod. I L.P.,*
  441 Fed. Appx. 310 (6th Cir. 2011) ........................................................ 7

*Calixto v. Watson Bowman Acme Corp.,*
  2008 U.S. Dist. LEXIS 112372 (S.D. Fla. 2008) ...................................... 5

*Caponi v. Larry's 66,*
  601 N.E.2d 1347 (Ill. App. Ct. 1992) ...................................................... 7

*Cleveland v. Policy Management Systems Corp.,*
  526 U.S. 795 (1999) ................................................................................ 9

*Collins v. Wayne Corp.,*
  621 F.2d 777 (5th Cir. 1980) .................................................................... 7

*Connell v. Sears, Roebuck & Co.,*
  722 F.2d 1542 (Fed. Cir. 1983) .............................................................. 15

*Crompton Greaves, Ltd. v. Shippers Stevedoring Co.,*
  776 F. Supp. 2d 375 (S.D. Tex. 2011) .................................................... 8

*Enzo Biochem, Inc. v. Gen-Probe, Inc.,*
  424 F.3d 1276 (Fed. Cir. 2005) .............................................................. 11

*Garcia v. EHealthscreenings, LLC,*
  2014 U.S. Dist. LEXIS 15465 (W.D. Tex. 2014) .............................. 6, 8, 10

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
  2007 U.S. Dist. LEXIS 67071 (E.D. Tex. 2007) ............................................................... 18

*Gray v. Am. Cyanamid Co.*,
  24 F.3d 236 (5th Cir. 1994) ............................................................................................... 7

*Griffin v. Superior Ins. Co.*,
  338 S.W.2d 415 (Tex. 1960) .............................................................................................. 7

*GTX Corp. v. Kofax Image Prods.*,
  571 F. Supp. 2d 742 (E.D. Tex. 2008) .................................................................. 10, 11, 18

*Higgins v. Mississippi*,
  217 F.3d 951 (7th Cir. 2000) ............................................................................................. 9

*Icon Enters. Int'l v. Am. Prods. Co.*,
  2004 U.S. Dist. LEXIS 31080 (C.D. Cal. 2004) ............................................................... 9

*Johnson v. IDEXX Labs., Inc.*,
  2007 U.S. Dist. LEXIS 40685 (N.D. Tex. 2007) ...................................................... 6, 8, 9

*Jonibach Mgmt. Trust v. Wartburg Enters.*,
  750 F.3d 486 (5th Cir. 2014) ................................................................................... 6, 7, 17

*Lindquist v. City of Pasadena*,
  656 F. Supp. 2d 662 (S.D. Tex. 2009) ............................................................................... 8

*Mar. Madness Athletic Ass'n LLC, v. Netfire, Inc.*,
  310 F. Supp. 2d 786 (N.D. Tex. 2003) .............................................................................. 8

*Martinez v. Bally's Louisiana, Inc.*,
  244 F.3d 474 (5th Cir. 2001) ............................................................................................. 8

*Matrix Grp. LLC v. Innerlight Holdings, Inc.*,
  2015 U.S. Dist. LEXIS 3304 (D. Utah 2015) .................................................................... 4

*Maynard v. Brewer*,
  787 F.2d 591 (6th Cir. 1986) ............................................................................................. 7

*Miller v. Union Pac. R.R.*,
  2008 U.S. Dist. LEXIS 87869 (D. Kan. 2008) .................................................................. 4

*Momsen v. Nebraska Methodist Hosp.*,
  313 N.W.2d 208 (Neb. 1981) ............................................................................................ 7

*Nolan v. M/V Sante Fe*,
  1994 U.S. App. LEXIS 41107 (5th Cir. 1994) .................................................................. 7

*Northpoint Tech., Ltd. v. DirecTV Group, Inc.*,
  2011 U.S. Dist. LEXIS 90275 (W.D. Tex. 2011) ..................................................... 11, 18

*Nye v. Sage Prods.*,
    1986 U.S. Dist. LEXIS 21092 (N.D. Ill. 1986) ........................................................... 12, 14

*Phillips v. Am. Honda Motor Co.*,
    2005 U.S. Dist. LEXIS 46223 (S.D. Ala. 2005) ................................................................ 3

*Previto v. Ryobi N. Am., Inc.*,
    2011 U.S. Dist. LEXIS 3853 (S.D. Miss. 2011) ........................................................ 11, 18

*Reliable Contracting Group., LLC. v. Dep't of Veterans Affairs*,
    779 F.3d 1329 (Fed. Cir. 2015) ......................................................................................... 7

*Rijhwani v. Wells Fargo Home Mortg., Inc.*,
    2015 U.S. Dist. LEXIS 10579 (N.D. Cal. 2015) .............................................................. 4

*Sabre v. First Dominion Capital, L.L.C.*,
    2001 U.S. Dist. LEXIS 20637 (S.D.N.Y. 2001) ............................................................. 4

*Sims v. Baker Hughes*,
    2013 U.S. Dist. LEXIS 47594 (E.D. La. 2013) ............................................................... 7

*Stacey v. ZF Lemforder Corp.*,
    2007 U.S. Dist. LEXIS 4569 (E.D. Mich. 2007) ............................................................ 4

*Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.*,
    431 F.2d 539, 166 USPQ 454 (5th Cir. 1970) .............................................................. 15

*Teashot v. Green Mountain Coffee Roasters*,
    2014 U.S. Dist. LEXIS 14841 (D. Colo. 2014). ........................................................... 11

*U.S. v. Afram Lines (USA), Ltd.*,
    159 F.R.D. 408 (S.D.N.Y. 1994) ..................................................................................... 3

*U.S. v. One Parcel of Real Estate at 5860 North Bay Road*,
    121 F.R.D. 439 (S.D. Fla. 1988) ...................................................................................... 3

*Wyatt v. Hunt Plywood Co.*,
    297 F.3d 405 (5th Cir. 2002) ........................................................................................... 7

**Other Authorities**

Local Rule CV-56(d) ................................................................................................................ 9

Rule 30(b)(1) ................................................................................................................. 3, 4, 5, 6

Rule 30(b)(6) ................................................................................................................ 4, 5, 6, 8

## I.       INTRODUCTION

A set of numbers called "MFCCs" existed in Audible Magic's accused products prior to Blue Spike's patents-in-suit, and continue to exist in Audible Magic's accused products today.  Blue Spike, through its sole principal, sole member and the inventor of the patents-in-suit, made repeated binding judicial admissions that "MFCCs" are not the patents' "abstracts," in order to avoid Audible Magic's technology as prior art.  Thereafter, in order to salvage its infringement theories, Blue Spike attempted to assert that the MFCCs in Audible Magic's technology are the patents' "abstracts" and it points to nothing else as meeting the limitation.  That theory is precluded by Blue Spike's admissions and summary judgment is appropriate.

