# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § § | |
| *Plaintiff* | § § | |
| v. | § § | |
| AUDIBLE MAGIC CORPORATION | § § § | Civil Action No. 6:15-CV-00584-RWS-CMC |
| *Defendant* | § § § | |
| | § § | |
| AUDIBLE MAGIC CORPORATION, | § § | |
| *Counterclaim Plaintiff* | § § § | |
| v. | § § § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ | § § § | |
| *Counterclaim Defendants* | § § § | |

**MOTION TO STRIKE BLUE SPIKE'S SUPPLEMENTAL SUR-REPLY AND "DECLARATION OF SCOTT MOSKOWITZ" AND MOTION FOR SANCTIONS**

## I.     INTRODUCTION

Blue Spike makes a mockery of the rules and the judicial process by attempting, after full briefing and a hearing, to submit a purported declaration of "Mr. Moskowitz" that is both signed and apparently drafted *by counsel*, purporting to change Mr. Moskowitz's prior clear, sworn deposition admissions. The process of summary judgment briefing began with letter briefs in March 2015 and has proceeded over many months through full briefing and a comprehensive four-hour hearing before this Court. The declaration signed by *counsel* improperly attempts to convert attorney argument into facts and improperly attempts to begin the summary judgment process all over again.[1] Blue Spike's tactics should be rejected and the Court should strike Blue Spike's submission at Docket No. 46.

*First*, the Court should strike Blue Spike's submission because it is late and violates the rules. The Federal Rules of Civil Procedure and the Local Rules of this Court require that all evidence for the summary judgment record be submitted before the hearing on a summary judgment motion. The pleadings are closed and the parties had a full opportunity to brief the issues. There is no new law and there are no new facts. This is a desperate attempt by Blue Spike to change prior admissions, which is simply not allowed, as a matter of law or procedure. To protect the integrity of the judicial process, Fifth Circuit and Eastern District of Texas authority requires that such material, filed without leave of Court, be stricken from the record.

---

[1] For all of the reasons set forth in this brief, both independently and collectively, the belated and extremely questionable "Moskowitz Declaration" and associated submission should be struck by the Court. If the Court were to allow the submission, it would be necessary to re-depose Mr. Moskowitz (given that in his last deposition he attempted to evade the types of discussion put forward in the declaration) and possibly it would be necessary to determine an appropriate mechanism to take discovery of counsel. Effectively, summary judgment briefing and hearing would have to start all over again. This demonstrates why the submission should be rejected. Audible Magic reserves its rights to seek discovery and further briefing and hearing to respond to the substance of the belated declaration and brief, should those be permitted.

***Second***, the Court should strike Docket No. 46 because the declaration was demonstrably signed and generated *by counsel* and is a fraud on the Court. Indeed, the "Attestation" at the end of the purported declaration of "Scott Moskowitz" admits that it was, in fact, signed by Blue Spike's lead counsel Randall Garteiser. The fact that the contents are wholly attorney-generated is shown by the fact that it discusses highly confidential technical information and documents regarding Audible Magic's technology, which Audible Magic designated "Highly Confidential – Attorneys Eyes Only." For example, the declaration discusses the substance of the deposition of Ahmed Tewfik regarding Audible Magic's technical details, all of which was clearly subject to this designation. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

In other words, there is no possible way that Mr. Moskowitz could have prepared or even seen this declaration, because he was not permitted under the protective order to see, much less analyze or discuss the material stated in the declaration. For that reason, Mr. Moskowitz can have no personal knowledge of the declaration's contents. Rather, only counsel could see or know that information. And from the attestation, it appears that counsel—Mr. Garteiser—is precisely who prepared and signed the declaration. Then, Mr. Garteiser apparently submitted the declaration to the Court, presenting it as coming from Mr. Moskowitz—literally both putting words in Mr. Moskowitz's mouth and signing his name. That the attorneys are the source of the purported "facts" is also clear from the fact that the declaration just regurgitates arguments made by counsel at the summary judgment hearing. Mr. Moskowitz was not at the hearing, so he could not divine what clear admissions he was supposed to change, nor attempt to weave a discussion of Attorneys Eyes Only information into that change of testimony, unless counsel was

3

doing that for him. All of this shows the declaration's lack of veracity. It is a last ditch attempt by Blue Spike to change the evidence—to change *sworn testimonial admissions* of a witness—through an unreliable declaration.

