UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § | |
| *Plaintiff*, | § § | Case No. 6:15-cv-584 |
| v. | § § | Lead Case |
| Audible Magic Corporation, | § § § | Jury Trial Demanded |
| *Defendant*. | § § | |

**BLUE SPIKE'S OPPOSITION TO AUDIBLE MAGIC'S MOTION TO STRIKE BLUE SPIKE'S SUPPLEMENTAL SUR-REPLY AND DECLARATION OF SCOTT MOSKOWITZ AND MOTION FOR SANCTIONS [DKT. NO. 47]**

1

## I. INTRODUCTION

Blue Spike, LLC ("Blue Spike") files this brief in opposition to Audible Magic Corporation's ("Audible Magic's") Motion to Strike Blue Spike's Supplemental Sur-reply and Declaration of Scott Moskowitz ("Mr. Moskowitz") and Motion for Sanctions. Dkt. No. 47. Audible Magic again exaggerates and levels unfounded accusations of bad faith and sanctionable conduct when in fact Blue Spike's litigation conduct serves the ends of justice. Audible Magic insists that Blue Spike's recent filing can be nothing other than (a) fabricated evidence, or (b) a violation of the Court's protective order. In fact, neither is true. This opposition clarifies that Blue Spike did not violate the protective order; Mr. Moskowitz's declaration is not a sham but instead rectifies the mischaracterizations of his deposition testimony; and no sanctions are warranted where the Blue Spike's Supplemental Sur-reply and Declaration were filed in good faith on Mr. Moskowitz's behalf. Accordingly, the Court should deny Audible Magic's motion.

## II. BACKGROUND

### A. Audible Magic Either Misunderstands or Misconstrues Blue Spike's Arguments in Opposition to the Motion for Summary Judgment.

Audible Magic persistently misunderstands or misconstrues Blue Spike's infringement position—that MFCCs are abstracts but do not perform all of the teachings of the patents-in-suit. *See* Blue Spike's Opposition to Audible Magic's Motion for Summary Judgment of Noninfringement ("Opp."), Dkt. No. 21 at 3 ("Strictly speaking, however, the ability to distinguish between versions of a signal is accounted for in the additional claim language, not the 'abstract.'"). Mr. Moskowitz understands this position and never intended to disclaim MFCCs as fulfilling the abstract element of his inventions. *See* Blue Spike's Supplemental Sur-reply in Support of Its Opposition to Audible Magic's Motion for Summary Judgment of Noninfringement ("Supp. Sur-reply"), Declaration of Scott Moskowitz ("Moskowitz Decl."),

Dkt. No. 46-1 at ¶¶ 5-6. This position is explicit in Blue Spike's Opposition:

> Thus, **when Moskowitz gave answers that discussed "signal abstracting"**—the answers that Audible Magic characterizes as "judicial admissions"—it is clear that **Moskowitz was using that term as a shorthand for the functionality of Blue Spike's patents, not as a precise synonym for the defined term "abstract"** in the Court's Claim Construction Order.

Opp. at 20 (emphasis added).[1] Audible Magic ignored this important semantic distinction, instead dismissing it as "naked speculation and argument by counsel [that] is obviously entitled to no weight." Audible Magic's Reply in Support of Its Motion for Summary Judgment of Noninfringement ("Reply"), Dkt. No. 22 at 17-18. Audible Magic characterized Blue Spike's position as (1) defining an MFCC as an abstract for the purposes of infringement but not for the purpose of invalidity (Dkt. No. 22 at 1) or (2) that "Mr. Moskowitz did not understand the claim construction when he was answering" (Dkt. No. 22 at 2). Mr. Moskowitz's declaration clarifies this confusion by affirming that his statements were not made in ignorance; they merely used the term "abstract" too loosely. *See* Moskowitz Decl. at ¶ 4.



. For example, Blue Spike noted that Mr. Moskowitz often used the term "abstract" to describe the ability to distinguish between

---

[1] Audible Magic's confusion regarding Mr. Moskowitz's statements may be attributed to the fact that he (and often Audible Magic's counsel) referred to an "abstract" when they should have been referring to the "abstracting technology" that comprises the invention as a whole. *See* Opp., Exs. 1-4.

3

versions of a signal: "This reinforces that when Moskowitz talked about 'signal abstracting,' he was really talking about functionality as a whole." Dkt. No. 22 at 20.

