# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> AUDIBLE MAGIC CORPORATION <br><br> *Defendant* | § § § § § § § § § § § | Civil Action No. 6:15-CV-00584-RWS-CMC |
| AUDIBLE MAGIC CORPORATION, <br><br> *Counterclaim Plaintiff* <br><br> v. <br><br> BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ <br><br> *Counterclaim Defendants* | § § § § § § § § § § § § § | |

**AUDIBLE MAGIC'S REPLY IN SUPPORT OF MOTION TO STRIKE BLUE SPIKE'S SUPPLEMENTAL SUR-REPLY AND "DECLARATION OF SCOTT MOSKOWITZ" <u>AND MOTION FOR SANCTIONS</u>**

## I.     BLUE SPIKE ADMITS THAT ITS UNTIMELY SUBMISSION VIOLATES THE RULES

Blue Spike does not dispute that its submission violates the Rules. Blue Spike attempts to assert, in disingenuous fashion, that it did not realize that Mr. Moskowitz's deposition testimony was at issue in these summary judgment proceedings until the hearing. Dkt. 54 at n. 4. This is frivolous. Anyone reading the briefs since March, would recognize that *for months*, Mr. Moskowitz's deposition admissions have been a central issue. Blue Spike cannot contend otherwise. Indeed, elsewhere in its brief, Blue Spike expressly admits that it is belatedly attempting to change its *old* briefs, belatedly attempting to respond to Audible Magic's original summary judgment motion, and that it already had a full opportunity to do so. Dkt. 54 at pp. 2-3, 7-8. This suggests that Blue Spike intended a "bait and switch" approach all along—to take its summary judgment briefing in one direction, and then after the hearing concluded, to change its response with a sham declaration. Blue Spike also attempts to belatedly shoehorn in excerpts of expert deposition from June, with no basis at all. It would be an injustice to reward such tactics.

Prior to the hearing, Blue Spike had every opportunity to put forth all documents or testimony. It had full notice that Mr. Moskowitz's deposition was a central issue. It was in full control of Mr. Moskowitz as a witness. Yet, Blue Spike chose not to submit any material purporting to change the emphatic admissions. The reason is obvious: the admissions are clear on their face and, if Mr. Moskowitz were to try to say that MFCCs *are* abstracts, the result would be invalidation of the patents by Audible Magic's own prior art systems (which are undisputedly identical to the accused systems). Thus, Blue Spike and Mr. Moskowitz stood by the prior testimony throughout this process. This was a litigation *choice* to attempt to save the patents' validity. Having so elected, it is entirely contrary to both the letter and the spirit of the rules to submit a lawyer-generated declaration *after* the summary judgment hearing, which attempts to make a 180-degree reversal in course, and after counsel admitted at the hearing that the admissions were, in fact, "emphatic." It is a sham.

Blue Spike does not distinguish the rule of *Gonzalez v. Lopez* or extensive Fifth Circuit authority

1

that when a party controls evidence at the time it files its summary judgment opposition, but elects not to put it forward, it may not *after the hearing* submit such evidence and start the process anew. Blue Spike does not meet or even attempt to meet the *Gonzalez* standard or factors, because it cannot do so. Blue Spike effectively admits that in footnote 4.[1] Enforcing that rule here is particularly appropriate and the Court has wide discretion to do so. *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. Tex. 2003) ("We owe the trial court 'broad discretion to preserve the integrity and purpose of the pretrial order…'"); *Jones v. FJC Sec. Servs.*, 2015 U.S. App. LEXIS 6821 (5th Cir. Tex. 2015) ("District courts have broad discretion to enforce their scheduling orders."). Blue Spike was in complete control of Mr. Moskowitz and any purported evidence when it filed its summary judgment opposition. The issues in dispute were clear. And Blue Spike obviously elected to try to preserve Mr. Moskowitz's ability to dispute that MFCCs are abstracts (both for this case and the many other Blue Spike cases where defendants are putting forth Audible Magic's prior art). On these bases alone, and as the Fifth Circuit has repeatedly upheld, the Court should strike Blue Spike's submission as untimely.

## II. BLUE SPIKE ADMITS THAT IT VIOLATED THE PROTECTIVE ORDER

Blue Spike's opposition boldly admits that Garteiser Honea attorneys violated the Protective Order and "provided to Mr. Moskowitz" documents marked "HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY." Dkt. 51 at 6. Each page of Dr. Tewfik's deposition transcript was clear:

```
CONFIDENTIAL - ATTORNEYS' EYES ONLY
   AHMED TEWFIK, Ph.D. - 6/15/2015
```

Blue Spike argues that it made a unilateral decision to de-designate documents clearly marked as including Audible Magic confidential information. *Id.*; Dkt. 54 at 4-6. ***The Protective Order forbids this***

---

[1] Blue Spike's attempt to point to a pre-hearing Audible Magic submission is irrelevant. (Dkt. 54 n. 4) Blue Spike refused Audible Magic's requests to provide Dr. Papakonstantinou's deposition before Audible Magic's summary judgment briefs were due. Audible Magic was forced to take his deposition on July 8 and then gave him the required 30 days to amend testimony. Immediately after that deadline, and well before the hearing, Audible Magic submitted his testimony and explained the valid basis. contrast, here, Blue Spike *always* had Moskowitz available, but it *chose*, as an unfair tactic, not to submit anything until after the hearing.

