IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 6:15-cv-584 |
| | § | |
| AUDIBLE MAGIC CORPORATION | § | |
|    *Defendant.* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following pending motions are before the Court:

> **Audible Magic Corporation's Motion for Summary Judgment of Non-infringement (Docket Entry # 13); and**
>
> **Audible Magic's Motion to Strike Blue Spike's Supplemental Surreply and "Declaration of Scott Moskowitz" and Motion for Sanctions (Docket Entry # 47).**

The Court, having reviewed the relevant briefing and hearing arguments of counsel August 25, 2015, recommends Audible Magic's motion for summary judgment of non-infringement be **GRANTED**. The motion to strike is granted, and the motion for sanctions will be scheduled for hearing at a time to be determined later.

## I. FACTUAL BACKGROUND

Plaintiff Blue Spike, LLC ("Blue Spike") asserts Defendant Audible Magic Corporation ("Audible Magic") infringes four patents: U.S. Patent Nos. 7,346,472 (the '472 Patent), 7,660,700 (the '700 Patent), 7,949,494 (the '494 Patent), and 8,214,175 (the '175 Patent)(collectively,

"Asserted Patents"). The four related patents describe a method and device for monitoring and analyzing signals. The inventor describes the patented technology as "signal abstracting" prevalent in the field of digital security, with examples such as "digital fingerprinting."

## II. AUDIBLE MAGIC'S MOTION

Each claim of the Asserted Patents requires a signal "abstract," which is a type of representation of a signal. According to Audible Magic, the only thing in its accused products that Blue Spike asserts is the alleged signal "abstract" is a set of values called mel-frequency cepstral coefficients ("MFCCs"). Audible Magic moves for summary judgment of non-infringement, asserting Blue Spike has admitted through the deposition testimony of Mr. Scott Moskowitz that MFCCs are not signal "abstracts." As Blue Spike's sole principal and investor, sole 30(b)(6) witness, and the co-inventor of the Asserted Patents, Audible Magic argues Blue Spike is bound by Mr. Moskowitz's admissions.

In response, Blue Spike argues the testimony in question occurred when Audible Magic was deposing Mr. Moskowitz in his individual capacity pursuant to FED. R. CIV. P. 30(b)(1) rather than in his representative capacity pursuant to Rule 30(b)(6). Thus, Blue Spike contends Mr. Moskowitz's testimony does not bind Blue Spike. Blue Spike further asserts Mr. Moskowitz's testimony does not qualify as "judicial admissions." According to Blue Spike, the testimony at most qualifies as "evidentiary admissions" that Blue Spike is entitled to explain or rebut at trial. Finally, Blue Spike contends Mr. Moskowitz, in his deposition testimony, was using a broader sense of the term "abstract" rather than the precise definition given to the term by the Court. Blue Spike argues the context of the deposition makes clear there is a fact issue as to whether Mr. Moskowitz was using the term "abstract" more generally.

### III.  LEGAL STANDARDS

The Court uses oft repeated standards to resolve Audible Magic's motion for summary judgment.  Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Audible Magic, as the movant, bears the initial burden to demonstrate the absence of any material fact.  *Celotex v. Catrett,* 477 U.S. 317, 332 (1986).  If Audible Magic meets that burden, Blue Spike must point to admissible evidence demonstrating there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  In assessing the proof, the court views the evidence in the light most favorable to the nonmovant.  *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

Summary judgment on infringement is appropriate when "no reasonable jury could find that every limitation recited in a properly construed claim ... [is] found in the accused device." *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1664 (Fed.Cir. 2005); *see also Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1336 (Fed. Cir. 2009)(where plaintiff admitted that accused products did not meet elements of the asserted claims "the court was correct to conclude that no reasonable jury could find literal infringement by either [defendant]").

