# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, § | |
| § | |
| *Plaintiff*, § | Case No. 6:15-cv-584-MHS |
| § | |
| v. § | |
| § | |
| AUDIBLE MAGIC CORPORATION, § | Jury Trial Demanded |
| § | |
| *Defendant*. § | |
| § | |
| AUDIBLE MAGIC CORPORATION, § | |
| § | |
| *Counterclaim Plaintiff* § | |
| § | |
| v. § | |
| § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. § | |
| and SCOTT A. MOSKOWITZ § | |
| § | |
| *Counterclaim Defendants*. § | |

**AUDIBLE MAGIC'S OPPOSITION TO COUNTERCLAIM DEFENDANTS
BLUE SPIKE LLC'S, BLUE SPIKE INC.'S AND SCOTT A. MOSKOWITZ'
MOTION IN LIMINE**

## I.     **INTRODUCTION**

Audible Magic Corp. ("Audible Magic") opposes each of the motions *in limine* of counterclaim defendants Scott Moskowitz, Blue Spike, LLC, or Blue Spike, Inc. (collectively "Blue Spike"), and each of those motions should be denied.

First, Blue Spike seeks to exclude all discussion of joint inventorship, co-inventorship or correction of inventorship. Blue Spike improperly seeks to exclude the entirety of Audible Magic's counterclaim under 35 U.S.C. § 102(f) and attempts to preclude the Court from exercising its authority to correct inventorship under the patent law. But, Audible Magic pled the omitted co-inventor theory in detail and the parties litigated it extensively for years. Blue Spike ignores this and asserts boldly that the theory is purportedly not before the court. It does so by arguing that Audible Magic did not assert a "cause of action" under 35 U.S.C. §§ 116 and 256. Yet the law clearly explains that those statutes these statutes need not be "pled" as counterclaims (indeed, Section 116 cannot be). Rather, a claim under 35 U.S.C. § 102(f)—the cause pled by Audible Magic and litigated by the parties for years—is the statutory basis for improper inventorship. Blue Spike's motion is frivolous and should be denied. Audible Magic provided Blue Spike the opportunity to withdraw this motion and explained in detail why it lacks merit, prior to the instant submission, but Blue Spike refused to do so. [Ramsey Decl., Ex. 10].

Second, Blue Spike seeks to exclude Audible Magic's experts from opining on any issues regarding derivation or inventorship. This motion should be denied. Audible Magic's expert, Dr. Quackenbush, provided opinions and factual bases in his expert report regarding the similarity between the Muscle Fish inventors' material (shared with Mr. Moskowitz in the mid-1990s), and the claims and disclosures of the patents-in-suit which were derived from the Muscle Fish inventors' early work and from which they were omitted as co-inventors. Blue Spike's expert provided rebuttal analysis and opinions about the same topic. Similarly, Audible Magic's

1

damages expert, Mr. Ratliff, opined in his report regarding the profits generated by Blue Spike from the patents in suit, and to which Audible Magic is entitled. Again, Blue Spike's expert opposed. The experts should be allowed to testify as to the material and opinions set forth in their expert reports. Further, the Muscle Fish inventors should clearly be permitted to testify, as percipient witnesses, regarding their collaboration with Mr. Moskowitz and their contribution of ideas found in the patents-in-suit. Blue Spike's motion should be denied.

Third, during the meet and confer, Audible Magic made it very clear that it would not use the term patent "troll" or similar arguably pejorative terms. However, Audible Magic explained that it reserved the right to assert, accurately, that Blue Spike LLC was a non-practicing entity that produces no products of any type, and to assert that all three of Blue Spike LLC, Blue Spike Inc. and Scott A. Moskowitz were "non-practicing" in the sense that they have admitted that they never built the technology of the patents-in-suit. Blue Spike would not agree to this compromise. Audible Magic's compromise is fair and should be adopted by the Court.

