# EXHIBIT 10

**Higgins, Christopher J.**

| | |
|---|---|
| **From:** | Caridis, Alyssa |
| **Sent:** | Wednesday, June 22, 2016 1:49 PM |
| **To:** | <bluespike@ghiplaw.com> |
| **Cc:** | Ramsey, Gabriel M.; Higgins, Christopher J.; Eric Findlay; Walter Lackey |
| **Subject:** | Audible Magic v Blue Spike  -- Blue Spike's Motion in Limine |

Counsel:

Audible Magic requests that Blue Spike immediately withdraw its "motion in limine" arguing that the Court should ignore entirely Audible Magic's counterclaim under Section 102(f) and its request to correct inventorship under Section 256.  There is, regrettably, no basis for Blue Spike's motion and the request is frivolous.  If Blue Spike does not agree to withdraw its motion, Audible Magic will seek its fees and costs to respond.  Blue Spike's request is baseless for at least the reasons detailed below.  By way of summary, Audible Magic's 102(f) counterclaims have undeniably been a part of this case for years, as demonstrated by numerous pleadings, discovery responses, motions, and expert reports.  Indeed Blue Spike's own expert report on validity addressed this very claim.   Blue Spike has no legitimate basis to contend that it was not on notice of Audible Magic's counterclaim during the past three years of litigation.  Please confirm by close of business on June 22 whether or not Blue Spike will withdraw its motion in limine number one regarding these issues.

Sincerely,
Alyssa

**Reasons That Blue Spike's Motion In Limine No. 1 Is Baseless**

**Audible Magic's Section 102(f) Theory Was Fully Plead And Has Been Litigated Extensively By The Parties For Nearly Four Years**
Contrary to the position of the Blue Spike defendants, improper inventorship and derivation under 35 U.S.C. § 102(f) was pled in detail in Audible Magic's counterclaims, raised throughout the entire case and litigated extensively by both Audible Magic and the defendants.

First, the improper omission of the co-inventors and derivation of inventions were set forth in detail in Audible Magic's answer and counterclaims.  (Dkt. 1404, Case No. 6:12-cv-00499)  For example, Audible Magic alleged that the Blue Spike defendants "obtained and used Muscle Fish's information regarding its content based recognition technology and ideas" in the patents-in-suit, their "use of the Muscle Fish information, technology and ideas was without Muscle Fish's or Audible Magic's authorization or consent," and that such used has caused defendants to "profited unfairly from their unauthorized use of Muscle Fish's and Audible Magic's proprietary information, technology and ideas."  (*Id.* at ¶ 27)  The improper omission of the Audible Magic co-inventors was explicitly pled:  "Moskowitz and Blue Spike, Inc. took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology."  (*Id.* at ¶ 28)  In particular, omission of the co-inventors was alleged as to Muscle Fish's early "SoundFisher and the AIR DataBlade" technology which identified sound based on perceptual features.  (*Id.*)  Audible Magic pled that omission of the Muscle Fish co-inventors caused damage:  "Filing of patent applications including ideas derived from the undisclosed Muscle Fish prior art was carried out to the benefit of Counter-Defendants and to the injury of Muscle Fish and

Audible Magic." (*Id.* at ¶ 29).  All of these facts were incorporated into Audible Magic's 35 U.S.C. § 102 counterclaims, which includes § 102(f). (*Id.* at ¶¶ 19-21, 26-28, 33-35, 40-42)

Second, the theory was also discussed extensively in Audible Magic's discovery responses.  In Audible Magic's first supplemental response to Blue Spike's Interrogatory No. 18, it reiterated these allegations, asserting that:
- Moskowitz and Blue Spike "obtained and used Muscle Fish's information regarding its content based recognition technology and ideas";
- Moskowitz and Blue Spike "took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology" in particular Muscle Fish's "AIR DataBlade" and "Soundfisher" technologies;
- "Filing of patent applications including ideas derived from the undisclosed Muscle Fish prior art was carried out to the benefit of Counter-Defendants and to the injury of Muscle Fish and Audible Magic";
- Moskowitz was exposed to Muscle Fish's ideas and "[t]his evidence also indicates that Blue Spike was deriving its own ideas from the work of Muscle Fish."
- "Moskowitz was aware of Muscle Fish's old and pre-existing content-based recognition technology, and took ideas from that technology, claimed it as his own and derived ideas in the patent applications for the asserted patents, and failed to disclose these facts to the PTO";
- Moskowitz and Blue Spike "secretly filed patents derived from the Muscle Fish ideas shortly before this instruction to Berry, but failed to disclose any of the Muscle Fish technology, inventions, publications, patents or systems to the patent office in the patent application";
- Moskowitz and Blue Spike "failed during the prosecution of any of the asserted patents to inform the patent office that the inventions in the asserted patents were derived from the prior art Muscle Fish work and technologies";

[Rog Response at pp. 13-16, 42, 68, 82]

Third, the 102(f) bases were asserted in Audible Magic's invalidity contentions and claim charts regarding AIR DataBlade, Soundfisher and related publications.

