**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| AUDIBLE MAGIC CORPORATION | § | Civil Action No. 6:15-CV-00584-RWS-CMC |
| *Defendant* | § | |
| | § | |
| _____ | § | |
| AUDIBLE MAGIC CORPORATION, | § | |
| *Counterclaim Plaintiff* | § | |
| | § | |
| v. | § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ | § | |
| *Counterclaim Defendants* | § | |
| _____ | § | |

**JOINT STATUS REPORT RE CLAIMS GOING TO TRIAL IN JULY 2016**

Counterclaim Plaintiff, Audible Magic Corp. ("Audible Magic") and Counterclaim defendants Blue Spike, LLC, Blue Spike, Inc. and Scott A. Moskowitz (collectively "Blue Spike") and Facebook, Inc. ("Facebook"), a customer defendant in Case No. 6:15-CV-00585 and in another pending suit in the Northern District of California on the patents-in-suit, respectfully submit this joint status report regarding claims going to trial in July 2016, in response to the Court's order at Dkt. 130 in the above-captioned matter.

Pursuant to the Court's direction in the order at Dkt. 130, the parties have continued to meet and confer regarding the scope of the July 2016 trial.  The parties' positions and status are as follows:

## I.      AUDIBLE MAGIC AND BLUE SPIKE'S POSITIONS REGARDING TRIAL

### A.      <u>Scope of Trial</u>

#### 1.      *Audible Magic's Position*

The parties jointly agree that the trial scheduled for July 2016 will proceed on the following of Audible Magic's claims and bases:

> (1) derivation, omitted co-inventors and correction of inventorship on the basis of Audible Magic's counterclaims under 35 U.S.C. §§ 102(f), anticipation and obviousness under 35 U.S.C. §§ 102(a), (b), (e), (g) and 103, lack of written description or enablement under 35 U.S.C. §§ 112 (Counterclaims 2, 4, 6 and 8);
>
> (2) unenforceability due to inequitable conduct (Counterclaim 9);
>
> (3) unjust enrichment under Texas state law (Counterclaim 10);
>
> (4) Lanham Act claim (Counterclaim 11);
>
> (5) unfair competition under Texas state law (Counterclaim 13).

Given that Audible Magic will try its invalidity counterclaims of anticipation and obviousness, Audible Magic respectfully requests that the Court issue a ruling on Audible Magic's Motion to Exclude Certain Opinions of Blue Spike's Validity Expert (Dkt. 49).  Further, as set

1

forth in Audible Magic's notice regarding trial time (Dkt. 133), given this scope of issues, Audible Magic anticipates that it will need 16 hours of time allocated to direct and cross examination.

2.    ***Blue Spike's Position***

There is an elephant in the room – Audible Magic's anticipated reliance on Title 35 U.S.C. Sections 116 and 256.  To properly define the scope of the trial and the issues to be addressed at the pre-trial hearing, the Court should consider requesting Audible Magic to explain its damages theory.  Since it appears to rely on an "equitable remedy" whereby the defendants prove the patent invalid under Section 102(f) but then move for the Court to not invalidate the patents-in-suit due to it being entitled to the equitable relief of being named co-inventors.  But unlike in the misleading case law cited by Audible Magic to the Court, here, Audible Magic has pled all along Moskowitz lied to the Patent Office.  In order to correct inventorhip, there must be not deceit initially before the Patent Office. Audible Magic invites the Court to commit judicial error.  Essentially, it wants the Court to ignore the elements to correct inventorship and find its four employees joint inventors under the guise of "equitable relief." But Audible Magic never pled joint or co-inventorship. It had three (3) opportunities to do so for itself and never did.  Also, it did not plead it for any of its customers.  So it is extremely prejudicial to do so now.

While the Court graciously already ruled on the parties motions in limine prior to the pretrial conference, the parties would be enlightened to know if the Court was going to allow Audible Magic to proceed with presenting evidence of co-inventorship.  Blue Spike finds  it to be highly prejudicial and judicial error that Audible Magic invites in attempting to say it's the same things as invalidity under Section 102(f).  It is not.  Inventorship will require an analysis of each element of each claim for the patents-in-suit.  There are about 114 claims in total for the four patents-in-suit.  So by addressing the issue of potential damages in the case at the pretrial

2

conference, it will provide guidance as to how much evidence will be needed to be presented at trial.  As it appears from Audible Magic's statement to the Court it wants to be entitled to some percentage of ownership of the patents-in-suit based upon alleged co-inventorship.  This is highly problematic as we need to know the contribution to each of the claims as prior parties obtained a license to all the patents-in-suit not just the handful at issue now.

