# EXHIBIT K

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § | |
| *Plaintiff*, | § § | Case No. 6:15-cv-584-MHS |
| v. | § § | |
| AUDIBLE MAGIC CORPORATION, | § § | Jury Trial Demanded |
| *Defendant*. | § § | |
| | § | |
| AUDIBLE MAGIC CORPORATION, | § § | |
| *Counterclaim Plaintiff* | § § | |
| v. | § § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ | § § § | |
| *Counterclaim Defendants.* | § § | |

**[PROPOSED] JOINT JURY INSTRUCTIONS**

For the instructions that follow, the parties have noted in the Table of Contents whether the proposed instructions are Agreed or Disputed.  The disputed instructions are further noted in the body of the instructions using the following convention:  Plaintiff Blue Spike LLC and Counterclaim Defendants Blue Spike LLC, Blue Spike Inc, and Scott Moskowitz *italicized* their proposed language, and Defendant and Counterclaim Plaintiff Audible Magic Corp. <u>underlined</u> its proposed language.

1

## I.    [PROPOSED] PRELIMINARY INSTRUCTIONS[1]

### A.    Opening Instructions

Members of the jury: Now that you have been sworn, I will give you some preliminary instructions to guide you in your participation in the trial.

### 1.    Duty of the Jury

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. The Court will decide all questions of law. You will apply the facts as you find them to the law as the Court will give it you. You must follow that law whether you agree with it or not. Nothing the Court may say or do during the course of the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be. Let me briefly discuss the applicable burdens of proof in this case.

### 2.    Burden of Proof – Preponderance of the Evidence

When a party has the burden of proof on any claim or defense by "a preponderance of the evidence," it means you must be persuaded by the evidence that the claim or defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

### 3.    Burden of Proof – Clear and Convincing Evidence

When a party has the burden of proof on any claim or defense by "clear and convincing evidence," it means you must be persuaded that it is highly probable that the facts are as that party contends. Such evidence requires a higher standard of proof than by a preponderance of the evidence. Proof to an absolute certainty is not required. Again, you should base your decision on all of the evidence, regardless of which party presented it.

You may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt." That burden of proof is the highest standard. It does not apply to a case such as this one, and you should therefore put it out of your mind.

### 4.    Evidence

The evidence from which you will find the facts will consist of:
1) the testimony of witnesses;
2) the exhibits which are received into evidence;
3) any facts to which the lawyers agree or stipulate; and
4) any facts that the Court instructs you to find.

The following are not evidence, and you must not consider them as evidence in deciding the facts of the case:

---

[1] The preliminary instructions are adapted from those submitted by counsel for Blue Spike in the matter *Nobelbiz, Inc. v. Global Connect, LLC*, Civil Action No. 6:12-cv-244-RWS, Dkt. 271-11, and read to the jury (Dkt. 331).

1) statements and argument of the attorneys;
2) questions and objections of the attorneys;
3) testimony that the Court instructs you to disregard; and
4) anything you may see or hear outside the courtroom, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of a fact from which you may infer or conclude that other facts exist. I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence.

It will be up to you to decide how much weight to give to any evidence, including which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. In considering the testimony of any witness, you may take into account the opportunity and ability of the witness to see or hear or know the things that the witness testifies to; the witness's memory; the witness's manner while testifying; the witness's interest in the outcome of this case and any bias or prejudice; whether other evidence contradicts the witness's testimony; the reasonableness of the witness's testimony in light of all the evidence; and any other factors that bear on the witness's believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all the other evidence, you believe that single witness.

Although you must consider only the evidence in this case, you may draw reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

### 5.    Expert Witnesses

In this case, you are going to hear testimony from expert witnesses. When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

### 6.    Depositions

During the trial, certain testimony may be read or shown to you by way of deposition. That is the testimony of a witness, who, for some reason, cannot be present to testify from the witness stand; and it is usually presented either in writing, by reading it to you, or by video under oath in the form of a deposition. In taking a deposition, the parties agreed to a time and place to

take the deposition. There was a court reporter present, who placed the witness under oath, and both sides had the opportunity to question the witness. This testimony is entitled to the same consideration and is to be judged as to credibility, weighed, and otherwise considered by the jury in the same way as if the witness had been present here and had given, from the witness stand, the testimony that was read or shown to you on the video from the deposition.

### 7.       Demonstratives

Certain exhibits shown to you are illustrations. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibits, rely on your recollection. While demonstrative exhibits may have been helpful to you in determining the issues, the demonstrative exhibits of the parties are not evidence or proof of any facts. If they do not correctly reflect the evidence in this case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence. Demonstrative exhibits not admitted into evidence will not be available to you during your deliberations.

### 8.       Objections

Undoubtedly, there will be some objections during the course of the trial. It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.

When the Court allows testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or the effect of such evidence. As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustains an objection, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said had the Court permitted an answer to the question.

### 9.       Conduct of the Jury

Now, a few words about your conduct as members of the jury: First, until this trial is over, do not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial or anyone else. Do not permit anyone to discuss the case in your presence.  You are to hold yourself completely apart from the people involved in the case – the parties, the witnesses, the attorneys, and persons associated with them. If anyone should attempt to discuss the case or approach you concerning the case, you should inform the Court immediately through the court security officer of the clerk's office.

This also means that if you use a social networking internet site or tool, like Facebook, Instagram, LinkedIn, Twitter, or others, you should not discuss or even mention the case at all on those sites. Do not post updates about what is going on in the case.

Second, do not do any research or make any investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial.

Third, do not learn anything about the case from any other source. In particular, do not read any newspaper or internet account of this trial or listen to any radio or television newscast concerning it. These sources can be unreliable or biased. I do not have an opportunity to determine if the information meets the standards for evidence in Court, and the parties do not have a chance to cross-examine the sources of information or present rebuttal information.

Fourth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until that time.

Finally, if you wish, you may take notes. But, any notes that you have taken during this trial are only aids to your memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you need to communicate with me at any time during the trial, simply give a signed note to the Bailiff, and he will give it to me.

### B.      The Parties and Nature of the Case

The party who brings a lawsuit is called the Plaintiff. The parties against whom a suit is brought is called a Defendant.

In this case Audible Magic Corp. is a plaintiff that has brought claims alleging that four U.S. patents of defendant Blue Spike LLC were derived from prior inventors, alleging that the patents are invalid and unenforceable, and alleging that defendants Blue Spike LLC, Blue Spike Inc. and Scott Moskowitz took Audible Magic's property and made false and misleading statements.

Blue Spike LLC and Blue Spike Inc. will be referred to by their names, and sometimes individually or together may be referred to as "Blue Spike."  Scott Moskowitz will be referred to as "Mr. Moskowitz."  Audible Magic Corp. will be referred to as "Audible Magic."

