# EXHIBIT L

## <u>Preliminary Jury Instructions</u>

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

### A.  The Nature of the Action and the Parties

This is a patent case. The patents involved in this case relate to analyzing and matching digital signals. Specifically, the patents teach how a digital signal, such as a song or video, can be translated into a smaller representation. A representation corresponds to key characteristics of the original digital file and can be compared against other representations to determine whether signals are the same, similar, and so on. The patents refer to these digital signal representations as "abstracts."

During the trial, the parties will offer testimony to familiarize you with this technology. For your convenience, the parties have also prepared a Glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

There are two parties in this case: Blue Spike, LLC and Audible Magic Corporation.

Blue Spike, LLC own four patents at issue in this case. These patents are identified by the Patent Office numbers: 7,346,472; 7,660,700, 7,949,494; and 8,214,175. Patents also may be referred to by their last three numbers. For instance, U.S. Patent 7,346,472 may be referred to as "the '472 Patent" and so on. Together Blue Spike's four patents may be referred to as the "Patents-in-Suit."

### i.      United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO" or "USPTO"). A patent gives the owner the right to exclude others from making, using, offering to sell, or selling products that incorporate the technology taught in the patent. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO. The application includes what is referred to as a "specification," which contains a written description of the invention, describes how the invention works, and describes how to make and use the invention so as to enable others skilled in the art to do so. The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims is to particularly point out what the applicant regards as the invention and to define the scope of the patent owner's exclusive rights.

After an application for a patent is filed with the PTO, the application is reviewed by a trained PTO Patent Examiner. The Patent Examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner searches

1

records available to the PTO for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.

When the parties are done presenting evidence, I will give you more specific instructions as to what constitutes prior art in this case. Generally, prior art is previously existing technical information and knowledge against which the Patent Examiners determine whether or not the claims in the application are patentable. The Patent Examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art.

Following the prior art search and examination of the application, the Patent Examiner advises the applicant in writing what the patent examiner has found and whether any claim is patentable (in other words, "allowed"). This writing from the Patent Examiner is called an "office action." More often than not, the initial Office Action by the Patent Examiner rejects the claims. The Applicant then responds to the Office Action and sometimes changes the claims or submits new claims. This process may go back and forth between the Patent Examiner and the Applicant for several months or even years until the Patent Examiner is satisfied that the Application and claims are patentable. At that time, the PTO "issues" or "grants" a patent with the allowed claims.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history."

In this case, it is ultimately for you to decide, based on my instructions to you, whether the accused infringer has shown that the patent claims are invalid.

### ii.    Patent Litigation

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell a product incorporating what is taught in the patent, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to address the alleged infringing acts and to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. A party seeking damages must also prove the amount of damages he or she is entitled to.

A patent is presumed to be valid.  In other words, it is presumed to have been properly granted.  But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid.  One example of a way in which the presumption may be overcome is if the PTO has not considered, for whatever reason, invalidating prior art that is presented to you.  Someone accused of infringing a patent may deny that they infringe and/or prove that the asserted claims of the patent are invalid. If the opposing party challenges the validity of the patent, you must decide based on the instructions I will give you, whether the challenger has overcome the presumption of validity with proof that the asserted claims of the patent are invalid. The party challenging validity must prove invalidity by clear and convincing evidence. I will discuss more of this topic later.

I will now briefly explain the parties' basic contentions in more detail.

## A.     Contentions of the Parties

Audible Magic contends that Blue Spike's patents are invalid. Even though the PTO examiner has already allowed the claims of the Patents-in-Suit, you, the jury, must decide whether each claim that is challenged by Audible Magic is invalid. Remember that patent claims are presumed to be valid. Therefore, Audible Magic must prove invalidity of each challenged claim by clear and convincing evidence in order to overcome the presumption of validity. Clear and convincing evidence means that it is highly probable that the fact is true. This standard is different than the standard that applies to other issues in this case. Other issues may be found under a lower standard, such as by a preponderance of the evidence. You may think of this "preponderance of the evidence" as slightly greater than 50%. This is different that the criminal law standard of "beyond a reasonable doubt." You may think of this "beyond a reasonable doubt" standard as approaching certainty, without reasonable doubt. The "clear and convincing" standard is between the two.

