UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | |
| *Plaintiff*, | § § | Case No. 6:15-cv-584 -RWS-CMC |
| v. | § § § | |
| AUDIBLE MAGIC CORPORATION, | § § | Jury Trial Demanded |
| *Defendant*. | § § § | |
| AUDIBLE MAGIC CORPORATION, | § § | **FILED UNDER SEAL** |
| *Counterclaim Plaintiff* | § § § | |
| v. | § § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ | § § § § | |
| *Counterclaim Defendants*. | § | |

**AUDIBLE MAGIC'S MOTIONS IN LIMINE**

1

**I.      INTRODUCTION**

Audible Magic Corp. ("Audible Magic") moves to exclude Scott Moskowitz, Blue Spike, LLC, or Blue Spike, Inc. (collectively "Blue Spike") from providing testimony, documents or opinion regarding six discrete categories of evidence, which are inappropriate or should be excluded as a matter of law or are so prejudicial if that, if mentioned in front of the jury before an evidentiary ruling can be made, the Court could not alleviate the prejudice with an appropriate instruction.  Audible Magic's motions are summarized as follows:

(1) Blue Spike should be precluded from testifying, through any witness, about alleged Blue Spike inventive activities prior to September 7, 2000, as that is the date of conception that Blue Spike stipulated to and to permit otherwise would confuse the jury.

(2) Blue Spike should be precluded from claiming over ███████ in debt of other parties not involved in the case, as the alleged debt of the parties, and should be precluded from questioning Audible Magic's estimates of Blue Spike's business expenses.

(3) Blue Spike's patent validity expert Dr. Papakonstantinou, and any other witness, should be precluded from referring to the "Null case," "intended matches" or "differentiating between versions" as a basis for claiming that the asserted patents are valid, as these arguments are not claim language-based arguments, which will confuse the jury.

(4) Blue Spike should be precluded from challenging the prior art status of Audible Magic's asserted prior art, because it has provided no expert opinions, patent disclosures or discovery disclosures contesting such facts.

(5) Blue Spike should be precluded from commenting on the residence of any attorney, party or witness.

(6) Blue Spike should be precluded from any discussion or mention, by any counsel or witness, about irrelevant personal background or attributes of any attorney or witness.

In addition, the parties have agreed to the following motions *in limine*, and agree to exclusion of the following:

(1) Neither party nor any witness shall comment on or testify about the medical conditions of any party or witness.

(2) Blue Spike shall refrain from referring to itself as "plaintiff" or referring to Audible Magic as "defendant." Rather, the parties will refer to Audible Magic as the "plaintiff" and the parties will refer to Mr. Moskowitz, Blue Spike, LLC and Blue Spike, Inc. as "defendants."

(3) Mr. Moskowitz shall refrain from testifying about the scope and meaning of the asserted patents beyond what was stated during his deposition.

(4) Blue Spike shall refrain from claiming, through testimony of any witness or otherwise, that Mr. Moskowitz resides in Texas.

## II.    ARGUMENT

### A.    Motion in Limine No. 1:  Blue Spike Should Be Precluded From Testifying About Alleged Blue Spike Inventive Activities Prior To September 7, 2000

Previously in this litigation, the parties stipulated and the Court thereafter ordered that Blue Spike's earliest date of "conception" was September 7, 2000. *See* Civil Action 6:12-cv-00499-MHS-CMC, Dkt. 1899. In its discovery responses, Blue Spike never provided any evidence of any other alleged activity regarding conception. This date was after Blue Spike was exposed to the early ideas of the Muscle Fish inventors, which were utilized in the claims and prosecution of the patents-in-suit, and from which the patents-in-suit were derived. Audible Magic is concerned that Blue Spike will now attempt to argue that it conceived of the inventions at an earlier date, both in an attempt to confuse the issue of inventorship and to improperly attempt to get behind the improper derivation from the Muscle Fish inventors' ideas and prior art. Having stipulated to the September 7, 2000 date of conception, Blue Spike must be

3

precluded from offering evidence of any earlier alleged inventive activity.

