# EXHIBIT 2

HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS ONLY

## AIR DataBlade - Illustra-Informix Product ("Illustra-Informix")

Defendants apply the prior art in light of Blue Spike's improper and incomplete infringement assertions and improper interpretation and application of the claims. Defendants do not agree with Blue Spike's apparent interpretation or application of the claims, and as a result, Defendants' contentions herein are not, and should in no way be seen as, admissions or adoptions as to any claim scope or construction or as any admission that any particular element is met in any particular way by the accused products. Defendants object to any attempt to imply claim construction from the following chart—to the contrary, Defendants have set forth their invalidity contentions herein as a response to Blue Spike's application of the asserted claims to the accused products and the implied constructions offered by Blue Spike.

Specifically, Blue Spike's original and draft revised Infringement Contentions against Audible Magic repeatedly refer to Audible Magic's "content recognition technology." *See, e.g.*, Contentions, all elements. The Contentions indicate that the Audible Magic's "content recognition technology" is directly relevant and allegedly discloses each asserted element. Given that Blue Spike identified Audible Magic's "content recognition technology" to allege infringement of every element, Blue Spike has implicitly acknowledged that this "content recognition technology" pre-existing Blue Spike's asserted patents anticipates each element. "That which infringes if later, anticipates if earlier." *Peters v. Active Mfg.*, 21 F. 319 (W.D.Ohio 1884) (*affirmed and quoted* in 129 U.S. 530 (1889)). Under Blue Spike's own interpretation and application of the claims, the captioned reference anticipates all claims.

Defendants' prior art invalidity contentions are made in a variety of alternatives and do not represent Defendants' agreement or view as to the meaning, definiteness, written description support for, or enablement of any claim contained therein. Defendants also object to the belated assertion of additional claims without leave of the Court, and the provision of invalidity contentions for those claims herein do not represent Defendants' agreement that such claims are properly asserted in this case. Defendants reserve the right to supplement these invalidity contentions.

The contentions contained herein apply the broad and incomplete interpretation of the asserted claims in Blue Spike's allegations of infringement against Audible Magic as seen in the Infringement Contentions. As such, nothing herein should be construed as an admission that any Audible Magic product past or present practices any limitation of the asserted claims or that Defendants agree with the interpretation, application or scope of the claims in Blue Spike's infringement contentions.

The captioned reference qualifies as prior art to U.S. Patent No. 7,346,472 ("the '472 patent"), U.S. Patent No. 7,660,700 ("the '700 patent"), U.S. Patent No. 7,949,494 ("the '494 patent"), and U.S. Patent No. 8,214,175 ("the '175 patent") under at least 35 U.S.C. § 102(a), (b), (f) and (g)(2) (pre-AIA) because it was first known, used, described in a printed publication, sold, offered for sale, invented, conceived and/or actually or constructively reduced to practice at least as early as March 1997 and, in any event, prior to the invention by the applicant and prior to the date of application for the patent, and because the applicants did not invent the

**HIGHLY CONFIDENTIAL OUTSIDE ATTORNEYS ONLY**

subject matter sought to be patented.  Further support for anticipation under 102(a), (b), (f) and (g)(2) and that the inventors were reasonably diligent and did not abandon, suppress or conceal their invention can be found in one or more of the documents attached as Appendix A to this chart, among others.

Based at least on the disclosures identified before, the captioned reference anticipates and renders obvious the asserted claims of the patents-in-suit.  To the extent that Blue Spike contends that the captioned reference does not disclose one or more limitations of the asserted claims, such limitations are inherent in the captioned reference, or it would have been obvious to modify the captioned reference or combine the teachings of the captioned reference with that element as described in the references disclosed in Exhibit B and known to one of ordinary skill in the art for the reasons discussed in Exhibit B.  In addition, the disclosures and evidence of Illustra-Informix are directed to solving the same problems as the references disclosed in Exhibit B.  Illustra-Informix states that it is directed at "applications in sound-related fields such as multimedia, archiving, and audio post-production" and offers "tools to access, analyze, manipulate, compare, retrieve, and reuse audio data."  The Illustra-Informix product applies this functionality to, among other things, "sound browsers," "Internet Search Engines and Web-based Applications" and enables "automatic analysis, classification, search , and retrieval of digital sound based on characteristics of the audio."  Given the problem that is addressed by Illustra-Informix, and the pervasive applicability of Illustra-Informix's evidence and disclosures, a skilled artisan would have been motivated to modify Illustra-Informix with the element as claimed to gain such greater functionality as described above.

Because Blue Spike has yet to identify any limitation of the asserted claims of the patents-in-suit that it contends is not fully disclosed by the captioned reference, Defendants expressly reserve the right to rebut any such contention, including by identifying additional § 103 combinations, if any such contention is made by Blue Spike.

Pages 3-9 Redacted