# Exhibit H

**Attached hereto as Exhibit H is a true and correct copy of excerpts of Dr. Yannis Papakonstantinou's Reubuttal of Invalidity Reports by Dr. John Strawn and Dr. Schuyler Quackenbush.**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § | |
| *Plaintiff*, | § § | CASE NO. 6:12-cv-499-MHS-CMC |
| v. | § § | LEAD CASE |
| Texas Instruments, Inc., et al., | § § | Jury Trial Demanded |
| *Defendants*. | § § § | |

**TECHNICAL EXPERT REPORT OF
YANNIS PAPAKONSTANTINOU, PH.D.
REBUTTAL OF INVALIDITY REPORTS
BY DR. JOHN STRAWN AND
DR. SCHUYLER QUACKENBUSH**

## Table of Contents

I. INTRODUCTION .................................................................................................. 3
   A. Experience and Qualifications ..................................................................... 3
   B. Compensation ............................................................................................... 5
   C. Prior Testimony ........................................................................................... 5
   D. Description of Assignment .......................................................................... 5
II. LEVEL OF ORDINARY SKILL IN THE ART ................................................. 6
III. MATERIALS CONSIDERED .......................................................................... 6
IV. SUMMARY OF OPINIONS .............................................................................. 6
V. LEGAL PRINCIPALS RELATED TO INVALIDITY ..................................... 7
VI. FACTUAL BACKGROUND: BLUE SPIKE PATENTS-IN-SUIT ............... 18
VII. FACTUAL BACKGROUND: AUDIBLE MAGIC PORTFOLIO ............. 21
   A. U.S. Patent No. 5,918,223 (Blum) ............................................................ 21
   B. Muscle Fish's SoundFisher ....................................................................... 25
   C. Audio Databases with Content-Based Retrieval ....................................... 27
   D. U.S. Patent 6,834,308 (Ikezoye) ................................................................ 28
   E. Muscle Fish's ▮▮▮▮▮▮▮▮ Product ........................................................ 29
   F. Audible Magic's Clango/Amadeus/Wired Air Software ......................... 30
   G. U.S. Patent 7,877,438 (Schrempp) ............................................................ 31
   H. U.S. Patent 6,968,337 (Wold) ................................................................... 32
VIII. FACTUAL BACKGROUND: OTHER REFERENCED ART ................. 32
   A. U.S. Patent 5,913,205 (Jain) ...................................................................... 32
   B. U.S. Patent 7,194,752 (Kenyon) ............................................................... 33
IX. FACTUAL BACKGROUND: ON FINGERPRINTS ................................... 34
X. AUDIBLE MAGIC'S PRIOR ART DOES NOT ANTICIPATE ................... 35
   A. U.S. Patent No. 5,918,223 (Blum) and Related Software ....................... 35
      1. U.S. Patent No. 5,918,223 (Blum) ....................................................... 35
      2. SoundFisher ............................................................................................ 38
      3. ▮▮▮▮▮▮▮▮ Product ............................................................................ 40
      4. "Audio Databases with Content-Based Recognition" ....................... 41
      5. Muscle Fish's "Illustra/Informix AIR DataBlade" ............................ 42
      6. Muscle Fish's ▮▮▮▮ System ............................................................... 42
   B. U.S. Patent 6,834,308 and Related Software ........................................... 43
      1. U.S. Patent 6,834,308 ............................................................................ 43
      2. Clango/Amadeus/Wired Air Software ............................................... 46
XI. OTHER REFERENCED PRIOR ART DOES NOT INVALIDATE ........... 46
   A. U.S. Patent 5,437,050 (Lamb) ................................................................... 46
   B. U.S. Patent 5,913,205 (Jain) ...................................................................... 47
   C. U.S. Patent 7,194,752 (Kenyon) ............................................................... 49
XII. OBVIOUSNESS ................................................................................................ 50
   A. Whether the invention proceeded in a direction contrary to accepted wisdom in the field. .................................................................................................... 53
   B. Whether there was long felt but unresolved need in the art that was satisfied by the invention. ............................................................................................. 53