In its Opposition, Blue Spike attempts to obfuscate the clear, binding admissions, but each argument fails.  This is a very simple situation.  Mr. Moskowitz filed this patent lawsuit, via his Blue Spike entity, accusing Audible Magic's MFCC-based audio fingerprints.  He knew that MFCC-based fingerprints pre-existed his patents by years.  The Audible Magic MFCC-based prior art, in particular, is very damaging to Blue Spike's case.  For example, it is undisputed that Audible Magic's prior art '223 patent, about which Moskowitz made admissions, describes *precisely* the MFCC-based fingerprints of the accused products today.  This parallel was laid out in Audible Magic's opening expert reports; Blue Spike did not put in any expert report or opinions to rebut this fact.  Indeed, the opposite is true—Blue Spike's expert admitted in his report that the prior art '223 patent describes the fingerprinting method used in the accused products today.  So, Blue Spike is stuck firmly between its validity arguments and infringement arguments.  For this reason, when faced with a description of the Audible Magic MFCCs, Blue Spike elected to disclaim those as abstracts.

Now Mr. Moskowitz wants to have it both ways—i.e. "MFCCs are abstracts for purposes of my infringement arguments" and "MFCCs are not abstracts for purposes of my validity arguments."  He cannot have it both ways.  To allow this case to proceed on that premise would be unconscionable.

Blue Spike made its choice: it is attempting to weave around versions of the accused products that constitute prior art by disclaiming that MFCCs are abstracts.  The result is that later versions of those *same* Audible Magic products cannot infringe.  Knowing that it is weak on the merits, Blue Spike spends most of its brief trying to argue that the one-person show that is Blue Spike LLC (just one of several alter-ego entities of Scott Moskowitz), is not bound by Mr. Moskowitz's admissions.  As explained below, on the facts of this case and under relevant law, the Court is on solid ground ruling that Blue Spike has judicially admitted that MFCCs are not the patents' "abstracts."

Beyond that, Blue Spike's brief tries to claim that Mr. Moskowitz did not understand the claim construction when he was answering.  Yet, in his admissions that MFCCs are not abstracts he *expressly* asserted that he meant the term "abstract" as construed by the Court:  "Again, I've said it many times, a signal abstract is not the same thing as the MFCCs and, again, the claim construction which you based your arguments was rejected by the court during the Markman hearing…" and "an MFCC, as I understand, is not equivalent to a signal abstract based on the description, the specification, the prosecution history and the claim construction."  Thus, Mr. Moskowitz was expressly disclaiming MFCCs as abstracts pursuant to the Court's claim construction.

Scott Moskowitz is not some confused employee of a large company, far-removed from the litigation, who made an ambiguous statement.  Rather, his whole business is prosecuting patents, filing patent cases, developing claim construction positions and pushing those cases to extract settlements.  He is extremely calculating and knew *exactly* what he was admitting, on behalf of and to the benefit of Blue Spike and himself.  He was trying to avoid Audible Magic's prior art MFCCs, which are precisely the same as the accused MFCCs.  The problem is so acute for Blue Spike that it must resort to obfuscation through attorney argument and an improper attempt to change its infringement theory.  For example, Blue Spike's attorneys attempt weakly to suggest that its accused "abstract" ████████████ ████████████████████████████████████████ But Blue Spike knows that it cannot now go back

and change its theory, and elsewhere it admits that MFCCs are the *only* thing it ultimately attempted to accuse as "abstracts." Blue Spike's expert admitted the same in deposition. Notably, Blue Spike never actually puts in any controverting evidence that MFCCs *are* abstracts or that Mr. Moskowitz actually believes that is the case.

Blue Spike disclaimed that MFCCs are the asserted patents' abstracts. It has put in no evidence at all to controvert the admissions. Audible Magic is entitled to summary judgment.

## II.   ARGUMENT

### A.   Mr. Moskowitz's Admissions Bind Blue Spike LLC

Blue Spike's primary argument is that Mr. Moskowitz's clear and unequivocal admissions are purportedly not binding, because he was testifying at those moments pursuant to a Rule 30(b)(1) notice. This ignores both the law and the facts.

It is well settled that "the party seeking the deposition may identify a specific officer, director, or managing agent to be deposed and notice that person under Rule 30(b)(1). The testimony of such a person will be binding on the party." *U.S. v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994); *U.S. v. One Parcel of Real Estate at 5860 North Bay Road*, 121 F.R.D. 439, 440 (S.D. Fla. 1988) (testimony of "a particular officer, director, or managing agent pursuant to Rule 30(b)(1) … is of the corporation…"); *Phillips v. Am. Honda Motor Co.*, 2005 U.S. Dist. LEXIS 46223, *4 (S.D. Ala. 2005) (Rule 30(b)(1) testimony of "officer, director or managing agent" is "testimony of the corporation"); *Botell v. U.S.*, 2013 U.S. Dist. LEXIS 12075 (E.D. Cal. 2013) (same; "testimony of such a person will be binding on the party")

With respect to the deposition at issue, there is no dispute that this is precisely what was done. Scott Moskowitz is not a mere "employee" whose 30(b)(1) testimony may not bind the company. Rather, he is the ***only*** officer, director, managing agent and investor of Blue Spike LLC. Blue Spike LLC is Scott Moskowitz, and nothing more, and Blue Spike admits this fact. [Opp. at p. 4] Mr.

-3-

Moskowitz testified that he didn't distinguish between his own testimony and that of Blue Spike LLC. For example, when asked whether Blue Spike LLC or Blue Spike Inc. controlled particular resources, Mr. Moskowitz asserted that it didn't matter because it all comes down to him: "I am the only member of Blue Spike LLC at present.  I am also the only director, the only officer, and the only employee of Blue Spike, Inc., so … -- which one of my hats do I answer?  Do I say that the employee Scott Moskowitz takes it and hands it to the officer?  The officer Scott Moskowitz tells the employee Scott Moskowitz, what do we do with this?  I mean, it all comes to me, so I'm not really clear on how you're differentiating between the two entities." [Declaration of Johanna Jacob ("Jacob Decl."), Ex. A at 1141:8-1142:6][1]  Thus, Blue Spike is bound by Mr. Moskowitz's testimony.[2]

Blue Spike appears to suggest that Audible Magic had to take some specific procedural step to depose Blue Spike pursuant to Rule 30(b)(1).  [Opp. at p. 9]  That is simply not the case.  Rather, Audible Magic needed only to "identify a specific officer, director or managing agent to be deposed and notice that person under Federal Rule of Civil Procedure 30(b)(1)."  *Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2015 U.S. Dist. LEXIS 10579, *8 (N.D. Cal. 2015); *Stacey v. ZF Lemforder Corp.*,

---

[1]  *See also* Jacob Decl., Ex. A at 1232:4-1233:25 (when asked how he prepared for 30(b)(6) testimony, Moskowitz referred back to the 30(b)(1) deposition and preparation: "[a]s I believe that I had testified earlier in the deposition in December as well as earlier today, the preparation was essentially part of my discovery process trying to make sure that of the topics named, that I had access to information and/or substance that would help me be fully responsive to the topics that are named in [the 30(b)(6) notice]…. I'm currently the sole member of Blue Spike LLC and also the manager for Blue Spike LLC.")