*Third,* if Mr. Moskowitz was, in fact, provided "Attorneys Eyes Only" technical details, in violation of the protective order, then Blue Spike has openly and brazenly violated this Court's Protective Order by providing highly confidential material to individuals outside the Order. Respectfully, Blue Spike should be ordered to show cause for why it should not be held in contempt for such an unambiguous disregard of the Court's Order. If a violation has occurred, the Court should strike the submission and order that any and all confidential information of Audible Magic in Mr. Moskowitz's possession be returned, and order other protective measures as the facts may warrant.

*Fourth,* the case law regarding the judicial admissions doctrine and "sham" declarations prevents such abusive, belated and bad faith attempts to change clear, prior admissions. Principles of judicial estoppel also prevent a party from taking such contradictory litigation positions. Adhering to that authority in this case is appropriate in order to prevent Blue Spike's abuse, and to deter witnesses in the future from clearly swearing one thing in a case and making intentional admissions in order to gain a litigation advantage, and then later swearing the opposite facts as true once it suits the party's litigation strategy. This is the purpose of these doctrines and the Court should enforce them in this case.

## II. <u>PROCEDURAL HISTORY</u>

Audible Magic's motion for summary judgment of noninfringement based on the judicial admissions of Scott Moskowitz is already fully briefed and submitted for this Court. The following filings preceded the Court's August 25, 2015 hearing on this motion:

4

- *March 25, 2015*: Audible Magic files letter brief seeking leave to file the present motion for summary judgment (Case No. 12-cv-499, Dkt. 1928)

- *April 8, 2015*: Blue Spike opposes Audible Magic's letter brief (*Id.*, Dkt. 1933)

- *April 14, 2015*: Audible Magic files reply letter brief in support of its request (*Id.*, Dkt. 1934)

- *April 15, 2015*: Court grants Audible Magic's letter brief, permitting it to file the present motion (*Id.*, Dkt. 1935)

- *May 18, 2015*: Audible Magic files its Motion for Summary Judgment (Dkt. 13; Case No. 12-cv-499, Dkt. 1957)

- *June 11, 2015*: Blue Spike files its opposition brief (Dkt. 21; Case No. 12-cv-499, Dkt. 1973)

- *June 25, 2015*: Audible Magic files its reply brief (Dkt. 23)

- *July 6, 2015*: Blue Spike files its sur-reply brief (Dkt. 27)

- *August 10, 2015*: Following the deposition of Dr. Papakonstantinou, Audible Magic files a supplemental reply brief (Dkt. 37)

- *August 20, 2015*: Blue Spike responds to Audible Magic's supplemental reply brief (Dkt. 42)

### III.   ARGUMENT

#### A.   The Court Should Strike Blue Spike's Late Submission Because It Is An Inexcusable Violation Of The Local Rules And The Federal Rules Of Civil Procedure, And Is Unfairly Prejudicial

Over the course of the last five months, Blue Spike had a full opportunity to brief its opposition to Audible Magic's motion and to make its submissions.  The Federal Rules and the Local Rules required Blue Spike to come forward with its showing in opposition to Audible Magic's motion at the time it filed its opposition brief, and certainly well before the summary judgment hearing.  Federal Rule of Civil Procedure 56 requires a party opposing a summary judgment motion to come forward in its opposition brief with admissible evidence to rebut a motion for summary judgment.  Eastern District of Texas Civil Local Rule CV-56(b) likewise requires the party filing an opposition to a summary judgment motion to come forward at that time with "appropriate citations to proper summary judgment evidence." L.R. CV-56(b).  Civil

Local Rule CV-56(c) requires the court to:

> "assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, *except to the extent that such facts are controverted in the response filed in opposition to the motion*, as supported by proper summary judgment evidence."