Blue Spike's position that MFCCs are abstracts has not changed, and remains consistent with the testimony and expert report of Dr. Ahmed Tewfik. Audible Magic admits that Dr. Tewfik "admitted in deposition that MFCCs are all that Blue Spike attempts to accuse." Dkt. No. 22 at 20-21. And Scott Moskowitz's testimony further supports this position when not taken out of context.

> **B.    Blue Spike's Supplemental Sur-reply is Both Internally Consistent and Consistent With Its Arguments in Its Opposition to Audible Magic's Letter Brief and Motion for Summary Judgment.**

Blue Spike's Supplemental Sur-reply is consistent with Blue Spike's infringement position. The Supplemental Sur-reply merely addressed Mr. Moskowitz's state of mind regarding the alleged "judicial admissions" and remained true to the Blue Spike's unchanging theory—MFCCs are abstracts but MFCCs alone do not perform all of the teachings of the "abstracting technology" of the patents-in-suit. *See* Supp. Sur-reply at 1. Specifically, Mr. Moskowitz provided a declaration indicating that he at times used the term "abstract" instead of the more appropriate term "abstracting technology" when describing his patented inventions. *See* Moskowitz Decl. at ¶ 4. This position is clear in Mr. Moskowitz's declaration and conforms to Blue Spike's unchanging position.

> **C.    Audible Magic's Alleged Confidential Information is Actually Publicly Available Information.**



4



### D. Mr. Moskowitz's Declaration Was Properly Signed and Filed by Blue Spike Counsel.

Mr. Moskowitz's declaration is his own. Declaration of Randall Garteiser ("Garteiser Decl.") at ¶¶ 3-4. Blue Spike's counsel provided Mr. Moskowitz the excerpts referenced in the declaration. Garteiser Decl. at ¶ 3. And Mr. Moskowitz stands behind his conclusions and the contents of the declaration submitted on his behalf under penalty of perjury. Garteiser Decl. at ¶ 3. Blue Spike often provides an attestation when the declarant is unavailable to provide a holographic signature but has reviewed the final declaration and gives permission for it to be signed under his/her name. Motion for Clarification at 5 n.3. That is what happened here.

---

2 

3 *See* How the RepliCheck Music Authentication System Works, *available at* http://www.replicheck.com/how_it_works.html.

5

### III.     ARGUMENT

**A.      Mr. Moskowitz Did Not Receive Any Confidential Information Subject to the Protective Order, Since Information About Audible Magic's AMitemID is Publicly Available, and Dr. Tewfik's Opinions About Publicly Available Information Is Not Confidential.**

The information Mr. Moskowitz viewed in reviewing and approving the filing of his declaration is not "Confidential Information" subject to the terms of the Court's protective order. Blue Spike detailed in its Motion for Clarification that the protective order excludes from "Confidential Information" "(c) Any information that the receiving party can show was already publicly known prior to the disclosure." *See* Dkt. No. 51 at 5-7. To aid in the Court's review of the motion to strike, Blue Spike sets out those same arguments here. ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████

To be clear, Blue Spike did not disclose any other confidential documents to Mr. Moskowitz. Four of the deposition transcript excerpts provided to Mr. Moskowitz were his own testimony. *See* Ex. A to Motion for Clarification, Dkt. No. 51-2. The other four exhibits, six pages of deposition excerpts from Dr. Tewfik, were also not confidential because they do not reveal any technical or confidential information and in fact merely discuss Dr. Tewfik's opinions regarding publicly available information – ████████████████████████████████ ██████████████████████ *See* Ex. B to Motion for Clarification, Dkt. No. 51-3. Dr. Tewfik's opinions contained in this limited deposition testimony thus cannot constitute confidential information under the protective order. For this reason, Audible Magic's motion for sanctions necessarily must fail.

6

### B. Blue Spike's Supplemental Sur-Reply Was Necessary To Correct Audible Magic's Mischaracterization of Mr. Moskowitz's Testimony And Blue Spike's Arguments.