2

*unilateral action*.[2]  Blue Spike's admission begs the question what other Audible Magic information its counsel has disclosed.

Blue Spike attempts to support its position based on criminal hacking activities that led to the internet underground website WikiLeaks posting an Audible Magic agreement. *Id.* The WikiLeaks post is of a single Audible Magic agreement with a company called Grouper, owned by Sony Pictures.  The confidential agreement was stolen from Sony in a hack that the U.S. government attributes to the North Korean government, and then apparently uploaded to WikiLeaks in May.[3]  *Id.*  These criminal activities can in no way support Blue Spike's unilateral disregard of the Protective Order by showing Mr. Moskowitz material it *recognized as being marked* "HIGHLY CONFIDENTIAL."

Notably, Blue Spike does not state that Moskowitz found the stolen document deep on the Internet.  Rather, it seems Blue Spike's counsel *first* violated the protective order (needing to "educate" Moskowitz on the facts he should try to contort in an attempt to change testimony).  Then, after this motion was filed, searched for a *post hoc* rationalization and simply got lucky, courtesy of a hostile government. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There is no evidence that anyone other than the criminals who stole the document looked at it.  Indeed, Moskowitz or others would not even know to search for that arcane text string on WikiLeaks or anywhere else, but for Blue Spike's counsel, who knew that information pursuant to a confidentiality obligation.[4]  Like the *Allergan* case, the violation facilitates a surprise, late, prejudicial submission; but worse, here it is the means to create sham testimony.

---

[2] The Protective Order includes specific provisions for requesting a change in designation of marked materials. (Case 6:12-cv-499, Dkt. 1562, ¶5)  Both parties know this, having requested de-designation of other materials during the case.  Had the provisions been followed here, Audible Magic would not have agreed to de-designate any of its confidential material so that Mr. Moskowitz could view it.

[3] http://www.treasury.gov/press-center/press-releases/Pages/jl9733.aspx.  Immediately upon learning of the issue from Blue Spike on the night of September 1, Audible Magic began working with federal law enforcement and search engine providers to attempt to disable access, and is also delicately engaging directly with WikiLeaks' legal contacts.  This complex process is ongoing with intensity right now.  Audible Magic is doing everything in its power to disable access to the stolen document.

[4] Illustrating Blue Spike's unreasonable position, consider that the Texas Uniform Trade Secrets Act defines "misappropriation" as "acquisition" or "use" of a trade secret by a person who "knows or has reason to know that the trade secret was acquired by improper means." CPRC 134A.002(3). "Improper means" includes "theft… breach… or espionage through electronic or other means." *Id.*, 134A.002(2).

### III.     THE DECLARATION IS A SHAM

Mr. Moskowitz's deposition admissions are clear on their face. The questions and answers were unambiguously about what is an "abstract," as admitted in Blue Spike's footnote 1. Mr. Moskowitz swore repeatedly that MFCCs are not "abstracts." ***Importantly while doing so he expressly and specifically adopted the Court's claim construction of "abstract," not some more general, vague "abstracting technology."*** That manifest contradiction demonstrates the declaration is a sham and not a purported "clarification." He emphatically made admissions to avoid prior art. His expert, Dr. Papakonstantinou, swore the same. Mr. Moskowitz did not retract his statements during summary judgment briefing. This is a belated attempt to *contradict* prior testimony. As Blue Spike recognizes, that is the definition of a "sham" declaration. *S.W.S. Erectors v. Infax*, 72 F.3d 489, 496 (5th Cir. 1996) (rejecting declaration where "[i]t is clearly apparent that the deposition and affidavit are substantially different…").[5] Where prior admissions are "unequivocal" the Court is on solid ground rejecting a later sham declaration. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). "[I]t is within the court's discretion to disregard the affidavit altogether should the court determine that it is dealing with a 'sham affidavit.'" *Tex. Sales & Mktg. v. Distinct. Appliances*, 2007 U.S. Dist. LEXIS 7364, *20 (S.D. Tex. 2007).[6]

Well after the hearing and months of briefing, at 8:23 p.m. on Friday, August 28, 2015, it appears that the attorneys convinced Mr. Moskowitz of a way he could try to *change* his testimony. They did so

---

[5] *Kennett-Murray Corp. v. Bone* is not on point. That affidavit stated facts that went beyond the deposition testimony. It did not give the *opposite* answer to what was sworn in deposition, as Blue Spike belatedly tries to do here. Further, the questions there were ambiguous. Here, the clear questions were explicitly what constitutes an abstract and Mr. Moskowitz swore clearly that he was answering **under the Court's claim construction**, not under a different understanding of "abstract."