### IV.  SUMMARY JUDGMENT EVIDENCE

Audible Magic relies on the following summary judgment evidence: (1) Excerpt from the transcripts of Scott Moskowotz's deposition which occurred December 9-11, 2014 and January 14-16, 2015 ("Moskowitz Dep."); (2) Excerpt from the transcripts of Michael Berry's deposition which occurred February 10, 2015 ("Berry Dep."); (3) Excerpt of Blue Spike's Technical Expert Report

of Ahmed H. Tewfik, Ph.D. Regarding Infringement ("Tewfik Infringement Report") served on March 2, 2015; (4) Excerpt of Blue Spike's Technical Expert Report of Yannis Papakonstantinou Ph.D. Rebuttal of Invalidity Reports by Dr. John Strawn and Dr. Schuyler Quackenbush served on May 11, 2015; (5) Excerpts from the transcripts of Thomas Blum's deposition which occurred February 10, 2015 ("Blum Dep."); (6) Excerpt of Audible Magic's Report of Dr. John Strawn, Ph.D. Concerning Muscle Fish and Audible Magic Content-Based Recognition Libraries and Related Programs, including Attachment D, served on March 2, 2015; (7) Audible Magic's Rebuttal Expert Report of Dr. John Strawn, Ph.D. served on April 21, 2015; (8) copy of a document entitled "Why Does Audible Magic Care About IP and Patents?" bearing the bates stamp AUDMAG00394500- AUDMAG00394501; (9) copy of the Microsoft Word metadata for the native version of Exhibit 8, and the output of the "Relativity" document production database reflecting the metadata for the native version of Exhibit 8, both showing that Exhibit 8 was created and modified on August 8, 2012; (10) copy of Blue Spike's Preliminary Election of Asserted Claims, listing the entire set of claims asserted by Blue Spike against Audible Magic and its customers; (11) copies of the Asserted Patents ("AM Exs. 11-14"); and (12) copy of U.S. Patent 5,918,223, assigned to Audible Magic Corp., which is asserted as prior art to the Asserted Patents ("'223 patent"); (12) additional excerpts from the transcripts of Mr. Moskowitz's deposition (attached to Audible Magic's reply); (13) a copy of FED. R. CIV. P. 30, including Notes of Advisory Committee on Rules, 1970 Amendment; and (14) an excerpt from the transcript of Dr. Tewfik's June 15, 2015 deposition. In its supplemental reply, Audible Magic submitted an excerpt from the transcript of Dr. Papakonstantinou's deposition which occurred July 8, 2015. (Docket Entry #35).

In response, Blue Spike relies on (1) an excerpt from the transcript of Mr. Moskowitz's

4

December 11, 2014 deposition, (2) an excerpt from Dr. Tewfik's expert report regarding infringement; and (3) an excerpt from the transcript of Dr. Tewfik's deposition.

**A.   Analysis of the evidence**

Each element of each asserted claim of the Asserted Patents requires an "abstract." Tewfik Infringement Report at 19, 60; AM Exs. 11-14 (each claim contains "abstract"). In its complaint, Blue Spike alleges Mr. Moskowitz "coined the term 'signal abstracting.'" (Cause No. 6:12cv499, Docket Entry # 1400 at ¶35). In Blue Spike's infringement theories, the only structures in Audible Magic's accused products that Blue Spike alleges to be "abstracts" are "MFCCs." Tewfik Infringement Report, 11, 13, 19.

At his deposition, Mr. Moskowitz testified repeatedly that MFCCs are not the "abstracts" of the Asserted Patents or equivalent to them. Moskowitz Dep. at 775:7-12, 818:25-819:2, 781:14-20, 779:14-21. Specifically, Mr. Moskowitz testified that Audible Magic's MFCCs in the accused MFCBR library and Audible Magic's prior art '223 patent are not the "abstracts" of the Asserted Patents or equivalent to them. *Id.* at 775:7-12, 818:25-819:2, 781:14-20, 779:14-21; Papakonstantinou Report, pp. 26-27, 30; Blum Dep. 191:1-16 & 188-192; Strawn Report, pp. 6-11 and Attach. D; Strawn Rebuttal Report, pp. 73-74, 34-36, 70-102; AM Exs. 8-9. Mr. Moskowitz testified with knowledge and understanding of the Court's claim constructions. Moskowitz Dep. at 120:23-121:6, 217:8-11, 1091:20-1092:1.