## II.  ARGUMENT

### A.  Opposition to Motion in Limine No. 1:  Audible Magic Should Be Permitted To Put On Its Theory Of Improperly Omitted Co-Inventors And Derivation Under 35 U.S.C. § 102(f) And To Seek Correction Of Inventorship From The Court Under 35 U.S.C. § 256

#### 1.  Audible Magic's Section 102(f) Theory Was Fully Pled And Has Been Litigated Extensively By The Parties For Nearly Four Years

Contrary to the position of the Blue Spike defendants, improper inventorship and derivation under 35 U.S.C. § 102(f) was pled in detail in Audible Magic's counterclaims, raised throughout the entire case and litigated extensively by both Audible Magic and the defendants.

First, the improper omission of the co-inventors and derivation of inventions were set forth in detail in Audible Magic's answer and counterclaims. (Dkt. 1404, Case No. 6:12-cv-00499) For example, Audible Magic alleged that the Blue Spike defendants "obtained and used

2

Muscle Fish's information regarding its content based recognition technology and ideas" in the patents-in-suit, their "use of the Muscle Fish information, technology and ideas was without Muscle Fish's or Audible Magic's authorization or consent," and that defendants "profited unfairly from their unauthorized use of Muscle Fish's and Audible Magic's proprietary information, technology and ideas." (*Id.* at ¶ 27)  The improper omission of the co-inventors was explicitly pled:  "Moskowitz and Blue Spike, Inc. took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology." (*Id.* at ¶ 28)  In particular, omission of the co-inventors was alleged as to Muscle Fish's early "SoundFisher and the AIR DataBlade" technology which, among other functionality, identified sound based directly on perceptual features, such as pitch, brightness and loudness. (*Id.*)  Audible Magic pled that omission of the Muscle Fish co-inventors caused damage:  "Filing of patent applications including ideas derived from the undisclosed Muscle Fish prior art was carried out to the benefit of Counter-Defendants and to the injury of Muscle Fish and Audible Magic." (*Id.* at ¶ 29).  All of these facts were incorporated into Audible Magic's 35 U.S.C. § 102 counterclaims, which includes § 102(f).  (*Id.* at ¶¶ 19-21, 26-28, 33-35, 40-42)

Second, the theory was also discussed extensively in Audible Magic's discovery responses.  In Audible Magic's first supplemental response to Blue Spike's Interrogatory No. 18, it reiterated these allegations, asserting that:

- Moskowitz and Blue Spike "obtained and used Muscle Fish's information regarding its content based recognition technology and ideas";

- Moskowitz and Blue Spike "took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology" in particular Muscle Fish's "AIR DataBlade" and "Soundfisher" technologies;

- "Filing of patent applications including ideas derived from the undisclosed Muscle Fish

3

prior art was carried out to the benefit of Counter-Defendants and to the injury of Muscle Fish and Audible Magic";

- Moskowitz was exposed to Muscle Fish's ideas and "[t]his evidence also indicates that Blue Spike was deriving its own ideas from the work of Muscle Fish."

- "Moskowitz was aware of Muscle Fish's old and pre-existing content-based recognition technology, and took ideas from that technology, claimed it as his own and derived ideas in the patent applications for the asserted patents, and failed to disclose these facts to the PTO";

- Moskowitz and Blue Spike "secretly filed patents derived from the Muscle Fish ideas shortly before this instruction to Berry, but failed to disclose any of the Muscle Fish technology, inventions, publications, patents or systems to the patent office in the patent application";

- Moskowitz and Blue Spike "failed during the prosecution of any of the asserted patents to inform the patent office that the inventions in the asserted patents were derived from the prior art Muscle Fish work and technologies";

[Ramsey Decl., Ex. 1 at pp. 13-16, 42, 68, 82]

Third, the 102(f) bases were asserted in Audible Magic's invalidity contentions and claim charts regarding AIR DataBlade, Soundfisher and related publications. [Ramsey Decl., Exs. 2, 3 (excerpts of invalidity charts, asserting Section 102(f)]