Fourth, Section 102(f) derivation and improper omission of co-inventors was addressed explicitly in the expert reports of Dr. Quackenbush, Audible Magic's expert, and Blue Spike's expert, Dr. Papakonstantinou, each of them citing deposition testimony and documents pursued by the parties in discovery:
- In paragraph 38 of Dr. Quackenbush's report, he opines:  "In my opinion the asserted patents are invalid because Moskowitz "did not himself invent the subject matter to be patented" as stated in 35 U.S.C. § 102(f), but instead derived the invention from and did not name in the original application, the following individuals: Thom Blum, Erling Wold, Doug Keislar and Jim Wheaton." [¶ 38]  In paragraph 68, Dr. Quackenbush set forth his understanding of the legal standard for joint invention and invalidity for improper inventorship and derivation.  [*Id.* at ¶ 68]  Dr. Quackenbush then dedicated an entire section of his report to analyzing the evidence supporting his opinions that "the asserted patents are invalid because Moskowitz "did not himself invent the subject matter to be patented" as stated in 35 U.S.C. § 102(f). The patents are further invalid because the following individuals were not named in the original application: Thom Blum ("Blum"), Erling Wold ("Wold"), Doug Keislar ("Keislar") and Jim Wheaton ("Wheaton")." [*Id.* at ¶¶ 5743-46]

- In paragraph 40 of Dr. Papakonstantinou, he sets forth his understanding of the law that "if all inventors are not accurately named, the patent is invalid. I have further been informed that all that is required for an individual to be a joint inventor is that he or she: (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full

2

invention, and (3) do more than merely explain to the real inventors well known concepts and/or the current state of the art. Id. at 1351. I understand that if any individual satisfies these three requirements and is not named as an inventor on the patent, the patent is invalid." [¶ 40]  He then proceeded to set forth his own positions regarding "prior inventorship" under Section "102(f)," including his positions on why the Muscle Fish inventors are purportedly no co-inventors.  [*Id.* at ¶¶ 220-238]

Obviously, these issues have been litigated extensively.  Indeed, Blue Spike's own expert relied upon the testimony about inventorship elicited by Blue Spike during deposition from the Muscle Fish inventors and others.  This demonstrates that Blue Spike's assertion that it did not know to take discovery on these issues is simply specious.  [Mot. at p. 3]

Improper inventorship and derivation, under 35 U.S.C. § 102(f) was expressly and extensively addressed in the summary judgment briefing.  [Civil Action 6:12-cv-00499-RWS-CMC, Dkt. 1972 at pp. n. 7 and pp. 22-25]  It was expressly discussed that Blue Spike did not challenge this theory on summary judgment (as it did the alternate state law unjust enrichment theory that leads to the same conclusion).  During pretrial proceedings in the fall of 2015, when trial was scheduled for November 2015, the parties exchanged materials and met and conferred regarding what portions of the same Section 102(f) theories would be considered by the jury and which considerations were for the Court.  At 9:33 am on September 25, 2015, Blue Spike's counsel exchanged a draft of the pretrial order, which laid out the same Audible Magic theories that had been litigated for years, and listed Blue Spike's motions *in limine*, in anticipation of a meet and confer that day.  At 10:00 am that day, the parties discussed pretrial matters, and Blue Spike didn't contest Audible Magic's proposed procedural course with respect to Audible Magic's Section 102(f) claim.  Audible Magic's Section 102(f) theory is neither new, nor a surprise, and has been litigated for years.  Blue Spike's assertions to the contrary are inaccurate and should be rejected.

Blue Spike incorrectly attempts to assert that there is no relationship between correction of inventorship and Audible Magic's counterclaim under 35 U.S.C. § 102(f).  [Mot. at p. 3]  That is flatly wrong.  In fact it is well-settled that the basis for reaching the correction of inventorship remedy is *precisely* a cause of action under Section 102(f), and that considering whether there is improper inventorship and improperly omitted co-inventors is part and parcel of that claim.  *See e,g, Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350-51 (Fed. Cir. 1998).  In *Pannu*, like Audible Magic here, the defendant argued that the "patent is invalid under 35 U.S.C. § 102(f) ... for failure to name [undisclosed inventor] as an inventor..." *Id.* at 1348.  The Federal Circuit found that "the district court erred by not sending the inventorship issue to the jury" and that a claim of improper inventorship flows from "section 102(f) [which] provides that '[a] person shall be entitled to a patent unless he did not himself invent the subject matter sought to be patented.'" *Id.* at 1348-49.  The Court found that "this subsection mandates that a patent accurately list the correct inventors of a claimed invention... Accordingly, if nonjoinder of an actual inventor is proved by clear and convincing evidence ... a patent is rendered invalid." *Id.* (internal citations omitted).