Audible Magic did not plead inventorship. Now it plans to rely on Federal statutes to argue it has employees that should be named joint inventors and it therefore as part of its equitable relief the Court should amend the two inventoers to add 4-more separate inventors.  There is a standing issue as the current Audible Magic employees whom are now post MSJ rulings are being claimed to be joint inventors were not Audible Magic employees during the relevant time frame of 199.

In summary, Audible Magic's damages theory is unknown, which severely limits the counter defendants ability to provide meaningful guidance to the Court on the scope of the trial.

Not to mention to extreme prejudice to the Counter-defendants that are now essentially dealing with an alternative theory of liability, co-inventorshup / joint inventorship, that did not emerge until after rulings on Motions for Summary Judgment and well after the close of factual and expert discovery.

Additionally, even though Audible Magic has filed multiple motions for summary judgment, now it wants to seek leave from the Court to file another motion for summary judgment that the claims of the four patents in suit are all invalid under Section 101.  This is a violation of the parties docket control order in this case.  It exceeds the page limits.  It is untimely.  It is a waste of judicial resources and Blue Spike respectfully asks the Court for an order not allowing anymore

expenditure of financial resources on this litigation and strain on judicial resources of this Court without obtain leave from the Court to first do so.

### B.   Claims of the Patents-in-Suit to be Addressed at Trial

#### 1.   *Audible Magic's Position*

One of the primary factors impacting whether and how Audible Magic is able to narrow its invalidity counterclaims is the scope of the patent claims that Blue Spike has asserted or will assert against Audible Magic and its customers, after any appeal of the non-infringement ruling or any other adverse rulings on the Patents-in-Suit.  As a matter of case management, the Court put in place a schedule by which Audible Magic would litigate issues involving its own technology, on behalf of both itself and its customers.   Audible Magic has attempted to have its invalidity counterclaims address the patent claims that Blue Spike has asserted or plans to assert against both Audible Magic and its customers, based on Audible Magic's technology.

In this case, Blue Spike's infringement contentions originally asserted 32 claims.[1]  Blue Spike's infringement contentions to Audible Magic's customers solely relied on Audible Magic's technology – Blue Spike did not accuse any customer-specific technology of infringement.  In Blue Spike's expert report against Audible Magic, Blue Spike narrowed its contentions to 10 claims.[2] During pretrial meet and confer in the fall of 2015, Blue Spike further limited the claim that it planned to try in the Audible Magic phase of the case to Claim 1 of the '494 Patent.  However, notwithstanding this narrowing, throughout the course of the case and inconsistent with its expert

---

[1] Blue Spike's infringement contentions originally encompassed the following claims:  '472 Patent, Claims 1, 3, 4, 8, 11;  '700 Patent, Claims 1, 6, 7, 8, 10, 11, 40, 49, 50, 51; '494 Patent, Claims 1, 4, 5, 11, 17, 18, 20, 21, 22, 29; '175 Patent, Claims 8, 11, 12, 13, 15, 16, 17.

[2] In Blue Spike's expert report, Blue Spike addressed only the following claims:  '472 Patent, Claims 3, 4 and 8; '700 Patent, Claim 1, 40; '494 Patent, Claims 1 and 11; '175 Patent, Claims 11, 12 and 17.

4

report, Blue Spike has persistently taken the position that, in the future, it may assert any and all of the 32 claims set forth in its initial infringement contentions against the customer defendants, in the separate customer case (Civil Action No. 6:15-cv-00585-RWS-CMC).