### C.      What a Patent Is and How One Is Obtained

Part of this case involves a dispute relating to four United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent's holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to

sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs Examiners who review applications for patents. The application includes what is called a "specification," which is supposed to contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time and not an obvious improvement, and therefore, entitled to a patent. Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent and its related papers list the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

Once a patent is granted, it is presumed by law to be valid. However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. A party has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Audible Magic has proven that the patents are derived from prior inventors or are invalid.

### D.      Summary of Contentions

To help you follow the evidence, I will now give you a summary of the parties' positions.

The case involves United States Patent Nos. 7,346,472, 7,949,494, 8,214,175, and 7,660,700, obtained by inventors Scott Moskowitz and Michael Berry, and transferred by the inventors to Blue Spike, Inc. Blue Spike, Inc. later transferred the patents to Blue Spike, LLC. For your convenience, the parties and I will often refer to these patents by the last three numbers of the patent number, namely, as the "'472, '494, '175 and '700." The parties and I may also refer to these patents, all together, as the "patents-in-suit."

Audible Magic filed suit in this court seeking money damages from Scott Moskowitz, Blue Spike Inc. and Blue Spike LLC, contending that Scott Moskowitz, an inventor listed on the patents-in-suit and the principal of Blue Spike, Inc. and Blue Spike, LLC, derived the ideas in those patents from earlier confidential and public information of Audible Magic's engineers, failed to list these engineers as co-inventors and thus claimed Audible Magic's property as their own. Audible Magic alleges this constitutes unjust enrichment and unfair competition. Audible Magic also argues that the claims of the patents-in-suit are invalid.

Audible Magic contends that Mr. Moskowitz and Blue Spike failed to disclose and misrepresented to the patent office highly material earlier inventions of Audible Magic's engineers and other companies, with intent to deceive, and that if the patent office had seen these earlier, prior art inventions, it would not have granted Blue Spike the patents-in-suit. Audible Magic contends that these acts constitute inequitable conduct and render those patents unenforceable.

Audible Magic contends that Mr. Moskowitz and Blue Spike made material false and misleading statements in commerce and advertising about Blue Spike's technology and products. Audible Magic alleges that this violates a law called the Lanham Act and constitutes unfair competition.

Your job will be to decide whether the patents-in-suit were derived from the inventions of the Audible Magic engineers, whether the Audible Magic engineers were omitted co-inventors, and whether Mr. Moskowitz and Blue Spike made false or misleading statements. Your job will also be to decide whether or not the claims of the patents-in-suit are invalid and unenforceable.

If you decide that the patents-in-suit were derived from the inventions of the Audible Magic engineers, you will need to decide any money damages to be awarded to Audible Magic.

### E.      Patents at Issue

[The Court should show the jury the patents at issue and point out the parts, which include the specification and claims, including the claims at issue. The Court may wish to include a joint, nonargumentative statement of the patented subject matter at this point in the instructions. The Court may wish to hand out its claim constructions and the glossary at this time. If the claim constructions are handed out, the following instruction should be read:]

I have already determined the meaning of the claims of the patents-in-suit. You have been given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

## F.      Overview of Applicable Law

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Mr. Moskowitz and Blue Spike derived the inventions of the patents-in-suit from the contributions of the Audible Magic engineers, and whether the Audible Magic engineers were improperly omitted co-inventors of the patents-in-suit. A patent is required to name all of the actual inventors. To be an inventor, one must make a not insubstantial or significant contribution to the conception of at least one or more of the claims of the patent. If a patent does not name all actual co-inventors, the patent is invalid, and improperly omitted co-inventors may claim a legal and financial interest in the patent.

You will also have to decide whether some of the information disclosed by the Audible Magic engineers to Mr. Moskowitz was disclosed under an express or implied duty of confidence, prior to Blue Spike filing for the patents-in-suit.  If you find that information was disclosed under such a duty of confidence, you will also have to decide whether Mr. Moskowitz or Blue Spike breached that duty of confidence by their use of the information.

If you find that there was a breach of the duty of confidence, you will have to decide whether Mr. Moskowitz or Blue Spike obtained a benefit by fraud, duress, or the taking of undue advantage, or wrongfully secured or passively received a benefit which it would be unconscionable to retain. This is known as "unjust enrichment." If you find that there was a breach of duty of confidence, you will also have to decide whether Mr. Moskowitz or Blue Spike engaged in practices that are contrary to "honest dealings." This is known as "unfair competition."

Another issue you will be asked to decide is whether the patents-in-suit are invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. For a claim to be invalid because it is not new, Audible Magic must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the

field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the inventions claimed in the patents-in-suit are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent. The disclosure of a patent must also meet the "enablement" requirement. To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.

Another issue you will be asked to decide is whether Mr. Moskowitz or Blue Spike committed inequitable conduct before the patent office, which would make the patents-in-suit unenforceable. A patent is unenforceable where the patent applicant failed to disclose or misrepresented material prior art, with intent to deceive the patent office, and where but for the failure to disclose or misrepresentation of the prior art, the patent office would not have granted the patents.

You will also have to decide whether Mr. Moskowitz and Blue Spike made false or misleading statements about their alleged technology and product, and whether such statements violate the Lanham Act and constitute unfair competition. Such violations occur where a party has 1) made false or misleading statements of fact; 2) the statements had the capacity to deceive a substantial portion of the intended audience or actually deceived; 3) the statements are material in that they will likely influence the deceived audience's purchasing or other economic decisions; 4) the statements were introduced into interstate commerce; and 5) the party complaining is likely to be or has been injured as a result of the statements at issue.

If you decide that Blue Spike derived the inventions of the patents-in-suit from the inventions of the Audible Magic engineers, or omitted the Audible Magic engineers as co-inventors, you will then need to decide any money damages to be awarded to Audible Magic to compensate it for the taking of its property. A damages award should compensate Audible Magic for any unjust gain that Mr. Moskowitz or Blue Spike made from the Audible Magic engineers' inventions. You may also impose exemplary or punitive damages to punish Mr. Moskowitz or Blue Spike for the taking of Audible Magic's property. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

### G.    Outline of Trial

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven

9

by a preponderance of the evidence. As already mentioned, a preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, Audible Magic will present its evidence in support of its claims that Mr. Moskowitz and Blue Spike derived the inventions of the patents-in-suit from the Audible Magic engineers, and that the Audible Magic engineers were improperly omitted co-inventors. Audible Magic will also present its evidence in support of its claims for patent invalidity and unenforceability, unjust enrichment, common law unfair competition, and violations of the Lanham Act.