## B.     Trial Procedure

We are about to commence the opening statements in the case. Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors.

We are now about to begin the second phase, the Opening Statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The Opening Statements are not evidence for you to consider in your deliberations. You must make your decision based on the evidence and not the lawyers' statements and arguments.

In the third phase, the evidence will be presented to you. Witnesses will take the witness stand and documents will be offered and admitted into evidence. Audible Magic goes first in calling witnesses to the witness stand. These witnesses will be questioned by Audible Magic's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After Audible Magic has presented its witnesses, Blue Spike will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by having the individual testify live for you, by reading from their deposition transcript, or by playing a videotape of the witness's deposition testimony. All three are acceptable forms of testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all of the evidence relating to an issue may not be presented all at one time but, rather, may be presented at different times during the trial. You need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

In the fourth phase, the lawyers will again have an opportunity to talk to you in what is called "Closing Argument." As with the Opening Statements, what the lawyers say in the Closing Arguments is not evidence for you to consider in your deliberations.

In the fifth phase, I will read you the final jury instructions. I will instruct you on the law that you must apply in this case. I have already explained to you a little bit about the law. In the fifth phase, I will explain the law to you in more detail.

Finally, the sixth phase is the time for you to deliberate and reach a verdict. You will evaluate the evidence, discuss the evidence among yourselves, and make a decision in this case. We both have a job to do. You will decide the facts, and I will apply the law. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language, even if you do not agree with me. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be on those facts that you must decide.

# I.     Glossary of Patent Terms

**Application** – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences or paragraphs appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**License** – Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office action** – Communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

**Ordinary skill in the art** – The level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent Examiners** – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art (pre-AIA)** – Knowledge that is available to the public either prior to the invention by the applicant or more than one year prior to the filing date of the application.

**Prior Art (Post-AIA)** – Knowledge that is publicly available before the effective filing date of the patent application.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history."

**References** – Any item of prior art used to determine patentability.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor describes the invention, how it works, and how to make and use it.

## II.      Post-Trial Instructions

### 1. Summary of Patent Issues

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following [three] main issues:

1.  Whether Audible Magic has proved that Blue Spike's Patents-in-Suit are invalid because each element of each asserted claim is either anticipated or rendered obvious by the prior art.

2.  Whether Audible Magic has proved that Blue Spike's Patents-in-Suit are invalid because they fail to satisfy the statutory requirements of enablement and written description.

3.  Whether Audible Magic has proved that Scott Moskowitz and Blue Spike, Inc. committed inequitable conduct, withholding, concealing, or mischaracterizing, or failing to disclose to the PTO material prior art, thus rendering Blue Spike's Patents-in-Suit unenforceable.

4.  Whether Audible Magic has proved that Blue Spike was unjustly enriched due to unfair competition with Muscle Fish, Audible Magic's predecessor, by obtaining information from Muscle Fish without permission, that the information was exclusively owned by Muscle Fish, that all money from the sale or use of that information deserve to go to Muscle Fish, that Blue Spike received money from that information, that Blue Spike received that money because of that information, that Blue Spike retained the money, that Blue Spike was not entitled to the money, and that Blue Spike's retention of that money would be unjust under the circumstances.

5.  Whether Audible Magic has proved that Blue Spike made material false and misleading statements in commerce that constitute false advertising and misleading representations, that these statements deceived Audible Magic's audience, that these statements were likely to influence the purchasing decisions of consumers, and that Audible Magic is likely to lose significant sales due to these statements.