Under Fed. R. Civ. P. 36(b), any matter admitted is conclusively established. To permit Blue Spike to present theories inconsistent with its stipulation would be extremely prejudicial to Audible Magic. It would allow Blue Spike to engage in litigation by surprise, permitting Blue Spike to conceal some alleged earlier conception throughout the course of discovery, while at the same time stipulating before the Court to a date of conception after working with and exposure to the Muscle Fish inventors' early work. To allow Blue Spike to offer testimony or evidence regarding undisclosed theories in this way would be highly prejudicial and have no probative value in light of the stipulated facts. *See Bolden v. Amtrak*, 2005 U.S. Dist. LEXIS 11987, 6-7 (E.D. La. June 14, 2005) (excluding evidence that was inconsistent with, unnecessary and not probative to issue to be decided by jury, in light of the parties' stipulation); *see also Orange Shaw Lincoln Mercury v. San Bernardino*, 1992 U.S. App. LEXIS 29921, *2-3 (9th Cir. 1992) (refusing to permit party to withdraw admissions after opposing party filed motion *in limine* to preclude presentation at trial of any contradictory evidence to those admitted facts); *see also Thought, Inc. v. Oracle Corp.*, 2015 U.S. Dist. LEXIS 137113, 16-17 (N.D. Cal. Oct. 7, 2015) (striking party's belated attempt to put forward evidence of an earlier invention date, where the party had already conceded a later invention date); *Harvatek Corp. v. Cree, Inc.*, 2015 U.S. Dist. LEXIS 93388 (N.D. Cal. June 17, 2015) (same; precluding belated evidence of conception earlier than plaintiff's conceded conception date).

### B. Motion in Limine No. 2: Blue Spike Should Be Precluded From Claiming Over $6.7 Million In Debt Of Third Parties And Should Be Precluded From Challenging The Cost Estimates Of Audible Magic's Damages Expert.

Throughout the course of discovery, Audible Magic repeatedly sought discovery regarding the documentation of revenue, profits and costs, as well as formal or informal financial statements, of Mr. Moskowitz, Blue Spike, Inc. and Blue Spike, LLC, from whom Audible

4

Magic claims damages in this case. Blue Spike refused to produce it and, thus, Audible Magic had to file a motion to compel production. On September 10, 2014, the Court ordered production of financial and business information. Civil Action 6:12-cv-00499-MHS-CMC, Dkt. 1754. The documents were not forthcoming, so Audible Magic had to file a further motion to compel Blue Spike to comply with the Court's previous order. On November 19, 2014, the Court ordered that: "Blue Spike shall produce to Audible Magic all non-privileged documents responsive to Audible Magic's requests as ordered in the September 10, 2014 Order (including but not limited to ... financial documents of Blue Spike LLC, Blue Spike, Inc., and Scott Moskowitz)." Civil Action 6:12-cv-00499-MHS-CMC, Dkt. 1870.

Yet, still no financial statements were forthcoming. In a December 24, 2014 conference with the Special Master, counsel for Blue Spike represented that there was no financial documentation reflecting things such as revenue, profits or costs. Audible Magic's position was, that if there truly no financial documents for these parties (which seemed impossible to believe) that it would agree to accept a summary of financial information. Yet, still, no documents were forthcoming. It was not until January 16, 2015, on the last day of Scott Moskowitz's deposition, that Blue Spike produced a "financial summary." [Ramsey Decl., ¶ 2]

The document is exceedingly unusual. First, it appears to combine the financial information of Mr. Moskowitz, Blue Spike, LLC and Blue Spike, Inc., although from looking at the document there is simply no way to know. [Ramsey Decl., Ex. A (Ex. 33 to Moskowitz Depo.)] Second, it is labeled "███████████████████████████" which appears to be an entity associated with Mr. Moskowitz, but not party to the litigation. Third, beyond a gross line item for litigation and licensing costs, the document does not provide any granular breakdown of costs, which would permit assessment of their reasonableness and, as discussed, no underlying