   C.    Whether others had tried but failed to make the invention. ................................. 53
   D.    Whether others copied the invention. ........................................................................... 54
   E.    Whether the invention achieved unexpected results. ............................................... 54
   F.    Whether the invention was praised by others. ........................................................... 54
   G.    Whether others have taken licenses to use the invention. ....................................... 55
   H.    Whether experts or those skilled in the art at the making of the invention expressed surprise or disbelief regarding the invention. ................................................. 55
   I.    Whether products incorporating the invention have achieved commercial success. ........................................................................................................................................ 55
   J.    Whether others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventor made the invention. ................................................................................................................... 55
**XIII.**    **ENABLEMENT** ................................................................................................................ **56**
   A.    Creation of a data-reduced signal abstract using selectable criteria ................. 61
   B.    A database containing raw data or preprocessed signal abstracts .................... 67
**XIV.**    **WRITTEN DESCRIPTION** ............................................................................................ **71**
**XV.**    **DEFINITENESS** ................................................................................................................ **77**

50. The Blue Spike patents-in-suit teach an alternative to watermarks that will "reduce the digital signal in such a manner as to retain a 'perceptual relationship' between the original signal and its data reduced version" with the purpose of creating "a more consistent means for classifying signals than proprietary, related text-based approaches." ['472 Patent Col. 3, Lines 52-59].

51. The Blue Spike patents teach a number of improvements over the prior art. One such improvement is that

> the present invention incorporates what could best be described as "computer-acoustic" and "computer-visual" modeling, where the signal abstracts are created using data reduction techniques to determine the smallest amount of data, at least a single bit, which can represent and differentiate two digitized signal representations for a given predefined signal set.

['472 Patent, Col. 10, Lines 9-16].

52. Another improvement is the introduction of the NULL case in which "the engine will also consider the NULL case for a generalized item not in its database, or perhaps in situations where data objects may have collisions." ['472 Patent, Col. 10, Lines 34-36].

53. The many claims of Blue Spike's patents-in-suit teach a number of different improvements over the prior art, and I will not attempt to address them all. However, for the purposes of this report I will highlight a few of these teachings as they help frame the differences between Blue Spike's patents-in-suit and the art submitted by Audible Magic.

54. Claim 1 of the '472 Patent describes a method of "monitoring and analyzing at least one signal," "creating an abstract of said at least one query signal," and

"determin[ing] if the abstract of said at least one query signal matches the abstract of said at least one reference signal." In the context of copyright identification, it is important that this matched signal is the signal the copyright owner intended to be matched. I refer to this type of match as the "intended match" throughout this report.

55. Claim 11 of the '472 Patent describes a different form of matching in which "the comparing device identifies at least two abstracts in the reference database that match the abstract of said at least one query signal and an index of relatedness to said at least one query signal for each of said at least two matching abstracts." In this example, there is not necessarily one "intended match," but multiple "related" matches. In the embodiments, these related matches share perceptual characteristics with the signal being monitored. And in the context of copyright monitoring, these matches are capable of being identified having a relationship with an monitored work.

56. Claim 1 of the '700 Patent describes a system "wherein a match indicates the query signal is a version of at least one of the references signals." Again, in the copyright context, these versions might be of the same song with "the same lyrics and music but which are sung by different artists." ['700 Patent, Col. 4, Lines 2-4].

VII. **FACTUAL BACKGROUND: AUDIBLE MAGIC PORTFOLIO**

  A. <u>U.S. Patent No. 5,918,223 (Blum)</u>

57. I have reviewed U.S. Patent No. 5,918,223 titled "Method and Article of Manufacture for Content-Based Analysis, Storage, Retrieval, and Segmentation of Audio Information." The patent indicates that it was filed on July 21, 1997 and issued on June 29, 1999. The inventors named on the patent are Thomas L. Blum, Douglas E. Keislar, James A. Wheaton, and Erling H. Wold.

believe the premise that the similarity in language between patents-in-suit and prior art references is faulty. Audible Magic's expert has not even shown as a threshold matter that the terms are used in both art references. For this reason and those already discussed, I am disinclined to opine that the alleged similarity in terms or nomenclature is indicative of prior inventorship by the employees of Muscle Fish.

Dated: May 11, 2015

*Yannis Papakonstantinou*

Dr. Yannis Papakonstantinou