[2]  The cases that Blue Spike attempts to rely on are inapposite.  For example, in *Miller v. Union Pac. R.R.*, 2008 U.S. Dist. LEXIS 87869 (D. Kan. 2008), a party was entitled to a separate 30(b)(6) deposition of a large railroad company, despite that individual low-level employees of the company had been previously deposed about some of the same topics.  This situation where 30(b)(1) testimony of low level employees did not bind the company is entirely different from the present situation where the 30(b)(1) testimony was of Blue Spike's sole officer, director, managing agent and principal, as well as the inventor of the asserted patents and the person Blue Spike contends "coined" the term signal abstract.  The cases *Matrix Grp. LLC v. Innerlight Holdings, Inc.*, 2015 U.S. Dist. LEXIS 3304 (D. Utah 2015) and *Sabre v. First Dominion Capital, L.L.C.*, 2001 U.S. Dist. LEXIS 20637 (S.D.N.Y. 2001) are both about deposition time limits.  Neither addresses, much less refutes, the settled law that an officer, director or managing agent deposed pursuant to Rule 30(b)(1) binds their company.

2007 U.S. Dist. LEXIS 4569, *3-4 (E.D. Mich. 2007) ("Depositions of officers, directors, or managing agents of a party corporation may be taken by noticing the deposition of that particular person pursuant to Federal Rule of Civil Procedure 30(b)(1)."); *Bldg. Erection Servs. Co., L.C. v. Am. Bldgs. Co.*, 2010 U.S. Dist. LEXIS 2626, *4 (D. Kan. 2010) ("a deposing party may, under Fed. R. Civ. P. 30(b)(1), name a specific corporate employee as the deponent.  'If the named employee is a director, officer, or managing agent of the corporation, such employee will be regarded as a representative of the corporation.'")[3]  Audible Magic exercised its right by noticing Mr. Moskowitz who, as the inventor of Blue Spike LLC's asserted patents, was the relevant (indeed, *only*) representative on that topic.  To bind the company, all that must be shown is that the deponent is, in fact, an officer, director or managing agent.  *Id.* at *9.  It is undisputed that Mr. Moskowitz is the sole officer, director and managing agent, and employee, of Blue Spike LLC.  This renders his testimony binding on the company, particularly given that the testimony was the key issue in Blue Spike's pending litigation.

Rule 30(b)(6) does not create a hard and fast rule that "only" 30(b)(6) depositions bind a company.  As discussed, the 30(b)(1) deposition of Mr. Moskowitz binds Blue Spike.  The advisory committee notes to Rule 30(b)(6) indicate that it "supplements the existing practice whereby the examining party designates the corporate official to be deposed" and "if the examining party believes that certain officials who have not testified pursuant to this subdivision have added information, he may depose them." [Jacob Decl., Ex. B; *see also* Fed. R. Civ. P. 30(b)(6) ("[t]his paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.")]  Rather, Rule 30(b)(6) was enacted to prevent companies from offering numerous 30(b)(1) witnesses, each of whom disclaimed knowledge of information relevant to the case.  *See id.* (Rule 30(b)(6) designed to "curb the 'bandying'

---

[3]  *See also Calixto v. Watson Bowman Acme Corp.*, 2008 U.S. Dist. LEXIS 112372 (S.D. Fla. 2008), *quoting* 8A Wright, Miller & Marcus, Fed. Pract. & Proc. §2103 ("Under Rule 30(b)(1), any person can be deposed, including 'any person associated with [a] corporation and acquainted with the facts.'"); *Botell v. United States*, 2013 U.S. Dist. LEXIS 12075 (E.D. Cal. 2013) ("The deposition of a specific officer or managing agent may be noticed pursuant to Fed. R. Civ. P. 30(b)(1).")

by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it.").

In the case of Scott Moskowitz and Blue Spike LLC, the concern prompting Rule 30(b)(6) versus 30(b)(1) is not even possible, as the entity and the individual are one and the same.  The *only* knowledge, positions and beliefs of Blue Spike LLC are those of Scott Moskowitz.  Given that fact and Mr. Moskowitz's admission that he does not distinguish between personal and corporate testimony, a finding that Blue Spike LLC is bound by testimony of its officer is legally proper and warranted.  Notably, beyond pure attorney argument, Blue Spike provides no evidence that if Mr. Moskowitz happened to be subject to a 30(b)(6) notice at the time of his admissions, he would have provided a different answer to the factual question of whether MFCCs are "abstracts."  Indeed, if Mr. Moskowitz had done so, he would have perjured himself one way or the other.

Blue Spike LLC is bound by the admissions of its sole officer, Mr. Moskowitz.

## B.  Blue Spike's Admissions Constitute Judicial Admissions

Admissions during depositions which are deliberate, clear and unequivocal constitute binding judicial admissions.  Blue Spike incorrectly suggests that deposition testimony may not be a judicial admission and concocts a non-existent "majority" and "minority" rule in this regard.  [Opp. at p. 14]  Unable to avoid what the cases actually say, Blue Spike ultimately concedes that testimony may be binding judicial admissions.  [*Id.*]  There is extensive authority, including in the 5th Circuit, establishing that deposition testimony may constitute case-dispositive judicial admissions.  *See Jonibach Mgmt. Trust v. Wartburg Enters.*, 750 F.3d 486, 492 n. 2 (5th Cir. 2014); *Johnson v. IDEXX Labs., Inc.*, 2007 U.S. Dist. LEXIS 40685, *3-5 (N.D. Tex. 2007); *Garcia v. EHealthscreenings, LLC*, 2014 U.S. Dist. LEXIS 15465, *13-14 (W.D. Tex. 2014); *see also Austin v. Miller*, 767 S.W.2d 284, 288 (Tex. App. 1989) (summary judgment granted where opposing party bound by case-dispositive judicial admission made during deposition of its witness on matters "well within his competence, and his peculiar

experience, knowledge, training, and, indeed, his official responsibilities.")[4]

Blue Spike baldly misrepresents that there is no 5th Circuit law finding testimony to be a judicial admission.  [Opp. at pp. 15-16]  That is just not so.  *See e.g. Jonibach Mgmt. Trust v. Wartburg Enters.*, 750 F.3d 486, 492 n.2 (5th Cir. Tex. 2014) (finding that "testimony regarding the initial contract also constitute judicial admissions"), *following Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 417-19 (Tex. 1960) (setting forth same judicial admission test that is followed in the 5th Circuit; testimonial admissions found to be judicial admissions).  The cases that Blue Spike relies on confirm this fact.  *See e.g. Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 411 (5th Cir. 2002) (relying on deposition admission to grant summary judgment).  Blue Spike's reference to cases where deposition testimony was found not to be a judicial admission is simply a reflection of the facts of those cases.  None of that changes the facts of *this* case, where the sole representative of plaintiff and the inventor who coined the term signal "abstract" asserted forcefully, repeatedly and definitively that the set of numbers called MFCCs are not his patents' "abstract."[5]  The binding effect of such judicial admissions is committed to the sound discretion of the Court.  *See Nolan v. M/V Sante Fe*, 1994 U.S. App. LEXIS 41107, *6 (5th

---

[4] Numerous federal and state courts are in accord.  *See e.g. Cadle Co. II v. Gasbusters Prod. I L.P.*, 441 Fed. Appx. 310, 313 (6th Cir. 2011) ("Further, admissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission and cannot be challenged in the trial court or on appeal."); *Maynard v. Brewer*, 787 F.2d 591 (6th Cir. 1986) (holding that a "blatant judicial admission by a plaintiff in his deposition....[was] binding on the parties"); *see also Caponi v. Larry's 66*, 601 N.E.2d 1347, 1355 (Ill. App. Ct. 1992) (deposition testimony was judicial admission; "A judicial admission may not be contradicted and is binding upon the party making such admission....A party may contradict a judicial admission neither with his own contrary testimony nor that of other occurrence witnesses or experts."); *Momsen v. Nebraska Methodist Hosp.*, 313 N.W.2d 208, 212-13 (Neb. 1981) (deposition testimony was judicial admission; "Where a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded.")