L.R. CV-56(c) (emphasis added).  Civil Local Rule CV-7(d) requires that:

> "A party opposing a motion *shall file the response, any briefing and supporting documents within the time period prescribed* by Subsection (e) of this rule." [i.e. 14 days] … *In the event a party fails to oppose a motion in the manner prescribed herein, the court will assume that the party has no opposition*."

L.R. CV-7(d) (emphasis added).  Likewise, under Civil Local Rule CV-7(f), the court may consider a motion submitted as of filing of the motion and opposition, and extraordinary submissions such as that attempted by Blue Spike here require leave of court.

The Fifth Circuit has routinely rejected attempts to submit new evidence after a summary judgment motion has been submitted and heard.  *Serna v. Law Office of Joseph Onwuteaka, PC*, 2014 U.S. Dist. LEXIS 3358, n. 9 (S.D. Tex. 2014) (district court denied as untimely attempt by party opposing summary judgment to submit evidence after summary judgment hearing), *aff'd*, 2015 U.S. Dist. LEXIS 9432 (5th Cir. 2015); *Waltman v. International Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989) (district court properly refused to consider plaintiff's late offered evidence, which was available to plaintiff at the time it opposed the motion for summary judgment); *Hopper v. Frank*, 16 F.3d 92, 98 n. 6 (5th Cir. 1994) (same); *Cook-Adams v. Southwestern Bell Tel. Co.*, 1999 U.S. App. LEXIS 39899 (5th Cir. 1999) (affirming summary judgment for defendant and declining to enlarge the summary judgment record where plaintiff failed to submit evidence by the deadline and district court concluded there was no excuse); *Smith v. Bank of Am., N.A.*, 2015 U.S. App. LEXIS 11002, *9-10 (5th Cir. Tex. 2015) (untimely affidavit not competent summary judgment evidence); *Croteau v. CitiMortgage, Inc.*, 2013 U.S.

Dist. LEXIS 183327, *15-16 (E.D. Tex. 2013) (striking late-filed evidence as untimely).

One important factor, particularly applicable in this case, is whether the evidence to be submitted was available at the time that the party opposing summary judgment submitted their briefs. For example, in *Gonzalez v. Lopez*, at the time plaintiff filed its opposition to a summary judgment motion, it possessed a DVD that it belatedly attempted to submit only *after* the summary judgment hearing. *See Gonzales,* 2008 U.S. Dist. LEXIS 109653, *11-14 (N.D. Tex. 2008). The court rejected that request on the basis that the plaintiff had failed to establish any valid excuse, under Federal Rule of Civil Procedure 6(b), for its failure to file the evidence with its opposition brief. *Id., following Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 n.8 (5th Cir. 2006). The court found that the determination of "what constitutes 'excusable neglect' is an equitable one." *Id.* at *12. The plaintiff's motion failed to address any factors necessary to establish excusable neglect, and "the record reflects that Plaintiff's motion to file the DVD was filed well after the summary judgment evidence and briefing had closed, thus depriving Defendant of an opportunity to respond to the evidence. It is untimely by more than three months." *Id.* at *12-14. Thus, the court held that it "cannot find that Plaintiff has met his burden to show excusable neglect," and it denied the motion to submit the belated evidence. *Id.*

Likewise, here, in its cursory brief Blue Spike does not even attempt to make a showing that its late submission is the result of "excusable neglect," or that it meets the factors set forth in *Gonzalez* or relevant Fifth Circuit authority. Rather, Blue Spike recognizes that these issues have been before the Court for many months and the matter has been fully heard. *See* Dkt. 46 at p. 1 (recognizing that materials were available prior to close of Blue Spike's briefing and issues have been before the court for months). Audible Magic faces extreme risk of prejudice, as Blue Spike creates an entirely new infringement theory, attempts to change prior testimony, attempts

to sidestep the Court's claim construction, appears to offer the testimony of counsel rather than Mr. Moskowitz (as discussed below), and attempts to start the briefing process anew.