Audible Magic's motion for summary judgment fundamentally relies on a mischaracterization of Mr. Moskowitz's deposition testimony. Blue Spike has consistently argued that the alleged judicial admissions that MFCCs are not "abstracts" were taken out of context. *See, e.g.*, Case No. 12-499-MHS, Dkt. No. 1933 at 3; Case No. 15-584, Dkt. No. 21 at 20. Nonetheless, Audible Magic has repeatedly declined to enjoin this argument and instead resorts to pejorative assertions that, for example, the recent declaration is "nearly incoherent [and] internally inconsistent." *See* Dkt. No. 47 at 10 n.2. Audible Magic's blatant attempt to minimize the impact of a truthful statement clarifying testimony that has been picked apart and improperly wielded against Blue Spike is precisely the reason that Blue Spike needed to file this declaration in the first place.[4] Rather than entertain the notion that it has grossly misunderstood the testimony of Mr. Moskowitz, Audible Magic instead attacks the form of a filing that seeks to correct Audible Magic's misapprehension of the facts of this case. Setting aside that Mr.

---

[4] Blue Spike disagrees that *Gonzalez v. Lopez* is applicable to the situation here, where Blue Spike filed its supplemental brief and declaration after it became clear at the hearing that Audible Magic was intent on misconstruing Mr. Moskowitz's deposition testimony. Even if *Gonzalez* applies, Blue Spike's Supplemental Sur-reply makes enough of a showing to satisfy the equitable standard in *Gonzalez*. Unlike the motion to file the DVD in *Gonzalez* where the motion to file addresses none of the factors necessary to establish excusable neglect, here, Blue Spike's Supplemental Sur-reply makes clear that the purpose of the declaration is "[i]n the interest of clarifying Mr. Moskowitz'[s] state of mind and aiding the Court in deciding the present matter on the merits." Dkt. No. 46 at 1. Furthermore, Audible Magic's argument that Blue Spike's "cursory brief" does not show that its submission is the result of "excusable neglect" ignores that its own supplemental reply and late submission of evidence does not address these factors that Audible Magic now claims is required. *See* Dkt. No. 37. Whereas Audible Magic submitted evidence that was not previously available (after a four-week delay between the date of Dr. Papakonstantinou's deposition and the time of its late filing), Blue Spike here seeks to correct Audible Magic's mischaracterization of the facts and evidence Blue Spike previously raised in opposition to Audible Magic's motion for summary judgment. Audible Magic now asks the Court to selectively apply the rule in *Gonzalez*, thereby making a qualitative determination that one submission is better than the other. This argument cannot stand.

Moskowitz's recent declaration is logically set forth, internally consistent, and consistent with Blue Spike's arguments from the outset, the declaration also cogently crystalizes the facts of this case and highlights that there is a central dispute as to the meaning of portions of Mr. Moskowitz's testimony. For this reason, the declaration is helpful to the Court and relevant to the pending motion for summary judgment. Blue Spike is hopeful that Audible Magic's motion for summary judgment will be resolved on the merits and not on a mischaracterization of Mr. Moskowitz's belief as to the scope of his invention or Blue Spike's arguments to date. Thus, Blue Spike respectfully requests that the Court deny Audible Magic's motion to strike to the extent that the Court agrees the declaration is helpful and relevant.

    **C.**    **Audible Magic Misconstrues the Law of "Sham Affidavits."**

Audible Magic argues that the declaration should be struck and sanctions are warranted, because the declaration falls within Fifth Circuit's prohibition against "sham affidavits." But Audible Magic misconstrues the law of sham affidavits by ignoring that Mr. Moskowitz's declaration is neither inconsistent with Blue Spike's arguments or his deposition testimony when read in context.

It is axiomatic in the Fifth Circuit that "a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). However, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

Here, Mr. Moskowitz's declaration does not set out any new facts or statements regarding his deposition testimony that have not been raised before in opposition to Audible Magic's

motion for summary judgment. Furthermore, his declaration is entirely consistent with his prior deposition testimony, as Blue Spike has repeatedly shown. Therefore, Mr. Moskowitz's declaration does not even fall within the ambit of the "sham affidavit rule" in this district. Rather, the supplemental declaration is proper and should not be disregarded by this Court.