[6] *Flores v. Phoenix Grp*, 2013 U.S. Dist. LEXIS 44278, *6 (S.D. Tex. 2013) (upholding "finding that [declarant's] explanation for the inconsistencies is not persuasive"); *Dekelaita v. BP Amoco*, 2008 U.S. Dist. LEXIS 58069, *28-30 (S.D. Tex. 2008) (rejecting explanation where questions were clear and declaration directly contradicted answers); *Croteau v. CitiMortgage*, 2013 U.S. Dist. LEXIS 183327, *17-18 (E.D. Tex. 2013) (same); *Quicksilver Res. v. Eagle Drill.*, 2010 U.S. Dist. LEXIS 110941, *8-9 (S.D. Tex. 2010) (rejecting explanation where question and answer were clear and failure to explain *particular* "cited testimony"); *Axxiom Mfg. v. McCoy Invs.*, 846 F. Supp. 2d 732, 749 (S.D. Tex. 2012) (rejecting declaration where "inconsistency between [declarant's] deposition testimony and subsequent declaration is clear"); *Powell v. Dallas Morn. News*, 776 F. Supp. 2d 240, 246 (N.D. Tex. 2011) ("A court cannot consider an affidavit or declaration that contradicts prior testimony or admissions for the purposes of creating a fact issue because it is not competent summary judgment evidence.")

by showing him Attorneys Eyes Only material about the ▌▌▌▌▌▌▌▌▌▌▌▌, to "educate" him as to what they wanted Mr. Moskowitz now to claim that he invented. Suddenly, after three years of litigation, rather than this case being about signal fingerprints, "abstracts," "retaining perceptual relationships," "massive compression" of signals or the like, the case is now purportedly about ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Mr. Moskowitz now apparently claims to be the inventor of Audible Magic's ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Such manufactured claims, based on lawyer-supplied confidential information, in and of itself, show the declaration to be a sham. *See Hovanas v. Am. Eagle Airlines*, 2010 U.S. Dist. LEXIS 51418, *6-8 (N.D. Tex. 2010) (striking affidavit where declarant tried to later conform prior testimony to what he later learned in discovery; "a party cannot acquire first-hand personal knowledge of a matter through review of discovery and pleadings"). It is a desperate attempt to find something—*anything*—to point to in Audible Magic's system that was not addressed in Moskowitz's deposition, and then to say that Moskowitz invented "that."[7] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌ that such meets some unspecified other claim element, or meets a vague notion of "teachings of the patents-in-suit" unhinged from claim language, does not change his prior admissions where it was clear that he was talking about "abstracts" under the Court's construction. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

But the sham declaration does nothing to change the appropriate result. There were *numerous* admissions that MFCCs are not abstracts. Dkts. 13 at 3-4; 22 at 12-14. The declaration only attempts (and fails) to address a *single* admission. Dkt. 46, ¶ 9. The rest of the clear admissions are undisputed.

---

[7] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Dated: September 8, 2015

By:                      */s/ Eric H. Findlay*

                             Eric H. Findlay (Texas Bar No. 00789886)
                             Walter W. Lackey, Jr. (Texas Bar No. 24050901)
                             FINDLAY CRAFT, P.C.
                             102 N. College Ave, Suite 900
                             Tyler, TX 75702
                             Telephone: (903) 534-1100
                             efindlay@findlaycraft.com
                             wlackey@findlaycraft.com

                             I. Neel Chatterjee
                             Gabriel M. Ramsey – *LEAD ATTORNEY*
                             ORRICK, HERRINGTON & SUTCLIFFE, LLP
                             1000 Marsh Road
                             Menlo Park, CA 94025
                             Telephone: (650) 614-7400
                             gramsey@orrick.com
                             nchatterjee@orrick.com

                             Alyssa M. Caridis
                             ORRICK, HERRINGTON & SUTCLIFFE, LLP
                             777 S. Figueroa St.
                             Suite 3200
                             Los Angeles, CA 90017
                             Telephone: (213) 629-2020
                             acaridis@orrick.com

                             Christopher J. Higgins
                             ORRICK, HERRINGTON & SUTCLIFFE, LLP
                             1152 15th Street, N.W.
                             Washington, DC 20005-1706
                             Telephone: (202) 339-8400
                             chiggins@orrick.com

                             Attorneys for Defendant Audible Magic, Corp.

**CERTIFICATE OF SERVICE**

       The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on September 8, 2015.

                                               */s/ Eric H. Findlay*
                                               Eric H. Findlay