Additionally, Michael Berry, the co-inventor of the patents-in-suit, testified as follows:

> Q: So when you filed your signal abstracting patent in 2000, is it fair to say it was not your intent to try to cover some prior system – technique of creating feature vectors containing MFCC values?  You weren't trying to claim that, were you?

* * *

    A: That was not my intent.

Berry Dep. at 107:25-108:8.

**B.**    **Audible Magic's Motion to Strike**

On August 28, 2015, following the Court's hearing, Blue Spike filed a supplemental surreply, attaching a declaration from Mr. Moskowitz and excerpts from the transcripts of Dr. Tewfik's and Mr. Moskowitz's depositions. (Docket Entry #46). Audible Magic moves to strike the supplemental surreply, asserting it is late because the summary judgment record is closed. Audible Magic further asserts Mr. Moskowitz's prior admissions are "unequivocal," and the Court should reject Mr. Moskowitz's late-filed "sham declaration" because it contradicts rather than clarifies Mr. Moskowitz's earlier testimony. *See Doe ex. Rel. Doe v. Dallas Indep. School Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

The Court strikes Blue Spike's supplemental surreply as untimely filed.[1] *See Serna v. Law Office of Joseph Onwuteaka, PC*, 2014 WL 109402, *8 n. 9 (S.D. Tex. 2014) (district court denied as untimely attempt by party opposing summary judgment to submit evidence after summary judgment hearing), *aff'd*, 2015 WL 3526977 (5th Cir. 2015); *Waltman v. International Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989) (district court properly refused to consider plaintiff's late offered evidence, which was available to plaintiff at the time it opposed the motion for summary judgment); *Hopper v. Frank*, 16 F.3d 92, 98 n. 6 (5th Cir. 1994) (same). Blue Spike had notice that

---

[1] The Court will not address at this time Audible Magic's second assertion that the declaration of Mr. Moskowitz was demonstrably signed and generated by counsel and is a fraud on the Court. According to Audible Magic the declaration also contains highly confidential technical information Mr. Moskowitz was not permitted under the protective order to see. It is for this Audible Magic asks for sanctions. To properly consider this aspect of the motion, the Court will schedule a hearing at a date later to be determined.

6

Mr. Moskowitz's deposition testimony was a central issue and was in control of Mr. Moskowitz as a witness when Blue Spike filed its briefing in opposition to Audible Magic's summary judgment motion. There is no reason why Blue Spike cold not have filed its untimely submission prior to the August 25 hearing on the summary judgment motion.

Even if the Court were to consider the substance of Mr. Moskowitz's declaration, the Court's recommendation to grant summary judgment would not change. As pointed out by Audible Magic, the declaration only specifically addresses one of Mr. Moskowitz's numerous admissions that MFCCs are not abstracts. (Docket Entry #46, ¶9). The Court's reasoning for the recommendation is discussed below.

## V. DISCUSSION

Audible Magic deposed Scott Moskowitz, the sole representative of Blue Spike, LLC, for six days in late 2014 and early 2015. Mr. Moskowitz was noticed under both Rule 30(b)(1) and Rule 30(b)(6). On the day Mr. Moskowitz testified a signal abstract is not the same thing as the MFCCs, Audible Magic's attorney specified as follows: "For the record, we are now leaving the 30(b)(6) testimony of Blue Spike LLC and continuing that to another day, and at this point on the record, we resume the 30(b)(1) testimony and deposition of Scott Moskowitz." Moskowitz Dep. at 680:14-18 & 781:14-23.