Fourth, Section 102(f) derivation and improper omission of co-inventors was addressed explicitly in the expert reports of Audible Magic's expert (Dr. Quackenbush) and Blue Spike's expert (Dr. Papakonstantinou), each citing deposition testimony and documents obtained by the parties in discovery:

- In paragraph 38 of Dr. Quackenbush's report, he opines:  "In my opinion the asserted patents are invalid because Moskowitz 'did not himself invent the subject matter to be patented' as stated in 35 U.S.C. § 102(f), but instead derived the invention from and did not name in the original application, the following individuals: Thom Blum, Erling Wold, Doug Keislar and Jim Wheaton." [Ramsey Decl., Ex. 4 at ¶ 38]  In paragraph 68, Dr. Quackenbush set forth his understanding of the legal standard for joint invention and invalidity for improper inventorship and derivation. [*Id.* at ¶ 68]  Dr. Quackenbush then dedicated an entire section of his report to analyzing the evidence supporting his opinions that "the asserted patents are invalid because Moskowitz 'did not himself invent the subject matter to be patented' as stated in 35 U.S.C. § 102(f). The patents are further invalid because the following individuals were not named in the original application:

4

Thom Blum ("Blum"), Erling Wold ("Wold"), Doug Keislar ("Keislar") and Jim Wheaton ("Wheaton")." [*Id.* at ¶¶ 5743-46]

- In paragraph 40 of Dr. Papakonstantinou's report, he sets forth his understanding of the law that "if all inventors are not accurately named, the patent is invalid. I have further been informed that all that is required for an individual to be a joint inventor is that he or she: (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well known concepts and/or the current state of the art. Id. at 1351. I understand that if any individual satisfies these three requirements and is not named as an inventor on the patent, the patent is invalid." [Ramsey Decl., Ex. 5 at ¶ 40] He then proceeded to set forth his own positions regarding "prior inventorship" under Section "102(f)," including his positions on why the Muscle Fish inventors are purportedly no co-inventors. [*Id.* at ¶¶ 220-238]

Obviously, these issues have been litigated extensively. Indeed, Blue Spike's own expert relied upon the testimony about inventorship elicited by Blue Spike during deposition from the Muscle Fish inventors and others. This demonstrates that Blue Spike's assertions that it did not know to take discovery on these issues or did not think to address these portions of Audible Magic's expert reports are simply specious. [Mot. at p. 3, 6] The argument should be rejected.

Moreover, improper inventorship and derivation under 35 U.S.C. § 102(f) was expressly and extensively addressed in the summary judgment briefing. [Civil Action 6:12-cv-00499-RWS-CMC, Dkt. 1972 at pp. n. 7 and pp. 22-25] It was expressly discussed that Blue Spike did not challenge this theory on summary judgment (as it did the alternate state law unjust enrichment theory that leads to the same conclusion). During pretrial proceedings in the fall of 2015, when trial was scheduled for November 2015, the parties exchanged materials and met and conferred regarding what portions of the same Section 102(f) theories would be considered by the jury and which considerations were for the Court. At 9:33 am on September 25, 2015, Blue Spike's counsel exchanged a draft of the pretrial order, which laid out the same Audible Magic theories that had been litigated for years and listed Blue Spike's planned motions *in limine*, in

5

anticipation of a meet and confer that day. [Ramsey Decl., Ex. 6 (exchange of pretrial materials with Ms. Jones), ¶¶ 7-8] At 10:00 am that day, the parties discussed pretrial matters and Blue Spike did not contest Audible Magic's proposed procedural course with respect to Audible Magic's Section 102(f) claim and correction of inventorship. [Ramsey Decl., Ex. 7, ¶ 9] Audible Magic's Section 102(f) theory is neither new nor unknown to Blue Spike and it has been litigated for years. Blue Spike's assertions to the contrary are inaccurate and should be rejected.