Pursuant to § 102(f), a patent is invalid if the inventors named in the patent did not actually invent the claimed invention. 35 U.S.C. § 102(f). One cannot claim or reproduce the invention of another and obtain a patent on that "invention." *OddzOn Prods., Inc. v. Just Toys*, Inc., 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).  Determination of a Section 102(f) claim involves, first, determining whether the conception of every element of a patent claim at issue was derived from prior inventors, in which case the patent is invalid, and second, whether, even if short of deriving a full conception, the prior inventors contributed in some significant manner to the conception of the invention.  *See Auxilium Pharms., Inc. v. Watson Labs., Inc.*, 2014 U.S. Dist. LEXIS 184032, 97-98 (D.N.J. Dec. 16, 2014) (collecting Federal Circuit authority).  The *Auxilium* case demonstrates precisely how this is so.  The Court first assessed the question whether *all* elements of the patent claims were derived from

3

the omitted inventor's conception, and then as a subsidiary question, considered whether that inventor had made some contribution to conception *any* of the claims. *Id.* at 86-99.

After inventorship is established, the Court can correct inventorship pursuant to 35 U.S.C. § 256. As the Federal Circuit found: "When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor. Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity. Accordingly, the patentee must then be given an opportunity to correct inventorship pursuant to that section." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350-1351 (Fed. Cir. 1998). In fact, the Federal Circuit has found that the district court *must* consider correction of inventorship under § 256 before invalidating the patent under § 102(f)). *Id.*, at 1350.

**Audible Magic's Section 102(f) Theory Is Based On Derivation From Public And Confidential Information, And The Common Law Unjust Enrichment Theory Is Based On Confidential Information.**
Blue Spike attempts, in its motion *in limine,* to conflate the Section 102(f) counterclaim (and correction of inventorship) and the common law unjust enrichment counterclaims. [Mot. at p. 2] While the basic facts and transactions underlying these theories overlap substantially, as explained in great detail in Audible Magic's brief on Blue Spike's summary judgment motion, the Section 102(f) claim is based on derivation of inventions from both public and confidential information of the omitted co-inventors, while the common law claim is limited to factual bases involving appropriation of confidential information, to avoid preemption of that claim by the patent law. [Civil Action 6:12-cv-00499-RWS-CMC, Dkt. 1972 at pp. 22-25 and n. 7 (explaining *explicitly* that Audible Magic would seek correction of inventorship under Section 256)] In this way, the patent law and common law theories readily co-exist. Blue Spike's motion attempts to mischaracterize the very clear explanation in Audible Magic's summary judgment briefing, ignores entirely the 102(f) theory and factual allegations set forth in Audible Magic's counterclaims and in subsequent proceedings, and ignores the express discussion of filing a Section 256 motion in prior briefing and meet and confers. [Mot. at p. 2-3] Blue Spike's assertions lack any basis or merit, and should be rejected.

**Correction Of Inventorship Under 35 U.S.C. § 256 Is Carried Out On Motion To The Court After Determinations Under Section 102(f) And There Is No Requirement To Plead A "Counterclaim" For Correction Of Inventorship**
Contrary to Blue Spike's assertion [Mot. at p. 2, 4], it is not necessary to plead correction of inventorship under 35 U.S.C. § 256 as a "counterclaim." Rather, Section 256 is a procedural device that enables correction of inventorship to be raised on motion in cases involving Section 102(f) claims. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) (correction of inventorship on motion); *Pannu*, 155 F.3d at 1350 (district courts must consider correction of inventorship under § 256 before invalidating the patent under § 102(f) claim). Courts have expressly found that there is no need to embody a request for correction of inventorship in any answer or counterclaim, but instead that may be done on motion in the course of the case. *See Illumina, Inc. v. Affymetrics, Inc.*, 09-cv-277-bbc, 09-cv-665-bbc (W.D. Wis. November 23, 2010, Crabb, J.) at pp. 9-10 ("plaintiff says that defendant waived its right to request a correction under § 256 because it did not include such a claim in its counterclaim and answer. However, plaintiff cites no language from the statute or any case law that supports the proposition that a request for correction is a "claim" that must be pleaded. Rather, in Ethicon, the defendant simply filed a motion for correction. In Pannu, 155 F.3d at 1350, the court stated that district courts must consider whether a patent may be corrected under § 256 before invalidating the patent under § 102(f).").