On June 25, 2016, Audible Magic requested that, after any appeal resulting in further litigation of infringement, Blue Spike limit the patents that it would assert against Audible Magic or its customers to the 10 claims in Blue Spike's expert report.  Blue Spike refused to agree and continues to take the position that after any appeal it would assert any and all claims.  Given Blue Spike's position, and that only 10 claims were addressed in Blue Spike's expert report, Audible Magic plans to limit its invalidity case at trial in July 2016 to these 10 claims.  However, Audible Magic further requests an order that Audible Magic and its customers shall have the right, after any appeal and remand, to challenge the validity of any additional patent claims that Blue Spike may attempt to assert beyond the 10 claims actually put at issue in Blue Spike's expert report.[3]

---

[3] The Court has inherent authority to manage trial and related proceedings in this way.  *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996) ("[A] district judge has broad discretion in managing his docket, including trial procedure and the conduct of trial.")  There would be no difficulty with such relief, from the standpoint of either claim preclusion or issue preclusion.  In the current action, Civil Action 6:15-cv-584, the parties are Audible Magic on the one hand and the Blue Spike parties on the other hand.  Blue Spike is limited to the 10 claims asserted in its expert report, thus any post-remand proceedings should be so limited as well.  In the separate customer action, Civil Action 6:15-cv-585, the parties are different, i.e. that case involves the Audible Magic customer parties and Blue Spike LLC.  While Blue Spike should be limited in the customer action to the 10 claims that it asserts against Audible Magic's technology and the outcome, allowing invalidity challenges in the customer action to those claims or any additional claims that Blue Spike may assert would be permissible from a claim preclusion standpoint because, at the least, it is not a situation where "the parties are identical in the two actions."  *Oreck Direct, LLC. v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009); *Virnetx Inc. v. Apple, Inc.*, Civil Action No. 6:12-cv-00855-RWS, Dkt. 181 at p. 4.  Also, there would be no difficulty from the standpoint of issue preclusion because Blue Spike has only put at issue 10 claims, at most, in this matter.  Thus, there would be no issue preclusion for, at least, the reason that new patent claims asserted in the separate customer case would not be a situation where the "issue under consideration is identical to that litigated in the prior action."  *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995); *Virnetx Inc.* at p. 6.

2.     *Blue Spike's Position*

Blue Spike is currently on appeal on an issue of invalidity for certain patent claims under Section 101.  Blue Spike recommends the Court postpone this trial until the Federal Circuit rules upon that issue.  That would promote judicial economy and provide the parties additional time to discuss settlement.

Otherwise, at this trial Audible Magic must address every patent claim that it intends to rely upon to obtain its self-defined "equitable relief" from the Court.  To explain, there are 114 claims in total for the four patents-in-suit. Assuming the Court allows Audible Magic to present it damages theory, it would need to prove that its alleged co-inventors contributed to each patent claim or it would only be entitled to a fraction of the total for its damages.  Put another away, since damages are the issue and not infringement, Audible Magic is limited of any potential recovery in an amount proportional the number of patent claims it addresses at the trial.  If it only addresses 10 patent claims, then its equitable relief is limited to 10/114.  This would only be equitable.

So the elephant in the room that Audible Magic refuses to discuss is damages.  It impacts this unusual case whereby a defendant is relying on cause of action under federal statute it failed to plead to obtain equitable relief on a Common Law claim, after it told the Court it was not preempted from doing so.

**C.     Derivation/Omitted Coinventors Under 35 U.S.C. § 102(f)**
**Anticipation and Obviousness under 35 U.S.C. §§ 102(a), (b), (e), (g) and 103**
**Lack of Enablement/Insufficient Written Description under 35 U.S.C. §§ 112**

1.     *Audible Magic's Position*

After further consideration of the law regarding issue preclusion, claim preclusion, claim splitting and finality of judgments, and after further discussions with Blue Spike, it appears that it

is not decisively possible, through either voluntary stipulation or Court order, to limit the scope of trial at this point to only an invalidity theory under 35 U.S.C. § 102(f), but in a manner that preserves the parties' right and ability to assert further validity and invalidity theories, after any appeal and remand.  Audible Magic has considered the Court's findings in Dkt. 130 n.1 and authority regarding the extent to which issues may be preserved upon dismissal of all or part of invalidity counterclaims, without prejudice, including *Virnetx, Inc. v. Apple, Inc.*, Civil Action No. 6:12-cv-855, Dkt. 181.