To prove derivation of inventions, improperly omitted co-inventors, invalidity and unenforceability of the patents-in-suit, Audible Magic must persuade you by clear and convincing evidence.   To prove unjust enrichment, common law unfair competition, and violations of the Lanham Act, Audible Magic must persuade you by a preponderance of the evidence.

Blue Spike will then present its evidence that Mr. Moskowitz and Blue Spike did not derive the inventions of the patents-in-suit from the Audible Magic engineers, and that the Audible Magic engineers were not improperly omitted co-inventors.   Blue Spike will also present its evidence that the patents are not invalid or unenforceable and that there was no unjust enrichment, common law unfair competition, or violations of the Lanham Act.

Audible Magic may then put on additional evidence responding to Blue Spike's evidence. This is referred to as "rebuttal" evidence. Audible Magic's "rebuttal" evidence may respond to any evidence offered by Blue Spike.

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. The attorneys' comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case with the aid of the jury instructions and jury verdict form.

## II.    [PROPOSED] INSTRUCTIONS AT THE CLOSE OF EVIDENCE[2]

### 1.    Introduction

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

### 1.1.    General Instruction

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the stipulations of the parties, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### 1.2.    Considering Witness Testimony

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the

---

[2]  The general instructions and form of these instructions at the close of evidence are adapted from this Court's instructions in the matter *Nobelbiz, Inc. v. Global Connect, LLC*, Civil Action No. 6:12-cv-244-RWS, Dkt. 348, and the Model Patent Jury Instructions available at http://www.txed.uscourts.gov/cgi-bin2/view_document.cgi?document=2195.  Where there are additions to the foregoing model instructions, additional relevant authority is provided in the footnotes.

question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial. In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

## 1.3.   How to Examine the Evidence

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness. Demonstrative exhibits are not evidence. They are a party's picture or model to describe something involved in this trial. If

your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

## 1.4.    Objections to Evidence

Attorneys representing clients in courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.

So, you should not be influenced by any objection or by the Court's ruling on it. If the objection was sustained, then ignore the question. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

## 1.5.    Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he or she is called an expert witness) is permitted to state his or her opinion on those technical matters. There is no obligation for a party to depose an expert. However, you are not required to accept an expert's opinion. As with any other witness, it is up to you to decide whether the witness' testimony is believable or not, whether it is supported by the evidence, and whether to rely upon it. In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.

## 2.    Summary of Contentions of the Parties

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Audible Magic contends that Scott Moskowitz, the inventor listed on the patents-in-suit and the principal of Blue Spike, Inc. and Blue Spike, LLC, derived the ideas in those patents from earlier confidential and public information of Audible Magic's engineers Thom Blum, Erling Wold, Douglas Keislar or Jim Wheaton. Audible Magic contends that Mr. Moskowitz and Blue Spike improperly failed to list these engineers as co-inventors of the patents. Audible Magic contends that after learning of these engineers' ideas, Mr. Moskowitz filed applications for the patents-in-suit with the patent office, but did not disclose these Audible Magic engineers as co-inventors.  Audible Magic seeks correction of inventorship of the patents, to add Audible Magic's engineers as named inventors, and seeks damages from Blue Spike for claiming Audible Magic's property as its own.

Audible Magic contends that Mr. Moskowitz and Blue Spike failed to disclose to the patent office the earlier inventions of Thom Blum, Erling Wold, Douglas Keislar or Jim Wheaton, as well as inventions of other companies. Audible Magic contends that these earlier inventions, called "prior art," would have been highly material for the patent office to see when it was considering Blue Spike's patent applications. Audible Magic contends that if the patent office had seen these earlier, prior art inventions, it would not have granted Blue Spike the

patents-in-suit. Audible Magic contends that the failure to disclose this highly material prior art was done with the intent to deceive the patent office, and constitutes inequitable conduct and renders the patents unenforceable.

Audible Magic contends that Mr. Moskowitz and Blue Spike made material false and misleading statements in commerce and advertising. Audible Magic contends that such false and misleading statements include Mr. Moskowitz's and Blue Spike's public claims that they were the first to create fingerprinting technology at the turn of the century and their public claims that they had an operating product called the "Giovanni Abstraction Machine" which could be purchased for $10,000. Audible Magic contends that these statements were made by Mr. Moskowitz and Blue Spike in order to deceive the public and affect the audio content recognition marketplace to aid in Blue Spike's attempts to license the patents-in-suit.

## 2.1. Issues to be Decided

Your job is to decide whether Blue Spike derived its patents-in-suit from the ideas and inventions of Audible Magic's engineers, but did not list them as co-inventors.

Your job is to decide whether some of the ideas and inventions of Audible Magic's engineers were disclosed to Blue Spike under an express or implied duty of confidence.

Your job is to decide whether any of the claims of the patents-in-suit are invalid or unenforceable.

Your job is to decide whether Blue Spike made false or misleading statements about its technology and product.

If you decide that the patents-in-suit were derived from the ideas and inventions of the Audible Magic engineers, and they were not listed as co-inventors, you will then need to decide any money damages to be awarded to Audible Magic to compensate it for the taking of its property.

If you decide that Blue Spike made false or misleading statements, you will then need to decide whether such false or misleading statements were willful, wanton and calculated to deceive, and are undertaken in bad faith.

You will also need to make a finding as to whether any taking of property or false or misleading statement involved an act of fraud, malice or gross negligence, and if so to determine an amount of punitive damages.

## 3. Burdens of Proof

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."

"Clear and convincing" evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than

is necessary for the preponderance of the evidence standard. If the proof regarding an Audible Magic claim establishes in your mind a firm belief or conviction, then the standard has been met.

Audible Magic has the burden of proving by clear and convincing evidence that Mr. Moskowitz or Blue Spike derived the patents-in-suit from the ideas and inventions of the Audible Magic engineers, and that they were improperly omitted as co-inventors.[3]

Similarly, as issued United States patents, the patents-in-suit are presumed to be valid, and thus Audible Magic has the burden of overcoming that presumption and proving invalidity by clear and convincing evidence.[4]

Audible Magic also has the burden of proving by clear and convincing evidence that Mr. Moskowitz or Blue Spike failed to disclose to the patent office the earlier inventions of the Audible Magic engineers, that such would have been highly material for the patent office to see, and that but for failing to disclose those inventions the patent office would not have granted the patents-in-suit, and that Mr. Moskowitz's and Blue Spike's failure to disclose this information was done with the intent to deceive the patent office.[5]

"Preponderance of the evidence" means the evidence persuades you that a claim is more likely true than not true. If the proof establishes that an Audible Magic claim is more likely true than not true, then you should find for Audible Magic as to that claim.