6.  What amount of damages, if any, Audible Magic has proved.

## 2.      Claim Construction

### 2.0      Claim Construction – Generally

Before you decide whether the issues in this case, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are:

- '472 patent Claims 1, 3, 4, 8, 11;

- '700 Patent, Claims 1, 6, 7, 8, 10, 11, 40, 49, 50, 51;

- '494 Patent, Claims 1, 4, 5, 11, 17, 18, 20, 21, 22, 29; and

- '175 Patent, Claims 8, 11, 12, 13, 15, 16, 17.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

## 2.1    Claim Construction for the Case

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

The following are claim terms that the parties agree on:

- **"hashed abstract"** is defined as "data that results from performing a Hash on an Abstract."

- **"perceptible characteristic"** is defined as "characteristic perceived by a person"

- **"cognitive characteristic"** is defined as "characteristic understood by a person"

- **"subjective characteristic"** is defined as "characteristic perceived differently by different people"

- **"perceptual quality"** is defined as "quality perceived by a person"

- **"cognitive feature"** is defined as "a feature that is understood by a person"

- **"cryptographic protocol"** is defined as "procedure for transforming data to secure it and enhance its uniqueness and identification"

- **"hash"** is defined as "a mathematical transform that maps a bit string of arbitrary length to a fixed length bit string to achieve uniqueness"

- "**reference database**" is defined as "a database containing abstracts of reference signals"

- **"recognizable characteristic"** is defined as "characteristic visually or aurally perceived by a person"

These are the terms decided by the court:

- **"abstract"** is defined as "a data-reduced representation of a signal that retains a perceptual relationship with the signal and differentiates the data-reduced representation from other data-reduced representations"

- **"match / matches / matched / matching"** is defined as "share selected criteria / shares selected criteria with / shared selected criteria with / and sharing selected criteria"

- **"reference signal"** is defined as "original or first signal"

- **"query signal"** is defined as "second signal"

- **"similar to"** is defined as "retaining a perceptual relationship"

- **"selectable criteria"** is defined as "criteria that are programmable"

- **"related to"** is defined as "shares selected criteria with"

- **"index of relatedness"** is defined as "an index that provides a degree of differentiation"

All other claim terms are given their plain and ordinary meaning.

### 3.    Summary of Invalidity Defense

Audible Magic contends that the asserted claims of the Patents-in-Suit are invalid. Audible Magic must prove that it is highly probable that each asserted claim is invalid. Individual claims of an issued patent may be found to be invalid. Thus, you must determine whether each of Blue Spike's claims is invalid.

Audible Magic contends the following patent claims are invalid:

- '472 patent Claims 1, 3, 4, 8, 11;

- '700 Patent, Claims 1, 6, 7, 8, 10, 11, 40, 49, 50, 51;

- '494 Patent, Claims 1, 4, 5, 11, 17, 18, 20, 21, 22, 29; and

- '175 Patent, Claims 8, 11, 12, 13, 15, 16, 17.

### 4.    Prior Art

### 4.0    Prior Art Defined

Prior art includes any of the following items received into evidence during trial:

1. any product that was publicly known or used by others in the United States before the patented invention was made;

2. patents that issued more than one year before the filing date of the patent, or before the invention was made;

3. publications having a date more than one year before the filing date of the patent, or before the invention was made;

4. any product that was in public use or on sale in the United States more than one year before the patent was filed;

5. any product that was made by anyone before the named inventors created the patented where the product was not abandoned, suppressed, or concealed.

Exceptions to Prior Art:

1. A disclosure made 1 year or less before the effective filing date of the current claims shall not be prior art if:

    A. the disclosure was made by the inventor or joint inventor named in the current patent or by another person who obtained the subject matter disclosed directly or indirectly from such inventor; or

    B. the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or another person who obtained the subject matter disclosed directly or indirectly from such inventor.

2. A disclosure shall not be prior art if:

    A. the subject matter disclosed was obtained directly or indirectly from the inventor or joint inventor named in the Patents-in-Suit;

    B. the subject matter disclosed had, before the effective filing date of the current patent, been publicly disclosed by the inventor or joint inventor named in the Patents-in-Suit or another person who obtained the subject matter disclosed directly or indirectly from such inventor; or

    C. the subject matter disclosed and the claimed invention, not later than the effective filing date of the Patents-in-Suit, were owned by the same person or subject to an obligation of assignment to the same person.