5

documents were produced substantiating such costs. Fourth, the financial summary contains a single, unexplained line item describing the "███████████████████████████". The document purports to have ████████████████████████████████ ██████ (e.g. Blue Spike LLC was not formed until 2012, but this document includes "█████ ████████████████████"). Again, no underlying documentation was provided for this figure either. At his deposition, Mr. Moskowitz was unable to explain the document in any detail and did not testify about any underlying documentation, as he was "seeing it [the P&L] for the first time." [Ramsey Decl., Ex. B (Moskowitz Dep. Tr. 1502-1503)]

There can be no doubt that other documents must support the numbers detailed in this "summary." It is simply not credible for Blue Spike to argue that there are no financial documents detailing its legal and licensing fees, operating costs, and ████████████ in ███. For example, Mr. Moskowitz testified that there are "████████████████████ ████████████████████████████████████." [Ramsey Decl., Ex. B (Moskowitz Dep. Tr. 1507:18-20).] Mr. Rodney Bosco – Blue Spike's damages expert – testified that "I mean, it's obvious that any number that appears in a summary like this is comprised of additional numbers." [Ramsey Decl., Ex. C (Bosco Dep. Tr. 273:2-4).] He further went on to testify, that as an expert with 30 years of experience in studying the financial documents of companies, that he would "expect there is some level of detail" supporting the figures represented in the financial summary. [Ramsey Decl., Ex. C (Bosco Dep. Tr. 273:21-274:12)] Yet, Blue Spike continued to refuse to produce any underlying data to substantiate any particular costs or expenses claimed by Mr. Moskowitz, Blue Spike, Inc. or Blue Spike, LLC or to establish what the actual revenue and costs of this individual and entities actually are. They apparently refused to even provide this information to their own damages expert.

This issue is salient because if Audible Magic prevails on its unjust enrichment claims, it is entitled to a disgorgement of Blue Spike's profits related to that unjust enrichment. Without any detail underlying the values provided by this document, Audible Magic's damages expert was required to make assumptions and perform estimates in order to approximate the reasonable value of costs and debt associated with the patents in suit. [Ramsey Decl., Ex. D (Excerpts of Report of Alan Ratliff)] Thereafter, in his expert report, Blue Spike's damages expert attempted to take issue with Audible Magic's cost and expense assumptions. [Ramsey Decl., Ex. E (Excerpts of Report of Rodney Bosco)] These estimations and assumptions applied by Audible Magic's expert would not be necessary if Blue Spike had actually produced the underlying financial documents detailing the actual source of its costs and debts and the amounts. And the Court – twice – issued orders compelling Blue Spike to turn over all of its financial documents. It did not do so.

There is absolutely no support or explanation for why over ███████████ of a non-party entity should be accounted for on the books of Mr. Moskowitz or the Blue Spike entities, and there is absolutely no substantiation for the litigation and licensing cost figures set forth in the document. Given that Blue Spike's own damages expert testified that he would expect Blue Spike to have additional level of detail, and given Blue Spike's complete refusal to provide any such detail, in defiance of court orders, Blue Spike should be precluded from (1) claiming over ███████████ of other parties not involved in the case, as the alleged debt of the parties, and (2) through its expert or otherwise, should be precluded from questioning Audible Magic's estimates of Blue Spike's business expenses. Indeed, the reasonable estimates of Audible Magic's damages expert were necessary solely and precisely because of Blue Spike's failure to comply with the Court's orders.