[5] The cases that Blue Spike cites are inapposite, involving very different facts from this case.  *See Reliable Contracting Group., LLC. v. Dep't of Veterans Affairs*, 779 F.3d 1329 (Fed. Cir. 2015) (involving assertion that statements in a pre-litigation letter were judicial admissions); *Sims v. Baker Hughes*, 2013 U.S. Dist. LEXIS 47594, *4-5 (E.D. La. 2013) (admissions were about a topic about which it was undisputed that witness had no knowledge); *Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980) (admission was by a third-party consultant, not the party to the dispute); *Gray v. Am. Cyanamid Co.*, 24 F.3d 236, n. 8 (5th Cir. 1994) ("stray statements" did not actually admit fact in issue)

Cir. 1994) ("The district court was well within its discretion to conclude that the appellant's own testimony and his judicial admissions precluded [his theory of liability].")

Here, Blue Spike's admissions were put forward by Mr. Moskowitz in his deposition in order to relieve Audible Magic of proof of fact whether MFCCs constitute "abstracts."  Indeed, the whole point was to limit the scope of the patent claims, in the service of Blue Spike's litigation, so that Blue Spike could attempt to avoid invalidity.  Mr. Moskowitz knew that he was withdrawing that fact from contention and was impatient at having to answer repeated questions about whether MFCCs were abstracts (*see e.g.* Ex. 1 at 775:7-12), indicating Blue Spike's intent to foreclose further discovery into the issue.  Moskowitz reviewed and corrected errors in his transcript (*see* Ex. 1), but left the admissions unchanged.  This was no accident or slip of the tongue.  The waiver was knowing and intentional, in order to obtain a litigation benefit, just like the judicial admissions in *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5ᵗʰ Cir. 2001) (admission made to establish fact and cut off further questioning on the topic), *Johnson*, 2007 U.S. Dist. LEXIS 40685 at *3-6 (deposition admission made to define scope of party's contentions about the key fact in the case) and *Garcia*, 2014 U.S. Dist. LEXIS 15465 at *13-14 (deposition admission made to establish party's understanding of the key fact in the case).[6]

Blue Spike points to a few cases for the non-controversial proposition that the sole fact that a deposition statement is by a corporate representative does not, *in and of itself*, render it a "judicial admission." [Opp. at pp. 13-14][7]  Blue Spike then attempts to extend this proposition to unreasonable

---

[6] Because Mr. Moskowitz is one and the same as Blue Spike LLC, the cases involving deposition admissions by individual plaintiffs, such as *Johnson*, *Garcia* and *Martinez* are particularly instructive. Blue Spike attempts weakly to suggest the contrary (Opp. at p. 16).  But here, Blue Spike *is* Scott Moskowitz and in its complaint Blue Spike asserts that Moskowitz is the one and only person who coined the term "abstract."  Like the cases where a single party plaintiff has unique personal knowledge of a fact, Moskowitz is uniquely situated to bind Blue Spike under the judicial admission doctrine.

[7]  *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F. Supp. 2d 375, 392 n. 11 (S.D. Tex. 2011) (stating only that mere status as 30(b)(6) testimony does not, in and of itself, establish judicial admission); *Lindquist v. City of Pasadena*, 656 F. Supp. 2d 662, 698 (S.D. Tex. 2009) (same; case is entirely inapposite because issue was whether 30(b)(6) witness could actually remember facts or answer questions); *Mar. Madness Athletic Ass'n LLC, v. Netfire, Inc.*, 310 F. Supp. 2d 786, 811 (N.D.

proportions, asserting that "deposition testimony can *never* be judicial admissions." [Opp. at p. 15] This straw-man argument is a dramatic misstatement of the law, as can be seen from the authority above. It does nothing to change that in this case, the witness uniquely situated to admit the facts at issue, Blue Spike's corporate representative and alter-ego, and the inventor of the patents, made deliberate, clear and unequivocal admissions that MFCCs are not abstracts. Mr. Moskowitz's admissions are judicial admissions despite what may happen on the facts of some other case.

Finally, even if Blue Spike's admissions were found to be merely "evidentiary" (and they decidedly are not), Blue Spike has not even proffered any *evidence* whatsoever from Mr. Moskowitz or any other source to overcome the admission, instead relying on pure attorney argument. It is settled that "a party cannot create an issue of fact in the face of an evidentiary admission unless the party contradicts and explains the disavowed statement." *Johnson*, 2007 U.S. Dist. LEXIS 40685 at *4-5; *see also Higgins v. Mississippi*, 217 F.3d 951, 955 (7th Cir. 2000) (Posner, J.) (affirming summary judgment based on admission; "a party cannot by affidavit retract damaging admissions without a good explanation… whether … the admissions were made in a deposition, a trial, another affidavit, or, as in this case, a written statement not under oath…"), *citing Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806-07 (1999). There is no evidence from Mr. Moskowitz or anyone else contradicting or retracting the statements. It is too late for Blue Spike to do so now, and its attorney argument is insufficient to overcome summary judgment.

### C. Blue Spike Has Not Put Forth Any Evidence That MFCCs *Are* Abstracts

In its opposition, Blue Spike does not put forth any summary judgment *evidence* that MFCCs meet the "abstract" limitation. Local Rule CV-56(d) defines "proper summary judgment evidence" as:

excerpted copies of pleadings, depositions, documents, electronically stored information,

---

Tex. 2003) (same; case is entirely inapposite because witnesses did not actually admit the issue in dispute); *Icon Enters. Int'l v. Am. Prods. Co.*, 2004 U.S. Dist. LEXIS 31080, *18-19 (C.D. Cal. 2004) (same); *A&E Prods. Group, L.P. v. Mainetti USA, Inc.*, 2004 U.S. Dist. LEXIS 2723, *17-20 (S.D.N.Y. 2004) (same)

> answers to interrogatories, admissions, affidavits or declarations, stipulations (including those made for purposes of the motion only), and other admissible evidence cited in the motion for summary judgment or the response thereto.