### B. The Court Should Strike Blue Spike's Late Submission As It Is An Attorney-Generated Fraud On The Court And Does Not Constitute Admissible Evidence

A review of the purported "Declaration of Scott Moskowitz" seriously calls into question its veracity. All indications are that it was both drafted and indisputably signed by counsel.

First, the "ATTESTATION" on page 6 of the declaration states: "I, Randall Garteiser, filed this declaration of Scott Moskowitz with his permission to sign it on his behalf. I used my ECF user ID to filed [sic] this document on the date it is endorsed by the Court, August 28, 2015." Thus, there is no dispute that the declaration was *signed* by counsel for the witness, rather the witness himself.

Second, the text of the declaration analyzes and discusses the Deposition of Dr. Ahmed Tewfik, which itself discusses confidential aspects of Audible Magic's accused technology (*see* pp. 2-4). The entire transcript of the Tewfik Deposition was designated "Highly Confidential-Attorneys Eyes Only." ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████ The problem with all of this is that Mr. Moskowitz cannot have looked at these confidential materials, as he is precluded from doing so under the protective order. *See* Dkt. 1562, §§ 1.A and 1.B (opposing party representatives precluded from viewing such information).

Accordingly, Moskowitz cannot have prepared or even looked at this declaration before his counsel signed it for him, and for that reason he certainly cannot have had personal

knowledge of its contents. A factual declaration must be based on the personal knowledge of the declarant. Indeed, Federal Rule of Civil Procedure 56(c)(4) requires an affidavit to be made on "personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Because the declaration is not based on Mr. Moskowitz's personal knowledge, as he cannot have been exposed to, much less analyzed, the "Attorneys' Eyes Only" technical material or expert deposition discussed, the Court should strike the declaration. *See Rivera v. Bank of Am.*, N.A., 2014 U.S. Dist. LEXIS 90846, \*29-30 (E.D. Tex. 2014) (striking declaration not based on personal knowledge); *Mitchell v. Bank of N.Y. Mellon Trust*, 2012 U.S. Dist. LEXIS 185135, \*8-12 (E.D. Tex. 2012) (same).

Third, Blue Spike's counsel undoubtedly wrote the text of the declaration. The statements in the declaration largely track the arguments that counsel presented at the summary judgment hearing which, as discussed at that time, simply attempted to avoid the question of whether MFCCs are abstracts, attempted to bypass the Court's claim construction and instead tried to shift focus to other claim elements. This too, in combination with the discussion of "Attorneys Eyes Only" information, indicates that the substance was lawyer-generated, rather than the testimony of Mr. Moskowitz.

For all of these reasons, the declaration appears to constitute false testimony (*i.e.*, it could not be the testimony of Mr. Moskowitz, as he could not have seen it) and the Court should strike the declaration. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) ("fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court") (internal citation omitted); *Howard v. State Farm Lloyds*, 2005 U.S. Dist. LEXIS 48236, \*25-26 (S.D. Tex. 2005) (under their inherent powers, federal courts may fashion appropriate relief for any fraud on the court); *Illinois C. R. Co. v. R.R. Land, Inc.*, 1992 U.S. Dist. LEXIS 1901, \*1-5,

22-23 (E.D. La. 1992) (fraud on the court where plaintiff's counsel submitted declaration opposing summary judgment that counsel falsely notarized on behalf of the witness); *Posey v. Pastrano*, 2007 U.S. Dist. LEXIS 69692, *10-11 (W.D. Tex. 2007) (summary judgment for defendant granted where plaintiff submitted contradictory affidavit and "a rational trier of fact could conclude ... that [plaintiff] is attempting to perpetrate a fraud on the court…"); *see also* Fed. R. Civ. P. 56(h) (declaration submitted in bad faith may warrant sanctions).