Even assuming that Mr. Moskowitz's declaration is somehow inconsistent with his prior testimony – which Blue Spike disputes – "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980) (citing *Indiana v. Choudhry*, 434 U.S. 997 (1977)). The Fifth Circuit has clarified that, "[i]n light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition." *Id.* (holding that summary judgment was improperly granted where the "alleged inconsistency created by the affidavit existed within the deposition itself," and the "affidavit did not purport to raise a new matter, but rather to explain certain aspects of [the prior] deposition testimony."). In *Kennett-Murray Corp.*, the Fifth Circuit noted that the affiant's explanation that "he was confused during the deposition and at one point thought that the questioning concerned the promissory note whereas in fact it related to the signing of the employment contract" was plausible where "[a] fair reading of the deposition reveals frequent shifts in the questioning between the promissory note and the employment contract with a degree of confusion on the parts of both [the affiant/deponent] and the attorneys." *Id.* Concluding that the statements made in the affidavit accorded with the earlier deposition testimony, the Court held that the declaration did not constitute a sham affidavit. *Id.* at 895. The Fifth Circuit further noted that to the extent some statements differed between the affidavit and earlier deposition, "these conflicts present questions of credibility which require jury resolution" and therefore

summary judgment was improper. *Id*.

There is no direct contradiction between Mr. Moskowitz's declaration and his prior deposition testimony, as Blue Spike has repeatedly clarified for Audible Magic and this Court. Like the affiant/deponent in *Kennett-Murray Corp.*, Mr. Moskowitz's declaration explains aspects of his deposition testimony with which Audible Magic takes issue and refers in great detail to relevant portions of the deposition. Also like the situation in *Kennett-Murray Corp.*, Mr. Moskowitz's deposition testimony is largely the result of confusion regarding whether Audible Magic's counsel was questioning him regarding "abstracting technology" as a whole or the "abstract" element more narrowly. Although it should not have been necessary to rectify this confusion through Mr. Moskowitz's recently-filed declaration, as the context of his testimony is obvious from the face of his deposition, it was clear from the hearing that Audible Magic intends to diminish the factual context to prevail on its motion. As in *Kennett-Murray*, the fact that Audible Magic shifted the focus of its questioning throughout the deposition makes it "at least plausible" that Mr. Moskowitz was confused about the scope of the questioning and his answers. *See id.* at 894. Thus, as this is not the kind of "inherently inconsistent" declaration that the Court should disregard, the Court should deny Audible Magic's motion to strike and any request for sanctions premised on Audible Magic's exaggerated and faulty arguments.

**D. Blue Spike's Actions Do Not Warrant Sanctions.**

Despite the overreaching accusations Audible Magic levels against Blue Spike, the facts do not bear out litigation misconduct warranting sanctions. There was no violation of the protective order, the declaration submitted on behalf of Mr. Moskowitz was in no way a sham affidavit, there was nothing even remotely approaching fraud on the court which as a matter of law encompasses only the most egregious of litigation misconduct, and Blue Spike counsel's

preparation and filing of the declaration was proper and comports with standard litigation practice.

### 1. Blue Spike did not violate the protective order.

As discussed above, there was no violation of the protective order, since nothing provided to Mr. Moskowitz involved anything other than publicly available information or opinions regarding publicly available information. However, out of an abundance of caution, Blue Spike addresses Audible Magic's argument that sanctions are warranted here.

Audible Magic cites *Allergan, Inc. v. Sandoz Inc.*, 2011 U.S. Dist. LEXIS 69429 (E.D. Tex. June 28, 2011) for the proposition that this Court should "fashion a preclusion remedy for protective order violations" and that the alleged violation of the protective order here is "severely prejudicial" to Audible Magic. Dkt. No. 47 at 10-11. But Audible Magic fails to discuss that the facts of *Allergan, Inc.* are highly distinguishable from the facts of the present dispute and consequently is of limited persuasive value.[5] Specifically, *Allergan, Inc.* has to do with the defendant's failure to disclose the identity of an expert witness who prepared an entire expert report after being provided extensive access to the plaintiff's confidential information, a clear and harmful violation of the protective order. *Allergan, Inc.*, 2011 U.S. Dist. LEXIS, at *14. In stark contrast, here, Mr. Moskowitz was not provided any confidential information in violation of the protective order.

Similarly, Audible Magic does not accurately address the prejudice that the plaintiff in *Allergan, Inc.* would have suffered if the Court did not exclude the undisclosed expert's report.

---

[5] Blue Spike is increasingly concerned by Audible Magic's accusations of bad faith and willful litigation misconduct, especially considering Audible Magic so misconstrues the law and facts of the cases it cites. Like Blue Spike, Audible Magic owes a duty of candor to the Court and cannot claim ignorance of the correct law when the relevant facts that distinguish these cases immediately precede its cherry-picked quotations.