According to Blue Spike, Audible Magic spent considerable time exploring its theory that Blue Spike failed to disclose relevant "prior art" to the USPTO, including Audible Magic's '223 patent. Specifically, Audible Magic asked Mr. Moskowitz whether "the process of creating abstracts in the claims of [Blue Spike's] asserted patents is reflected in . . . the '223 patent." *Id*. at 770:22-25. Mr. Moskowitz answered in the negative and then proceeded to explain his answer by going through

7

the '223 patent and analyzing the figures it contains. *Id*. at 771:1-774:18. As part of this explanation, Mr. Moskowitz addressed MFCCs. *Id*. at 773:11-22. When Mr. Moskowitz finished his explanation, Audible Magic asked him in summary: "So is it true that each of the . . . features that you just described . . . it's your position that each of those independently is a reason why the process set forth in the '223 patent is different from your signal abstracting creation process; is that right?" *Id*. at 774:19-775:5.  According to Blue Spike, the following "ensuing conversation is where Audible Magic alleges that Moskowitz made [three] 'judicial admissions.'" (Docket Entry # 21 at 6).

> A. That's not what was asked. What was asked of me is akin to the question you've been asking me several times over the past three days, which is your contention that an MFCC is somehow equivalent with a signal abstract. I contend that this is not the case.

*Id*. at 775:7-12.

> Q. Isn't it true you cannot disagree that a feature vector representing MFCC values is exactly the same as your signal abstract; isn't that right?
>
> * * *
>
> A. I can and I will and I have and I'll continue to, and the U.S. Patent and Trademark Office of these United States agrees with me.

*Id*. at 779:14-21.

> Q. [I]sn't it true you agree that a feature vector representing MFCC values is exactly the same as the signal abstract described in your asserted patents?
>
> * * *
>
> A. Again, I've said it many times, a signal abstract is not the same thing as the MFCCs. . . .

*Id*. at 781:14-20. Mr. Moskowitz also said, "I also call into question the term 'feature vector.'" *Id.* at 778:7-8.

8

The fourth alleged judicial admission occurred when Audible Magic's attorney asked Mr. Moskowitz the following: "I'm trying to understand the inventor's view of what mathematics are used to compare two signal abstracts in the claims of the asserted patents. Please tell me that." *Id*. at 818:14-17. After Mr. Moskowitz's attorney again objected to the form of the question, Mr. Moskowitz answered as follows: "What I will say is that the mathematics of MFCCs are not equivalent with a signal abstract on—in any way, shape, or form." *Id*. at 818:25-819:2.

Blue Spike asserts "testimony of a corporation's employee, when taken in his or her individual capacity, does not bind the corporation." *Miller v. Union Pac. R.R.*, 2008 WL 4724471, at *2 (D.Kan. Oct. 24, 2008). According to Blue Spike, Audible Magic did not depose Mr. Moskowitz as a corporate officer under Rule 30(b)(6) to get Blue Spike's opinions. Rather, it deposed Mr. Moskowitz under Rule 30(b)(1) to get his personal opinions as the inventor of the patents-in-suit. *See* Moskowitz Dep. at 793:18-22 (Audible Magic's attorney stating: "Right now we're not in the 30(b)(6) deposition . . . . Right now we're—right now is the deposition of the inventor Scott Moskowitz."); 818:14-15 ("I'm trying to understand the inventor's view."). Blue Spike argues Audible Magic cites no authority that provides a co-inventor's testimony binds the corporation. *See Exxon Research & Eng'g Co. v. United States*, 44 Fed.Cl. 597, 601 n.3 (1999) ("testimony of inventors does not fill the same purpose as a Rule 30(b)(6) deposition because their testimony would not bind the corporation.").