Blue Spike incorrectly attempts to assert that there is no relationship between correction of inventorship and Audible Magic's claim under 35 U.S.C. § 102(f). [Mot. at p. 3] That is flatly wrong. It is well-settled that the basis for reaching the correction of inventorship remedy is *precisely* a cause of action under Section 102(f), and that considering whether there is improper inventorship and improperly omitted co-inventors is part and parcel of that claim. *See e,g, Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350-51 (Fed. Cir. 1998). In *Pannu*, like Audible Magic here, the defendant argued that the "patent is invalid under 35 U.S.C. § 102(f) ... for failure to name [undisclosed inventor] as an inventor..." *Id.* at 1348. The Federal Circuit found that "the district court erred by not sending the inventorship issue to the jury" and that an improper inventorship claim flows from "section 102(f) [which] provides that '[a] person shall be entitled to a patent unless he did not himself invent the subject matter sought to be patented.'" *Id.* at 1348-49. The Court found that "this subsection mandates that a patent accurately list the correct inventors of a claimed invention... Accordingly, if nonjoinder of an actual inventor is proved by clear and convincing evidence ... a patent is rendered invalid." *Id.* (internal citations omitted).

Pursuant to § 102(f), a patent is invalid if the inventors named in the patent did not actually invent the claimed invention. 35 U.S.C. § 102(f). One cannot claim or reproduce the invention of another and obtain a patent on that "invention." *OddzOn Prods., Inc. v. Just Toys*,

Inc., 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).  Determination of a Section 102(f) claim involves, first, determining whether the conception of every element of a patent claim at issue was derived from prior inventors, in which case the patent is invalid, and second, whether, even if short of deriving a full conception, the prior inventors contributed in some significant manner to the conception of the invention.  *See Auxilium Pharms., Inc. v. Watson Labs., Inc.*, 2014 U.S. Dist. LEXIS 184032, 97-98 (D.N.J. Dec. 16, 2014) (collecting Federal Circuit authority).  The *Auxilium* case demonstrates precisely how this is so.  The court first assessed the question whether *all* elements of the patent claims were derived from the omitted inventor's conception and then, as a subsidiary question, considered whether that inventor had made some contribution to conception of *any* element of the claims.  *Id.* at 86-99.

After inventorship is established, the Court can correct inventorship pursuant to 35 U.S.C. § 256.  As the Federal Circuit found:  "When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor.  Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity.  Accordingly, the patentee must then be given an opportunity to correct inventorship pursuant to that section."  *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350-1351 (Fed. Cir. 1998).  In fact, the Federal Circuit has found that the district court *must* consider correction of inventorship under § 256 before invalidating the patent under § 102(f)).  *Id.* at 1350.

> 2. **Audible Magic's Section 102(f) Theory Is Based On Derivation From Public And Confidential Information, And The Common Law Unjust Enrichment Theory Is Based On Confidential Information.**

Blue Spike attempts, in its motion *in limine,* to conflate the Section 102(f) counterclaim (and correction of inventorship) and the common law unjust enrichment counterclaims.  [Mot. at p. 2]  While the basic facts and transactions underlying these theories overlap substantially, as

7

explained in great detail in Audible Magic's brief on Blue Spike's summary judgment motion, the Section 102(f) claim is based on derivation of inventions from both public and confidential information of the omitted co-inventors, while the common law claim is limited to factual bases involving appropriation of confidential information, to avoid preemption of that claim by the patent law.  [Civil Action 6:12-cv-00499-RWS-CMC, Dkt. 1972 at pp. 22-25 and n. 7 (explaining *explicitly* that Audible Magic would seek correction of inventorship under Section 256)]  In this way, the patent law and common law theories readily co-exist.  Blue Spike's motion attempts to mischaracterize the very clear explanation in Audible Magic's summary judgment briefing, ignores entirely the 102(f) theory and factual allegations set forth in Audible Magic's counterclaims and in subsequent proceedings, and ignores the express discussion of filing a Section 256 motion in prior briefing and meet and confers.  [Mot. at p. 2-3]  Blue Spike's assertions lack any basis or merit, and should be rejected.