Similarly, contrary to Blue Spike's assertion there is no such thing as a "counterclaim" under 35 U.S.C. § 116, as that statute solely governs proceedings before the patent office. *See e.g. Eli Lilly and Company v. Aradigm*

4

*Corporation*, 376 F.3d 1352, 1357 (Fed. Cir. 2004) "The text of section 116, however, only grants the Director of the Patent and Trademark Office the authority to take certain actions and plainly does not create a cause of action in the district court to modify inventorship on pending patent applications."); *Brown v. Toscano*, 254 F.R.D. 690, 695 (S.D. Fla. 2008) ("§ 116 does not provide a cause of action; rather, § 116 empowers the Director of the PTO to decide inventorship issues relating to a pending patent application."). Rather, the appropriate mechanism is a counterclaim under Section 102(f). Audible Magic's claim for derivation and omitted co-inventors under 35 U.S.C. § 102(f), the proposed trial on derivation and inventorship, and proposed motion to correct inventorship Section 256 and associated equitable relief of disgorgement, is the proper course of action under the patent law.

**Correction Of Inventorship Is Routinely Considered On Post-Trial Motions And Here, Where Common Law Claims Will Be Tried On The Overlapping Facts, It Is Particularly Efficient To Do So**
The patents-in-suit are invalid pursuant to 35 U.S.C. § 102(f) due to the prior invention of Thom Blum, Erling Wold, Douglas Keislar, or Jim Wheaton, and on the basis that the applicants derived their inventions of the patents-in-suit from these inventors and improperly failed to name and omitted these co-inventors of the patents-in-suit. Audible Magic will prove, at the least, that these inventors made "not insubstantial" contributions to the inventions of the patents-in-suit, were improperly omitted as co-inventors and that the omitted co-inventors did not act with deceptive intent, but were instead omitted solely through the fault of Mr. Moskowitz.

After inventorship is established, the Court can correct inventorship pursuant to 35 U.S.C. § 256. Co-inventors (who have assigned their patent rights to Audible Magic), are equitable title holders of the Patents-in-Suit, under patent law principles, and are entitled to federal equitable remedies, including disgorgement of wrongfully obtained profits. Given the common facts underlying the § 102(f) theory and Audible Magic's common law unjust enrichment and unfair competition claims, the jury will hear the facts regarding inventorship and the Court will ultimately rule on the equitable claim for correction of inventorship and disgorgement of profits under the patent law. In this case where the basic facts overlap with the facts being tried to the jury on Audible Magic's unjust enrichment and unfair competition counterclaims, it is particularly efficient to proceed in this manner.

After Audible Magic puts in its case regarding derivation and joint inventorship, but before the case is submitted to the jury, Audible Magic will file a post-trial motion to correct inventorship under 35 U.S.C. § 256, which would save the patent from an invalidity verdict under § 102(f). If the jury finds derivation and joint inventorship, the patent will be invalid, unless inventorship is ordered corrected on the post-trial motion and the jury's invalidity verdict set aside. It is common to consider correction of inventorship on a post-trial motion, following a trial on the § 102(f) issues, as Audible Magic proposes here. *See Pannu*, 155 F.3d 1344 at 1347-50 (finding that court should have sent inventorship issue to the jury, and thereafter considered whether to correct inventorship, considering 35 U.S.C. § 256 issues in the context of Rule 50 motions"); *Ethicon, Inc. v. United States Surgical Corp.*, 921 F. Supp. 901, 905 (D. Conn. 1995) (finding it appropriate to consider 35 U.S.C. § 256 motion to correct inventorship after trial to develop full record regarding inventorship and whether correction of inventorship is appropriate); *Jumpsport, Inc. v. Jumpking, Inc.*, 2004 U.S. Dist. LEXIS 29963, 10-26 (N.D. Cal. Mar. 18, 2004) (court determined correction of inventorship on motion under 35 U.S.C. § 256, in the context of Rule 50 motions; "The court issues findings of fact in its capacity as the trier of fact on the correction of inventorship motion, intending these findings to be consistent with the jury's findings" and "the jury served as the trier of fact on the invalidity issues.")

Blue Spike asserts, rather confusingly, that correction of inventorship under Section 256 requires a "hearing of all parties concerned" but that Audible Magic has not proposed any such hearing. [Mot. at p. 3-4] But, this is

precisely the purpose of the proposed trial on the underlying factual determinations, followed by a motion and hearing to correct inventorship under Section 256.  Blue Spike's argument is misguided and should be rejected.



**ALYSSA CARIDIS**
*Intellectual Property*
Senior Associate

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017

tel (213) 612-2372
fax 1-213-612-2499
acaridis@orrick.com

www.orrick.com

6