Notwithstanding Audible Magic's proposal set forth in the pretrial order, motivated by an interest in streamlining trial as much as possible, Audible Magic concludes that, as pointed out by the Court, there is considerable uncertainty regarding the collateral estoppel and *res judicata* effect of any stipulation or motion to dismiss particular invalidity theories.  There is also a lack of clear authority for a party dismissing, without prejudice, only particular theories underlying a single cause of action (here, invalidity under 35 U.S.C. § 102).  In view of this uncertainty, as well as Audible Magic's obligation to its customers to defend, to the full extent of issues raised by Blue Spike in the instant case, Audible Magic will simply proceed to trial on all of its asserted bases under 35 U.S.C. §§ 102, 103 and 112.

However, Audible Magic is mindful of the need to manage the scope of the trial.  First, as discussed above, the invalidity trial will only involve the 10 patent claims that were actually asserted by Blue Spike.  Further, the court's non-infringement ruling removed MFCC-based technology from the scope of potential prior art.[4]  The result is that Audible Magic will only put

---

[4] This narrowing is done specifically in response to the Court's determination in its summary judgement order that MFCCs are not abstracts.  If that order is overturned on appeal, Audible Magic specifically reserves its rights to re-assert MFCC-based prior art upon remand.

forward approximately five primary, anticipating prior art systems, publications and patents, and associated obviousness points, in order to focus matters.  Several of these references overlap substantially with the material to be addressed in Audible Magic's Section 102(f) derivation and omitted co-inventor theory.  Audible Magic will focus its Section 112 theory on the lack of disclosure enabling or describing the "abstract" element in each claim.  In this way, the case will be as streamlined as possible, but still preserve Audible Magic's rights.

2.     *Blue Spike's Position*

Any prior publications not asserted is precluded from being presented at a later date under the case law provided by the Court at Docket Item 130.

D.     **Unenforceability Due to Inequitable Conduct**

1.     *Audible Magic's Position*

Much of the prior art that is the subject of Audible Magic's invalidity theories also constitutes evidence relevant to Audible Magic's counterclaim for unenforceability, due to inequitable conduct, and the factual background regarding Audible Magic's derivation claim and state law claims also forms the general factual context for the unenforceability counterclaim. Accordingly, upon consideration, Audible Magic will proceed to try this counterclaim in July.

2.     *Blue Spike's Position*

Audible Magic continues to use the term "prior art" improperly.  Instead, Audible Magic appears to be referring to prior publications.  On the issue of an inventor's duty to disclose, the Court will need to instruct the jury on an inventor's obligation to the Patent Office during the relevant time frame, here the year 2000.  This involves pulling the appropriate MPEP from Washington, and then inserting those instructions into the jury instructions.  Blue Spike has failed to do in its proposed jury instructions submitted to the Court.  Notwithstanding, Blue Spike has

identified the issue as part of the meet and confer process, and respectfully asks the Court to consider this point to avoid judicial error in its instructions to the jury.  The definition of a printed publication and what that means is vital to avoid improperly misleading a jury and is part of the foundational requirements to call a printed publication a "prior art" reference.  Blue Spike requests time from the Court to address this issue at the pretrial hearing.

### E.   Dispositive Motion of Invalidity Under 35 U.S.C. § 101

#### 1.   *Audible Magic's Position*

The United States District Court for the Northern District of California, held on September 8, 2015, that many claims of the Patents-in-Suit are invalid under Section 101, as embodying an unpatentable "abstract idea," including in particular the concept of the "abstract" which appears in every claim of the Patents-in-Suit.  *See Blue Spike, LLC v. Google Inc.*, 2015 U.S. Dist. LEXIS 119382 (N.D. Cal. Sept. 8, 2015).  Blue Spike appealed and the matter is currently fully briefed and pending oral argument before the Court of Appeals for the Federal Circuit.  *See Blue Spike, LLC v. Google Inc.*, U.S. Court of Appeals for the Federal Circuit, Case No. 16-1054.