Audible Magic has the burden of proving by a preponderance of the evidence whether some of the ideas and inventions of Audible Magic's engineers were disclosed to Mr. Moskowitz or Blue Spike under an express or implied duty of confidence, and whether Mr. Moskowitz or Blue Spike breached that duty of confidence.[6]

Audible Magic has the burden of proving by a preponderance of the evidence that Mr. Moskowitz or Blue Spike was unjustly enriched by use of the ideas and inventions of the Audible Magic engineers.[7]

Audible Magic has the burden of proving by a preponderance of the evidence that Mr. Moskowitz or Blue Spike made false or misleading statements about its technology and product under the Lanham Act.[8]

Audible Magic has the burden of proving by a preponderance of the evidence that Mr.

---

[3]  *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998) (clear and convincing standard for 102(f) omitted co-inventors); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997) (clear and convincing standard for 102(f) derivation)

[4] *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and convincing evidence of invalidity)

[5] *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) (clear and convincing standard for inequitable conduct)

[6] *Phillips v. Frey*, 20 F.3d 623, 631 (5th Cir. 1994) (preponderance of the evidence standard re breach of duty of confidence)

[7] *Drawhorn v. Qwest Communs. Int'l*, 121 F. Supp. 2d 554, 563 (E.D. Tex. 2000) (preponderance of the evidence re unjust enrichment claim)

[8] *Amway Corp. v. BHIP Global, Inc.*, 2013 U.S. Dist. LEXIS 75393, 14-16 (E.D. Tex. May 29, 2013) (preponderance of the evidence re Lanham Act claim)

Moskowitz or Blue Spike engaged in unfair competition.[9]

Audible Magic has the burden of proving by a preponderance of the evidence the amount of money damages to compensate it for the taking of its property.[10]

Audible Magic has the burden of proving by clear and convincing evidence that any false or misleading statements by Mr. Moskowitz or Blue Spike were willful, wanton and calculated to deceive, and were undertaken in bad faith.[11]

Audible Magic has the burden of proving by clear and convincing evidence that any taking of property or false or misleading statement involved an act of fraud, malice or gross negligence, and if so to determine an amount of punitive or "exemplary" damages, sometimes called "punitive" damages.  You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages must be unanimous.[12]

In determining whether any fact has been proved by the preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

**4.      Glossary of Patent Terms**

To assist you in your deliberations, I have attached a Glossary of Patent Terms that identifies terms used in patent matters and gives you a definition of those terms. The glossary of patent terms is contained in Appendix A to this Charge.

**5.      The Role of the Claims of a Patent**

Before you can decide some of the issues in this case, you will need to understand the role of patent "claims."

The claims of a patent are the numbered sentences at the end of the patent. The claims are important because the words of the claims define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each

---

[9] *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 981 (W.D. Tex. 2011) (preponderance of the evidence re unfair competition claim)

[10] *United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 965-966 (5th Cir. 1998) (damages generally); Fifth Circuit Pattern Jury Instructions 15.2 (Compensatory Damages); *see also* Model Patent Jury Instructions, 6.2 (Damages – Burden of Proof), at http://www.txed.uscourts.gov/cgi-bin2/view_document.cgi?document=2195

[11]  *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304-1305 (5th Cir. 1997) (standard for treble damages and attorneys' fees under Lanham Act); *CrossFit, Inc. v. Columbus CrossFitness, LLC*, 2014 U.S. Dist. LEXIS 81436, *3-7 (N.D. Miss. 2014) (same); *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 402 (5th Cir. 2008) (clear and convincing showing for finding of willfulness for Lanham Act attorneys' fees)

[12] *Sunshine Kids Found. v. Sunshine Kids Juvenile Prods.*, 2009 U.S. Dist. LEXIS 117986, *46-47 (S.D. Tex. 2009) (exemplary damages for state law claims, such as common law unfair competition or false advertising, awarded where clear and convincing evidence showing of fraud, malice or gross negligence); Tex. Civ. Prac. & Rem. Code § 41.003 (a) (same).

claim is effectively treated as if it was a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether Blue Spike derived any of its inventions from the ideas and inventions of the Audible Magic engineers and whether those engineers were improperly omitted as named co-inventors of the patents. You will second need to understand what each claim covers in order to decide whether or not the claim is invalid. The law says that it is the Court's role to define the terms of the claims and it is your role to apply these definitions to the issues that you are asked to decide in this case.

Therefore, as I explained to you at the start of the case, the Court has determined the meaning of the claims, and I have provided to you the definitions of certain claim terms in Appendix B. You must accept the definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of derivation, inventorship and invalidity. The claim language for which I have found that no construction is necessary or that I have not interpreted for you in your Appendix B is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the field of the invention at the time of the invention. You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide.

## 5.1.    How a Claim Defines What it Covers

I will now explain how a claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements divided into parts or steps within a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop. The tabletop, legs and glue are each separate limitations of the claim.

If a prior art publication or product meets all of the claim elements or limitations of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a prior art publication or product where each of the claim elements or limitations is present in that publication, product or process.

Similarly, if a party is found to have made a "not insubstantial" contribution to one or more elements or limitations of a claim, then the claim may be found to be derived from that party's contribution and the party may be considered a co-inventor of the patent claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as invalidity, whether the invention in one or more claims is derived from others, and whether there are omitted co-inventors of a claim.

## 5.2.    Independent and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 1, 3, 8 and 11 of the '472 patent; claims 1 and 40 of the '700 patent; claims 1, 11 and 29 of the '494 patent; and claims 8, 11 and 17 of the '175 patent are each independent claims.

The remainder of the claims in the '472, '400, '494 and '175 patents are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A system that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

For example, claim 4 of the '472 patent is a dependent claim that refers back to independent claim 3. Therefore, dependent claim 4 includes all of the requirements of claim 3 as well as all of the requirements of claim 4.

## 5.3.    Open-Ended or "Comprising" Claims

The beginning portion, or preamble, to some of the claims in this case use the word "comprising." "Comprising" means "including but not limited to" or "containing but not limited to." Thus, if a prior art publication or product meets all the requirements in that claim, the prior art is covered by the claim. This is true even if the publication or product includes components or steps in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be anticipated in the prior art by a table that includes a tabletop, legs and glue, even if the table also includes wheels on the table's legs.

## 6.    Inventorship

In this case, Audible Magic contends that the patents-in-suit do not name all of the actual inventors. A patent is required to name all of the actual inventors; this is known as the "inventorship" requirement. A co-inventor is also referred to as a joint inventor.