## 4.1    Prior Art Considered or Not Considered by the USPTO

Regardless whether particular prior art references was/were considered by the USPTO Examiner during the prosecution of the applications which matured into the Patents-in-Suit,

8

Audible Magic must prove that the challenged claims are invalid. Audible Magic must do so by clear and convincing evidence. This burden of proof on Audible Magic never changes regardless whether or not the Examiner considered the reference.

### 4.2    Invalidity of Independent and Dependent Claims

There are two different types of claims in the patent. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. For example, claim 40 of the '700 patent is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, claim 49 of the '700 patent is a dependent claim that refers to claim 40. A dependent claim includes all of the elements recited in the dependent claim, as well as all of the elements of claim 40 the claim to which it refers.

This is claim 40 of the '700 patent:

> A process for analyzing and identifying at least one signal,
>        comprising:
> receiving at least one references signal to be identified,
> creating an abstract of each reference signal received
>        based on perceptual characteristics representative
>        of parameters to differentiate between versions of
>        the reference signal;
> storing abstracts of each reference signal received in a
>        database;
> receiving at least one query signal to be identified,
> creating an abstract of the received query signal based on
>        the parameters; and
> comparing an abstract of said received query signal to the
>        abstracts stored in the database to determine if the
>        abstract of said received query signal is related to
>        any of the stored abstracts.

As you can see, claim 40 discusses creating abstracts, or representations, of a digital signal that can differentiate between versions of that signal, and then comparing those abstracts to determine if the digital signals are related.

This is claim 49 of the '700 patent:

> The process of claim 40, wherein the process further
>        comprises applying a cryptographic protocol to
>        the abstract of said reference signal, said query
>        signal, or both said reference signal and said
>        query signal.

9

Claim 49 is dependent on claim 40, performing all the steps of claim 40 such as creating abstracts of digital signals and comparing them, but also applying cryptography, such as encrypting the abstract after it is created.

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. Rather, you must consider the validity of each claim, separately. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid. The dependent claim includes all of the elements of the independent claim from which it depends.

### 4.3 Person of Ordinary Skill in the Art

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of September 7, 2000.

You must determine the level of ordinary skill in the field of the invention. The higher the level of ordinary skill, the easier it may be to establish that an invention would have been obvious. Persons having a greater level of education, training, or experience in the field will more readily appreciate technical details that may be more challenging for persons having a lower level of skill. On the other hand, persons having a lower level of skill may not perceive as obvious technical details that would be apparent to persons having greater skill. In order to determine the obviousness of the invention you will be asked to determine what the ordinary level of skill was in the field of the invention. Regardless whether you decide to articulate in your verdict what you believe was the level of ordinary skill in the field of the invention, you must consider and assess this factor before reaching your conclusion in this case.

35 U.S.C. § 103 (pre-AIA).

### 5. Anticipation

### 5.0 Anticipation

If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. Simply put, the invention must be new to be entitled to patent protection under the U.S. patent laws. To prove anticipation, Audible Magic must prove by clear and convincing evidence, namely, evidence that leaves you with a clear conviction, that the claimed invention is not new.

In this case, Audible Magic contends that the claims of the Patents-in-Suit are anticipated by prior art. To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular art.

## 5.1    Prior Public Knowledge

Audible Magic contends that the Patents-in-Suit were anticipated because the inventions defined in the claims were publicly known by others in the United States before being invented by the inventors. All inventions, as taught by the claims of the Patents-in-Suit, were invented on September 7, 2000.

A patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before it was invented by Blue Spike.

## 5.2 Prior Public Use:

Audible Magic contends that the Patents-in-Suit were anticipated because the inventions defined in the patent claims were publicly used by others in the United States before being invented by Blue Spike in September 7, 2000.

A patent claim is invalid if more than one year before the filing date of the patent an embodiment of the claimed invention was both:

1.  accessible to the public or commercially exploited in the United States; and

2.  ready for patenting.