7

Federal Rule of Civil Procedure 37(b)(2)(A) provides a remedy to prevent unfair advantage from this type of discovery gamesmanship, including prohibiting a disobedient party from introducing certain matters in evidence. *See* Fed. R. Civ. P. 37(b)(2)(A);[1] *Jackson v. Fed. Express Corp.*, 2006 U.S. Dist. LEXIS 39281 (N.D. Tex. June 14, 2006) (treating motion *in limine* as one filed under Rule 37). Here, Mr. Moskowitz and Blue Spike have refused to produce any documents supporting their claim for ▇▇▇▇▇▇▇▇ of a third-party or demonstrating their actual litigation and licensing costs. Yet, at the same time Blue Spike seeks to challenge the cost assumptions of Audible Magic's damages expert on the basis that they are not supported by actual evidence (which Blue Spike refused to provided). Under these circumstances, would be manifestly unfair to permit Blue Spike to both withhold the evidence of its actual costs, yet at the same time permit it to take this tactical benefits of that withholding.

The facts are similar to *La. Envtl. Action Network v. LWC Mgmt. Co.*, 2008 U.S. Dist. LEXIS 109204 (W.D. La. Aug. 14, 2008). There, defendants provided a summary document allegedly breaking down costs related to the particular items at issue, but refused to provide underlying information or documentation substantiating these costs. *Id.* at *2-7. After two motions to compel, and two court orders, the defendants failed to produce the underlying documentation. *Id.* As in the instant case, the underlying documentation was sought to assess

---

[1] Federal Rule of Civil Procedure 37(b)(2)(A) provides: "If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

whether the claimed costs were accurate. *Id.* at *9-10.

The plaintiff moved *in limine*, pursuant to Rule 37(2)(b) and (c), for an order preventing plaintiff from presenting evidence at trial relating to expenditures on the disputed items. The Court observed that "[e]vasive and incomplete disclosures, answers, or responses are treated the same as no response at all" and that disobeying discovery orders warrant evidence preclusion. *Id.* at *8. The Court found that:

> Defendants' failure to comply with their discovery duties and the Magistrate Judge's [] Order has significantly prejudiced Plaintiff. While Plaintiff was attempting to get Defendants to provide the relevant discovery and comply with the Magistrate Judge's Order, Plaintiff conducted depositions without the requested discovery. Defendants' expert relied on information provided in the List of Improvements, but Plaintiff was limited in its ability to question him at his deposition. Defendants' non-compliance with their discovery duties and the Magistrate Judge's order will also hinder Plaintiff at trial in refuting testimony about the purported improvements.

*Id.* at *11-13. There was no substantial justification for the refusal to produce the cost information, and the Court noted that the failure to produce underlying documentation was inconsistent with the defendants' ability to put together the summary cost document. *Id.* at *12-14. Thus, the Court ordered that the defendants could not rely upon the costs at issue to offset any damages that might be assessed at trial. *Id.* at *15-16; *see also AllVoice Computing PLC v. Nuance Communs., Inc.*, 2006 U.S. Dist. LEXIS 98478 (S.D. Tex. Jan. 10, 2006) (granting motion *in limine* where party refused to disclose contents of document, yet tried to rely on the existence of the document).

The same is true in the instant case. Audible Magic sought, throughout 2014 and 2015, to obtain documentation substantiating the Blue Spike parties' claimed costs, associated with the revenue that Audible Magic claims as damages. All that was forthcoming was a summary document, with wildly questionable numbers and no underlying support. Blue Spike's damages expert then used the absence of such underlying support to question Audible Magic's reasonable

9

cost estimates, at the same time conceding that there must underlying documentation to assess whether Blue Spike's summary document is inaccurate. This is enormously prejudicial to Audible Magic. As in *La. Envtl. Action Network*, an appropriate remedy under Rule 37 is to preclude Blue Spike from relying on the unsubstantiated costs in Blue Spike's summary financial statement, and from challenging the supported, reasonable cost estimates put forth by Audible Magic's expert. To do otherwise would enable Blue Spike to confuse the jury with inflated, entirely unsubstantiated cost figures, and such evidence is also subject to exclusion under Federal Rules of Evidence 402 and 403, as well.