While Blue Spike's attorneys allude that they "dispute" the judicial admissions that MFCCs are not abstracts (Opp. p. 1-2), Blue Spike provides absolutely no affirmative evidence that MFCCs *are* abstracts.  There is no factual analysis offered from any of Blue Spike's experts or anyone else.  Rather, the only material in the summary judgment record is Blue Spike's deliberate, clear and unequivocal admissions that MFCCs are not abstracts, the admissions of co-inventor Michael Berry that MFCCs are not abstracts and detailed analysis of Audible Magic's expert at Exhibit 7 to its opening brief, establishing the same.  Blue Spike offers *only* attorney argument in response.

> It is settled that a party responding to motion for summary judgment has the burden:

> to go beyond the pleadings and by [his or her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate  specific facts showing that there is a genuine issue for trial…. The non-moving party 'must, either by opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing a genuine issue as to a material fact exists.' … '[Non-movants] are required to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim.' … Further, 'Rule 56 does not require the district court to sift through the record in search of evidence to support a [non-movant's] opposition to summary judgment.'

*Garcia*, 2014 U.S. Dist. LEXIS 15465 at *6-7 (internal citations omitted).

> Attorney argument is insufficient to create an issue of fact.  For example, in *GTX Corp. v. Kofax Image Prods.*, 571 F. Supp. 2d 742 (E.D. Tex. 2008), like the instant case, the inventor of the asserted patent admitted that its claims did not cover the technique used by defendants and plaintiff put in only attorney argument and conclusory expert opinions in response to defendant's summary judgment motion.  *Id.* at 747-748.  The Court granted summary judgment of non-infringement, finding that "[a]s the party opposing a summary judgment of non-infringement, [plaintiff] had the burden to rebut [defendant's] arguments and to show that [plaintiff's] evidence was not conclusory" and that "[plaintiff] cannot survive summary judgment by offering unsupported attorney argument and

conclusive expert statements." *Id.* at 746, 751.[8]  Blue Spike glosses over *GTX* in its brief (Opp. at p. 10), but that case is directly on point.  Indeed, if summary judgment of non-infringement were granted there, where the inventor admitted that the claims did not cover defendant's technique and plaintiff put in only cursory expert testimony, summary judgment is even *more* warranted in the instant case, given the repeated, unequivocal inventor admissions here coupled with the fact that Blue Spike puts in absolutely no evidence whatsoever that MFCCs are "abstracts."

Blue Spike also glosses over the case *Teashot v. Green Mountain Coffee Roasters*, 2014 U.S. Dist. LEXIS 14841, *11-16 (D. Colo. 2014).  [Opp. at p. 10-11]  There, the asserted claim language required a structure that is "water-permeable," but the inventor and plaintiff's sole owner admitted in deposition that the accused structure did not meet that claim language, i.e. he testified that the accused structure was "water-*im*permeable."  *Id.* at *10-12 (emphasis added).  The admissions here are even stronger and more explicit, in that Mr. Moskowitz reviewed a description of the accused Audible Magic MFCC fingerprints and, among other admissions, asserted that "the mathematics of MFCCs are not equivalent with a signal abstract on -- in any way, shape, or form."  [Ex. 1, 818:14-819:2]  Like the inventor and solo plaintiff in *Teashot*, Mr. Moskowitz admitted that the accused structure was not the same as the structure in the claims.  Moreover, here, Blue Spike does not even offer any evidence in the record establishing that MFCCs are abstracts.  Again, Blue Spike's admissions are uncontroverted and it has put forth no evidence or raised any issue of fact.[9]

---

[8]  *See also Northpoint Tech., Ltd. v. DirecTV Group, Inc.*, 2011 U.S. Dist. LEXIS 90275, *5-7 (W.D. Tex. 2011) (plaintiff had admitted invalidity of asserted patent, but—like the instant case—later attempted to oppose summary judgment by offering pure attorney argument that elements were missing from prior art; summary judgment was granted because plaintiff's "opposition relies only on conclusory attorney argument instead of admissible evidence."); *Previto v. Ryobi N. Am., Inc.*, 2011 U.S. Dist. LEXIS 3853, *21-22 (S.D. Miss. 2011) ("Plaintiff has not pointed the Court to any expert opinion or other competent summary judgment evidence in support of this particular claim, instead offering the unsupported argument of counsel …  Allegations and attorney arguments without supporting evidence are not sufficient to preclude summary judgment."); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence.").

[9]  *See also Cabot Safety Intermediate Corp. v. Howard S. Leight & Assocs.*, 992 F. Supp. 463, 466 (D.

Under established summary judgment principles, Blue Spike failed to raise any disputed issue

of fact to overcome its clear judicial admissions.  Summary judgment is appropriate.

### D.      Mr. Moskowitz Testified That MFCCs Are Not "Abstracts" As Construed By The Court

When Scott Moskowitz testified about his patents, he made it absolutely clear that his

testimony was framed by the "claim construction" ruling in this case.  He referred to the "claim

construction" 114 times[10] when testifying about what his patents covered.  He testified that because he

was "assisting with the claim construction" that reference to the claim construction would suffice to

answer questions posed of him and that "my own words exist in… the claim construction."  [Jacob

Decl., Ex. A at 405:1-7, 409:3-6, 1017:22-25 (referring to the "claim construction which I was involved

in"), 1094:10-16 ("the claim construction which I also participated in")].  Mr. Moskowitz clearly

understood the claim construction and applied that in answering questions.

In particular, when Mr. Moskowitz testified that MFCCs are not abstracts he explicitly made

clear that he was talking about the term "abstract" as construed by the Court.  Indeed, on the first day of

his deposition, Mr. Moskowitz established that when he was testifying about signal abstracts, he was

adopting the Court's claim construction (which he knew down to the date of the hearing):

Q.  Okay.  Well, sitting here today, what is your – **what is your *definition of what a signal abstract is?***

A.  I believe the term comes up at least 40 times in this particular application, and as **I would**

---

Mass. 1998) (same; after party disclaimed structure to avoid invalidity it could not assert an
infringement theory that would encompass that structure); *Nye v. Sage Prods.*, 1986 U.S. Dist. LEXIS
21092, *5-19 (N.D. Ill. 1986) (same)

[10]  Moskowitz Depo., 52:3-8, 117:1-11, 120:23-121:6, 212:4-217:11, 290:11-21, 306:14-20, 308:1-
309:19, 314:21-317:12, 319:2-321:21, 324:6-325: 15, 332:11-15, 335:15-20, 338:17-340:19, 342:15-
19, 345:9-346:25, 366:9-367:24, 387:7-12, 389:23-390:16, 392:4-9, 395:25-396: 11, 399:2-9, 409:3-6,
417:7-418:12, 420:11-18, 557:2-560:13, 616:3-14, 631:19-22, 633:12-17, 685:9-16, 687:5-688:15,
693:5-15, 716:4-16, 718:6-16, 733:21-736:7, 748:1-5, 753:22-756:4, 767:3-10, 775:12-778: 25,781:19-
23,794:2-795:18, 805:10-13, 809:24-810:3, 812:17-22, 818:19-22, 833:2-835:5, 843:13-20, 848:7-17,
857:15-859:1, 861:8-18, 866:15-19, 868:15-20, 873:16-18, 875:21-25, 880:10-15, 882:20-888:21,
891:3-6, 949:22-950:1-5, 959:1-5, 1017:22-25, 1048:1-8, 1057:3-6, 1070:5-10, 1074:1-6, 1076:21-
1078:7, 1088:5-12, 1091:20-1092:1, 1094:10-16, 1238:12-17, 1240:22-1241:1, 1307:9-11, 1483:2-9,
1486:16-18, 1487:14-25, 1492:17-1493:6, 1561:12-15.