      **C.**      **If Blue Spike Violated The Protective Order, The Court Should Strike Blue Spike's Late Submission As A Sanction And Order That Blue Spike Take All Steps To Protect Audible Magic's Confidential Information.**

While it is quite obvious that Mr. Moskowitz did not draft or sign the declaration at issue, if he did so, it appears that the only way to get Mr. Moskowitz to change his prior clear testimony was to violate the protective order, after the close of briefing and hearing, and show him "Attorneys Eyes Only" information about the accused product, so that he could struggle to find some way, at the last minute, to "fit" his testimony to both the Audible Magic prior art and the identical Audible Magic systems that exist today. That attempt fails,[2] but if he was in fact provided "Attorneys Eyes Only" technical details, in violation of the protective order for this purpose, the Court should strike the submission as a sanction and issue an order to protect Audible Magic's technical information from Mr. Moskowitz.

The Court has broad inherent authority to fashion a preclusion remedy for protective order violations. For example, in one case where an expert witness was provided with technical information of an opposing party, in violation of the protective order, the Court issued an order striking the expert's report, precluding that witness entirely from providing testimony and

---

[2] The belated Moskowitz declaration is nearly incoherent, internally inconsistent, and importantly only attempts (at ¶ 9) to address a single *one* of the many judicial admissions made during the deposition. For this reason, the declaration does not create any issue of fact.

10

striking all other submissions that relied on the expert, pursuant to Federal Rule of Civil Procedure 37 and its inherent authority. *See Allergan, Inc. v. Sandoz Inc.*, 2011 U.S. Dist. LEXIS 69429, *15-20 (E.D. Tex. 2011) (Ward, J.).[3] The Court found that there was no legitimate reason for violating the protective order, and that the oversight by the party that violated the order "would undermine the Court's integrity and ability to enforce its own rules." *Id.* at *17-20. Also, the court emphasized that other evidence was available to the violating party and that allowing the improper testimony at the very late stage of the case would severely prejudice the party whose rights had been violated. *Id.*

The same is true here. Mr. Moskowitz is the single person from whom Audible Magic's confidential technical information needs to be protected the most. To allow him access to that information in violation of the protective order is severely prejudicial. It is contrary to all of the reasons why the protective order exists in the first place. And the prejudice is amplified by the fact that the parties have been fully briefing the issues for five months, the hearing has concluded and the matter is now fully submitted. Striking the "Moskowitz Declaration" and associated submissions is a "just" sanction, given the extreme prejudice to Audible Magic and "to deter other patent litigants that might consider engaging in similar behavior." *Id.* at *17-20. Consistent with Rule 37(b)(2), striking the submissions is directly related to the substance of the protective order violation, and is thus particularly proper. *See id.* at *15-17.

Assuming Moskowitz actually wrote the declaration, here, where the protective order violation was willful and to facilitate Moskowitz's fraudulent change in testimony, the Court

---

[3] Similarly, in one case, as a sanction for protective order violations this Court "exercise[d] its equitable discretion in a manner adverse to [the violating party]" and stayed an injunction as a sanction. *See Versata Software, Inc. v. SAP Am., Inc.*, 2011 U.S. Dist. LEXIS 102267, 24-25 (E.D. Tex. 2011), *rev'd on other grounds at* 717 F.3d 1255, 1269 (Fed. Cir. 2013).

11

should similarly exercise its authority under Rule 37 and its inherent powers, and strike the "Moskowitz Declaration" and Blue Spike's entire belated submission.