In that case, the defendant's failure to disclose its expert meant that the plaintiff was unaware that it would have to rebut the report. *Id.* at *18. Allowing the report at the late stage would have meant that the plaintiff would have had to "seek out and retain a rebuttal expert and work with the expert to prepare a report in an extremely short time frame." *Id.* at *18-19. Furthermore, an extension of time to serve a rebuttal report was not feasible, since delaying the impending trial would mean resolution of the Hatch-Waxman litigation *after* the time that the defendant could launch its generic product on the market and thereby destroy the market for the plaintiff's product. *Id.* at 19. This is, in fact, the source of the severe prejudice that the plaintiff would have suffered had the Court not imposed sanctions. *Id*. Therefore, the Court found it *necessary* to strike the belated expert report and preclude the expert's testimony at trial. *Id.* at 19-20.

By reference to this case, Audible Magic implies that the prejudice in having to respond to Mr. Moskowitz's truthful declaration seeking to clarify testimony that Audible Magic has misconstrued on an expedited schedule prior to the Court's resolution of the motion for summary judgment is somehow tantamount to the prejudice of the market for its products being irrevocably harmed. The Court should not be so persuaded. Indeed, even if in some parallel universe the disclosure of publicly available information could constitute a violation of the protective order and trigger discovery sanctions, the Court would have to evaluate the risk of prejudice to Audible Magic, which is minimal at best. The Court has already ordered expedited briefing on the present motion to within a time frame it indicated it would issue its report and recommendation. *See, e.g.*, Dkt. No. 53. There is therefore no risk of delay and certainly no circumstances rising to the level of prejudice potentially suffered by the plaintiff in *Allergan, Inc*. Therefore, Blue Spike respectfully requests that the Court deny Audible Magic's motion to strike and motion for sanctions on this basis.

### 2. Attorney-drafted declarations are standard practice in modern litigation and cannot alone constitute sanctionable conduct or fraud on the court where the declarant approved of and electronically signed the declaration.

Audible Magic's allegations of bad faith and litigation misconduct have reached a fever pitch. Its shrill protest against Mr. Moskowitz's declaration either negligently or deliberately misconstrues the law and facts in order to malign Blue Spike and its counsel. This is evidenced by its argument that the attorney attestation regarding Mr. Moskowitz's electronic signature is somehow a clear-cut indication that Blue Spike counsel fabricated evidence in direct violation of its ethical responsibilities and the interests of justice. To say that this argument overreaches is a gross understatement. In fact, Blue Spike, out of an abundance of caution, adhered to the signatures rule adopted in another district court. *See* N.D. Cal. L.R. 5-1(i)(3). Given the quick turnaround of the declaration and Mr. Moskowitz's unavailability to provide a holographic signature before the time of filing, Blue Spike counsel sought to notify the Court that it was authorized to sign the declaration on behalf of Mr. Moskowitz. *See* Gartesier Decl. at ¶ 4. The signature attestation in no way was intended to convey to opposing counsel or this Court that Mr. Moskowitz did not review and approve of the contents of the declaration under penalty of perjury. In fact, the attestation was intended to have the opposite effect of legitimizing Mr. Moskowitz sworn testimony in the absence of a holographic signature.

Audible Magic also suggests that sanctions are warranted because Blue Spike counsel first drafted the declaration even though the contents are the result of prior conversations with Mr. Moskowitz, and Mr. Moskowitz had ample opportunity to review the declaration before giving his approval. Audible Magic's argument seems to be that the Court should penalize Blue Spike because Blue Spike counsel "generated" the declaration. This cannot be the law where it is customary for attorneys to provide first drafts of declarations to their clients and other witnesses.

13

*See, e.g.*, *In re ConAgra Foods, Inc.*, 2015 U.S. Dist. LEXIS 24971, at *63-65 (C.D. Cal. Feb. 23, 2015) (denying motion to strike declarations on the basis that they were "attorney-drafted and signed 'without serious thought' by the declarants."). One court succinctly articulates why Audible Magic's suggestion is inappropriate:

> As ConAgra and its attorneys well know, most declarations submitted in connection with civil litigation in state and federal courts are prepared by attorneys for clients and witnesses, and thereafter executed by the clients and/or witnesses under penalty of perjury. If the declaration a lawyer has prepared is incorrect or inconsistent with the declarant's recollection or beliefs, the declarant can refuse to sign the document that has been prepared.