However, Audible Magic cites such authority, and the Court finds the authority persuasive. In *GTX Corp. v. Kofax Image Prods.*, 571 F. Supp. 2d 742 (E.D. Tex. 2008), the co-inventor of the asserted patent admitted the patent did not contemplate performing certain steps, and the plaintiff relied only on attorney argument and conclusory expert opinions in response to the defendant's

9

summary judgment motion. *Id.* at 747-748. There, Judge Davis granted summary judgment of non-infringement, noting the plaintiff had the burden to rebut the defendant's arguments and to show the plaintiff's evidence was not conclusory. *Id*. at 746. Judge Davis further noted the plaintiff could not "survive summary judgment by offering unsupported attorney argument and conclusive expert statements." *Id.* at 751. Similarly here, the co-inventor repeatedly testified MFCCs are not "abstracts," and Blue Spike did not timely offer any evidence to the contrary.

In *Teashot v. Green Mountain Coffee Roasters*, 2014 WL 485876 (D. Colo. 2014)(unreported), the asserted claim language required a structure that is "water-permeable," but the inventor and the plaintiff's sole owner testified that the accused structure was "water-*im*permeable." *Id.* at *4 (emphasis added). Similarly here, Mr. Moskowitz reviewed a description of the accused Audible Magic MFCC fingerprints and asserted, among other similar admissions, that "the mathematics of MFCCs are not equivalent with a signal abstract on -- in any way, shape, or form." Moskowitz Dep. at 818:14-819:2. Like the inventor in *Teashot*, Mr. Moskowitz admitted the accused structure was not the same as the structure in the claims.

The Court agrees with Audible Magic the only knowledge, positions, and beliefs of Blue Spike LLC are those of Mr. Moskowitz. It is not disputed Blue Spike is a sole member LLC, and Mr. Moskowitz is the only member, manager, and sole proprietor of Blue Spike. Moskowitz Dep. at 603:6-12. At the time of his deposition, Mr. Moskowitz was the sole investor in Blue Spike. *Id*. at 1254:20-24. According to Audible Magic, Blue Spike LLC is Scott Moskowitz and nothing more, as evidenced by his deposition testimony:

> I am the only member of Blue Spike LLC at present. I am also the only director, the only officer, and the only employee of Blue Spike, Inc., so … -- which one of my hats do I answer? Do I say that the employee Scott Moskowitz takes it and hands it to the

> officer? The officer Scott Moskowitz tells the employee Scott Moskowitz, what do we do with this? I mean, it all comes to me, so I'm not really clear on how you're differentiating between the two entities.

*Id*. at 1141:8-1142:6.

The sole representative of Blue Spike and the co-inventor who coined the term signal "abstract" repeatedly asserted the set of numbers called MFCCs are not his patents' "abstract." Mr. Moskowitz stated he does not distinguish between personal and corporate testimony. The Court finds Blue Spike LLC is bound by Mr. Moskowitz's testimony.

Blue Spike next argues Mr. Moskowitz's testimony (even if it binds Blue Spike) still does not warrant summary judgment because it does not qualify as a "judicial admission." "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir.2001). Admissions during depositions which are deliberate, clear and unequivocal constitute binding judicial admissions. A judicial admission "must be deliberate, clear and unambiguous." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010). "Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez*, 244 F.3d at 476. "The purpose of a judicial admission," in other words, "is that it acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission." *See State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968) "By contrast, an ordinary evidentiary admission is 'merely a statement of assertion or concession made for some independent purpose,' and it may be controverted or explained by the party who made it." *Martinez*, 244 F.3d at 476-77 (quoting *McNamara v. Miller*, 269 F.2d 511, 515 (D.C. Cir. 1959)).