> **3.    Correction Of Inventorship Under 35 U.S.C. § 256 Is Carried Out On Motion To The Court After Determinations Under Section 102(f) And There Is No Requirement To Plead A "Counterclaim" For Correction Of Inventorship**

Contrary to Blue Spike's assertion [Mot. at p. 2, 4], it is not necessary to plead correction of inventorship under 35 U.S.C. § 256 as a "counterclaim."  Rather, Section 256 is a procedural device that enables correction of inventorship to be raised on motion in cases involving Section 102(f) claims.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) (correction of inventorship on motion); *Pannu*, 155 F.3d at 1350 (district courts must consider correction of inventorship under § 256 before invalidating the patent under § 102(f) claim).  Courts have expressly found that there is no need to embody a request for correction of inventorship in any answer or counterclaim, but instead that may be done on motion in the course of the case.  For example, one court recently found:

> [Plaintiff] also appears to argue that [Defendant's] request for correction cannot properly be asserted by motion and instead must be raised in a counterclaim. But § 256 states simply that a party may seek correction of inventorship in "[t]he court before which such matter is called in question." 35 U.S.C. § 256. There is no requirement that this issue be raised in any particular form. Further, [Plaintiff] has not cited to, nor does the court find, any authority for its contention that assertion of the request for correction of inventorship must be made by a counterclaim. Courts have routinely entertained on the merits requests for correction of inventorship asserted as motions. *See, e.g., Ethicon*, 135 F.3d at 1458-59 (affirming district court's determination of inventorship under § 256 in response to defendant-intervener's motion to correct filed in an infringement action); *Manildra Milling Corp. v. Ogilvie Mills*, Inc., Nos. 92-1462, 92-1480, 1993 U.S. App. LEXIS 16230, 1993 WL 217173, at * 9 (Fed. Cir. 22 June 1993) (remanding case for further ruling on defendant's motion to correct inventorship under § 256 in an infringement action); *Armor Screen*, 2008 U.S. Dist. LEXIS 112172, 2008 WL 5746938, at *1 (denying on merits motion to correct inventorship filed by defendant in response to plaintiff's infringement action).

*Polyzen, Inc. v. Radiadyne, L.L.C.*, 2012 U.S. Dist. LEXIS 131112, 17-18 (E.D.N.C. Aug. 31, 2012); *see also Illumina, Inc. v. Affymetrics, Inc.*, 09-cv-277-bbc, 09-cv-665-bbc (W.D. Wis. November 23, 2010, Crabb, J.) at pp. 9-10 (attached at Ramsey Decl., Ex. 8) ("plaintiff says that defendant waived its right to request a correction under § 256 because it did not include such a claim in its counterclaim and answer. However, plaintiff cites no language from the statute or any case law that supports the proposition that a request for correction is a "claim" that must be pleaded. Rather, in *Ethicon*, the defendant simply filed a motion for correction. In *Pannu*, 155 F.3d at 1350, the court stated that district courts must consider whether a patent may be corrected under § 256 before invalidating the patent under § 102(f).").

Similarly, contrary to Blue Spike's assertion, there is no requirement to plead a "counterclaim" under 35 U.S.C. § 116, as counterclaims under that provision are not possible as a matter of law. Rather, Section 116 solely governs proceedings before the patent office and generally sets forth criteria for inventorship. *See e.g. Eli Lilly and Company v. Aradigm Corporation*, 376 F.3d 1352, 1357 (Fed. Cir. 2004) ("The text of section 116, however, only grants the Director of the Patent and Trademark Office the authority to take certain actions and

9

plainly does not create a cause of action in the district court to modify inventorship on pending patent applications."); *Brown v. Toscano*, 254 F.R.D. 690, 695 (S.D. Fla. 2008) ("§ 116 does not provide a cause of action; rather, § 116 empowers the Director of the PTO to decide inventorship issues relating to a pending patent application."). Rather, the appropriate mechanism to correct inventorship in a District Court is a counterclaim under Section 102(f).

Audible Magic's claim for and proposed trial on derivation and omitted co-inventors under Section 102(f), proposed motion to correct inventorship under Section 256 and associated request for equitable disgorgement is the proper procedural course under the patent law.