There is substantial overlap in the claims asserted in the California case and the claims asserted in the instant case.  However, some of the claims asserted against Audible Magic and/or its customers were not expressly addressed in the California case.  However, the substance of the claims asserted here is not distinct from the claims invalidated in the California action.  Each of these claims include the "abstract" limitation upon which the Section 101 ruling was based.  All of the asserted claims of the Patents-in-Suit are invalid as embodying an unpatentable "abstract idea" and under principles of *res judicata* and collateral estoppel.  Indeed, in Blue Spike's separate case in California against Facebook, Blue Spike agreed (and the court ordered) that "the Google judgment of invalidity and its subsequent affirmance will collaterally estop Blue Spike from

disputing the invalidity of the five asserted patents or asserting these patents against Facebook, including for patent claims not expressly recited in the Google judgment." *Blue Spike, LLC v. Facebook, Inc.*, No. 4:15-cv-04185-YGR (N.D. Cal.) (ECF No. 60 at 2).  Thus, Blue Spike agrees that even patent claims beyond those specifically addressed in the Google matter stand or fall with the outcome of the Google appeal.

Audible Magic requested that Blue Spike stipulate to judgment of invalidity on the basis of Section 101, subject to the parties' reservation of all of their rights and arguments on appeal. Blue Spike refused to agree to stipulate to judgment of invalidity on the basis of Section 101. Accordingly, Audible Magic will soon bring a dispositive motion, on behalf of itself and its customers, for judgment of invalidity under Section 101, as a matter of law, given that Blue Spike is bound under principles of collateral estoppel and *res judicata*.  Given the procedural posture, Audible Magic must bring this motion to preserve the argument that, if the ruling in the California case is affirmed, that all of the asserted claims are invalid as a matter of law on that basis.  *Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 507 (Fed. Cir. 1989) (the defense of collateral estoppel based on a final judgment of patent invalidity in another suit can "be timely made at any stage of the affected proceedings.").

### 2.    *Blue Spike's Position*

Blue Spike will not agree to stipulate to invalidity.  Blue Spike proposed postponing this trial until after the Google appeal currently fully-briefed at the Federal Circuit is ruled upon.  This would increase judicial economy and provide the parties additional time to continue settlement discussions.

## II.    CUSTOMER DEFENDANT FACEBOOK, INC.'S STATEMENT

Facebook respectfully submits a separate statement to address an issue that relates uniquely to Facebook. Facebook is a "customer defendant" in the currently stayed Case No. 6:15-cv-00585 pending before this Court, but it is also a defendant in a separate and independent suit brought by Blue Spike that is pending in another district.

More specifically, on December 22, 2014, more than two years after the suit against Audible Magic was brought, Blue Spike filed a separate action in this district against Facebook based on allegations that Facebook products and/or services unrelated to Audible Magic infringe the four patents-in-suit and a fifth patent not at issue in the Audible Magic suit (Case No. 6:14-cv-00987).  This Court transferred that action to the Northern District of California pursuant to 28 U.S.C. § 1404(a), and that action has been stayed pending review of the § 101 ruling in the *Google* case. *See Blue Spike, LLC v. Facebook, Inc.*, No. 4:15-CV-04185 YGR (N.D. Cal.) (ECF No. 60).  Blue Spike stipulated in the California action, and the California court ordered, that should the Federal Circuit affirm the § 101 ruling, "the Google judgment of invalidity and its subsequent affirmance will collaterally estop Blue Spike from disputing the invalidity of the five asserted patents or asserting these patents against Facebook, including for patent claims not expressly recited in the Google judgment." *Blue Spike, LLC v. Facebook, Inc.*, No. 4:15-cv-04185-YGR (N.D. Cal.) (ECF No. 60 at 2).

Because the California action remains pending and is separate from the present action, Facebook respectfully requests that the Court enter an order removing Facebook from all invalidity issues in these proceedings in deference to the pending California action. All issues relating to invalidity defenses of Facebook, therefore, would be heard and resolved in the separate Blue Spike action in California in which Facebook is the sole defendant.

Facebook respectfully submits that severing it from all invalidity issues in this proceeding is consistent with judicial economy and comity towards other district courts.   As noted above, the California court has already taken jurisdiction over the § 101 issue by issuing an order tying the fate of Blue Spike's claims in that case to the outcome of its appeal in the *Google* case.