To be an inventor, one must make a not insubstantial or significant contribution to the conception of at least one or more of the claims of the patent. Whether the contribution is not insubstantial or significant is measured against the scope of the full invention. There is no explicit lower limit on the quantity or quality of inventive contribution required for a person to qualify as a joint inventor. Rather, a joint invention is simply the product of a communication between two or more persons working together to solve the problem addressed, and where one communicates a contribution to the solution.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Co-inventors' claims do not necessarily fail because they cannot recall each individual's specific contribution; it is sufficient that they recalled collaborating together and suggesting the solution that produces the patented invention.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

To prove inventorship, Audible Magic is required to present additional evidence, such as correspondence, documentation or tangible evidence beyond the testimony of the alleged co-inventors. However, you must evaluate all pertinent evidence, including that testimony, and make a sound determination that the evidence credibly establishes joint invention.[13]

## 7.    Invalidity

Audible Magic has challenged the validity of the claims of the patents-in-suit on four grounds, (1) that the claims are derived from the prior inventions of the Audible Magic engineers, (2) anticipation, (3) obviousness and (4) that those patents do not enable a person of ordinary skill in the art to make the inventions and do not adequately describe the claimed inventions. Audible Magic must prove that a patent claim is invalid by clear and convincing evidence.

An issued patent is accorded a presumption of validity based on the presumption that the Patent Office acted correctly in issuing a patent. From the issuance of the patent, it is presumed that a claimed invention is new, useful and not obvious and satisfies the other legal requirements for a valid patent. Each claim of a patent is presumed valid independently of the validity of the other claims.

The presumption of validity remains intact and the clear and convincing burden of proof remains on the party, in this case, Audible Magic, who is challenging validity throughout this litigation. In other words, the burden never shifts to Blue Spike to prove that its patents are valid.

Even though the Patent Office has allowed the claims of a patent, you have the ultimate

---

[13] 35 U.S.C. § 102(f); CAFC Model Jury Instruction 4.3d; National Jury Instruction Project, Model Patent Jury Instructions 5.6 (adapted from corroboration requirement portion of the instruction regarding prior invention); 35 U.S.C. §§ 102(f), 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985); *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997); *Canon Computer Systems, Inc. v. Nu-Kote Intern., Inc.*, 134 F.3d 1085 (Fed. Cir. 1998)

responsibility for deciding whether the claims of the patent are valid.

Each claim of a patent is presumed valid independently of the validity of the other claims. In making your determination as to whether a patent claim is valid or invalid, you must consider each of the claims of a patent separately and individually. In addition, the patent must comply with certain statutory requirements of disclosure. To prove that a patent is invalid, a party challenging validity must initially establish clearly and convincingly that the references it relies upon are, in fact, prior art.

## 7.1.    Prior Art

Prior art in this case may include items that were conceived and reduced to practice, or publicly known, or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention before September 7, 2000. To be prior art, the item or reference must have been conceived and reduced to practice, made, known, used, published, or "publicly accessible" (i.e., reasonably accessible to the public), or patented before September 7, 2000.

I will now explain to you Audible Magic's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim and each ground for invalidity separately.

## 7.2.    Derivation

The inventor on a patent must be the true inventor of the invention covered by the patent claims. An inventor on a patent is not the true inventor if he "derived" the invention from someone else or from another company. An invention is said to be "derived" if that other person or company conceived of the patented invention first and the named inventor received a communication with that invention afterwards. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for further inventive effort.

If an inventor derived the patented invention from someone else, then the claims covering the invention are invalid.

Audible Magic contends that the claims of the patents-in-suit are invalid because the inventors on those patents derived their inventions from the prior inventions of the Audible Magic engineers.[14]

## 7.3.    Anticipation

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical product or process has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

---

[14] 35 U.S.C. § 102(f); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993)

Audible Magic contends that the claims of the patents-in-suit are invalid because the claimed inventions are anticipated. Audible Magic must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

You must be left with a clear conviction that the claims are invalid, that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention. Anticipation must be determined on a claim-by-claim basis. In order to prove anticipation based on prior use in this case, Audible Magic is required to present additional evidence, such as documents, computer code and tangible evidence, beyond the testimony of interested witnesses. Thus, you must evaluate all pertinent evidence, including documents, computer code, tangible evidence and testimony, and make a sound determination that the evidence credibly establishes prior use.

Here is a list of ways that Audible Magic can show that a patent claim was not new:

(1) An invention is not new if it was previously conceived of in the United States by another inventor who did not abandon, suppress, or conceal it. The prior invention must have been conceived of before September 7, 2000 and diligently reduced to practice thereafter. Evidence of prior invention may include documents, computer code, tangible evidence and testimony of the prior inventors or other parties; or

(2) An invention is not new if it was known to or used by others in the United States before September 7, 2000. An invention is known when the information about it was reasonably accessible to the public on that date; or

(3) An invention is not new if it was already patented or described in a printed publication, anywhere in the world before September 7, 2000. A description is a "printed publication" only if it was publicly accessible. An earlier patent constitutes this type of prior art if the date of issuance of the patent is before September 7, 2000. An earlier printed publication constitutes this type of prior art if the publication took place more than one year before September 7, 2000.

(4) An invention is not new if it was in public use or on sale in the United States more than one year before September 7, 2000. An earlier patent constitutes this type of prior art if the date of issuance of the patent is more than one year before September 7, 2000. A printed publication constitutes this type of prior art if the publication took place more than one year before September 7, 2000.

(5) An invention is not new if it was described in a patent by another inventor that was filed in the United States before September 7, 2000.

**8.     Obviousness**

21

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.

Audible Magic may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the time of the invention in the fields of content recognition, signal processing, image processing, biometric identification, or a related field.[15]

In determining whether a claimed invention is obvious, you must consider (a) the level of ordinary skill in the field that someone would have had at the time the invention was made, (b) the scope and content of the prior art, (c) and any differences between the prior art and the claimed invention.

In considering whether a claimed invention is obvious, you may find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim of each patent separately. Do not use hindsight, i.e., you are to consider only what was known at the time of the invention, September 7, 2000.

In making these assessments, you should also take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

---

[15] Claim Construction Order, Civil Action 6:12-cv-00499-MHS-CMC, Dkt. 1831 at pp. 8-9.

d.   Whether others invented the invention at roughly the same time;

e.   Whether others copied the invention;

f.   Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.   Whether the invention achieved unexpected results;

h.   Whether others in the field praised the invention;

i.   Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.   Whether others sought or obtained rights to the patent from the patent holder; and

k.   Whether the inventor proceeded contrary to accepted wisdom in the field.

## 8.1.   Level of Ordinary Skill

The person of ordinary skill in the art would have at least a Bachelor's degree in electrical engineering, computer science, or equivalent degree, with a background and at least two years' experience in signal processing, image processing, biometric identification, or a related field.[16]

## 8.2.   Scope and Content of the Prior Art

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle. When a party attacking the validity of a patent relies on prior art that was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job.