An invention was in public use if the claimed invention was accessible to the public or commercially exploited. Factors relevant to determining whether a use was public include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

In order to be a public use, the invention also must have been ready for patenting at the time of the alleged public use. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been: (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

## 5.3    Printed Publication:

Audible Magic contends that the Patents-in-Suit were anticipated because its inventions defined in the claim were described in a printed publication more than one year before Scott Moskowitz and Michael Berry invented the invention.

A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by Scott Moskowitz and Michael Berry. A printed publication must have been maintained in some tangible form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, internet publication, photocopies, and must have been sufficiently accessible to persons interested in the subject matter of its contents.

Information is publicly accessible if it was distributed or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it. It is not necessary for the printed publication to have been available to every member of the public. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time the inventions of the Patents-in-Suit were made, and you may consider evidence that sheds light on the knowledge such a person would have had.

### 5.4    Prior Invention:

Audible Magic contends that the Patents-in-Suit were anticipated because the inventions defined in those claims were invented by another person before Scott Moskowitz and Michael Berry invented their inventions.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee.

Audible Magic must show clear and convincing evidence *either* that before Scott Moskowitz and Michael Berry invented his invention, a third party reduced to practice a product that included all of the elements of a claim in the Patents-in-Suit or that a third party was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice. In addition, Audible Magic must show that a third party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

If the prior invention was abandoned, suppressed, or concealed, it does not anticipate the Patents-in-Suit. It is not necessary that Scott Moskowitz and Michael Berry had knowledge of that prior invention.

### 5.5    Prior Patent:

Audible Magic contends that certain claims of the Patents-in-Suit were anticipated because the invention defined in that claim was patented by a third party before being invented by Scott Moskowitz and Michael Berry. A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country before it was invented by Scott Moskowitz and Michael Berry.

## 6. Obviousness

### 6.0    Obviousness

Audible Magic contends that claims of the Patents-in-Suit are invalid because the claimed inventions are "obvious." A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

The following factors must be evaluated to determine whether Audible Magic has established that the claimed invention(s) is obvious:

1. the scope and content of the prior art relied upon by Audible Magic;

2. the difference or differences, if any, between each claim of the Patents-in-Suit that Audible Magic contends is obvious and the prior art;

3. the level of ordinary skill in the art at the time the inventions of the Patents-in-Suit were made; and

4. additional considerations, if any, that indicate that the inventions were obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Audible Magic must prove by clear and convincing evidence that the invention would have been obviousness.

I will now explain each of the four factors in more detail.

### 6.1    The First Factor: Scope and Content of the Prior Art

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes. The prior art includes the following items received into evidence during the trial:

You must determine what is the prior art that may be considered in determining whether the Patents-in-Suit is obvious. A prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.

13

### 6.2    The Second Factor: Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long-known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense. You may also consider whether the problem or need was known, the possible approaches to solving the problem or addressing the need were known and finite, and the solution was predictable through use of a known option.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious. Again, you must undertake this analysis separately for each claim that Audible Magic contends is obvious.

### 6.3    The Third Factor: Level of Ordinary Skill

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the technology industry. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

The Court has determined that the level of ordinary skill in the art is one who has at least a Bachelor's degree in electrical engineering, computer science, or equivalent degree, with a background and at least two years' experience in signal processing, image processing, biometric identification, or a related field.

### 6.4    The Fourth Factor: Other Considerations

Before deciding the issue of obviousness, you must also consider certain factors, which may help to determine whether or not the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1. Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

2. Did others try, but fail, to solve the problem solved by the claimed invention?

3. Did others copy the claimed invention?

4. Did others accept licenses under the Patents-in-Suit because of the merits of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. Answering all, or some, of these questions "no" may suggest that the claims would have been obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claims. Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether Audible Magic has proven that the claimed invention would have been obvious.

### 7.    Enablement

Audible Magic contends that the claim of the Patents-in-Suit are invalid for lack of enablement. Audible Magic bears the burden of establishing lack of enablement by the highly probable standard.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention, at the time the '472 patent application was filed, to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill to practice the claimed invention does not mean that a patent does not meet the enablement requirement. Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1. the quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques.