>    C.   **Motion in Limine No. 3:  Blue Spike Witnesses Should Be Precluded From Testifying About The "Null Case," "Intended Matches" Or "Differentiating Between Versions."**

As detailed in Audible Magic's Motion to Exclude Certain Opinions of Blue Spike's Validity Expert, Blue Spike's patent validity expert Dr. Papakonstantinou attempted to argue the validity of the patents-in-suit by reference to the "Null case," "intended matches" or "differentiating between versions." *See* Dkt. 49. This approach is legally flawed, in that it attempts to frame validity of the patents-in-suit by reference to concepts that are not present in the claims of the patents-in-suit or the Court's claim constructions.

It is settled that an invalidity analysis (much like the "all elements rule" of an infringement analysis) requires that a "prior art reference disclose every limitation in a patent claim." *General Electric Co. v. Nintendo Co. Ltd.*, 179 F.3d 1350, 1356(Fed. Cir. 1999) (discussing anticipation). It is also settled that it is improper and misleading to attempt to use concepts outside of the claims as a proxy for questions that require, as a matter of law, assessment of the claims themselves. *See DataQuill Ltd. v. Huawei Tech. Co. Ltd. et al*, Case No. 13-cv-633, D.I. 146 (June 11, 2015) ("DataQuill Order") (previously submitted to this Court as D.I. 30-1) (The expert "is not permitted to confuse or mislead the jury by rendering

comparisons of particular embodiments (such as exemplary figures) to the accused products throughout his noninfringement analysis."). The same confusion will result whether this improper approach comes in through expert testimony or the testimony of Mr. Moskowitz or other witnesses. The Court should exclude such testimony as having no probative value and as extremely prejudicial. *See* Fed. R. Evid. 402, 403.

      **D.**    **Motion in Limine No. 4: Blue Spike Should Be Precluded From Challenging The Prior Art Status Of Audible Magic's Asserted Prior Art**

Blue Spike has provided absolutely no expert reports, expert reports, patent local rule disclosures or other discovery disclosures contesting the prior art status of any prior art asserted by Audible Magic. Thus, Blue Spike should be precluded from offering surprise opinions or testimony at trial attempting to challenge the status of such material as "prior art." In particular, Dr. Papakonstantinou, the only Blue Spike witness to address patent validity, did not provide in his report any opinions or assertions challenging prior art status whatsoever. It is well-settled that "[t]his Court has consistently limited experts' testimony to the opinions and bases disclosed in their expert report." *Witt v. Cheapeake Exploration, L.L.C.*, 2011 U.S. Dist. LEXIS 76033, 5-6 (E.D. Tex. July 13, 2011). To allow otherwise would cause unfair prejudice and surprise to Audible Magic. *See Smith and Nephew, Inc. v. Arthrex, Inc.*, 2010 U.S. Dist. LEXIS 10257, 2010 WL 457142, at * 8 (E.D. Tex. 2010) ("This Court holds that [expert] may not testify beyond the scope of his expert report. . . . To otherwise allow [expert] to testify at trial on these elements without properly disclosing his position would unfairly prejudice [the opposing party] and defeat one of the primary purposes that the expert report serves"); *Sensormatic Electronics Corp. v. WG Sec. Products, Inc.*, 2006 U.S. Dist. LEXIS 97108 (E.D. Tex. 2006) (granting motion *in limine* to limit scope of expert testimony at trial to expert report); *Acco Brands, Inc. v. American Power Conversion Corp.*, 2003 U.S. Dist. LEXIS 27829 (E.D. Tex. 2003) ("experts

11

are precluded from offering any opinions not specifically addressed in their expert report").