**refer you to** the specification and the prosecution history in addition to ***the court's claim construction* which was just done in October 1st, that definition is suitable.**"

[Ex. 1, 120:23-121:6]

A… It's what's in the specification. It's in the prosecution history, which you can certainly go over as well, and ***it's in the claim construction in which the term "signal abstract" was defined …. So if you would like to again refer to the claim construction document and go over what those definitions are, I'll stick by those definitions***.

[Jacob Decl., Ex. A at 858:19-859:1]

In other words, contrary to Blue Spike's argument, it is beyond dispute that Mr. Moskowitz was using precisely the Court's definition of abstract when he testified about that term.  In its brief, Blue Spike even "agrees that Mr. Moskowitz knew about and understood the Court's claim constructions when he was deposed." [Opp. at p. 4]  This is not surprising, as he coined the term signal "abstract," is the driver of this litigation and participated in developing the claim constructions.

After conceding that the Court's "definition is suitable" and adopting that as his understanding of "abstract," Mr. Moskowitz consistently referred to the Court's claim construction as framing his understanding of "abstract" when testifying that MFCCs are not the claimed abstract:

Again, I've said it many times, ***a signal abstract* is not the same thing as the MFCCs and, again, the *claim construction* which you based your arguments was rejected by the court during the Markman hearing**…

[Ex. 1, 781:14-23 (emphasis added)]

**[A]n MFCC, as I understand, is not equivalent to a *signal abstract* based on the description, the specification, the prosecution history and the *claim construction*.**"

[Jacob Decl., Ex. A at 396:7-11 (emphasis added)]

Further, it is absolutely clear that Mr. Moskowitz was not confused about the questions. Indeed, at points in his deposition he went out of his way to affirmatively assert that MFCCs were not abstracts, when such testimony was not even responsive to the pending question:

Q.  I'm trying to understand the inventor's view of what mathematics are used to compare two signal abstracts in the claims of the asserted patents.  Please tell me that.
…
A.  I believe that I've answered that question and again ***refer you to the*** entirety of the specification, the prosecution history, as well as the ***claim constructions***.
…
Q.  What --

-13-

A.  ***What I will say is that the mathematics of MFCCs are not equivalent with a signal abstract on -- in any way, shape, or form***.

[Ex. 1, 818:14-819:2 (emphasis added)]

**E.      Mr. Moskowitz's Testimony Was For The Purpose Of Defining The Scope Of The Claims—Blue Spike Does Not Dispute That Mr. Moskowitz Testified About The MFCCs Of The Accused Products**

Blue Spike's attempt to argue that Mr. Moskowitz's testimony was for some "independent purpose" fails.  [Opp. at p. 17]  Mr. Moskowitz's testimony was for the purpose of expressly withdrawing material from the scope of the term "abstract" and releasing Audible Magic from proof of fact in that regard—in other words, precisely the same issue posed with regard to whether Audible Magic infringes in this case.  This was not an off-hand comment for some extraneous reason.  Rather, it was a knowing and intentional disclaimer, made in the service of Blue Spike's attempt to preserve validity in this litigation.

Moreover, in the patent law context, courts have routinely found that admissions made to narrow claims to avoid prior art, ultimately support entry of summary judgment of non-infringement.  *See e.g. Cabot Safety Intermediate Corp. v. Howard S. Light & Assocs.*, 992 F. Supp. 463, 466 (D. Mass. 1998) (summary judgment of non-infringement; party's assertion of "patent narrowly in order to avoid [defendant's] charge of invalidity" estopped plaintiff from later, in infringement theories, "asserting a contrary position" to recover what it had given up); *Nye v. Sage Prods.*, 1986 U.S. Dist. LEXIS 21092, *5-6, 12-19 (N.D. Ill. 1986) (in order to avoid prior art, inventor admitted in deposition that claims were limited to particular configuration and that the configuration that defendant used was not encompassed by her claims; summary judgment of non-infringement was granted because inventor could not reclaim that scope in her infringement arguments); *see also Arshal v. United States*, 621 F.2d 421, 428 (Ct. Cl. 1980), *cert. denied*, 449 U.S. 1077 (1981) ("It is a fundamental principle of patent law that a claim may not be narrowly construed to avoid invalidity and then broadly construed to

-14-

encompass the accused device.")[11]  This demonstrates that disclaimer of claim scope, such as Blue Spike's, are for the same "purpose" as applied to invalidity and to non-infringement and accentuates the legitimate policy reasons for applying the judicial admission doctrine in this case.

As set forth in Audible Magic's motion, Mr. Moskowitz clearly had a detailed understanding of the MFCCs about which he testified.  [Mot. at p. 5, n. 1]  Blue Spike does not dispute this.  Further, Mr. Moskowitz made it absolutely clear that the MFCCs he was disclaiming as abstracts were *Audible Magic's* MFCCs.  For example, he even testified that MFCCs are not abstracts because he disclosed *Audible Magic's* MFCCs to the Patent Office, the Patent Office did not use those as prior art and the Patent Office did not consider MFCCs to be abstracts:

> Q.  Okay.  But is it, in your view, MFCCs in the prior art are not signal abstracts?
> …
> A.  I don't understand the term 'prior art' as you're using it, but an MFCC, as I understand, is not equivalent to a signal abstract based on the description, the specification, the prosecution history, as well as the claim construction.
>
> In addition, I'll add that all of the patents and/or documents that I was aware of that came from Muscle Fish and/or Audible Magic and/or the other entities involved were all presented under my duty to disclose as well as the duty to disclose by my representatives at the patent office, were all considered by the office, and not a single one of them was actually used by any examiner as an example that would be considered prior art.
>
> [Jacob Decl., Ex. A at 396:4-396:20]

> Q.  Sir, you cannot disagree – isn't it true you cannot disagree that a feature vector representing MFCC values is exactly the same as your signal abstract; isn't that right?
> …
> A.  I can and I will and I have and I'll continue to, and the U.S. Patent and Trademark Office of these United States agrees with me.