> **D. The Court Should Strike Blue Spike's Late Submission Because The Law Does Not Permit A Party To Change Its Prior Judicial Admissions, Particularly Where The Changed Testimony Is An Attorney Fabricated Declaration**

As discussed in Audible Magic's briefing, the judicial admissions doctrine as applied in the Fifth Circuit, precludes a party that has made clear testimonial admissions, upon which summary judgment may be based, from later attempting to retract or change those admissions. *See Velasquez v. Green*, 2012 U.S. Dist. LEXIS 97597, *20-21 (E.D. Tex. 2012) (rejecting later attempts to contradict judicial admissions made in sworn testimony); *Garcia v. EHealthscreenings, LLC.*, 2014 U.S. Dist. LEXIS 15465, *10-14 (W.D. Tex. 2014) (statements made during a deposition were found to be judicial admissions; because the statements constitute a judicial admission, a subsequent affidavit trying to explain away the statements was precluded and summary judgment was granted); *see also Cadle Co. II v. Gasbusters Prod. I L.P.*, 441 Fed. Appx. 310, 313 (6th Cir. 2011) ("Further, admissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission and cannot be challenged in the trial court or on appeal.").

Here, that policy is at its strongest. Indeed, as discussed it appears that the recent attempt to change the prior admissions were motivated, indeed crafted and signed, by counsel, not the witness. For this reason alone the judicial admissions doctrine should be applied and Blue Spike's late submission should be struck. Even assuming that Mr. Moskowitz prepared the declaration, the deposition process contains a mechanism for Mr. Moskowitz to clarify or amend his answers by submitting an errata sheet within 30 days. Mr. Moskowitz completed the errata papers, correcting things that he believed were erroneous, but did not change in any way the

absolutely clear admissions at issue. The parties have now been in the process of fully briefing these judicial admissions since March—over five months—and at no point during that time did Mr. Moskowitz or Blue Spike choose to attempt to change his testimony. Rather, as explained above, it appears that either Mr. Moskowitz or more likely, his counsel, have only now changed the testimony to meet the exigencies of the litigation.

The Fifth Circuit has rejected such a "sham" affidavit that is "the sole evidence purporting to create a genuine issue of material fact," yet "conflicts with deposition testimony." *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002). In *Copeland*, just as Audible Magic requests here, the court upheld the district court striking an affidavit that came "at the eleventh hour" and was "basically self-serving [and] . . . not supported by [the affiant's] own sworn testimony." *Id.*; *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (rejecting attempt to defeat summary judgment using an affidavit that impeaches prior sworn testimony); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) (same; nonmovant cannot defeat summary judgment by affidavit which directly contradicts previous testimony); *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 246-247 (N.D. Tex. 2011) ("A court cannot consider an affidavit or declaration that contradicts prior testimony or admissions for the purposes of creating a fact issue because it is not competent summary judgment evidence … Courts have consistently disregarded such sham affidavits as nothing more than an attempt to 'manufacture a disputed material fact where none exists.'"); *see also Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999) (judicial estoppel doctrine prevents a party who has assumed one position from assuming an inconsistent position, and its purpose is "to protect the integrity of the judicial process", by "preventing parties from playing fast and loose with the courts to suit the exigencies of self interest")

IV. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should strike the entirety of Blue Spike's Docket No. 46, and grant such other relief as requested herein.

Dated: August 31, 2015

By:

/s/ Eric H. Findlay
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

I. Neel Chatterjee
Gabriel M. Ramsey – *LEAD ATTORNEY*
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
chiggins@orrick.com

Attorneys for Defendant Audible Magic, Corp.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on August 31, 2015.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 31, 2015, counsel for Audible Magic and counsel for Blue Spike conferred *via* email regarding the substance of the instant Motion. Counsel for Blue Spike confirmed that the parties are at an impasse. Counsel for Blue Spike refused to meet and confer telephonically.

*/s/ Eric H. Findlay*
Eric H. Findlay