*Id*. This Court should not construe the signature attestation attached to the filing as bad faith or a fraud on the Court as Audible Magic suggests.[6]

In fact, Mr. Moskowitz was provided an opportunity to approve of the contents of the

---

[6] Again, here, Audible Magic's case law supporting its allegation of fraud on the court is distinguishable. This is not a case where the offered declaration purported to be under oath but was not. Rather, Mr. Moskowitz explicitly authorized an electronic signature on his behalf, and Blue Spike counsel explicitly notified the Court of such. *Contra Illinois C. R. Co. v. R.R. Land, Inc.*, 1992 U.S. Dist. LEXIS 1901, at *21-23 (E.D. La. Feb. 18, 1992) (imposing Rule 11 sanctions where an attorney offered as an affidavit an improperly notarized document that consequently did not meet the requirements for a properly executed affidavit and the false notarization was clearly visible on the face of the document). "The federal court's inherent power to impose sanctions is particularly appropriate where fraud, deception, and misrepresentation has been practiced upon the Court." *Id*. at *26. Such was the case in another case Audible Magic cites where the plaintiff "attempt[ed] to perpetrate a fraud on the court by claiming that he suffered the finger injury in the arrest, when he told doctors years earlier that he injured it in a car accident." *Posey v. Pastrano*, 2007 U.S. Dist. LEXIS 69692, at *13 (W.D. Tex. Sept. 20, 2007). As Blue Spike argues above, Mr. Moskowitz's declaration is consistent with his earlier deposition testimony and is proffered for the explicit purpose of clarifying any confusion. Not only is this purpose explicitly endorsed in *Kennett-Murray*, but it in no way rises to the level of the outright lies perpetrated in *Posey*. Therefore, Audible Magic's case law purporting to support its argument that Blue Spike has committed fraud on the court is inapposite, and Audible Magic cannot show by clear and convincing evidence that Blue Spike counsel's forthright conduct rises to the level of "the most egregious misconduct" or "that species of fraud which does or attempts to defile the court itself . . . so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980). Thus, Blue Spike respectfully requests the Court strike Audible Magic's unfounded and unsubstantiated allegations of fraud on the court.

14

declaration as a recitation of his thoughts and impressions regarding his deposition testimony (previously discussed at length with Blue Spike counsel in preparation of the several briefs on these issues). Garteiser Decl. at ¶¶ 3-4. It is unclear how Audible Magic's counsel can construe such an action as "demonstrably" a fraud on the Court when it regularly practices in the Northern District of California and is likely aware of this rule. Indeed, an action by Blue Spike's counsel that comports with the rules in one district likely does not rise to the level of sanctionable conduct, let alone fraud on the court, in another. To suggest otherwise is itself in bad faith. For these additional reasons, Blue Spike requests that the Court deny Audible Magic's motion to strike and motion for sanctions.

## V.  CONCLUSION

Audible Magic's motion to strike and motion for sanctions is premised on the unfounded notion that Blue Spike counsel drafted and filed Mr. Moskowitz's declaration without his signoff and in bad faith, or in the alternative, that Mr. Moskowitz did draft and sign off on the declaration but did so with access to Audible Magic's confidential information. In fact, neither is true. Despite Audible Magic's pejorative and exaggerated arguments to the contrary, Blue Spike has not filed a sham affidavit (indeed the doctrine does not apply here), committed a fraud on this Court, or acted in any way that should warrant the Court imposing sanctions. Thus, Blue Spike respectfully requests that the Court deny Audible Magic's motion and consider Blue Spike's Supplemental Sur-reply in deciding Audible Magic's motion for summary judgment.

    Respectfully submitted,

      /s/ Randall Garteiser
    Randall T. Garteiser
    Lead Attorney
    Texas Bar No. 24038912
    rgarteiser@ghiplaw.com

        Christopher A. Honea
        Texas Bar No. 24059967
        chonea@ghiplaw.com
        Christopher S. Johns
        Texas Bar No. 24044849
        Kirk J. Anderson
        California Bar No. 289043
        Molly A. Jones
        California Bar No. 301419
        GARTEISER HONEA, P.C.
        119 W. Ferguson Street
        Tyler, Texas 75702
        (903) 705-7420
        (888) 908-4400 fax

        *Attorneys for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

                                              /s/ Randall Garteiser
                                              Randall T. Garteiser