Blue Spike asserts the Fifth Circuit has suggested that deposition testimony cannot be a "judicial admission" the same way a statement in a pleading can be. *See Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 411 (5th Cir. 2002)(describing a party's "unqualified admission of [a] fact in its answer" as "[m]ore legally determinative than" an admission of the same fact in a deposition.). According to Blue Spike, the weight of authority holds that "'the [deposition] testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party.'" *State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc.*, 250 F.R.D. 203, 212 (E.D.Pa. 2008) (quoting 8A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §2103 (Supp. 2007)). Instead, "testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). Blue Spike further asserts Mr. Moskowitz's alleged judicial admissions were not "deliberate, clear, and unequivocal." *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 492 (5th Cir.2014).

The Court finds Mr. Moskowitz's deposition testimony constitutes a deliberate, clear, and unequivocal judicial admission for the following reasons. As urged by Audible Magic, Mr. Moskowitz knew he was withdrawing from contention the issue of whether MFCCs constitute "abstracts," and he was impatient at having to answer repeated questions about whether MFCCs were abstracts (*see e.g.* Moskowitz Dep. at 775:7-12), indicating Blue Spike's intent to foreclose further discovery into the issue. Mr. Moskowitz also had the opportunity to review and correct any statements in his deposition transcript that he believed were erroneous, but he did not change in any way the admissions at issue. The Court finds his testimony was knowing and intentional in order to

obtain a litigation benefit.

Blue Spike further contends Mr. Moskowitz's deposition testimony was not a judicial admission because he gave his testimony for an independent purpose other than conceding the MFCCs in the accused products are not "abstracts." According to Blue Spike, Mr. Moskowitz gave his testimony for the purpose of comparing the functionality of Audible Magic's '223 patent—which is not the basis of Blue Spike's infringement claims—with the functionality of Blue Spike's patents. According to Blue Spike, Mr. Moskowitz was not opining on Blue Spike's patent infringement claims in this lawsuit when he made his alleged "judicial admissions." Rather, he was answering questions with the independent purpose of addressing the '223 patent. Blue Spike states all of Mr. Moskowitz's alleged "judicial admissions" occurred while he was discussing Audible Magic's '223 patent; he was not discussing the products that are accused of patent infringement in this lawsuit.[2] Thus, taken in context, "there is no way that his testimony can be taken as a 'direct, clear, and unequivocal' statement about essential elements of Blue Spike's patent-infringement claims." (Docket Entry # 12 at 19).

The Court disagrees. When Mr. Moskowitz was testifying MFCCs are not abstracts, he referred to the Court's October 1, 2014 "claim construction" 114 times when testifying about what his patents covered. He testified because he was "assisting with the claim construction" that

---

[2] Specifically, Blue Spike asserts Mr. Moskowitz's alleged judicial admissions were all prompted by Audible Magic's question regarding Blue Spike's "signal abstracting *creation process*." Moskowitz Dep. at 775:4-5 (emphasis added). Blue Spike argues Audible Magic's broad questions about "patents" and "process" were "fairly interpretable" as concerning the functionality of Blue Spike's patents as a whole. Thus, according to Blue Spike, when Mr. Moskowitz gave answers that discussed "signal abstracting" (the answers that Audible Magic characterizes as "judicial admissions") it is clear Mr. Moskowitz was using that term as a shorthand for the functionality of the Court's claim construction order.

13

reference to the claim construction would suffice to answer questions posed of him and that "my own words exist in. . . the claim construction." Moskowitz Dep. at 405:1-7, 409:3-6, 1017:22-25 (referring to the "claim construction which I was involved in"),1094:10-16 ("the claim construction which I also participated in")]. Mr. Moskowitz clearly understood the claim construction and applied that in answering questions. After conceding that the Court's "definition is suitable" and adopting that as his understanding of "abstract," Mr. Moskowitz consistently referred to the Court's claim construction as framing his understanding of "abstract" when testifying that MFCCs are not the claimed abstract: "Again, I've said it many times, a signal abstract is not the same thing as the MFCCs and, again, the claim construction which you based your arguments was rejected by the court during the Markman hearing. . . ." Moskowitz Dep. at 781:14-23; *see also id* at 396:7-11 ("[A]n MFCC, as I understand, is not equivalent to a signal abstract based on the description, the specification, the prosecution history and the claim construction.").