### 4. Correction Of Inventorship Is Routinely Considered On Post-Trial Motions And Here, Where Common Law Claims Will Be Tried On The Overlapping Facts, It Is Particularly Efficient To Do So

The patents-in-suit are invalid pursuant to 35 U.S.C. § 102(f) due to the prior invention of Thom Blum, Erling Wold, Douglas Keislar, or Jim Wheaton, and on the basis that the applicants derived their inventions of the patents-in-suit from these inventors and improperly failed to name and omitted these co-inventors of the patents-in-suit. Audible Magic will prove, at the least, that these inventors made "not insubstantial" contributions to the inventions of the patents-in-suit, were improperly omitted as co-inventors and that the omitted co-inventors did not act with deceptive intent, but were instead omitted solely through the fault of Mr. Moskowitz.

After inventorship is established, the Court can correct inventorship pursuant to 35 U.S.C. § 256. Co-inventors (who have assigned their patent rights to Audible Magic) are equitable title holders of the Patents-in-Suit under patent law principles, and are entitled to federal equitable remedies, including disgorgement of wrongfully obtained profits. Given the common facts underlying the § 102(f) theory and Audible Magic's common law unjust enrichment and unfair competition claims, the jury will hear the facts regarding inventorship and the Court will ultimately rule on the equitable claim for correction of inventorship and

disgorgement of profits under the patent law. In this case, where the basic facts overlap with the facts being tried to the jury on Audible Magic's unjust enrichment and unfair competition counterclaims, it is particularly efficient to proceed in this manner.

After Audible Magic puts in its case regarding derivation and joint inventorship, but before the case is submitted to the jury, Audible Magic will file a post-trial motion to correct inventorship under 35 U.S.C. § 256, which would save the patent from an invalidity verdict under § 102(f). If the jury finds derivation and joint inventorship, the patent will be invalid, unless inventorship is ordered corrected on the post-trial motion and the jury's invalidity verdict set aside. It is common to consider correction of inventorship on a post-trial motion, following a trial on the § 102(f) issues, as Audible Magic proposes here. *See Pannu*, 155 F.3d 1344 at 1347-50 (finding that court should have sent inventorship issue to the jury, and thereafter considered whether to correct inventorship, considering 35 U.S.C. § 256 issues in the context of Rule 50 motions); *Ethicon, Inc. v. United States Surgical Corp.*, 921 F. Supp. 901, 905 (D. Conn. 1995) (finding it appropriate to consider 35 U.S.C. § 256 motion to correct inventorship after trial to develop full record regarding inventorship and whether correction of inventorship is appropriate); *Jumpsport, Inc. v. Jumpking, Inc.*, 2004 U.S. Dist. LEXIS 29963, 10-26 (N.D. Cal. Mar. 18, 2004) (court determined correction of inventorship on motion under 35 U.S.C. § 256, in the context of Rule 50 motions; "The court issues findings of fact in its capacity as the trier of fact on the correction of inventorship motion, intending these findings to be consistent with the jury's findings" and "the jury served as the trier of fact on the invalidity issues."); *see also Polyzen, Inc. v. Radiadyne, L.L.C.*, 2012 U.S. Dist. LEXIS 131112 (E.D.N.C. Aug. 31, 2012) ("the court concludes that the issue of inventorship should be taken up in this case following the completion of discovery and further briefing of the issues in light of such discovery")

Blue Spike asserts, rather confusingly, that correction of inventorship under Section 256 requires a "hearing of all parties concerned" but that Audible Magic has not proposed any such hearing. [Mot. at p. 3-4] But, this is precisely the purpose of the proposed trial on the underlying factual determinations, followed by a motion and hearing to correct inventorship under Section 256. Blue Spike's argument is misguided and should be rejected.[1]

### B. Opposition to Motion in Limine No. 2: Audible Magic's Experts Should Be Permitted To Opine, To The Extent Of Their Expert Reports, Regarding Derivation And Contribution Of The Muscle Fish Inventors To The Patents-in-Suit

Blue Spike's argument regarding expert testimony bearing on the contribution of the omitted Muscle Fish inventors to the patents-in-suit is confused. Blue Spike appears to request exclusion of *all* expert testimony relating to inventorship. [Mot. at pp. 5-6 (asserting that Audible Magic "cannot have its experts opine on inventorship"; experts purportedly "precluded from providing expert testimony on those issues at trial")] Blue Spike makes this assertion on the basis that there was purportedly not a "counterclaim" for correction of inventorship. [*Id.*] As detailed above, this is entirely incorrect and should be rejected.

Further, Blue Spike cites Rule 26(a)(2) and argues that Audible Magic's experts should be limited to opinions regarding inventorship set forth in their reports. [Mot. at pp. 5-6] Audible Magic agrees with this point, in general. However, Blue Spike then appears to make a confusing extension of this point, asserting that "testimony not provided in the written report should not be allowed at trial when it relates to opinions and facts relied upon to make those opinions." [Mot. at 5] While the meaning of this assertion is not quite clear, it is beyond dispute that, under

---

[1] Blue Spike's also discusses Audible Magic's '308 patent. [Mot. at p. 4] That patent is not even in suit at present and has no bearing on whether Scott Moskowitz derived ideas from the Muscle Fish inventors and failed to name them as co-inventors. The point is entirely irrelevant and should be disregarded. Additionally, Blue Spike asserts that Mr. Moskowitz contests the inventorship issue (Mot. at n. 1). This is not a basis for exclusion of evidence, but rather simply confirms that there are issues for the trier of fact to resolve.

12

Federal Rules of Evidence 702 and 703, experts may testify about their opinions (here inventorship and derivation) and describe the factual bases for those opinions.

Blue Spike asserts that "Audible Magic's experts failed to broach the topic of inventorship, providing neither opinion nor facts" on that theory. [Mot. at p. 6][2] This is demonstrably false. As discussed above, Audible Magic's expert provided detailed opinions in his expert report regarding the similarity between the Muscle Fish inventors' material (which was shared with Mr. Moskowitz and Blue Spike in the mid-1990s), and the claims and disclosures of the patents-in-suit which were derived from the Muscle Fish inventors' early work and from which they were omitted as co-inventors. [*See e.g.* Ramsey Decl., Ex. 4 at ¶¶ 5743-46] The evidentiary bases for these opinions were set forth as well. [*Id.*] Blue Spike's expert provided rebuttal analysis and opinions about the same topic. [Ramsey Decl., Ex. 5] Blue Spike's assertion that there are no expert opinions on inventorship should be rejected, and Dr. Quackenbush should be permitted to testify as to the opinions and bases set forth in his report.

Similarly, Audible Magic's damages expert, Mr. Ratliff, opined in his report regarding the profits generated by Blue Spike from the patents in suit (derived from the Muscle Fish inventors) and opined that such profits are the disgorgement remedy to which Audible Magic is entitled (the Muscle Fish inventors' rights were assigned to Audible Magic). [Ramsey Decl., Ex. 9] Again, Blue Spike's expert also set forth his own opinions on these issues. Blue Spike asserts that "Audible Magic's damages report contains no indication of apportionment due to the four Muscle Fish employees..." [Mot. at p. 6] This is because the law permits improperly omitted co-inventors to disgorge the *entire* amount of gain flowing from the patents, regardless of the

---

[2] Blue Spike incorrectly states that Audible Magic's "expert report of noninfringement spans more than 3600 pages." [Mot. at 6] Blue Spike is obviously referring to Audible Magic's invalidity report of Dr. Quackenbush, which detailed opinions regarding Section 102(f) and the improper inventorship issues, among other material.

13

amount or nature of their contribution. Indeed, it is settled that regardless of the nature of contribution an omitted inventor "presumptively has a pro rata undivided ownership interest in the entire patent." *Isr. Bio-Engineering Project v. Amgen Inc.*, 475 F.3d 1256, 1263-1264 (Fed. Cir. 2007). Accordingly, fraudulent patenting of another's technology prevents the party who wrongfully obtained the patent to realize profits it would not have realized but for its misconduct. Retention of that amount would be unjust and disgorgement of the entirety of profits is the appropriate remedy. *See Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 216 F. Supp. 2d 1188, 1200-1201 (D. Colo. 2002), *aff'd* 342 F.3d 1298 (Fed. Cir. 2003); *see also Tex. Advanced Optoelectronic Solutions, Inc. v. Intersil Corp.*, 2016 U.S. Dist. LEXIS 55081 (E.D. Tex. Apr. 25, 2016) (disgorgement of all net profits as measure of unjust enrichment based on stolen technology). This is particularly appropriate in this case where, as Audible Magic will demonstrate at trial, but for Mr. Moskowitz's claiming of the Muscle Fish inventors' ideas regarding identification based on "perceptual features," the patents-in-suit would not have issued at all. [Ramsey Decl., Ex. 1 (Response to Interrogatory No. 18)]

Thus, Blue Spike's assertion regarding exclusion of damages evidence should be rejected, and Mr. Ratliff should be permitted to testify as to the opinions and bases set forth in his report. In addition to the expert testimony described above, Audible Magic will demonstrate the Muscle Fish inventors' contribution and Mr. Moskowitz's and Blue Spike unjust gain through documents and percipient testimony of the Muscle Fish inventors and Mr. Moskowitz. For the avoidance of doubt, the Muscle Fish inventors should clearly be permitted to testify, as percipient witnesses, regarding their collaboration with Mr. Moskowitz and their contribution of ideas found in the patents-in-suit. Blue Spike's motion should be denied.[3]

---

[3] Beyond the foregoing arguments, Blue Spike peppers its brief with factual disputes, based

### C. Opposition to Motion in Limine No. 3: Audible Magic Should Be Permitted To Assert That The Blue Spike Parties Are "Non-Practicing" In That They Make No Products And Do Not Practice The Patents-in-Suit

During a meet-and-confer Audible Magic made it very clear that it would not use the term patent "troll" or similar arguably pejorative terms. [Ramsey Decl., Ex. 12] However, Audible Magic explained that it reserved the right to assert, accurately, that Blue Spike LLC was a non-practicing entity that produces no products of any type, and to assert that Blue Spike LLC, Blue Spike Inc. and Scott A. Moskowitz were "non-practicing" in that they have admitted that they never built the technology of the patents-in-suit. Blue Spike would not agree to this compromise. [*Id.*] Accurate factual evidence regarding Blue Spike as "non-practicing" is appropriate because, factually, part of the bases of *all* of Audible Magic's claims is that Blue Spike and Moskowitz never possessed and still do not possess the technology of the patents in suit. [*See* Civil Action 6:12-cv-00499-RWS-CMC, Dkt. 1972 at pp. 15-17, 25-28] This is highly relevant and Audible Magic would be prejudiced from exclusion of this evidence, which underlies its claims. This balance is also consistent with the law in this Court. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 20306 (E.D. Tex. Jan. 30, 2015) (preventing use of term such as "troll" but permitting argument that plaintiff was "a patent assertion entity that does not manufacture or sell products in this field."). Audible Magic respectfully submits that its compromise is fair and should be adopted by the Court.

### III. CONCLUSION

For the foregoing reasons, Audible Magic respectfully requests that the Court deny Blue Spike's motions *in limine.*

---

wholly on attorney argument and without any factual citation at all, regarding the evidence concerning contribution by the Muscle Fish inventors, damages, and ownership of their patent rights by Audible Magic. [*See e.g.* Mot. at p. 6] These are not bases for exclusion of evidence, but are merely issues that Audible Magic will prove at trial. Blue Spike's assertions simply confirm that there are issues for the trier of fact to resolve.

Dated: June 23, 2016

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– LEAD ATTORNEY
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

*Attorneys for Defendant Audible Magic Corp.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on June 23, 2016.

>*/s/ Eric H. Findlay*
>Eric H. Findlay