Moreover, Facebook's involvement in the present proceedings is merely as a "customer defendant," and as such, Facebook will not be a party to the upcoming trial. But because of Facebook's relationship as a customer of Audible Magic, it is unclear whether (or to what extent if any) a judgment in the present action on invalidity issues will have claim or issue preclusive impacts on the separate California action. This could not only create a conflict with the California court's standing order on the § 101 issue, but force the California court to unnecessarily address a number of complex legal issues regarding the potential applicability (if any) of claim or issue preclusion.   This burden would be further exacerbated by the procedural and substantive differences between the California action and the present action.   For example:

- Blue Spike has asserted a fifth patent in the California action not asserted here, U.S. Patent No. 8,712,728.  The scheduled trial will therefore not address invalidity issues as to this fifth patent.

- Blue Spike has asserted sixty (60) claims in the California action, almost twice as many as the present action. The scheduled trial will therefore not resolve invalidity issues as to the dozens of patent claims asserted only in the California action.

Because of the differences in asserted claims and patents, the invalidity issues presented in the California action will necessarily include defenses not represented in this case.   Refusing to sever Facebook from the invalidity issues in this case, therefore, would severely prejudice Facebook by creating a cloud of uncertainty regarding the preclusive effect (if any) in the pending California action.

Blue Spike's separate case against Facebook was filed after entry of the current Case Management Order, and as such, the order did not contemplate the existence of a separate action in another district against one of the customer defendants.  As noted, the California action involves infringement allegations against Facebook's own products or services unrelated to Audible Magic.  It therefore makes sense to extend the separation between these cases by clarifying that Facebook's invalidity defenses, like its specific non-infringement defenses, will be heard and tried in the same California action.

Fifth Circuit law provides that a district court can carve out portions of the claims in a case to control or limit the preclusive effect of its judgment.  *In re Texas Wyoming Drilling, Inc.,* 647 F.3d 547, 553 (5th Cir. 2011) (citing *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 712 (5th Cir. 2005)); *see also* Restatement (Second) of Judgments, § 26(1)(b) (1982).  In this case, the Court should enter an order carving out Facebook from the invalidity issues in deference to the California action such that any judgment in the present action will have no claim or issue preclusion effect against Facebook's invalidity defenses in the California action.

DATED:  June 28, 2016

By: */s/ Randall Garteiser*
Randall T. Garteiser
 Lead Attorney
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
 chonea@ghiplaw.com
Christopher S. Johns
 Texas Bar No. 24044849
Kirk J. Anderson
 California Bar No. 289043
 kanderson@ghiplaw.com
Molly A. Jones
 California Bar No. 301419
 mjones@ghiplaw.com
Garteiser Honea, P.C.
119 W. Ferguson Street
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

*Attorneys for Blue Spike, LLC, Blue*
*Spike, Inc. and Scott A. Moskowitz*

Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
 Texas Bar No. 00789886
 efindlay@findlaycraft.com
Walter W. Lackey, Jr.
 Texas Bar No. 24050901
 efindlay@findlaycraft.com
Findlay Craft, P.C.
102 N. College Ave, Suite 900
Tyler, Texas 75702
(903) 534-1100
(903) 534-1137 fax

Gabriel M. Ramsey
 Lead Attorney
 California Bar No. 209218, admitted
E.D. Texas
 gramsey@orrick.com
I. Neel Chatterjee
 California Bar No. 173985, admitted
E.D. Texas
 nchatterjee@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, California 94025
(650) 614-7400
(650) 614-7401 fax

Alyssa M. Caridis
 California Bar No. 260103, admitted
E.D. Texas
 acaridis@orrick.com
Orrick, Herrington & Sutcliffe LLP
777 S. Figueroa St., Suite 3200
Los Angeles, California 90017
(213) 629-2020
(213) 612-2499 fax

Christopher J. Higgins
 Washington D.C. Bar No. 498165,
admitted pro hac vice
 chiggins@orrick.com
Orrick, Herrington & Sutcliffe LLP

14

|  | 1152 15th Street, N.W. Washington, D.C. 20005-1706 (202) 339-8400 (202) 339-8500 <br><br> *Attorneys for Audible Magic Corp.* |
| --- | --- |

### CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing *via* electronic mail to all counsel of record.

/s/ *Eric H. Findlay*
 Eric H. Findlay

15