## 8.3.   Any Differences Between The Prior Art And The Claimed Invention

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

## 9.   Written Description Requirement

---

[16] Claim Construction Order, Civil Action 6:12-cv-00499-MHS-CMC, Dkt. 1831 at pp. 8-9.

The patent law contains certain requirements for the part of the patent called the specification. Audible Magic contends that the claims of the patents-in-suit are invalid because the specification of the patents-in-suit does not contain an adequate written description of the invention. To succeed, Audible Magic must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.

A patent must contain a written description of the product claimed in the patent. The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used.

In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

If you find that one or more of the claims challenged by Audible Magic lacked an adequate written description, you must find each such claim invalid.

**10.    Enablement**

The patent law contains certain requirements for the part of the patent called the specification. Audible Magic contends that the claims of the patents-in-suit are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, Audible Magic must show by clear and convincing evidence that the patents-in-suit do not contain a sufficiently full and clear description of the claimed invention.

To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;
(2) how routine any necessary experimentation is in the field of signal processing;
(3) whether the patent discloses specific working examples of the claimed invention;
(4) the amount of guidance presented in the patent;
(5) the nature and predictability of the field of signal processing;
(6) the level of ordinary skill in the field of signal processing; and
(7) the scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

If you find that one or more of these claims did not comply with the enablement requirement, you must find each such claim invalid.

## 11.    Express Or Implied Duty Of Confidence

Audible Magic contends that some information about the inventions of the Audible Magic engineers was shared by the Audible Magic engineers with Mr. Moskowitz and Blue Spike, under an express or implied duty of confidence, prior to Blue Spike filing for the patents-in-suit.

A confidential relationship may arise where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one.[17]  An express or implied duty of confidence may be implied from the conduct of parties during negotiations of an agreement or other interactions.[18] Whether there is an express or implied duty of confidence between parties is determined by considering the nature of the relationship and the surrounding

---

[17] *MacDonald v. Follett*, 180 S.W.2d 334, 337-38 (Tex.1944); *Garcia v. Fabela*, 673 S.W.2d 933, 938 (Tex. App. 1984)
[18] *Hyde Corp. v. Huffines*, 158 Tex. 566, 586-588 (Tex. 1958).

facts, taken as a whole.[19]

Confidential ideas and information about technology or which are contained in a patent application that has not yet issued as a patent and which are shared with another, may be the subject of such an express or implied duty of confidence.[20]

## 12.     Unjust Enrichment Under Texas Law

Audible Magic contends that, without authorization, Mr. Moskowitz and Blue Spike used and derived the patents-in-suit from information about the inventions of the Audible Magic's engineers, which Audible Magic contends was shared Mr. Moskowitz and Blue Spike by the Audible Magic engineers under an express or implied duty of confidence.  Audible Magic contends that Mr. Moskowitz's and Blue Spike's use of this information in this way constitutes an unjust enrichment.

A claim for unjust enrichment requires a showing that another party obtained a benefit by fraud, duress, or the taking of undue advantage, or that the party wrongfully secured or passively received a benefit which it would be unconscionable to retain.[21]

Audible Magic must show that Mr. Moskowitz or Blue Spike received information about the inventions of the Audible Magic engineers, under an express or implied duty of confidence, prior to Blue Spike filing for the patents-in-suit.

Audible Magic must show that the information received by Mr. Moskowitz or Blue Spike had value.

Audible Magic must show that Mr. Moskowitz or Blue Spike used and derived the patents-in-suit from information about the inventions of the Audible Magic engineers, without authorization and in breach of the duty of confidence, and in a manner that was carried out by fraud, duress, or taking of undue advantage, and that in doing so Mr. Moskowitz or Blue Spike secured or received a benefit which it would be unconscionable to retain.

## 13.     Inequitable Conduct

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office. This is important because the PTO has limited resources.

When a person involved in the prosecution of an application fails to supply material information or supplies false or misleading information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct." When

---

[19] *Phillips v. Frey*, 20 F.3d 623, 631 (5th Cir. 1994)
[20] *Hyde Corp. v. Huffines*, 158 Tex. 566, 586-588 (Tex. 1958).
[21] *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Douglass v. Beakley*, 900 F.Supp.2d 736, 752 (N.D. Tex. 2012); *Nueces County Texas v. Merscorp Holdings, Inc.*, 2013 WL 3353948 (S.D. Tex. 2013); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex.App. 2007); *Newington Ltd. v. Forrester*, 2008 WL 4908200, *4 (N.D. Tex. 2008); *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306-08 (Fed. Cir. 2003)

inequitable conduct occurs during the examination of an application, any patent that issues directly or indirectly from that application is unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is by clear and convincing evidence. Audible Magic must prove by clear and convincing evidence both that a person meaningfully involved in the prosecution of the patents-in-suit withheld material information or submitted materially false or misleading information or statements to the PTO during the examination of the patents-in-suit, and that the person did so with an intent to deceive the Examiner into issuing the patents-in-suit.

I will now explain to you what "material information" and "intent to deceive" mean.[22]

## 13.1.  Material Information

Information that was withheld from the PTO is material if the PTO would not have allowed the claim had it been aware of the withheld information. This is sometimes referred to as "but-for" materiality – that is, but-for the withheld material, the PTO would not have allowed the claim. A false or misleading statement is material when it convinces the PTO to allow a claim that it would not have allowed if the statement had not been made. You may also find that affirmative, egregious misconduct is material. An example of affirmative, egregious misconduct is the filing of an unmistakably false affidavit. You may only find information, statements, or misconduct to be material if there is clear and convincing evidence that they are material.[23]

## 13.2.  Intent to Deceive

In order for inequitable conduct to have occurred, Audible Magic must establish that any failure to disclose material information, or false or misleading statements, were done with an intent to deceive the Examiner. If the failure to disclose material information or false or misleading statements occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct. Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct. However, an intent to deceive may be inferred only where it is the single most reasonable inference that can be drawn from the evidence. In other words, if it could be reasonable to conclude that the failure to disclose material information or false or misleading statements was an honest mistake or oversight, intent to deceive cannot be found.[24]

## 13.3.  Conclusion of Inequitable Conduct

---

[22] *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc)
[23] *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc)
[24] *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc)

Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be clear and convincing evidence that establishes materiality and there must be clear and convincing evidence that establishes an intent to deceive. If clear and convincing evidence of either, or both, is missing, there can be no inequitable conduct. If you find, however, that Audible Magic has proved by clear and convincing evidence that a failure to disclose material information or false or misleading statements and, further, that these acts or omissions were done with an intent to deceive the Examiner, you must then determine whether the evidence clearly and convincingly establishes that Mr. Moskowitz or Blue Spike committed inequitable conduct and the patent(s) should in fairness be declared unenforceable.[25]

## 14.   Lanham Act

Audible Magic contends that Mr. Moskowitz and Blue Spike made false or misleading statements about their technology and product, and that such statements violate the Lanham Act.

A violation for false advertising under the Lanham Act has occurred if:

(1) Mr. Moskowitz or Blue Spike has made false or misleading statements of fact in a commercial advertisement concerning its own technology or product or the technology or product of another;

(2) the statements had the capacity to deceive a substantial portion of the intended audience or actually deceived;

(3) the statements are material in that they will likely influence the deceived audience's purchasing or other economic decisions;

(4) the statements were introduced into interstate commerce; and

(5) Audible Magic is likely to be or has been injured as a result of the statements at issue.

With respect to the first element, the statements at issue must be a fact. That is, the statements must be specific and measurable, capable of being proved false or of being reasonably interpreted as a statement of objective fact. Audible Magic must prove that the statement is either literally false, or that if it is not literally false, it is misleading. If the statement is shown to be literally false, Audible Magic need not produce evidence on the issue of the impact the statements had on consumers (i.e., elements (2) and (3)). But if the statements at issue are misleading, Audible Magic must present evidence of actual deception (element (2)) and materiality (element (3)).

A statement is "material" if it is likely to influence the purchasing decision of consumers to which they were directed.

"Commercial advertisement" means commercial speech by a party for the purpose of influencing consumers to buy its goods or services. The representations need not be made in a

---

[25] *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc)

classical advertising campaign but may consist instead of more informed types of promotion disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion with that industry.

Introduction of a statement into "interstate commerce" is where the statement is disseminated in interstate commerce or has an impact on interstate commerce, for example through internet advertising.[26]

## 15.    Unfair Competition Under Texas Law

Audible Magic contends that Mr. Moskowitz and Blue Spike derived the patents-in-suit from the ideas and inventions of the Audible Magic engineers, and that Mr. Moskowitz and Blue Spike made false or misleading statements about their technology and product and that such acts constitute unfair competition.

"Unfair competition" is a form of unlawful business injury. While the law protects and encourages competition between businesses, that competition must be fair and must not run contrary to accepted business ethics. It is legitimate and does not constitute unfair competition for a person or firm to appropriate to itself all the customers it can obtain; even to the extent of driving its competitor out of business provided the means used to do so do not contravene any law or violate definite legal rights of such competitor. "Unfair competition" means practices that are contrary to "honest dealings." Unfair competition may manifest itself in numerous acts or courses of conduct. The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial and commercial matters. The tort of "unfair competition" must be premised on a finding of some other independent substantive tort, breach of contract or illegal conduct.[27]

To show unfair competition relating to the alleged use of the ideas and inventions of the Audible Magic engineers, Audible Magic must show that Mr. Moskowitz or Blue Spike received information about the inventions of the Audible Magic engineers, under an express or implied duty of confidence, prior to Blue Spike filing for the patents-in-suit.  Audible Magic must show that the information received by Mr. Moskowitz or Blue Spike had value. Audible Magic must show that Mr. Moskowitz or Blue Spike used and derived the patents-in-suit from information about the inventions of the Audible Magic engineers, without authorization and in breach of the duty of confidence.

To show unfair competition relating to the alleged false or misleading statements about Mr. Moskowitz's and Blue Spike's technology and product, Audible Magic must show

1)   Mr. Moskowitz or Blue Spike has made false or misleading statements of fact concerning its own technology or product or the technology or product of another;

---

[26] 15 U.S.C. § 1125(a); *Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 495 (5th Cir. 2000); *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001); *Amway Corp. v. BHIP Global, Inc.*, 2013 U.S. Dist. LEXIS 75393, 14-16 (E.D. Tex. May 29, 2013); *S & H Indus. v. Selander*, 932 F. Supp. 2d 754, 763 (N.D. Tex. 2013)

[27] *Taylor Pubs. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir 2000)

2) the statements had the capacity to deceive a substantial portion of the intended audience or actually deceived;

3) the statements are material in that they will likely influence the deceived audience's purchasing or other economic decisions;

4) the statements were introduced into interstate commerce; and

5) Audible Magic is likely to be or has been injured as a result of the statements at issue.[28]

## 16.    Lanham Act – Willfulness

If you determine that Mr. Moskowitz or Blue Spike made any false or misleading statements that violate the Lanham Act, you must also determine whether such false or misleading statements were willful, wanton and calculated to deceive, or were undertaken in bad faith.  In making this determination you may consider all of the facts and circumstances.[29]

## 17.    Damages – Burden of Proof

Where the parties dispute a matter concerning damages, it is the party claiming damage's burden to prove by a preponderance of the evidence that its version is correct. The party claiming damages must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, the party claiming damages is not entitled to damages that are remote or speculative. In other words, you should award only those damages that the party claiming damages establishes that it more likely than not suffered.[30]

## 18.    Damages For Derivation Of Patents From Ideas Of Audible Magic Engineers (Derivation and/or Unjust Enrichment and/or Unfair Competition)

If you find that Mr. Moskowitz or Blue Spike derived any part of the inventions claimed in the patents-in-suit from the ideas and inventions of Audible Magic engineers, Erling Wold, Thom Blum, Doug Keislar or Jim Wheaton, then Audible Magic is entitled to damages adequate to compensate it for the taking of its property and for the unjust benefit received by Mr. Moskowitz or Blue Spike.

As the measure of damages, you may award an amount which would prevent Mr. Moskowitz or Blue Spike from enriching themselves through wrongful acts, including awarding to Audible Magic the profits and benefits received from Mr. Moskowitz's or Blue Spike's monetization of the patents. For example, Mr. Moskowitz and Blue Spike may be required to pay

---

[28] *Wellpath Solutions, Inc. v. Wellpath Energy Servs, LLC*, 2013 WL 1314423, at *4 (E.D. Tex. 2013); *Axxiom Mfg., Inc. v. McCoy Inves., Inc.*, 2010 WL 2545584, at *7 (S.D. Tex. 2010); *Healthpoint, Ltd. v. Allen Pharm., LLC*, 2008 WL 728333, at *3 (W.D. Tex. 2008).

[29] *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 402 (5th Cir. 2008).

[30]  *United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 965-966 (5th Cir. 1998) (damages generally); Fifth Circuit Pattern Jury Instructions 15.2 (Compensatory Damages); *see also* Model Patent Jury Instructions, 6.2 (Damages – Burden of Proof)

to Audible Magic some or all of the amounts received from licensing the patents-in-suit, or from settlements of litigation where they asserted the patents-in-suit. The purpose of this measure of damages is to prevent a wrongdoer from enriching themselves with ill-gotten profits.

If you find that Audible Magic engineers Erling Wold, Thom Blum, Doug Keislar or Jim Wheaton were co-inventors of any part of the inventions claimed in the patents-in-suit, then they own an undivided interest in the entire patent to which they made the contribution, no matter what their respective contributions and may claim the entirety of profits and benefits received by Mr. Moskowitz and Blue Spike from their monetization of that property.[31]

## 19.    Unfair Competition – Exemplary Damages

If you determine that Mr. Moskowitz or Blue Spike engaged in any act of unfair competition that involved an act of fraud, malice or gross negligence, you must determine an amount of punitive or "exemplary" damages, sometimes called "punitive" damages. "Exemplary damages" or "punitive damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

"Malice" means a specific intent by Mr. Moskowitz, or Blue Spike to cause substantial injury or harm to Audible Magic.[32]

"Fraud" occurs when:   (1) a party makes a material misrepresentation, (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, (3) the misrepresentation is made with the intention that it should be acted on by the other party, and (4) the other party relies on the misrepresentation and thereby suffers injury.[33]

"Fraud" by non-disclosure occurs when: (1) a party failed to disclose facts to another party; (2) the party failing to disclose the facts had a duty to disclose those facts; (3) the facts were material; (4) the party failing to disclose the facts knew the other party was ignorant of the facts and the other party did not have an equal opportunity to discover the facts; (5) the party failing to disclose the facts was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the party who failed to do so intended to induce the other party to take some action or refrain from acting; (7) the other party relied on the nondisclosure by the party who failed to do so; and (8) the other party was injured as a result of acting without that knowledge.[34]

"Gross negligence" means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with

---

[31] *See Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1465-1466 (Fed. Cir. 1998); 35 U.S.C. §§ 116, 261; *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 216 F. Supp. 2d 1188 (D. Colo. 2002), *aff'd* 342 F.3d 1298 (Fed. Cir. 2003); *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 413 (5th Cir. 2007) (discussing disgorgement remedy under Texas law); *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) (purpose of disgorgement remedy)

[32] Tex. Civ. Prac. & Rem. Code § 41.001(7)

[33] *Stone v. Lawyers Title Insurance*, 554 S.W.2d 183, 185 (Tex. 1977)

[34] *Reservoir Syst., Inc. v. TGS–NOPEC Geophysical Co., L.P.*, 335 S.W.3d 297, 306 (Tex.App. 2010)

31

conscious indifference to the rights, safety, or welfare of others.[35]

You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages must be unanimous.[36]

## 20.    Instructions for Deliberations

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, or where they are located, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during trial. After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.

---

[35] Tex. Civ. Prac. & Rem. Code § 41.001(11)

[36] *Sunshine Kids Found. v. Sunshine Kids Juvenile Prods.*, 2009 U.S. Dist. LEXIS 117986, *46-47 (S.D. Tex. 2009) (exemplary damages for state law claims, such as common law unfair competition or false advertising, awarded where clear and convincing evidence showing of fraud, malice or gross negligence); Tex. Civ. Prac. & Rem. Code § 41.001, 41.003.

21.     **Verdict Form**

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. Answer each question on the verdict form from the facts as you find them and answer them in order.

Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous. In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have offered them.

## APPENDIX A – GLOSSARY OF PATENT TERMS

**Anticipation**: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Application** – The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the Patent Office or USPTO).

**Claims –** The numbered sentences appearing at the end of the patent that define the invention. Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

**Elements** – The required parts or steps of a patent claim.

**License** – Permission to use or make the patented invention, or perform any of the other exclusive rights granted by the patent, which may be granted by a party who owns a patent (or a prior licensee) in exchange for a fee called a "royalty" or other types of payment.

**Limitation** – A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness** – One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the earlier of the filing date of the patent application or the date of invention.

**Office action –** A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Prior art –** Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available, such as trade skills, trade practices, and the like.

**Prosecution history** – The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Royalty –** A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification** – The specification is a required part of a patent. It includes the

information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings (if any). In the specification, the inventor must provide a description telling what the invention is, how it works, and how to make and use the full scope of the invention so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing the application to be the best way of making the invention.

**APPENDIX B – COURT'S CONSTRUCTION OF PATENT CLAIM TERMS**

**Court's Claim Construction of United States Patent Nos.**
**7,346,472, 7,949,494, 8,214,175, and 7,660,700**

| Agreed Claim Term | Agreed Construction |
|---|---|
| "hashed abstract" | "data that results from performing a Hash on an Abstract" |
| "perceptible characteristic" | "characteristic perceived by a person" |
| "cognitive characteristic" | "characteristic understood by a person" |
| "subjective characteristic" | "characteristic perceived differently by different people" |
| "perceptual quality" | "quality perceived by a person" |
| "cognitive feature" | "a feature that is understood by a person" |
| "cryptographic protocol" | "procedure for transforming data to secure it and enhance its uniqueness and identification" |
| "hash" | "mathematical transform that maps a bit string of arbitrary length to a fixed length bit string to achieve uniqueness" |
| "reference database" | "a database containing abstracts of reference signals" |
| "recognizable characteristic" | "characteristic visually or aurally perceived by a person" |
| **Disputed Claim Term** | **Court's Construction** |
| "abstract" | "a data-reduced representation of a signal that retains a perceptual relationship with the signal and differentiates the data-reduced representation from other data-reduced representations" |
| "match"/"matches"/"matched"/"matching" | "match" – "share selected criteria" "matches" – "shares selected criteria with" "matched" – "shared selected criteria with" "matching" – "sharing selected criteria" |
| "reference signal" | "original or first signal" |
| "query signal" | "second signal" |
| "a comparing device that compares/ a comparing device . . . that compares/ a comparing device for comparing" | plain and ordinary meaning |
| "a device configured to determine if a query signal matches any one plurality of reference signals" | plain and ordinary meaning |
| "versions of [a/the/said/"that one of said plurality of"] reference signal[s]" | plain and ordinary meaning |
| "similar to" | "retaining a perceptual relationship" |

| | |
|---|---|
| "creating at least one counter corresponding to one of said at least one reference signal" / "creating at least one counter corresponding to one of said plurality of reference signals" | plain and ordinary meaning |
| "incrementing the counter . . . when a match is found," | plain and ordinary meaning |
| "first digital reference signal abstract match recorder" | plain and ordinary meaning |
| "selectable criteria" | "criteria that are programmable" |
| "distributing at least one signal based on the comparison step" | |
| "related to" | "shares selected criteria with" |
| "index of relatedness" | "an index that provides a degree of differentiation" |