2.   the amount of direction or guidance disclosed in the patent;

3.   the presence or absence of working examples in the patent;

4.   the nature of the invention;

5.   the state of the prior art;

6.   the relative skill of those in the art;

7.   the predictability of the art; and

8.   the breadth of the claims.

**8.      Written Description Requirement**

Audible Magic contends that claim of the Patents-in-Suit are invalid for failure to satisfy the written description requirement. Audible Magic bears the burden of establishing lack of written description by clear and convincing evidence.

A patent must contain a written description of the product or process claimed in the patent. The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. When determining whether the specification discloses the invention, the claim must be viewed as a whole,.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the date the '472 patent application was filed, even though the claims themselves may have been changed or new claims added since that time.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. In evaluating whether the specification has provided an adequate written description, you may take into account such factors as:

1.   the nature and scope of the patent claims;

2.   the complexity, predictability, and maturity of the technology at issue;

3.   the existing knowledge in the relevant field; and

4.   the scope and content of the prior art.

16

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

If you find that Audible Magic has proved by clear and convincing evidence the Patents-in-Suit do not contain a written description for inventions in the Patents-in-Suit, then you must find that such claims are invalid.

### 9.    Unenforceability (Inequitable Conduct)

### 9.0    Inequitable Conduct – Generally

Audible Magic contends that Blue Spike may not enforce the Patents-in-Suit against Audible Magic because individuals substantively involved in the prosecution of the Patents-in-Suit engaged in inequitable conduct before the Patent and Trademark Office during prosecution of that patent.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor and good faith. This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other individual involved in a substantial way with the prosecution of the patent application. An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

 Audible Magic must prove inequitable conduct by clear and convincing evidence. To determine whether the Patents-in-Suit was obtained through inequitable conduct, you must determine:

1. whether an individual or individuals having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application; and

2. that this individual or individuals acted with the specific intent to deceive or mislead the Patent and Trademark Office.

### 9.1    Materiality

Audible Magic contends that prior art was information known to an individual having the duty of good faith and candor to the Patent and Trademark Office, and that such information was withheld from the Patent and Trademark Office during the prosecution of the Patents-in-Suit. If you find that an individual having this duty of good faith and candor withheld information when applying for the Patents-in-Suit, you must also determine whether that information was material information.

Information is material if "but for" the individual's failure to disclose the information during the prosecution, the Patent and Trademark Office would not have allowed one or more claims of the Patents-in-Suit. In other words, information is material if it is more likely than not that the Patent and Trademark Office would not have allowed one or more claims of the Patents-in-Suit if it had been aware of the withheld information. To decide whether the Patent and Trademark Office would not have allowed one or more claims if it had been aware of the

withheld information, you should use the broadest reasonable interpretation of the claim or claims under consideration and apply the "more likely than not" standard, as the Patent and Trademark Office would have done.

If you decide that the Patent and Trademark Office would not have allowed one or more claims applying this standard, then the individual's failure to disclose the information during the prosecution is material, whether or not you also find the claims invalid under the standards for finding claims invalid in this lawsuit. This does not change Audible Magic's overall burden, however, to prove its inequitable conduct defense by the highly probable standard of proof.

### 9.2    Intent to Deceive or Mislead

If you find by clear and convincing evidence that material information was withheld from or misrepresented to the Patent and Trademark Office, you must next determine whether this was done with a specific intent to deceive or mislead the Patent and Trademark Office. You may find intent to deceive or mislead the Patent and Trademark Office from direct evidence. You may also infer intent to deceive or mislead the Patent and Trademark Office from the facts and surrounding circumstances. Whether based on direct or circumstantial evidence, the evidence must leave you with a clear conviction that material information was withheld from or misrepresented to the Patent and Trademark Office in order for you to find an intent to deceive or mislead.

For example, when a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be to deceive or mislead the Patent and Trademark Office, an inference that the accused individual(s) intended to deceive the Patent and Trademark Office may be appropriate.

When the individual having a duty of good faith and candor has deliberately withheld or misrepresented known material information from the Patent and Trademark Office, you may find that he or she acted with intent to deceive or mislead the Patent and Trademark Office if and only if that is the single most reasonable inference to be drawn from the evidence. If there are multiple reasonable inferences that may be drawn, you cannot find an intent to deceive or mislead. You may not infer that the individual acted with intent to deceive or mislead based solely on the fact or facts that the information withheld was material, or even highly material, or that the individual has not provided a good faith explanation for the withholding. Nor may you infer intent solely on the basis of gross negligence or negligence in withholding material information.

For example, it is not enough that the individual knew of a reference, should have known of its materiality, and did not submit it to the Patent and Trademark Office. Instead, you need to determine whether or not the individual knew of the withheld or misrepresented information, knew the information was material, and made a deliberate and conscious decision to withhold or misrepresent the information. In determining whether there was an intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and whether that conduct occurred in good faith.

### 10. Unjust Enrichment

Audible Magic claims that Blue Spike has been unjustly enriched to Audible Magic's detriment and has the burden of proving eight essential elements:

1.  First, that all information, technology, and ideas that Blue Spike obtained from Audible Magic and its predecessor Muscle Fish was obtained without permission, express or implied;

2.  Second, that said information, technology, or ideas were exclusively owned by Audible Magic or its predecessor Muscle Fish, and were not subject to co-ownership;

3.  Third, that any and all money earned from sale or use of said information, technology, or ideas deserved to go exclusively to Audible Magic or its predecessor;

4.  Fourth, Blue Spike received money from the use of said information, technology, and ideas;

5.  Fifth, the exclusive cause of Blue Spike's receipt of money was because of the said information, technology, and ideas;

6.  Sixth, that Blue Spike retained the money;

7.  Seventh, that Blue Spike is not otherwise entitled to said money; and

8.  Eighth, retention of the money by Blue Spike would be unjust under the circumstances and require restoration.

If you find that Audible Magic has proved each of these elements, then your verdict should be for Audible Magic. If, however, Audible Magic has failed to prove any one or more of these elements, then your verdict should be for Blue Spike.

**11.  Lanham Act**

Audible Magic claims that Blue Spike has made material false and misleading statements, in commerce, that were false and misleading and harmed Audible Magic. Audible Magic has the burden of proving five essential elements:

1.  Blue Spike falsely stated that it was the first to create a certain type of technology related to the Patents-in-suit in a commercial advertisement.

2.  Blue Spike's commercial advertisement deceived or had the tendency to deceive a substantial segment of Audible Magic's audience.

3.  The deception was likely to influence the purchasing decisions of consumers.

4.  Blue Spike caused the false statement to enter interstate commerce and Blue Spike's activities have a substantial effect on Audible Magic's business.

5.  Audible Magic has been or is likely to lose significant sales due to Blue Spike's alleged false statement.

If you find that Audible Magic has proved each of these things, then you must find for Audible Magic. If, on the other hand, you find that Audible Magic has failed to prove any one of these things, then you must find for Blue Spike.

### 12.      Common Law – Unfair Competition

Audible Magic claims that Blue Spike has been unjustly enriched by unfairly competing with Audible Magic. Audible Magic has the burden of proving four essential elements:

1.   Audible Magic or its predecessor created trade secret information through extensive time, labor, skill, and money;

2.   Blue Spike used that trade secret information in competition with Audible Magic;

3.   Blue Spike did not contribute to the creation of said trade secret information; and

4.   Audible Magic suffered commercial damage as a direct result of Blue Spike using that trade secret information.

If you find that Audible Magic has proved each of these elements, then your verdict should be for Audible Magic. If, however, Audible Magic has failed to prove any one or more of these elements, then your verdict should be for Blue Spike.

### 13.      Damages

#### 10.0     Damages – Generally

Audible Magic must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely true than not. The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of Blue Spike. You will need to decide the issue of damages only if you find that one or more of the asserted claims are both not invalid and infringed.