    **E.**    **Motion in Limine No. 5: Blue Spike Should Be Precluded From Commenting On The Residence Of Any Attorney, Party Or Witness.**

The residence of any of the parties is not relevant to any matter in this action. *See Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 732-33 (5th Cir. 2011) (arguments which appeal to geographical location are intended to prejudice the jury against an out-of-state corporation). Thus, Blue Spike should not "introduce any argument, evidence, testimony, insinuation, reference, or assertion concerning ... relative distance of witness or party residence to Texas ...." *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 176753, *9 (E.D. Tex. Sept. 3, 2015); *Green v. Logan's Roadhouse, Inc.*, 2015 U.S. Dist. LEXIS 4274, *4-5 (S.D. Miss. Jan. 14, 2015) (granting motion *in limine* "as to any argument or reference to the number of [party's] attorneys or their residence. Such evidence is irrelevant to Plaintiff's [] claims and might be used to engender unfair bias or prejudice against [party]" and granting "motion *in limine* as to any evidence or allusion to [party's] status as an out-of-state corporation. Such information is irrelevant to [party's] ... claims; Fed. R. Evid. 401, 403.

    **F.**    **Motion in Limine No. 6: Blue Spike Should Be Precluded From Discussing Or Mentioning The Personal Background Or Irrelevant Personal Characteristics Of Any Attorney Or Witness.**

Blue Spike should be precluded from discussing the personal background of any of the attorneys, including military service, educational experience, or other prior work experience. Such matters are entirely irrelevant to the merits of the case and risk confusing the jury into believing that the attorneys' qualifications or background should change the weight given to the evidence that the attorney elicits during the trial. Similarly, Blue Spike should be precluded from discussing matters such as irrelevant personal beliefs or attributes of any attorney or witness. For example, in one recent case, this Court ruled that "[t]he parties shall not introduce

any argument, evidence, testimony, insinuation, reference, or assertion concerning God or Jesus, the religious beliefs, political convictions, race, ethnicity, relative distance of witness or party residence to Texas or the United States, native language, and sexual orientation of the parties, witnesses and counsel." *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 176753, *9 (E.D. Tex. Sept. 3, 2015). The same restrictions should be applied in this case.

### G. Agreed Motions in Limine

In addition, during meet and confer during the fall of 2015 and on June 17, 2016, the parties have agreed to the following motions *in limine*, and agree to exclusion of the following:

#### 1. Neither Party Nor Any Witness Shall Comment On Or Testify About The Medical Condition Of Any Party Or Witness

Certain of the party witnesses may have medical conditions. The parties agreed during meet and confer during the fall of 2015 that neither party, nor any witness, shall comment on or testify about the medical conditions of any party or witness. [Ramsey Decl., ¶ 8] This is appropriate to avoid the prejudice or jury confusion associated with any positive or negative reaction associated with a party medical condition. Fed. R. Evid. 402, 403.

#### 2. Blue Spike Should Be Precluded From Referring To Itself As Plaintiff And Audible Magic As Defendant

During meet and confer on June 17, 2016, the parties agreed that Blue Spike should be precluded from referring to itself as plaintiff and to Audible Magic as defendant. Rather, the parties will refer to Audible Magic as the "plaintiff" and the parties will refer to Mr. Moskowitz, Blue Spike, LLC and Blue Spike, Inc. as "defendants." [Ramsey Decl., ¶ 9] The court has granted summary judgment of non-infringement as to Blue Spike, LLC's only claim in this matter. The remaining trial will only involve Audible Magic's claims against Scott Moskowitz, Blue Spike, LLC and Blue Spike, Inc. Audible Magic is, therefore, the only "plaintiff" and the

Blue Spike parties are the only "defendants."  Blue Spike should not be permitted to refer, directly or indirectly, to Audible Magic as the "defendant" or to itself as the "plaintiff."  There is absolutely no probative value from such statements because they it is undisputed that procedurally, these are not factually correct statements.  To permit Blue Spike to do so would confuse the jury into believing that Audible Magic was potentially culpable, when the court has already determined that is not the case, and would therefore cause undue prejudice to Audible Magic.  *See In re Urethane Antitrust Litig.*, 2016 U.S. Dist. LEXIS 15137, *8-10 (D.N.J. Feb. 8, 2016) (granting motion *in limine* to preclude references to former defendants as "defendants"; "[r]eferring to former defendants as 'defendants' or 'co-defendants' would prejudice [the moving party] because it would potentially cause the jury to infer that the former defendants were already held liable."); Fed. R. Evid. 402, 403.

### 3. Mr. Moskowitz Should Be Precluded From Testifying About The Scope And Meaning Of The Patents-In-Suit Beyond The Scope Of His Deposition

During meet and confer on June 17, 2016, the parties have agreed that Mr. Moskowitz will not testify about the scope and meaning of the patents-in-suit beyond the scope of his deposition.  [Ramsey Decl., ¶ 10]  During Mr. Moskowitz's deposition, he often refused to testify at all regarding the scope and meaning of the patents-in-suit, instead referring Audible Magic to the patent itself and refusing to otherwise answer the question.  Unfortunately, it became so difficult to conduct the deposition on these issues that it was necessary to contact the Court per the discovery "hotline" procedure, under Local Rule 26(e).  Civil Action 6:12-cv-00499-RWS-CMC, Dkt. 1886.  In the order resulting from the hearing, Judge Mazzant found:

> Defendants began asking the inventor a series of question regarding how certain features of the patent work. The inventor answered some of these questions by referring to the history of the patent, or pointing to the embodiments in the patent. Again, the Court ruled that there was nothing improper about the series of questions being asked by Defendants, and that the inventor was required to

> answer the questions. The Court noted that Defendants are entitled to know what the inventor will testify to in front of the jury, and that the inventor would likely be bound by the answers given during deposition.

During the deposition, Mr. Moskowitz largely continued this tactic. He should, therefore be bound by the answers given during his deposition, and not permitted to now provide surprise testimony regarding any different or additional scope or meaning of the patents-in-suit. To permit otherwise, would result in severe prejudice to Audible Magic, given Mr. Moskowitz's conduct at his deposition. Fed. R. Civ. P. 26, 37; Fed. R. Evid. 402, 403.

### 4. Mr. Moskowitz Should Be Precluded From Claiming That He Resides In Texas

During meet and confer on June 17, 2016, the parties have agreed that Blue Spike shall refrain from claiming, through testimony of any witness or otherwise, that Mr. Moskowitz resides in Texas. [Ramsey Decl., ¶ 11] Mr. Moskowitz has resided his entire life in the State of Florida. Public records indicate that as of June 2016, Mr. Moskowitz resides in Florida. [Ramsey Decl., Ex. F] To permit Mr. Moskowitz to suggest that he resides in Texas or locally would be unduly prejudicial, in view of the fact that it is simply not true, and in view of the fact that Audible Magic is a California corporation, and its employees also reside out of state, in California. Fed. R. Evid. 402, 403.

## III. CONCLUSION

For the foregoing reasons, Audible Magic respectfully requests that the Court grant Audible Magic's motions *in limine*.

Dated:  June 17, 2016

By:

/s/ Eric H. Findlay
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– LEAD ATTORNEY
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendant Audible Magic Corp.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on June 17, 2016.

>                         */s/ Eric H. Findlay*
>                         Eric H. Findlay

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that authorization to file this document under seal was provided by the Protective Order entered in the previously consolidated action 6:12-cv-499.

>                         */s/ Eric H. Findlay*
>                         Eric H. Findlay

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties have complied with the meet and confer requirement in Local Rule CV-7(h).  On June 17, 2016, counsel for Audible Magic Corp. and counsel for Blue Spike, LLC conferred regarding Audible Magic Corp.'s Motions In Limine.  Counsel for Blue Spike, LLC is opposed to the relief requested herein.  The parties are at an impasse, leaving open issues for the Court to resolve.

>                         */s/ Gabriel M. Ramsey*
>                         Gabriel M. Ramsey