---

[11] Indeed, the Federal Circuit has observed the extreme impropriety of attempting to have it both ways, where a structure is disclaimed for invalidity and accused for infringement.  In *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554 (Fed. Cir. 1983), the Federal Circuit noted that the Plaintiff / Appellant] was attempting "to improperly carry water on both shoulders. [Plaintiff / Appellant] deprecates the prior art devices as curlers, not teasing and unsnarling instruments; then, in asserting infringement, Connell insists that the Sears curlers (which are substantially identical to the prior art) 'could be used' as teasing and unsnarling instruments.  The trial court pointed to the legal impropriety of treating the structural claims in suit one way when considering validity and another when considering infringement, citing *Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.*, 431 F.2d 539, 544, 166 USPQ 454, 459 (5th Cir. 1970).  [Plaintiff's / Appellant's] repetition of its insupportable approach here, as though the trial court's opinion, *Sterner*, and the impropriety did not exist, reflects a regrettable lack of candor due this court."  The Court found that position frivolous and sanctioned plaintiff's counsel.  *See id.*

[Ex. 1, 779:14-21]

Accordingly, there is simply no way around the fact that Mr. Moskowitz was testifying expressly that Audible Magic's MFCCs are not within the scope of the patents' "abstract."

It is undisputed that Audible Magic's prior art '223 patent describes the accused products, and Blue Spike's own experts have consistently taken that position throughout this case. [Mot. at p. 6]  In particular, in its motion, Audible Magic showed that it is undisputed that the MFCCs in its '223 patent, which Mr. Moskowitz testified about, are precisely the MFCCs of the accused products.  [Mot. at pp. 6-7]  Indeed, Audible Magic served an expert report establishing that the MFCCs in the '223 patent are the MFCCs used in the accused products.  [*Id.*]  ***Blue Spike has conceded that the MFCCs in the '223 patent are the MFCCs used in the accused products, because it did not submit any expert reports or opinions to rebut Audible Magic's expert or to establish that the MFCCs Mr. Moskowitz testified about are somehow different from the MFCCs in the accused products.***  This is why in its opposition, Blue Spike submits no expert testimony, but relies solely on attorney argument to urge that the '223 patent is purportedly not the basis of the suit.  [Opp. at p. 17-19]  But, attorney argument carries no weight at all, as it is now an undisputed fact that the MFCCs of the '223 patent are precisely the MFCCs of the accused products.  There is no remaining issue of fact in this regard.  That Mr. Moskowitz was looking at Audible Magic's accused MFCCs in a patent, as opposed to the corresponding source code, is absolutely irrelevant.  Indeed, the fact that he was specifically testifying about the MFCCs that Blue Spike has conceded are in the accused product bolsters the rationale for why the judicial admission doctrine should apply.[12]  Summary judgment is warranted.

---

[12]  Similarly, in its brief, Blue Spike attempts to create confusion by asserting that some of the admissions were about Audible Magic's fingerprint "creation."  This only further supports Audible Magic's motion.  Blue Spike concedes that Mr. Moskowitz testified that Blue Spike's process of creating abstracts is not reflected in the '223 patent's description of how Audible Magic creates its own fingerprints.  [Opp. at pp. 5-6, 20]  Audible Magic put forth evidence in its motion that the '223 patent describes precisely how Audible Magic's fingerprints in its accused products are created.  [Mot. at pp. 6-7]  Blue Spike does not even attempt to rebut this fact and has not put in any expert reports to do so.

**F.     Unsupported Attorney Argument About Mr. Moskowitz's Alleged "Understanding" Do Not Undo Clear Admissions That MFCCs Are Not Abstracts**

Despite Moskowitz's express and clear testimony that he was testifying about the Court's construction of "abstract," Blue Spike now attempts to argue that Mr. Moskowitz was using some different "broader" sense of the term abstract (Opp. at p. 3), which in some unexplained way changes his clear and express admissions that MFCCs are not abstracts.  Blue Spike's counsel makes the bare assertion in an attempt to argue that fact issues remain.  This is frivolous.  Mr. Moskowitz's assertions that MFCCs are not abstracts were "deliberate, clear and unequivocal." *Jonibach Mgmt. Trust*, 750 F.3d at 492.  Mr. Moskowitz's testimony itself reveals that he knew exactly what he was testifying to and Blue Spike provides no evidence to the contrary.

**1.     Blue Spike Fails To Demonstrate Any Disputed Facts Regarding Mr. Moskowitz's "Understanding"**

First and foremost, Blue Spike offers only attorney argument, but *no evidence* in support of its assertion that there is any disputed issue of fact.[13]  [Opp. at pp. 19-21]  Blue Spike puts forth no evidence whatsoever that Mr. Moskowitz had any understanding of "abstract" other than what he expressly stated to be his understanding on his first day of deposition, i.e. he adopted the Court's claim construction of "abstract."  Blue Spike puts forward no evidence that Mr. Moskowitz was talking about something other than abstracts when he clearly testified, for example, that "a signal abstract is not the same as the MFCCs."  [Moskowitz Depo., at p. 781:14-20]

Blue Spike's counsel even goes so far to assert their own conjecture that when Moskowitz admitted that MFCCs are not abstracts, he "meant to say" something different.  [Opp. at p. 21]  Such

---

This too is an undisputed fact.  Accordingly, Moskowitz's admission that Audible Magic's fingerprint creation process is not the same as his "abstract" creation process warrants summary judgment.

[13] *See e.g.* Opp. at pp. 2-3 (attorneys argument that Mr. Moskowitz was "using a broader sense of the term" abstract), 20 (attorney argument that Mr. Moskowitz was purportedly confused because questions were about "signal abstracting patents" and "process of creating abstracts" or the "patents as a whole" or the "invention")

naked speculation and argument by counsel is obviously entitled to no weight.  *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 2007 U.S. Dist. LEXIS 67071, *11-12 (E.D. Tex. 2007) ("Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.")  Judicial admissions cannot be overcome by affidavits, but it is nonetheless relevant that Blue Spike has not even proffered any evidence from Mr. Moskowitz as to his "understanding," instead relying on pure attorney argument.  It is too late for Blue Spike to do so now, and the unsupported argument of its attorneys is insufficient to overcome summary judgment.  *See GTX Corp.*, 571 F. Supp. 2d at 747-748; *Northpoint Tech., Ltd.*, 2011 U.S. Dist. LEXIS 90275 at *5-7 (W.D. Tex. 2011); *Previto v. Ryobi N. Am., Inc.*, 2011 U.S. Dist. LEXIS 3853 at *21-22.

> **2.      When Mr. Moskowitz Was Testifying About The Abstract Creation Process He Went Out Of His Way To Assert That MFCCs Are Not "Abstracts"**

Mr. Moskowitz's testimony about the abstract creation process constitutes further judicial admissions that MFCCs are not abstracts.  Attempting to create confusion, Blue Spike's counsel suggests, incorrectly, that testimony about the process of creating abstracts should not be considered.  Nothing could be further from the truth.  Indeed, when Mr. Moskowitz testified about the abstract creation process, the material questions and answers (and unsolicited assertions of Mr. Moskowitz when questions weren't even pending) were specifically about what constitutes an "abstract" and Mr. Moskowitz said that MFCCs are *not* abstracts.

For example, Blue Spike points out (Opp. at p. 20) that during questioning, Mr. Moskowitz was asked to walk through and discuss Audible Magic's fingerprint creation process. [*See* Ex. 1 at 770:5-776:3]  As he was doing this, he first intentionally lingered on the portion of the process concerning MFCCs and made it absolutely clear that he understood what those were:

> Finally – and again you've asked the questions several times about what are called MFCCs, or Mel-spaced overlapping triangle filters, which is the way it's described here, I'd refer to however the term would be described in the specification, but the following steps of normalizing the magnitude spectrum, apply the preemphasis filter, apply mel-spaced

overlapping triangular filters, apply cosine transform to obtain cep – excuse me, cepstral coefficients, parentheses, MFCCs, and the result is MFCC computation.  [Ex. 1, 773:11-22]

Then, Mr. Moskowitz was asked whether each step in Audible Magic's fingerprint creation process was "independently" a reason why the process "is different from your signal abstracting creation process."  [Ex. 1, 775:1-5]  Mr. Moskowitz refused to answer that particular question.  Instead, he responded by expressly going out of his way to call out the *MFCCs* resulting from the process that he had just described, and specifically assert *that particular structure* as being the item that was not his "abstract," stating:

> What was asked of me is akin to the question you've been asking me several times over the past three days, which is your contention that an MFCC is somehow equivalent with a signal abstract.  I contend that this is not the case.  [Ex. 1, 775:7-12]

In other words, Mr. Moskowitz clearly wasn't confused at all.  He was asked to walk through Audible Magic's fingerprint creation process and describe what he believed was different than his abstract creation process.  He chose to focus on a single point of distinction, and elected not to answer about the abstract creation process at all, but rather *went out of his way* to affirmatively establish that the structure "MFCCs" are not his "signal abstract"—a term he had already repeatedly testified he understood according to the Court's claim construction.  This testimony is clear and intentional.  There was no misunderstanding or disconnect.  Rather, Mr. Moskowitz was establishing for purposes of this case that Blue Spike intended to exclude MFCCs from the term "abstract."

### 3.     Mr. Moskowitz's Testimony About The Benefits Of Abstracts Do Not Change The Admissions That MFCCs Are Not Abstracts

Blue Spike's counsel argues vaguely that when Mr. Moskowitz testified that his signal abstract was "a pioneering invention" that this purportedly "obviously" means that he was talking about something other than "abstract" as construed by the court.  [Opp. at p. 20]  Again, there is absolutely no such evidence and this is pure attorney argument.  Moreover, under no conceivable use of the English language does the mere fact that Mr. Moskowitz called his abstract an "invention" mean that he was

disregarding the Court's claim construction.  Indeed, he had already *expressly* adopted the Court's construction of abstract.  The statement means exactly what it says—that Mr. Moskowitz was simply urging that his claimed "abstract" is an invention.

Blue Spike's counsel also asserts that Mr. Moskowitz testified that he saw three resultant benefits of an "abstract."  [Opp. at pp. 20-21]  For example, Mr. Moskowitz testified that as one benefit, abstracts ultimately enabled the ability to distinguish between "versions" of a signal.  *Id.*  But what Mr. Moskowitz believed to be the benefits of abstracts does not change Mr. Moskowitz's admission that MFCCs are not themselves his claimed abstracts, according to the Court's claim construction.  Mr. Moskowitz's belief about the benefits of abstracts is completely irrelevant.

Moreover, in a glaring omission, Blue Spike did not actually attach pages 52-53 of Mr. Moskowitz's deposition transcript that it cites in its brief as the source of his testimony about his abstract's "benefits."  [Opp. at pp. 20-21]  A review of those pages reveals why.  During that testimony, Mr. Moskowitz testifies regarding signal abstracts that he stands by the claim construction rulings and that "signal fingerprints" such as those created by Audible Magic are not the same as signal abstracts. [Jacob Decl., Ex. A at 51:25-52:23]  In other words, those pages support Audible Magic's position that Mr. Moskowitz framed his testimony about "abstracts" by reference to the claim construction, and has admitted that Audible Magic's MFCC-based fingerprints are not "abstracts."

### G.      Blue Spike Only Accuses MFCCs As The Alleged "Abstract"

On page 5 of Blue Spike's opposition brief "Blue Spike agrees that 'the only structures in Audible Magic's accused products that Blue Spike alleges to be 'abstracts' are MFCCs.'" [Opp. at p. 5] As demonstrated in Audible Magic's motion, this is clear on the face of Blue Spike's infringement report.[14]  Blue Spike's expert also admitted in deposition that MFCCs are all that Blue Spike attempts

---

[14] On pages 1-2 of its opposition Blue Spike half-heartedly attempts to create a "dispute" that it could accuse or is accusing anything other than MFCCs.  However, given that Audible Magic's fingerprints

to accuse.  [Jacob Decl., Ex. C at 66:1-4]  At points in its opposition, Blue Spike weakly attempts to

suggest a change to its theory ███████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████  Blue Spike does so in an attempt to create artificial tension

between Mr. Moskowitz's admissions and what he is attempting to accuse of infringement.

      But, Blue Spike's own express statements expose the frivolousness of this argument, and as

noted, it clearly admits that it only accuses MFCCs as the alleged "abstract."  Moreover, on its face ██

████████████████████████████████████  cannot be "a data-reduced

representation of a signal that retains a perceptual relationship with the signal and differentiates the

data-reduced representation from other data reduced representation."  ███████████████

█████████  and Blue Spike's eleventh-hour suggestion to the contrary is breathtakingly disingenuous.

Indeed, undisputed evidence in support of Audible Magic's motion establishes that ████████████

████████████████████████████████████████████████████████

██████████████████████████████████████  [Mot. at

Ex. 7, pp. 34-36]  Blue Spike does not provide any evidence to rebut Audible Magic in this regard, as it

cannot do so.  Blue Spike's counsel must resort to such smoke and mirrors, precisely because

Moskowitz's judicial admissions are so clear and decisive.  Summary judgment is appropriate.

## III.   CONCLUSION

      Audible Magic is a small company, trying to create great technology, pay its employees, keep

the lights on and contribute to the economy.  Blue Spike, through this lawsuit, is attempting to use later-

filed patents to lay claim to Audible Magic's revolutionary prior art technology—MFCCs.  But, now

that Blue Spike has expressly disclaimed MFCCs as abstracts in this litigation in order to avoid them as

---

are simply MFCCs, ultimately in Blue Spike's brief, it expressly admits that the only structures it could
even point to as the purported abstracts are MFCCs.

prior art, it would be a grave injustice to allow Blue Spike to keep the lawsuit going on the theory that MFCCs *are* purportedly abstracts for purposes of infringement, wasting both Audible Magic's and this Court's limited resources.  *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1554 (Fed. Cir. 1983). This Court is empowered to rule that Blue Spike judicially admitted that MFCCs are not abstracts.  The undisputed facts demonstrate that the Court should exercise its authority and grant summary judgment of non-infringement.

Dated:  June 25, 2015

By:          */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:  (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendant Audible Magic Corp.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on June 25, 2015.

*/s/ Eric H. Findlay*
Eric H. Findlay