Mr. Moskowitz was not confused about the questions as suggested by Blue Spike. As pointed out by Audible Magic, Mr. Moskowitz went out of his way at times to affirmatively assert that MFCCs were not abstracts, when such testimony was not even responsive to a question:

> Q. I'm trying to understand the inventor's view of what mathematics are used to compare two signal abstracts in the claims of the asserted patents. Please tell me that.
>
> * * *
>
> A. I believe that I've answered that question and again ***refer you to the*** entirety of the specification, the prosecution history, as well as the ***claim constructions***.
>
> * * *
>
> Q. What –
>
> A. *What I will say is that the mathematics of MFCCs are not equivalent with a signal*

14

*abstract on -- in any way, shape, or form.*

*Id*. at 818:14-819:2 (emphasis added).

Contrary to Blue Spike's assertion that the questions were confusing, Mr. Moskowitz was asked to walk through Audible Magic's fingerprint creation process and to describe what he believed was different than his abstract creation process. According to Audible Magic, he chose to focus on this single point of distinction; he did not answer "about the abstract creation process at all, but rather *went out of his way* to affirmatively establish that the structure MFCCs are not his "signal abstract"—a term he had already repeatedly testified he understood according to the Court's claim construction." (Docket Entry # 22 at 19)(emphasis in original). The Court finds Mr. Moskowitz's testimony is clear and intentional. Mr. Moskowitz was establishing for purposes of this case that Blue Spike intended to exclude MFCCs from the term "abstract."

The Court further concludes, as urged by Audible Magic, that Mr. Moskowitz's testimony was for the purpose of defining the scope of the claims. Blue Spike's attempt to argue that Mr. Moskowitz's testimony was for some "independent purpose" fails. Mr. Moskowitz's testimony was for the purpose of withdrawing material from the scope of the term "abstract" – the same issue posed with regard to whether Audible Magic infringes in this case. This was a knowing and intentional disclaimer, made by Blue Spike to attempt to preserve validity in this litigation.

Blue Spike only accuses MFCCs as the alleged "abstract."[3]  According to Audible Magic,



Blue Spike's only infringement theory is that MFCCs created by the MFCBR Library are the claimed abstract. Blue Spike's infringement theory is precluded by Blue Spike's judicial admissions that MFCCs in general are not "abstracts." The infringement theory is also precluded because Blue Spike testified, specifically, that the MFCCs created by the Audible Magic MFCBR Library, described in the '223 patent, are not "abstracts."

It is undisputed the MFCBR Library embodies the teachings of the '223 patent, at least in terms of audio analysis, comparison, and storage. (Papakonstantinou Report, ¶68, p. 26). Audible Magic served an expert report establishing that the MFCCs in the '223 patent are the MFCCs used in the accused products. *Id.* Blue Spike has conceded the MFCCs in the '223 patent are the MFCCs used in the accused products, because it did not submit any expert reports or opinions to rebut Audible Magic's expert or to establish that the MFCCs Mr. Moskowitz testified about are somehow different from the MFCCs in the accused products.

Having admitted MFCCs are not "abstracts," Blue Spike cannot now assert that MFCCs are abstracts to support its infringement theory. Accordingly, it is

**RECOMMENDED** that Audible Magic Corporation's Motion for Summary Judgment of Non-infringement (Docket Entry # 13) be **GRANTED.**

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).



Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**ORDERED** that Audible Magic's Motion to Strike Blue Spike's Supplemental Surreply and "Declaration of Scott Moskowitz"(Docket Entry # 47-1) is **GRANTED**. It is further

**ORDERED** that Audible Magic's Motion for Sanctions (Docket Entry # 47-2) will be scheduled for hearing at a time to be determined later.

**SIGNED this 11th day of September, 2015.**

*/s/ Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE